**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Tammy Marzigliano (TM 2934)
Anjana Samant (AS 5163)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No.
24001807) (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB, BLERTA VIKKI, DANIELLE OWIMRIN, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**SCORES HOLDING COMPANY, INC.; GO WEST ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; and SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST SIDE.**<br><br>**Defendants.** | **No. 07 Civ. 8718 (RMB)** |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT-AUTHORIZED
## NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................1

II.   STATEMENT OF FACTS .....................................................................2

      A. The Parties............................................................................2

      B. Defendants are a Uniform, Integrated Operation .................................…...3

      C. Scores Applied the Same Compensation Policies and Practices to Workers
         at Both New York Locations. ......................................................4

         1. Scores Confiscated a Portion of Its Workers' Tips Through its "
            Diamond Dollar" Scheme. ......................................................4

         2. Scores Pays Plaintiffs and Potential Opt-in Plaintiffs Less than the
            Statutory Minimum Wage.......................................................5

         3. Defendants Required Employees to Wear Uniforms but Failed to Pay
            for their Purchase or Maintenance ...........................................6

III.  ARGUMENT....................................................................................7

      A. Court-Authorized Notice is Fair, Efficient, and Advances Public Policy
         Aims.................................................................................7

      B. Plaintiffs Meet and Exceed their Low Burden Under 29 U.S.C. § 216(b)...............9

      C. Plaintiffs and Potential Plaintiffs are Similarly Situated with Respect to
         Their FLSA Claims..................................................................11

         1. Scores Paid All Plaintiffs and Potential Plaintiffs Less Than the
            Minimum Wage .................................................................11

         2. Scores failed to Pay Plaintiffs and Potential Opt-In Plaintiffs Proper
            Overtime Compensation .......................................................14

         3. Scores Did Not Provide Plaintiffs and Potential Opt-In Plaintiffs a
            Uniform Allowance ...........................................................15

      D. The Court Should Approve Plaintiffs' "Timely, Accurate and
         Informative" Proposed Notice. ..................................................15

      E. Equitable Tolling Cannot be Ruled Out at this Early Stage......................15

III.     CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anglada v. Linens n Things, Inc.,*
> No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS, at 27 (S.D.N.Y. Apr. 26, 2007) ...................13

*Ayres v. 127 Restaurants Corp.,*
> 12 F. Supp. 2d 305 (S.D.N.Y. 1998)...............................................................................15

*Bonham v. Dresser Industrial,*
> 569 F.2d 187 (3d Cir. 1977)...........................................................................................16

*Braunstein v. E. Photographic Laboratories, Inc.,*
> 600 F.2d 335 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979)........................................8

*Bursell v. Tommy's Seafood Steakhouse,*
> Civil Action No. H-06-0386, 2006 U.S. Dist. LEXIS 80526 (S.D. Tex. Nov. 3, 2006) ...13

*Carter v. Indianapolis Power & Light Co.,*
> IP 102 CV 01812, 2003 U.S. Dist. LEXIS 23398 (S.D. Ind. Dec. 23, 2003)...................11

*Chan v. Sung Yue Tung Corp.,*
> 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007)..............12, 14

*Chowdhury v. Duane Reade, Inc.,*
> No. 06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. 2007) ..................................13

*Chung v. The New Silver Palace Restaurant, Inc.,*
> 246 F. Supp. 2d at 229-30 (S.D.N.Y. 2002) ....................................................................12

*Clarke v. Convergys Customer Management Group, Inc.,*
> 370 F. Supp. 2d 601 (S.D. Tex. 2005) .............................................................................15

*Cuzco v. Orion Builders, Inc.,*
> 06 Civ. 2789 (SCR), 2007 U.S. Dist. LEXIS 21473 (S.D.N.Y. March 8, 2007) ............8, 9

*Damassia v. Duane Reade, Inc.,*
> 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006)..............9, 13

*Dominguez v. Don Pedro Rest.,*
> No. 2:06 Civ. 241,2007 U.S. Dist. LEXIS 6659 (N.D. Ind. Jan. 25, 2007).......................13

*Fasanelli v. Heartland Brewery, Inc.,*
> 516 F. Supp. 2d 317 (S.D.N.Y. 2007)..................................................................11, 13, 14

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003)..........................................................................9, 10

*Harrington v. Education Management Corp.*,
    No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 17, 2002)......................13

*Henchy v. City of Absecon*,
    148 F. Supp. 2d 435 (D.N.J. 2001) ..................................................................................16

*Hens v. ClientLogic Oper. Corp.*,
    05-C 2006 U.S. Dist. LEXIS 69021 (W.D.N.Y. Sept. 26, 2006) ......................................14

*Hoffman-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)................................................................................................7, 8, 15

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ...........................................................................8, 9, 10

*Holbrook v. Smith & Hawken, Ltd.*,
    246 F.R.D. 103 (D. Conn. 2007)......................................................................................14

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) .....................................................................................16

*Jacobsen v. The Stop & Shop Supermarket Co.*,
    No. 02 Civ. 5915, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 15, 2003)......................13

