# Exhibit R

LEXSEE


Analysis
As of: Jan 18, 2008

ENAMUL CHOWDHURY, Individually and on Behalf of All Others Similarly Situated, Plaintiff, -v- DUANE READE, INC., et al., Defendants.

06 Civ. 2295 (GEL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 73853

October 2, 2007, Decided
October 2, 2007, Filed

**PRIOR HISTORY:** Damassia v. Duane Reade, Inc., 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y., Oct. 4, 2006)

**CORE TERMS:** opt-in, notice, similarly situated, store managers, court-authorized, discovery, daytime, evening, assistant manager, collective action, overtime, amend, exemption, overnight, bona fide, inappropriate, premature, overtime pay, quotation marks omitted, deposition testimony, deposition, stringent, overtime compensation, individual claims, undeliverable, company-wide, managerial, suffice, deposed, exact

**COUNSEL:** [*1] Seth R. Lesser, Fran L. Rudich, Locks Law Firm PLLC, New York, NY (Adam T. Klein, Justin M. Swartz, Linda A. Neilan, ReNika C. Moore, Outten & Golden, LLP, New York, NY, on the brief), for plaintiff.

Craig R. Benson, Gerald T. Hathaway, Stephen A. Fuchs, Littler Mendelson, New York, NY, for defendants.

**JUDGES:** GERARD E. LYNCH, District Judge.

**OPINION BY:** GERARD E. LYNCH

**OPINION**

**OPINION AND ORDER**

GERARD E. LYNCH, District Judge:

In this action brought under the Fair Labor Standards Act ("FLSA"), plaintiff moves for court-authorized notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). The motion will be granted.

**BACKGROUND**

On March 24, 2006, plaintiff Enamul Chowdury brought suit on behalf of himself and others similarly situated against his former employer, Duane Reade ("defendants" or "Duane Reade"), alleging principally that Duane Reade had failed to pay overtime wages to daytime and evening assistant store managers in accordance with the FLSA and New York State law. See 29 U.S.C. § 207; N.Y. Lab. Law § 650 et seq. [1] Plaintiff worked for approximately twenty months as an assistant daytime and evening store manager at one of Duane Reade's retail drugstores in the New York City metropolitan area. (Compl. [*2] P 25.) Despite being designated an assistant "manager," plaintiff claims "[h]is duties did not include managerial responsibilities or the exercise of independent judgment" at the store (id. P 27), and that Duane Reade employed the term "assistant manager" in an effort to evade overtime requirements under FLSA's "bona fide executive" exemption for salaried managerial employees. (Pl. Mem. 1.) See 29 U.S.C. § 213(a).

1   For the sake of simplicity and consistency, the Court will refer to plaintiff's FLSA and New York State claims as the "collective claims."

According to plaintiff, shortly after filing his complaint, he learned of another case pending before this Court alleging virtually identical claims against defendants. See Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL). Like Chowdury, the Damassia plaintiffs allege that Duane Reade has failed to pay overtime wages to assistant store managers in accordance with FLSA and New York State law. Also like Chowdury, the Damassia plaintiffs allege that Duane Reade has relied on the "bona fide executive" exemption to justify that failure. The sole difference between the Damassia plaintiffs' claims and Chowdury's claims is that Chowdury alleges [*3] the denial of overtime pay to *daytime and evening* assistant store managers, while the Damassia plaintiffs allege the denial of overtime pay to *overnight* assistant store managers. In every other respect, the collective claims in the two cases are identical. (Compare Compl. PP 27-28, with Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *1 (S.D.N.Y. Oct. 5, 2006).)

Considering the virtually identical nature of the collective claims, plaintiff moved to have his case transferred to this Court and consolidated with Damassia. The case was transferred to this Court, but finding consolidation to be premature, the Court denied plaintiff's motion to consolidate without prejudice to renewal in the future. (Order of the Court, Nov. 20, 2006, at 1.) However, considering the virtually identical nature of the collective claims in the two cases, the Court ordered that discovery and other pre-trial matters in the cases be conducted jointly. (Id. at 2.)