*Kamens v. Summit Stainless, Inc.*,
    586 F. Supp. 324 (E.D. Pa. 1984) ...................................................................................16

*Khalil v. The Original Homestead Restaurant, Inc.*,
    No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) .......................11

*Krueger v. N.Y. Tele. Co.*,
    No. 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993) ................10

*Legrand v. Education Management Corp.*,
    No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004)............................11

*Masson v. Ecolab, Inc.*,
    No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ..................11

*Patton v. Thomson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ...............................................................................9

*Realite v. Ark Restaurants Corp.*,
　　7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...................................................8, 9, 12, 13

*Reich v. Chez Robert, Inc.*,
　　28 F.3d 401 (3d Cir. 1994)..........................................................................12

*Roebuck v. Hudson Valley Farms, Inc.*,
　　239 F. Supp. 2d 234 (N.D.N.Y. 2002) .........................................................11

*Scholtisek v. Eldre Corp.*,
　　229 F.R.D. 381 (W.D.N.Y. 2005)................................................................14

*Schwed v. General Electric Co.*,
　　159 F.R.D. 373 (N.D.N.Y. 1995) ................................................................11

*Sipas v. Sammy's Fishbox, Inc.*,
　　No. 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006)...8, 16

*Torres v. Gristede's Operating Corp.*,
　　No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ...9, 10, 13, 14

*Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*,
　　246 F. Supp. 2d 886 (S.D. Ohio 2003) .........................................................16

*Young v. Cooper Cameron Corp.*,
　　229 F.R.D. 50 (S.D.N.Y. 2005) ...................................................................15

*Zhao v. Benihana, Inc.*,
　　2001 U.S. Dist. LEXIS 10678 .....................................................................13

**FEDERAL STATUTES**

29 C.F.R. §§ 531.3(d), 778.217 ...........................................................................11

29 C.F.R. § 778.107 ...........................................................................................14

29 C.F.R. § 778.217 ...........................................................................................15

29 C.F.R. § 785.13 .............................................................................................14

29 U.S.C. § 201, *et seq*......................................................................................7

29 U.S.C. § 203(m) ......................................................................................11, 12

29 U.S.C. § 206(a), *as amended by* 121 Stat. 112, 188 .........................................6, 12

29 U.S.C. § 207(a)(1)...........................................................................................................14

29 U.S.C. § 216(b) ..........................................................................................................1, 7

29 U.S.C. § 255...............................................................................................................16

United States Department of Labor Wage & Hour Field Operations Handbook §30c12(f) ......15

## I.    PRELIMINARY STATEMENT

This case is about a chain of adult nightclubs, operated by Defendants Scores Holding Company, Inc. ("SHC"); Go West Entertainment, Inc., d/b/a Scores West Side; and Scores Entertainment, Inc., d/b/a Scores East Side (collectively "Scores" or "Defendants"), that confiscates its workers' tips, fails to pay them proper minimum wage and overtime compensation, and fails to reimburse them for uniform expenses.[1]

Through this motion, Plaintiffs seek to protect the rights of hundreds of current and former Scores workers by sending them Court-approved notice of this action, and letting them decide whether to seek to recover their unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Plaintiffs exceed their low burden on this motion through declarations of five workers[2]; the well-pled allegations in Plaintiffs' Amended Complaint ("AC"); and documentary evidence.  Plaintiffs show that Defendants subjected other Scores workers to the same policies and practices to which Scores subjected Plaintiffs, and that these other Scores workers will benefit from Court-authorized notice.

---

[1] Defendants claim that Plaintiffs did not properly name some of the defendant entities. Samant Dec. Ex. K (Defendant's Correspondence to the Court, dated Dec. 7, 2007.) After some targeted discovery on Defendants' corporate structure and ownership, Plaintiffs plan to seek leave to file a Second Amended Complaint to name the proper entities, if they have not already done so.  This, however, is not relevant to this motion, which simply seeks to notify workers that they may be entitled to participate in this litigation and enforce their FLSA rights against Defendants.

[2] Declarations of all Plaintiffs and Opt-in Plaintiffs are included as Exhibits C through G to the Samant Dec. and are referred to herein as "PLAINTIFF NAME Dec."

## II.    STATEMENT OF FACTS

### A.    The Parties.

Defendants own and operate a chain of adult nightclubs that includes the two New York locations at which Plaintiffs worked.[3]  Defendant SHC is a publicly traded company with ownership rights to the "Scores" brand-name and other related intellectual property, and which promotes Scores as "the premier adult entertainment club in the United States."[4]

Since Plaintiff Diaz commenced this action, five other workers have filed consent forms and joined as Plaintiffs and/or Opt-in Plaintiffs (collectively "Plaintiffs").  The Named Plaintiffs are dancers (Blerta Vikki and Danielle Owimrin), servers (Carolyn Siegel), bartenders (Siri Diaz), and cocktail waitresses (Talia Bumb) who were employed at two Scores nightclubs, one on the West Side of Manhattan ("Scores West") and one on the East Side of Manhattan ("Scores East Side").[5]  Plaintiffs and Opt-in Plaintiffs are similarly situated to one another, and to their co-workers who have not yet joined this action ("Potential Opt-In Plaintiffs"), because Defendants subjected them all to the same compensation policies and practices, as described herein.