At approximately the same time plaintiff filed his complaint initiating this action, the Damassia plaintiffs moved for court-authorized notice to potential opt-in plaintiffs pursuant to § 216(b). On October 5, 2006, the Court granted [*4] the Damassia plaintiffs' motion. Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *8. The Court found that "[p]laintiffs' affidavits and allegations, taken together with defendant's admissions, more than suffice[d]" to establish that the Damassia plaintiffs were similarly situated to each other for purposes of satisfying the "minimal" showing required by § 216(b). 2006 U.S. Dist. LEXIS 73090, [WL] at *4. In so finding, the Court rejected defendant's attempts to distinguish among the potential plaintiffs by drawing irrelevant distinctions between them with respect to their "abilities and competence." 2006 U.S. Dist. LEXIS 73090, [WL] at *6. The Court posited that "[o]n defendant's logic, no group of opt-in plaintiffs would ever be 'similarly situated' unless they were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." Id.

Although they allege virtually identical collective claims, because Damassia and Chowdury remain technically separate cases, the opt-in notice approved by the Court in Damassia did not also result in the approval of opt-in notice to potential plaintiffs in this case. Thus, on April 16, 2007, plaintiff filed the instant motion seeking court-authorized notice to potential opt-in plaintiffs [*5] who qualify as daytime and evening assistant store managers, the same notice granted by the Court in Damassia with respect to overnight assistant store managers. Between April 11 and June 21, 2007, approximately thirteen individuals who had worked as assistant daytime and evening store managers filed forms with the Court consenting to be party plaintiffs pursuant to FLSA's opt-in provision. [2] Defendants responded to the motion on June 15, 2007; the motion was fully briefed as of July 6, 2007.

> 2   Some of the opt-in plaintiffs and potential opt-in plaintiffs may still work at Duane Reade. (See, e.g., Boswell Decl. Ex. 7 P 1.) For the sake of simplicity and consistency, the Court will generally refer to plaintiff's and opt-in plaintiffs' employment activities in the past tense.

**DISCUSSION**

I. Collective Actions and Court-Authorized Notice

While an understanding of the "bona fide executive" exemption may be "helpful in analyzing plaintiff['s] motion for court-authorized notice," it is well-established that "the merits of plaintiff['s] claims need not be resolved at this stage." Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *2. See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y. 2005); Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003); [*6] Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260-61 (S.D.N.Y. 1997). Moreover, the elements of the exemption were carefully laid out in Damassia, and do not require repetition here. See Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *2. The only relevant inquiry here is whether plaintiff is similarly situated to the potential opt-in plaintiffs.

The FLSA allows employees to sue on behalf of themselves and other employees who are "similarly situated." 29 U.S.C. § 216(b). The similarly-situated employees may "opt in" to the lawsuit and become party plaintiffs by filing a written consent with the court. See Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005). In a collective action under FLSA--unlike in a class action under Federal Rule of Civil Procedure 23--only plaintiffs who affirmatively opt in can benefit from the judgment or be bound by it. Gjurovich, 282 F. Supp. 2d at 103-04; see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482,

107 L. Ed. 2d 480 (1989); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335 (2d Cir. 1979). When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential plaintiffs. See Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005). [*7]

"Courts in this circuit and elsewhere have held that a court may authorize notice--and certify a collective action--if the court makes a 'preliminary determination' that potential opt-in plaintiffs are 'similarly situated' to the named plaintiffs." Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3, citing Patton, 364 F. Supp. 2d at 267; see Trezvant v. Fidelity Employer Servs. Corp., 434 F. Supp. 2d 40, 43 (D. Mass. 2006); Sbarro, 982 F. Supp. at 261; cf. Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001) ("[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members.") (alteration in original) (citation and internal quotation marks omitted). See, e.g., Gjurovich, 282 F. Supp. 2d at 104 ("[I]t is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice."), quoting Sbarro, 982 F. Supp. at 260 (additional citations and internal quotation marks omitted). While this normally requires a "modest factual showing" that the plaintiff and the potential plaintiffs were victims of a common policy or plan violating FLSA, Gjurovich, 282 F. Supp. 2d at 104 (citation and internal quotation [*8] marks omitted), "it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3, quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078, 2004 U.S. Dist. LEXIS 25646, 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004); see Rodolico v. Unisys Corp., 199 F.R.D. 468, 480 (E.D.N.Y. 2001). In either case, a plaintiff's burden at this preliminary stage is "minimal." Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3; see id. (listing cases).