---

[3] Samant Dec. Ex. B (Amended Complaint ("AC")) at ¶ 1; Ex. J (Scores Holding Co. Form 10QSB/A, filed with the Securities & Exchange Commission on May 23, 2007 ("Scores SEC filing")) at 8.
[4] Samant Dec. Ex. H (Scores Holding Co. website, at http://www.scoresholding.com/operations.htm, printed on Jan. 14, 2008 ("Scores Operations Webpage")).
[5] AC at ¶¶ 12, 16, 20, 24, 28; Bumb Dec. ¶¶ 1, 2; Diaz Dec. ¶¶ 1, 2; Siegel Dec. ¶¶ 1, 2; Levin Dec. ¶¶ 1, 2; Vikki Dec. ¶¶ 1, 2.

**B.    Defendants are a Uniform, Integrated Operation.**

Scores is different from other adult-entertainment nightclubs because of the strict control that SHC exerts over Scores nightclubs' operations.[6]  On its website, Scores promises patrons a "quality-assured environment," and claims that all Scores locations "maintain the highest standards of operation particularly with their performers in the areas of personal appearance and personality as well as the ability to interact intelligently with customers and engage them in meaningful conversation."[7]  Scores' stated business goals include "maximiz[ing] the value of the brand through licensing the Scores name to top-tier adult nightclubs that can meet its stringent quality-of-experience criteria…"[8]

Scores also emphasizes that it does not require customers to use cash to pay for food and entertainment at its nightclubs.[9]  Scores permits customers to use credit cards to purchase "Diamond Dollars,"[10] which are imitation currency that customers can use to tip workers and purchase dances.  (*See* Section II.D.1 *infra*.)  Diamond Dollars are trademarked intellectual property, the rights to which are held by SHC.[11]  SHC controls

---

[6] Samant Dec. Ex. H (Scores Operations Webpage (noting that the environment at Scores nightclubs "is carefully monitored, in terms of maintenance, music selection, entertainer and waitress appearance and all aspects of customer service on a continuous basis")).
[7] Samant Dec. Ex. H (Scores Operations Webpage).
[8] Samant Dec. Ex. I (Scores Holding Co. website, at http://www.scoresholding.com/profile.htm, printed on Jan. 14, 2008 ("Scores Profile Webpage")).
[9] Samant Dec. Ex. H (Scores Operations Webpage) ("Cash was usually the only transaction allowed and most business people felt uncomfortable in such an environment. SCORES recognized the need for first-class adult entertainment designed to target the business segment of the market by providing a quality-assured environment.").
[10] Siegel Dec. Ex. B (Sample Diamond Dollar).
[11] Samant Dec. Ex. M (Complaint filed by inter alia SHC on July 26, 2005, in Supreme Court of the State of New York) at ¶ 10.

3

the manner in which Diamond Dollars are purchased, used, and exchanged for cash at all

Scores' nightclubs, regardless of location.[12]

### C.    Scores Applied the Same Compensation Policies and Practices to Workers at Both New York Locations.

Scores' insistence on uniformity of operations includes uniformity of

compensation policies and practices at Scores West and Scores East.[13]  The "Scores New

York" Employee Handbook and Training Handbook covers the terms and conditions of

employment at both clubs.[14]  Below, Plaintiffs describe the compensation polices and

practices germane to this motion.

### 1.    Scores Confiscated a Portion of Its Workers' Tips Through its "Diamond Dollar" Scheme.

Scores workers, including all Plaintiffs and Potential Opt-In Plaintiffs, rely on

customer tips for most (or all) of their income.  Many customers tip Scores workers using

"Diamond Dollars," which are imitation currency in denominations of $20.00 that

customers can buy from Scores using their credit cards.[15]  (*See* Siegel Dec. Ex. B,

(Sample Diamond Dollar).)  Customers may use Diamond Dollars only to tip workers.

Scores does not accept Diamond Dollars for payment of food, drinks, or admission to its

nightclubs.  (Empl. Handbook at 8.)

It is not surprising that Scores encourages its customers to tip workers in

---

[12] See Score's Complaint ("Scores Complaint") ¶10.

[13] AC at ¶¶ 32, 38, 40, 42, 45.

[14] Diaz Dec. Ex B (Scores New York Employment Handbook ("Empl. Handbook"));
Bumb Dec. Ex. B (Scores Training Handbook).

[15] Bumb Dec. ¶ 6; Diaz Dec. ¶ 6; Siegel Dec. ¶ 7; Levin Dec. ¶ 8; Vikki Dec. ¶ 9.
Diamond Dollars are an important part of Scores' business model and protected
intellectual property.  Samant Dec. Ex. M (Complaint filed by inter alia SHC on July 26,
2005, in Supreme Court of the State of New York) at ¶ 10.