Defendants argue that, "[w]hen there has been substantial discovery prior to" the filing of a § 216(b) motion, a higher level of scrutiny should apply to the § 216(b) determination. (Defs. Mem. 5; see id. at 6, citing Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *6 (S.D.N.Y. Sept. 29, 2006).) Specifically, defendants argue that, because they have already deposed several of the opt-in plaintiffs, the Court should "conduct a *detailed* factual analysis of the [*9] individual duties and responsibilities of the Plaintiff and the potential opt-in plaintiffs to determine whether the action may proceed as a collective action." (Id. at 5 (emphasis added).) Defendants made a similar argument in Damassia, in which they argued that "the [C]ourt should skip the initial [§ 216(b)] inquiry, reasoning that discovery has already provided sufficient evidence to justify a final determination that plaintiffs are not similarly situated." 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *4. However, defendants disavow the notion that their argument in this case is identical to the one they made in Damassia, contending that, while in Damassia they argued that the Court should "skip" the § 216(b) inquiry altogether and proceed directly to a determination on the merits, here defendants argue that while a "final" analysis should not yet be conducted, the Court should nevertheless conduct a "detailed" factual analysis based on a handful of depositions submitted by defendants. (Defs. Mem. 5 n.5.)

Defendants are prudent to disavow the seeming similarity between this argument and the one in Damassia, as that argument was specifically rejected by the Court in that case. See 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *4. [*10] However, even assuming that the arguments are conceptually distinct, defendants' argument still fails. Defendants provide no authority for their contention that there should *ever* be a "detailed" factual analysis in a pre-discovery § 216(b) determination; indeed, the authority cited by defendants stands for the contrary proposition that "the Court applies heightened scrutiny" only to "*post-discovery*" determinations, "usually precipitated by a defendant's motion for decertification of the class," and not by a § 216(b) motion. Torres, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *7. See Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3 (only "[a]fter discovery" do courts "engage in a 'second tier' of analysis to determine on a full record--and under a more stringent standard--whether the additional plaintiffs are in fact similarly situated").

Moreover, as in Damassia, fact discovery in this case remains in its early phases. Although at the time the instant motion was fully briefed, defendants had deposed some of the opt-in plaintiffs who submitted declarations in support of court-authorized notice (Defs. Mem. 3; see Fuchs Decl. Exs. A-L), according to plaintiff, defendants have not yet responded to plaintiff's document requests [*11] or interrogatories, and plaintiff has not taken any depositions. (Pl. Reply 6.) Furthermore, the deadline for fact discovery does not fall until three months after the Court's Rule 23 class certification decision, and in any event no earlier than November 30, 2008. (Rudich Decl. Ex. A.) Thus, as in Damassia, it would be inappropriate to make more than a "preliminary determination" at this time, or to require plaintiff to meet a more stringent stan-

dard than that typically applied at the early stages of litigation. See Prizmic v. Armour, Inc., No. 05 Civ. 2503, 2006 U.S. Dist. LEXIS 42627, 2006 WL 1662614, at *2 (E.D.N.Y. June 2, 2006) ("Only *after discovery has been completed* should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action.") (emphasis added); Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 482 (E.D. Cal. 2006) (noting that " *[w]here discovery is complete*, courts sometimes bypass" the preliminary determination and apply the more stringent analysis for a final determination) (emphasis added).

II. Plaintiff's Motion for Court-Authorized Notice

As in Damassia, plaintiff's affidavits [*12] and allegations, taken together with defendants' admissions, "more than suffice" to entitle plaintiff to court-authorized notice in this case. 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *3. Plaintiff's complaint alleges, for example, that plaintiff is similarly situated to potential opt-in plaintiffs, because (1) none of them, despite the title of their position, performed primarily managerial duties at Duane Reade stores (see, e.g., Compl. P 27), and (2) defendants, relying without basis on FLSA's "bona fide executive" exemption, see 29 U.S.C. § 213(a), subjected them and other assistant daytime and evening managers to a company-wide policy depriving them of overtime compensation in violation of 29 U.S.C. § 207 (see, e.g., Compl. P 9). The affidavits of plaintiff and opt-in plaintiffs support these allegations, as does their deposition testimony. (See Boswell Decl. Exs. 1-11; Pl. Reply 4-6.)

Furthermore, as discussed in Damassia, defendants have conceded that the business practices at issue in this case are uniform among its stores. 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *4. (See DeFazio Dep. 30 ("[E]ach store has the same exact policy as every other store.").) Although Damassia involves overnight assistant managers and not [*13] daytime and evening assistant managers, defendants also concede that they apply the "bona fide executive" exemption to *all* assistant managers, whether they work during the daytime, evening, or overnight. (Rizzo Dep. 147-55; DeFazio Dep. 53-54.) Moreover, Duane Reade's own job description for all assistant managers reveals that their duties and responsibilities are "centrally derived, regardless of the shift they work." (Pl. Mem. 5, citing Rudich Decl. Ex. D (Assistant Manager Job Description); see Rizzo Dep. 78 (noting that, in 1998, all assistant store managers were collectively bargained out of the union at the same time).) Thus, just as court-authorized notice was appropriate in Damassia, court-authorized notice is also appropriate here, as there is no relevant distinction between the job responsibilities of any assistant store managers, whether they work during the daytime, evening, or overnight.