4

Diamond Dollars because Scores purloins some of every Diamond Dollar tip.[16]  When Scores converts Plaintiffs' Diamond Dollar tips to into cash, it pays workers only 90 cents on the dollar – it takes $2.00 for itself out of each $20 Diamond Dollar its employees earn.[17]

Scores also makes it difficult for workers to exchange Diamond Dollars for cash at all.  It permits workers to cash-in their Diamond Dollars only during designated times, and through designated personnel.[18]  If employees try to exchange their Diamond Dollars for cash at other times, Scores rebuffs them.[19]  Employees are not always aware of the windows of time in which they may exchange their Diamond Dollars, and Scores does not go out of its way to publicize them.[20]  Scores sometimes refuses to exchange Diamond Dollars for cash at all, claiming that the Diamond Dollars have "expired."  (*See* Siegel Dec. ¶ 9 and Ex. B (Sample Diamond Dollar); Bumb Dec. ¶ 9; Levin Dec. ¶ 10; Vikki Dec. ¶ 11.)

Scores' policies and practices with respect to Diamond Dollars apply to all Plaintiffs and Potential Opt-In Plaintiffs and do not vary from club to club, including Scores West and Scores East.  AC at ¶¶ 72, 73, 75.

### 2. Scores Pays Plaintiffs and Potential Opt-in Plaintiffs Less than the Statutory Minimum Wage.

Scores has not paid and does not pay any Plaintiffs or Potential Opt-In Plaintiffs

---

[16] AC ¶¶ 3, 4; Bumb Dec. ¶¶ 5, 8; Diaz Dec. ¶¶ 5, 8; Siegel Dec. ¶¶ 6, 9; Levin Dec. ¶¶ 6, 9; Vikki Dec. ¶¶ 7, 10.
[17] Diaz Dec. ¶ 8; Levin Dec. ¶ 9; Vikki Dec. ¶ 10.
[18] AC ¶ 5; Diaz Dec. ¶ 9; Siegel Dec. ¶ 10; Levin Dec. ¶ 10; Vikki Dec. ¶ 11.
[19] Diaz Dec. ¶ 9; Levin Dec. ¶ 10.
[20] Siegel Dec. ¶ 10; Empl. Handbook *passim*.

the full statutory minimum wage of $5.15 or $5.85[21] per hour.[22] It pays servers, cocktail waitresses, and bartenders, at a rate of only $4.60 per hour.[23] It does not pay dancers any hourly wages at all.[24]

Scores' policies and practices with respect to minimum wages apply to all Plaintiffs and Potential Opt-In Plaintiffs and do not vary from club to club, including Scores West and Scores East.[25] AC at ¶¶ 72, 73, 75

### 3. Defendants Required Employees to Wear Uniforms but Failed to Pay for their Purchase or Maintenance.

Scores requires all workers, including Plaintiffs and Potential Opt-in Plaintiffs to meet strict attire and appearance standards.[26] Scores requires bartenders, servers, and cocktail waitresses to wear a black corset, a skirt or "skort," stockings, and black dress boots.[27] Scores requires dancers to wear either a long gown or a short dress; a garter belt

---

[21] The federal minimum wage was $5.15 per hour for all work performed between September 1, 1997 and July 24, 2007, and $5.85 per hour for all work performed between July 24, 2007 through July 24, 2008. 29 U.S.C. § 206(a), *as amended by* 121 Stat. 112, 188.

[22] AC ¶ 170, 171; Bumb Dec. ¶ 3; Diaz Dec. ¶ 3; Siegel Dec. ¶ 3; Levin Dec. ¶ 3; Vikki Dec. ¶ 3.

[23] Bumb Dec. ¶ 3 Ex. A (pay stub); Diaz Dec. ¶ 3 Ex. A (pay stub); Siegel Dec. ¶ 3 Ex. A (pay stub).

[24] Defendants also charged dancers a "house fee" that ranged from $40 to $180 per shift for the privilege of working for Scores each shift. Dancers were typically required to pay this fee to Scores at the start of their shifts. Levin Dec. ¶ 4; Vikki Dec. ¶ 5.

[25] In addition to failing to pay the proper minimum wage rate, Scores does not pay its employees overtime compensation for all hours worked over 40 per workweek. (Diaz Dec. ¶ 11; Vikki Dec. ¶ 4.)

[26] AC ¶¶ 152, 185; Empl. Handbook at 24; Training Manual at 9, 38; Diaz Dec.     ¶ 13; Bumb Dec. ¶ 12; Siegel Dec. ¶ 14; Levin Dec. ¶ 12; Vikki Dec. ¶ 13; Samant Dec. Ex. H (Scores Operations Webpage ("The SCORES officers Management [sic] will ensure that licensee's [sic] of the 'SCORES' brand name maintain the highest standards of operation particularly with their performers in the areas of personal appearance and personality … .")).

[27] Diaz Dec. ¶ 13; Bumb Dec. ¶ 12; Siegel Dec. ¶ 14; *see also* Training Handbook at 9.

and stockings; a specific type of underwear; and high heeled shoes.[28]  Scores also holds

occasional "theme nights" on which it requires workers to wear uniforms consistent with

the night's theme.[29]  Scores does not provide workers with an allowance to purchase or

launder their mandatory uniforms.[30]

Scores' policies and practices with respect to uniforms apply to all Plaintiffs and

Potential Opt-In Plaintiffs and do not vary from club to club, including Scores West and

Scores East. AC at ¶ 72, 73, 75.