In opposing court-authorized notice, defendants argue, as they did in Damassia, that plaintiff and potential opt-in plaintiffs are not similarly situated for purposes of § 216(b). Although an identical argument, based on similar evidence, was specifically rejected in Damassia, defendants [*14] nevertheless devote almost half of their brief to describing certain dissimilarities between plaintiff's and opt-in plaintiffs' job responsibilities, and arguing that those dissimilarities render plaintiff not similarly situated to the opt-in plaintiffs. (See Defs. Mem. 10-17.)

Once again, defendants' argument fails. As in Damassia, "[a]t most, defendant[s'] attacks on plaintiff['s] affidavits and other evidence raise questions as to whether plaintiff[] could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery." 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *5. It is unnecessary here to undertake a point-by-point refutation of defendants' attack on the record. It is sufficient simply to note that the same concerns which motivated the Court to reject this argument in Damassia apply here. For example, defendants' position that plaintiff and opt-in plaintiffs are not similarly situated "is fatally undermined . . . by earlier concessions" to the contrary that all assistant store managers have the same duties and responsibilities as a matter of official company policy. Id. Those concessions are "difficult, if not impossible, to [*15] reconcile with defendant[s'] claim that there are significant variations in the work performed by [assistant store managers] at different stores which preclude a finding that plaintiff[] and potential opt-in plaintiffs are similarly situated." Id.

Furthermore, defendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated " *with respect to their allegations that the law has been violated*," Young v. Cooper Cameron Corp., 229 F.R.D. 50 at 54 (emphasis added), and not whether plaintiffs' job responsibilities are identical in every possible respect. Defendants claim, for example, that the deposition testimony proves wide variance in plaintiff's and opt-in plaintiffs' abilities and competence, the length of time they worked at Duane Reade stores, and their specific tasks at each store. "But such facts, even if true, do not undermine [the] claim that they are similarly situated with respect to their allegation that defendant[s'] company-wide compensation policies violate FLSA's overtime requirements." Damassia, 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *6. Defendants cannot defeat [*16] a § 216(b) motion simply

Page 4

by pointing out all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead, defendants must show that plaintiffs are not similarly situated *in ways relevant* to their entitlement to overtime compensation under FLSA, which defendants have not done.

Only one of defendants' arguments warrants additional discussion. Defendants argue that Chowdury's individual claims in this action "are unique to his personal circumstances, and are not based on a general claim for overtime pay." (Defs. Mem. 7.) Specifically, defendants argue that Chowdury testified during his deposition that his claims are not for unpaid overtime, but for other alleged unlawful conduct by defendants, such as "forc[ing] [him] to work off of the Company's payroll system" for a period of time, resulting in his being compensated at a significantly lower salary. (Id., citing Chowdury Dep. 60:25-63:19, 122:24-124:5, 175:8-18, 295:1-296:13.) Thus, defendants argue that Chowdury's suit is "completely unique" to himself, and therefore that he is not similarly situated to the opt-in plaintiffs. (Id. at 8.)

Defendants' argument lacks merit. First, defendants [*17] have mischaracterized plaintiff's testimony. Although defendants claim that plaintiff made no mention of unpaid overtime during his deposition, the deposition testimony on which defendants rely does not support that assertion. (See Chowdury Dep. 296-97 ("I learned I was to get overtime pay. There's pay difference when you're working overnight.").) Moreover, even if plaintiff's individual claims include grievances unrelated to overtime compensation, the inclusion of individual claims in a collective action does not render plaintiff not similarly situated to the opt-in plaintiffs. Instead, plaintiff may maintain his individual claims in the collective action, so long as he pursues the collective claims as well. See, e.g., Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (in class action context, class representatives must have only "adequate personal knowledge of the essential facts of the case"). As is readily apparent from his complaint, declaration, and deposition testimony, plaintiff has demonstrated knowledge of, and adequately pursued, those claims to render him similarly situated to the potential opt-in plaintiffs. (See Chowdury Decl. P 4 ("I was regularly [*18] required to work approximately 70-80 hours per week without being paid an overtime premium for all of the hours that I worked 40 hours per week.").)