### III.    ARGUMENT

### A.    Court-Authorized Notice is Fair, Efficient, and Advances Public Policy Aims.

The FLSA authorizes private parties to sue in federal court to recover damages.

29 U.S.C. § 201, *et seq.*  In addition to bringing individual suits, aggrieved employees

may bring a collective action "on behalf of themselves and other employees similarly

situated."  29 U.S.C. § 216(b).  Allowing FLSA suits to proceed as collective actions

furthers the goal of judicial economy.  Collective actions enable the "efficient resolution

in one proceeding of common issues of law and fact...."  *Hoffman-La Roche, Inc. v.

Sperling*, 493 U.S. 165, 170 (1989).  The alternative, a multitude of virtually identical

individual suits, would burden courts unnecessarily and risk inconsistent judgments on

---

[28] Levin Dec. ¶ 12; Vikki Dec. ¶ 13.

[29] Diaz Dec. ¶ 15; Siegel Dec. ¶ 16; Levin Dec. ¶ 13; Vikki Dec. ¶ 14.  For example, Scores has held a "school girl" themed-night on which employees wore plaid skirts and ties; a Superbowl/football themed night on which employees wore cheerleading outfits or referee uniforms; and a Valentine's Day night on which employees wore red lingerie. Levin Dec. ¶ 13.

[30] AC ¶¶ 73, 88, 95, 101, 109, 117, 186-88; Bumb Dec. ¶¶ 14-16; Diaz Dec. ¶ 16; Siegel Dec. ¶ 17; Levin Dec. ¶ 14; Vikki Dec. ¶ 15.

claims arising from the same events and brought under the same laws.[31]

To participate in a collective action, an employee must "opt in," meaning that the employee must consent in writing to join the suit and that consent must be filed with the court. *Id.* at 168. The statute of limitations runs on each employee's claims until the opt-in form is filed. *Hoffman,* 982 F. Supp. at 260.

In light of this reality and in furtherance of the "broad remedial purpose" of the FLSA, courts have the authority to notify potential opt-in plaintiffs of their chance to join an existing action early in the proceedings.[32] This is the preferred method for managing collective actions because, for the "intended benefits of the collective action … to accrue, employees must receive 'accurate and timely notice concerning the pendency'" of the litigation. *Cuzco v. Orion Builders, Inc.,* 06 Civ. 2789 (SCR), 2007 U.S. Dist. LEXIS 21473, at *14-15 (S.D.N.Y. March 8, 2007) (quoting *Hoffman-La Roche,* 493 U.S. at 170). The Second Circuit "encourages the sending of notice to 'similarly situated' individuals." *Sipas v. Sammy's Fishbox, Inc.,* 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318, at *5 (S.D.N.Y. Apr. 24, 2006) (quoting *Braunstein,* 600 F.2d at 336).

---

[31] Collective actions also provide plaintiffs the opportunity to "lower individual costs to vindicate rights by pooling resources." *Hoffman-La Roche,* 493 U.S. at 170. Employees earning the minimum hourly wage – and, in this case, considerably *less* than the minimum hourly wage – are unlikely to have the resources to pursue their lost wages on an individual basis. If their claims are not pooled in a collective action, many claims will go unheard and Scores' unlawful practices will continue unchallenged.

[32] *Hoffman-La Roche,* 493 U.S. at 169; *Braunstein v. E. Photo. Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979); *Realite v. Ark Rests. Corp.,* 7 F. Supp. 2d 303 (S.D.N.Y. 1998).

**B.**    **Plaintiffs Meet and Exceed their Low Burden Under 29 U.S.C. § 216(b).**

Courts in the Second Circuit typically employ a two-step analysis when determining whether to certify a collective action.[33]  At the initial "notice stage," the court determines, on the basis of pleadings and affidavits, whether to notify potential members of the collective that the case is pending.  *Torres v. Gristede's Oper. Corp.,* 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *23-24 (S.D.N.Y. Sept. 28, 2006).  Plaintiffs must merely establish the existence of other employees who were "similarly situated" to them.  *Realite v. Ark Rests. Corp.,* 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).  Employees are "similarly situated" simply if they, too, were subjected to the practices and policies challenged by plaintiffs in the litigation.  *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003).

At the initial stage, plaintiffs have only a "minimal" burden for demonstrating that they and potential plaintiffs.  *Damassia v. Duane Reade, Inc.,* 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *9-10 (S.D.N.Y. Oct. 5, 2006).  The plaintiffs are required only to make a "modest factual showing" that they and other employees were victims of "a common policy or plan that violated the law."  *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  The court applies "a fairly lenient standard" in evaluating a motion for conditional certification and "(when it does so) typically grants" the request.  *Torres,* 2006 U.S. Dist. LEXIS 74039, at *37-38 (quotations omitted).