In sum, because plaintiff's allegations, affidavits, and additional evidence, considered in light of defendants' concessions regarding their business practices, more than suffice to support a preliminary determination that plaintiff and potential opt-in plaintiffs are similarly situated, plaintiff's motion for court-authorized notice is granted. [3]

3 Defendants also argue that plaintiff's § 216(b) motion is premature and improper. Specifically, defendants allege that, during a prior proceeding, the parties agreed that this action is limited to claims by assistant store managers, and does not encompass claims by other non-exempt Duane Reade employees. According to defendants, the Court ordered plaintiff to amend his complaint to reflect this limitation, and plaintiff has failed to do so. Defendants claim that plaintiff's failure to so amend his complaint "renders his motion . . . inappropriate, or at least premature." (Defs. Mem. 6.) Plaintiff claims that the Court never ordered him to amend his complaint, but instead that he agreed to do so [*19] "in due course, if needed." (Pl. Mem. 7 n.10 (internal quotation marks omitted).)

Defendants are incorrect that plaintiff's failure to amend his complaint renders his motion "inappropriate, or . . . premature." (Defs. Mem. 6.) As plaintiff notes, defendants have deposed several of the current opt-in plaintiffs, "without any issues regarding the scope of this action." (Pl. Mem. 7 n. 10.) Moreover, defendants have not indicated that they have suffered any prejudice resulting from plaintiff's delay in amending his complaint. Instead, it is clear, both from the parties' conduct during discovery and from the papers submitted in connection with this motion, that both parties understand the proper scope of this case. Furthermore, there has been no attempt by plaintiff to unduly extend the scope of the action to include claims by non-exempt Duane Reade employees who are not also assistant store managers. Thus, plaintiff's § 216(b) motion is neither premature nor inappropriate.

However, contrary to plaintiff's belief, amendment of his complaint should have occurred as a matter of course, not as a matter of discretion. On November 20, 2006, the Court issued an order stating, "[a]s the parties [*20] agreed at today's conference, the Chowdhury action is limited to claims made by assistant managers. The Chowdhury complaint *shall be amended* in due course to reflect this agreement." (Order of the Court, Nov. 20, 2006, at 2 (emphasis added).) The phrase "in due course" did not provide the plaintiff with discretion to determine whether to amend his complaint, but merely provided plaintiff a certain amount of leeway with respect to the exact timing of that amendment.

Almost a year has passed since plaintiff was ordered to amend his complaint, and he has failed to do so. Accordingly, plaintiff is directed to comply with the Court's prior order forthwith and promptly amend his complaint to limit the collective claims to encompass only those claims made by assistant store managers, as previously agreed by the parties.

III. Identification of, and Communication with, Potential Opt-In Plaintiffs

Plaintiff requests that the Court order defendants to provide "[a] list, in electronic format, of all persons employed by Defendants as daytime and evening assistant managers, three years from the date of the order to the present including: name, address, telephone number, social security number, dates [*21] of employment, location of employment, [and] employment number, if any." (Pl. Mem. 15.) The Damassia plaintiffs made an identical request for Social Security numbers, which was denied by the Court in that action. 2006 U.S. Dist. LEXIS 73090, 2006 WL 2853971, at *8. Once again, the Court agrees with defendants that it is unnecessary and inappropriate to require defendants to provide Social Security numbers at this time. Although plaintiff claims that failure to provide Social Security numbers in Damassia has resulted in some of the notices being returned as undeliverable (Pl. Mem. 2 n.1), plaintiff has not shown a need to disclose such confidential information, as he has not demonstrated that such information will aid in further reducing the already low number of notices that were returned undeliverable in Damassia. (See Defs. Mem. 20 (stating that 38 out of approximately 257 notices were returned as undeliverable).) In all other respects, plaintiff's request is granted.[4]

[4] As in Damassia, the "past three years" shall be interpreted to mean the three years prior to the filing of this Opinion and Order.

With respect to the specific contents of the notice, the Court will not address the minor issues raised by defendants. [*22] (See Defs. Mem. 19.) Instead, the Court expects the parties to work out those issues on their own, and provide the Court with the stipulated notice by October 16, 2007. The notice should track as close as possible to that already approved in Damassia to ensure consistency between the actions. In the event of a dispute, the parties shall jointly submit a single letter to the Court setting forth their respective positions.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for court-authorized notice is granted. Details regarding the content and communication of the notice shall be negotiated in accordance with Part III of this Opinion and Order.

SO ORDERED.

Dated: New York, New York

October 2, 2007

GERARD E. LYNCH

United States District Judge