Extensive discovery is not necessary at the initial stage.[34]  In lieu of discovery,

---

[33] *E.g., Cuzco,* 2007 U.S. Dist. LEXIS 21473, at *6; *Sipas,* 2006 U.S. Dist. LEXIS 24318, at *6-7 & n.1.

[34] *Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (ordering notice before full discovery); *Hoffmann,* 982 F. Supp. at 262  ("Nor must this Court wait for defendant to complete its discovery before authorizing class notice.")

9

courts rely upon the allegations set forth in the plaintiffs' complaint and any employee declarations to determine whether plaintiffs and potential opt-ins are "similarly situated." *Gjurovich*, 282 F. Supp. 2d at 104.[35]

At the second stage, after full discovery, typically on a motion for decertification, courts undertake a more searching factual inquiry and re-examine whether members of the collective are, in fact, similarly situated. *Torres*, 2006 U.S. Dist. LEXIS 74039, at *37-38; *Gjurovich*, 282 F. Supp. 2d at 104 n.1.[36]

Here, Plaintiffs easily meet their low, first stage burden. With the statements in Plaintiffs' and Opt-in Plaintiff's declarations, the allegations of Plaintiffs' well-pled Amended Complaint, and supportive documentary evidence, Plaintiffs make the "modest factual showing" required for obtaining conditional certification. Courts in this Circuit

---

[35] Defendants may argue that their practices were legal or that they paid all workers properly, but at this stage, such questions are not on the table. Courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated. *E.g., Hoffman*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. N.Y. Tele. Co.*, Nos. 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage . . . may enable more efficient resolution of the underlying issues. . .")

[36] The minimal discovery at this stage is yet another reason why courts will not consider the merits of the action when evaluating a motion for conditional certification. Defendants have other procedural devices available to them should they seek to challenge the substance of plaintiffs' claims. As noted here, Defendants may move for decertification after both sides have had the benefit of full discovery to amplify their claims and defenses. Even before then, Defendants can seek dismissal of Plaintiffs' claims through a Rule 12 motion. Whether to grant conditional certification and inform Potential Plaintiffs of their FLSA rights – and the opportunity to vindicate them – is an entirely unrelated matter, one that is decided solely on the basis of the "similarly situated" inquiry.

and elsewhere have authorized notice and discovery of a class list on thinner records.[37]

**C.    Plaintiffs and Potential Plaintiffs are Similarly Situated with Respect to Their FLSA Claims.**

Scores has violated two provisions of the FLSA and its supporting regulations. Each violation is the result of a policy or practice that affects all Plaintiffs and Potential Opt-In Plaintiffs in a similar way. First, Scores violated Sections 203(m) and 206 of the FLSA by paying all Plaintiffs and Potential Opt-In Plaintiffs less than the statutory minimum hourly wage.[38] Second, Scores violates Section 203(m) of the FLSA and supporting regulations, 29 C.F.R. §§ 531.3(d), 778.217, by failing to provide any Plaintiffs or Potential Opt-In Plaintiffs with a uniform allowance. Each of these policies and practices warrants conditional certification of the collective and court-authorized notice to all Potential Plaintiffs. *E.g., Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (conditionally certifying collective action covering workers at six restaurant locations "where all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations.")

**1.    Scores Paid All Plaintiffs and Potential Plaintiffs Less Than the Minimum Wage.**

---

[37] *E.g., Khalil v. The Original Homestead Rest., Inc.,* No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (four named plaintiffs and one opt-in); *Masson v. Ecolab, Inc.,* No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *1-2 (S.D.N.Y. Aug. 17, 2005) (three opt-ins); *Legrand v. Educ. Mgmt. Corp.,* No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs); *Carter v. Indianapolis Power & Light Co.,* IP 102 CV 01812, 2003 U.S. Dist. LEXIS 23398 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in); *Roebuck v. Hudson Valley Farms, Inc.,* 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Schwed v. Gen. Elec. Co.,* 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case).

[38] Scores is not entitled to a "tip credit" against the wages of any Plaintiffs or Potential Opt-In Plaintiffs because (1) Scores failed to inform workers about the FLSA's minimum wage, overtime, and tip-credit provisions, and (2) Scores retained a portion of Plaintiffs' and their co-workers' tips for themselves. 29 U.S.C. § 203(m).

Scores has violated the FLSA's minimum wage provisions with respect to all Plaintiffs and Potential Plaintiffs. The FLSA requires employers to pay employees a legally-prescribed minimum hourly wage. *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770, at *46 (S.D.N.Y. Feb. 1, 2007) (citing 29 U.S.C. § 206(a)(1)). The federal minimum wage was $5.15 per hour from the beginning of the relevant period through July 24, 2007, when it increased to $5.85 per hour.[39] Scores has not paid any Plaintiff or Potential Opt-In Plaintiff $5.15 or $5.85 per hour during the relevant period. *See* Section II.C.2 *supra*. All Plaintiffs and Potential Opt-In Plaintiffs, therefore, are similarly situated with respect to Scores' minimum wage violations.

Scores may claim that it is entitled to pay certain Plaintiffs and Potential Opt-In Plaintiffs a reduced minimum wage by taking a "tip credit" pursuant to 29 U.S.C. § 203(m). In order to take advantage of Section 203(m), however, an employer must meet certain prerequisites, which are to be "strictly construed," *Chan*, 2007 U.S. Dist. LEXIS 7770, at *46-47. One of the Section 203(m) prerequisites is that employers allow all tipped employees to retain all of the tips they receive. *Id.* at *46-47 (citing 29 U.S.C. § 203(m)). Employers that require workers to share tips with management or "the house" may not take a tip credit. *Chung v. The New Silver Palace Rest., Inc.,* 246 F. Supp. 2d at 229-30 (S.D.N.Y. 2002); *Realite*, 7 F. Supp. 2d at 307. It is the employer's burden to prove that it has complied with Section 203(m). *Chan,* 2007 U.S. Dist. LEXIS 7770, at *52 (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)).

Scores does not allow Plaintiffs and Potential Opt-In Plaintiffs to retain all of the tips they receive. As explained above, Scores takes a percentage of all tips that all

---

[39] 29 U.S.C. § 206(a), *as amended by* 121 Stat. 112, 188.

Plaintiffs and the Potential Opt-In Plaintiffs received through Diamond Dollars. *See*
Section II.C.1 *supra*. Courts in this District and elsewhere routinely authorize collective
action notice where workers allege that their employer requires them to share tips with
"the house" or other non-tip-eligible workers.[40]

Scores may also claim that it treats certain Plaintiffs and Potential Opt-In
Plaintiffs, most likely dancers, as independent contractors, and that this classification
renders them not similarly situated to non-dancer Plaintiffs and the Potential Opt-In
Plaintiffs. This is a red herring. First, Scores cannot deny that the dancer Plaintiffs and
Opt-In Plaintiffs are similarly situated to Potential Opt-In Plaintiffs who are also dancers.
Scores' (mis)classification of dancers presents common issues of law and fact that apply
to all dancers in the same way. Courts in the Southern District of New York routinely
approve collective actions in misclassification cases.[41]

Furthermore, the fact that some plaintiffs hold different jobs or have different
titles than some members of the putative collective does not defeat a §216(b) motion.
The only pertinent question is whether they were subject to the same unlawful policies or

---

[40] *E.g., Fasanelli,* 516 F. Supp. 2d at 322; *Dominguez v. Don Pedro Rest.*, 2:06 cv 241,
2007 U.S. Dist. LEXIS 6659, at *1-2, 8-10 (N.D. Ind. Jan. 25, 2007); *Bursell v. Tommy's
Seafood Steakhouse*, Civil Action No. H-06-0386, 2006 U.S. Dist. LEXIS 80526, at *7-8
(S.D. Tex. Nov. 3, 2006); *Zhao v. Benihana, Inc.,* 2001 U.S. Dist. LEXIS 10678, at *11-
13; *Realite,* 7 F. Supp. 2d 306-08.
[41] *E.g., Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 U.S. Dist. LEXIS
73853 (S.D.N.Y. 2007); *Anglada v. Linens 'n Things, Inc.,* No. 06 Civ. 12901, 2007 U.S.
Dist. LEXIS, at *27 (S.D.N.Y. Apr. 26, 2007); *Torres v. Gristede's Oper. Corp.*, No. 04
Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *24 (S.D.N.Y. Sept. 29, 2006); *Damassia*,
2006 U.S. Dist. LEXIS 73090, at *26; *Jacobsen v. The Stop & Shop Supermarket Co.*,
No. 02 Civ. 5915, 2003 U.S. Dist. LEXIS 7988, at *11-12 (S.D.N.Y. May 15, 2003);
*Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *5
(S.D.N.Y. May 17, 2002).

practices.[42]  Here, they were.  And finally, a defendant cannot defeat a §216(b) motion by

raising a defense against a subset of the putative collective.  Again, the proper focus is on

the employers' policies and practices, and to whom they applied.[43]

### 2.  Scores failed to Pay Plaintiffs and Potential Opt-In Plaintiffs Proper Overtime Compensation.

The FLSA requires employers to pay employees an overtime rate of at least one

and one-half times their regular rate for all hours worked in excess of 40 hours per week.

*Chan,* 2007 U.S. Dist. LEXIS 7770, at *63-64 (citing 29 U.S.C. § 207(a)(1); 29 C.F.R. §

778.107).  Employers must pay for all hours they "suffer or permit" employees to work.[44]

Here, however, Scores failed to pay plaintiffs the applicable overtime rate for all hours

worked over 40 per workweek.  Courts routinely grant collective action status in cases

where workers claim that they worked overtime hours but were not properly paid for this

time.[45]

---

[42] *E.g., Fasanelli,* 516 F. Supp. 2d at 322 (conditionally certifying class of "all hourly workers employed by the Defendants" regardless of title "because all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations."); *Holbrook v. Smith & Hawken, Ltd.,* 246 F.R.D. 103, 106 (D. Conn. 2007) (conditionally rejecting defendant's objection to certification of class of employees who worked at different stores on grounds that "court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated.")

[43] *E.g., Fasanelli,* 516 F. Supp. 2d at 322 (certifying collective of hourly workers holding different positions but who all "are employees of the same restaurant enterprise and allege the same types of FLSA violations."); *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 390 (W.D.N.Y. 2005) (that plaintiffs had "different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiff's claims. What is important is that these employees were allegedly subject to a common practice or scheme … in violation of the FLSA).

[44] 29 C.F.R. § 785.13 (management must "exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.").

[45] *E.g., Torres,* 2006 U.S. Dist. LEXIS 74039, at *33-34; *Hens v. ClientLogic Oper. Corp.,* 05-CV-381S, 2006 U.S. Dist. LEXIS 69021, at *11-12 (W.D.N.Y. Sept. 26,

**3.  Scores Did Not Provide Plaintiffs and Potential Opt-In Plaintiffs a Uniform Allowance.**

Defendants subjected all Plaintiffs and Potential Opt-In Plaintiffs to an unlawful policy of not paying for the purchase and maintenance of mandatory uniforms.  The FLSA prohibits employers from requiring employees to incur expenses solely for the employers' convenience.  29 C.F.R. § 778.217(a).  Expenses for mandatory "uniforms or special clothing" are among the expenses this provision contemplates.[46]  29 C.F.R. § 778.217(b)(2).  Scores requires all Plaintiffs and Potential Opt-In Plaintiffs to wear specific uniforms but does not reimburse any of them for the purchase price or for the cost of laundering them.  *See* Section II.C.4 *supra*.  Plaintiffs and Potential Opt-In Plaintiffs are, therefore, similarly situated with respect to this claim as well.

**D.    The Court Should Approve Plaintiffs' "Timely, Accurate and Informative" Proposed Notice.**

A collective action notice must be "timely, accurate, and informative." *Hoffman-La Roche,* 493 U.S. at 171-72.  Plaintiffs' Proposed Notice (Samant Dec. Ex. A) meets this standard.  It is based on the model employment discrimination "plain-language notice" suggested by the Federal Judicial Center.  Samant Dec. Ex. L.

**E.    Equitable Tolling Cannot be Ruled Out at this Early Stage.**

Plaintiffs request that the Court authorize them to send notice to all servers,

---

2006); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005); *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 603-06 (S.D. Tex. 2005).
[46] Although the FLSA provides no definition for "uniform," the United States Department of Labor Wage & Hour Field Operations Handbook § 30c12(f) provides that a "uniform" means "a specific type and style of clothing to be worn at work", and explains that, "where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms." *Ayres v. 127 Rests. Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998).

bartenders, cocktail waitresses, and dancers who worked at any of Defendants' nightclubs between October 9, 2001 (six years from the filing of the Complaint) and the present. Although the FLSA statute of limitations is only 2 or 3 years, 29 U.S.C. § 255, Plaintiffs have made a credible showing, through their complaint and their declarations, that equitable tolling is appropriate.[47] Equitable tolling is justified where an employer fails to post required notices and where the employer assures workers that its wage and hour practices are legal.[48] Here, Plaintiffs have alleged that Defendants never posted any notices or gave them any information about minimum wage, overtime, and federal tip laws and regulations. Workers who are unaware of their wage and hour rights should not suffer a diminution of their ability to recover lost wages. If, after discovery, the Court ultimately decides that equitable tolling is inappropriate, it can simply strike any time-barred claims with no prejudice to any party.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court conditionally certify this case as a collective action; order the identification of all Potential Opt-In Plaintiffs in a computer readable data file containing their names, last known mailing addresses, last known telephone numbers, Social Security numbers, work locations, and dates of employment; and authorize the issuance of Plaintiffs' proposed

---

[47] *E.g., Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369-70 (S.D.N.Y. 2007) (approving notice to all employees during six year period); *Sipas v. Sammy's Fishbox, Inc.*, 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) (same).

[48] *E.g., Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir. 1977); *Iglesias-Mendoza*, 239 F.R.D. at 369-70; *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 904 (S.D. Ohio 2003); *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 439 (D.N.J. 2001); *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Pa. 1984).

Notice to all Potential Opt-In Plaintiffs employed by Defendant between October 9, 2001 and the mailing of the Notice.


Dated: January 18, 2008
        New York, New York


                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        __/s/ Justin Swartz_____
                                        Justin M. Swartz (JS 7989)


                                        **OUTTEN & GOLDEN LLP**
                                        Adam T. Klein (AK 3293)
                                        Justin M. Swartz (JS 7989)
                                        Tammy Marzigliano (TM 2934)
                                        Anjana Samant  (AS 5163)
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000

                                        **BRUCKNER BURCH PLLC**
                                        Richard J. Burch (Texas Bar No.
                                        24001807) (admitted *pro hac vice*)
                                        1415 Louisiana, Suite 2125
                                        Houston, Texas  77002
                                        Telephone:  (713) 877-8788

                                        **Attorneys for Plaintiffs and the
                                        Putative Class**