# Exhibit CC

LEXSEE 2006 U.S. DIST. LEXIS 74039

**CARLOS TORRES, BOBBY IRIZARRY, RUBEN MORA, JOSELITO AROCHO, LEWIS CHEWNING, JOSEPH CREMA, ALFRED CROKER, FRANK DELEON, MARIO DIPRETA, WILLIAM HELWIG, ROBERT MISURACA, ROBERT PASTORINO, VICTOR PHELPS, DANIEL SALEGNA, GILBERTO SANTIAGO, Plaintiffs, - against - GRISTEDE'S OPERATING CORP., NAMDOR, INC., GRISTEDE'S FOOD, INC., CITY PRODUCE OPERATING CORP., GRISTEDE'S FOODS NY, INC., GALLO BALSECA, JOHN CATSIMATIDES, JAMES MONOS, Defendants. GRISTEDE'S FOODS NY, INC., GRISTEDE'S OPERATING CORP., NAMDOR, INC. GRISTEDE'S FOODS, INC., CITY PRODUCE OPERATING CORP., Counter-Claimants, - against - CARLOS TORRES & LEWIS CHEWNING, Counter-Defendants.**

04 Civ. 3316 (PAC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 74039*

September 28, 2006, Decided
September 29, 2006, Filed

**COUNSEL:** [*1] For Carlos Torres, on behalf of himself and all others similarly situated, Bobby Irizarry, Ruben Mora, Plaintiffs: Adam T Klein, Douglas Christopher James, Justin Mitchell Swartz, Linda Anne Neilan, LEAD ATTORNEYS, Outten & Golden, LLP, New York, NY.

For Joselito Arocho, Lewis Chewning, Joseph Crema, Alfred Croker, Frank DeLeon, Mario DiPreta, William Helwig, Robert Misuraca, Robert Pastorino, Victor Phelps, Daniel Salegna, Gilberto Santiago, Plaintiffs: Adam T Klein, LEAD ATTORNEY, Justin Mitchell Swartz, Linda Anne Neilan, Outten & Golden, LLP, New York, NY.

For Gristede's Operating Corp., Namdor, Inc., Gristede's Foods, Inc., City Produce Operating Corp., Defendants: Kevin J. Nash, LEAD ATTORNEY, Finkel, Goldstein, Berzow, Rosenbloom & Nash, LLP, New York, NY; Joseph Ted Donovan, Finkel Goldstein Rosenbloom & Nash LLP, New York, NY.

For Gristede's Foods NY, Inc., Defendant: Kevin J. Nash, LEAD ATTORNEY, Finkel, Goldstein, Berzow, Rosenbloom & Nash, LLP, New York, NY.

For Gallo Balseca, John Catsimatides, James Monos, Defendants: Arthur Harlod Aufses, III, Jay Hyun Park, Jr, Kramer Levin Naftalis & Frankel, LLP, New York, NY.

For Gristede's Foods NY, Inc., Gristede's [*2] Operating Corp., Namdor, Inc., City Produce Operating Corp., Counter Claimants:Joseph Ted Donovan, Finkel Goldstein Rosenbloom & Nash LLP, New York, NY.

For Carlos Torres, on behalf of himself and all others similarly situated, Lewis Chewning, Counter Defendants:Justin Mitchell Swartz, LEAD ATTORNEY, Outten & Golden, LLP, New York,

For Gristede's Foods NY, Inc., Gristede's Foods, Inc., Counter Claimants: Joseph Ted Donovan, Finkel Goldstein Rosenbloom & Nash LLP, New York, NY.

**JUDGES:** PAUL A. CROTTY, United States District Judge.

**OPINION BY:** PAUL A. CROTTY

Case 1:07-cv-08718-RMB-THK    Document 20-30    Filed 01/18/2008    Page 3 of 17

2006 U.S. Dist. LEXIS 74039, *2                                              Page 2

## OPINION

MEMORANDUM DECISION AND ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiffs [1] are current and former employees of corporate entities related to the New York supermarket chain Gristede's. [2] Plaintiffs commenced this action on April 3, 2004 claiming that Defendants failed to record, credit, and compensate them for overtime wages. Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201 et seq.*, New York Labor Law ("NYLL"), *N.Y. Lab. Law §§ 650-665*, and New York common law. Before the Court is plaintiffs' motion, under *Federal Rules of Civil Procedure 23(a)* [*3] and *23(b)(3)*, for class certification and, under FLSA, *29 U.S.C. § 216(b)*, for collective action. For the reasons set forth below, the Court grants Plaintiffs' motion.

[1] Plaintiffs are Carlos Torres ("Torres"), Bobby Irizarry ("Irizarry"), Ruben Mora ("Mora"), Joselito Arocho ("Arocho"), Lewis Chewning ("Chewning"), Joseph Crema ("Crema"), Alfred Croker ("Croker"), Frank Deleon ("Deleon"), Mario DiPreta ("DiPreta"), William Helwig ("Helwig"), Robert Misuraca ("Misuraca"), Robert Pastorino ("Pastorino"), Victor Phelps ("Phelps"), Daniel Salegna ("Salegna"), and Gilberto Santiago ("Santiago") (collectively, "Plaintiffs").

[2] Defendants are Gristede's Operating Corporation, Namdor, Inc., Gristede's Food, Inc., City Produce Operating Corp., Gristede's Foods NY, Inc., (collectively, "Gristede's"). Defendants also include Gallo Balseca ("Balseca"), John Catsimatides ("Catsimatides"), and James Manos ("Manos") (Gristede's defendants along with these defendants will be referred to collectively as "Defendants").

[*4] **BACKGROUND**

**I. Plaintiffs' Claims**

Plaintiffs assert three claims relevant to the motion before the Court. Plaintiffs' first claim is brought under FLSA, *29 U.S.C. §§ 201 et seq.*, against all Defendants. Plaintiffs allege that Defendants failed to properly record hours worked by Plaintiffs and others similarly situated in excess of 40 hours per workweek in violation of *29 U.S.C. §§ 206(a)* and *207(a)*. (Third Am. Class Action Compl. P 175.) Plaintiffs maintain that, because Defendants' practices were willful, a three-year statute of limitations applies. (Id. PP 174-76, 178; see also *29 U.S.C. § 255*.) Pursuant to *29 U.S.C. § 216(b)*, Plaintiffs seek unpaid overtime compensation and other wages, liquidated damages, prejudgment interest, attorneys' fees, and costs. (Third Am. Class Action Compl. P 180; see *29 U.S.C. § 216(b)*.)

Plaintiffs' second claim is brought under the New York Labor Law, also against all defendants. Plaintiffs allege that Defendants willfully failed to record, credit or compensate Plaintiffs and the [*5] proposed class members in violation of *New York Labor Law, §§ 650 et seq.*, and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. Pt. 142. Under this claim, plaintiffs seek for themselves and proposed class members overtime premium wages, reasonable attorneys' fees, costs, and pre- and post-judgment interest. (Third Am. Class Action Compl. P 186; see e.g., N.Y. Labor P 663(1).)

Plaintiffs bring a third claim for common law fraud claim against Defendant Gristede's only. Plaintiffs allege that Gristede's intentionally, knowingly, regularly, and systematically made misrepresentations or omissions of material fact in time, attendance, and payroll records by understating the hours Plaintiffs and proposed class action members worked and the wages they earned. (Third Am. Class Action Compl. P 188.) Plaintiffs contend that these payroll records misled Plaintiffs and proposed class action members and induced them to accept less in wages than they had earned. (Id. P 189.) Plaintiffs further allege that they and the proposed class members reasonably relied on Defendants' representations and that they have suffered the harm of loss of earned [*6] wages as a result of Defendants' fraudulent representations. (Id. PP 190-91.) Under this claim, Plaintiffs seek unpaid wages, costs, and pre- and post-judgment interest. (Id. P 192.) Plaintiffs also seek an opportunity for proposed class members, after determination of class-wide liability and individual damages and interest, to intervene in this action or file their own lawsuits and petition individually for punitive damages. (Id.)

**II. Facts**

Gristede's is a supermarket chain that operates 50 stores and employs approximately 2,000 individuals on a full-time and part-time basis. (Answer to Third Am. Class Action Compl. P1.) Gristede's stores are staffed by store managers, co-managers, assistant managers, department managers and clerks. Gristede's employs or employed named plaintiffs as co-managers or department managers. 3

---

3 Defendants assert that co-managers and assistant managers are functionally the same. (Jan. 13, 2006 Oral Argument Tr. 4.) Plaintiffs noted that assistant managers are part of a union, while co-managers are not. (Jan. 13, 2006 Oral Argument Tr. 3-5.) Plaintiffs have chosen to limit the case to full-time employees titled co-managers and department managers. (Id.) The term overnight manager, which is sometimes referred to in the supporting papers, references a co-manager who works the overnight shift. (Neilan Decl. Ex. S (Clusan Dep. 333:15-334:17, Apr. 18, 2005).)

---

[*7] A. Payroll Practices

Gristede's maintains centralized timekeeping and payroll functions and standardized processes across all of its stores. (Neilan Decl. Ex. Y (Lang Dep. 287:10-21, June. 17, 2005) [hereinafter Lang Dep.].) It uses an automated time clock system in stores to keep track of time worked by hourly employees. (Neilan Decl. Ex. S. (Clusan Dep. 106:10-108:6, Apr. 18, 2005) [hereinafter Clusan Dep.].) The system utilizes a biometric hand scan device so that employees can "punch-in" when they start working and "punch-out" when they stop working. (Id. 111:21-112:5.) The system software uploads this information to the central payroll department. (Id. 107:9-21.) The store manager prepares a list of corrections that need to be made and sends it to the payroll department along with payroll information for salaried managers. (Id.) These corrections are based on punching errors already entered into the system. (Id. 126:25-127:21.) Payroll clerks will enter the information into the system and run a preliminary report. (Id. 106:10-108:6.) Central office supervisors determine whether the information is accurate and then payroll is processed and checks [*8] are issued. (Id.; Neilan Decl. Ex. P (Balseca Dep. 220:4-221:8, Aug. 2, 2005).) Supervisors often correct for missed punch-outs for lunch hours. (Lang Dep. 117-24-122:10.) The system software makes a notation when an edit has been made to a payroll record. (Clusan Dep. 309:6-310:8; Neilan Decl. Ex. HH (Washington Dep. 74:24-75:18, May 20, 2005) [hereinafter Washington Dep.].)

Gristede's treats co-managers as FLSA and NYLL exempt employees. (Defs.' Answers to Pls.' Req. for Admis. Reqs. 1-2.) The company maintains that department managers would qualify as exempt employees and that they are paid a weekly, not hourly, wage. (Defs.' Answers to Pls.' Req. for Admis. Reqs. 3-20.) Co-managers and department managers are expected to work close to their expected number of hours per week. (Clusan Dep. 343:8-18.) If they fail to reach the required number of hours, their pay is docked. (Id.) Deborah Clusan, Director of Payroll for Gristede's, stated that both co-managers and department managers are hourly employees. (Id. 409:13-19) If co-managers work an extra shift or an extra day, Gristede's policy is to pay them for that extra time. (Id. 492:24-493:7.) If a co-manager or [*9] department manager only works half a day of scheduled time, Gristede's will only pay them for that time. (Id. 502:8-503:25.)

Dr. Stephen Schneider's Expert Report in Support of Class Certification for Plaintiffs, (James Decl. Ex. A [hereinafter Schneider Report],) shows that payroll deductions are widespread and consistent across stores. This report tabulated the "frequency and scope of: (1) co-manager paychecks for less than 50 compensable hours, (2) department-manager paychecks for less than 40 compensable hours, and (3) Gristede's changes to time records that undercompensate department managers." (Schneider Report P 9.)

Dr. Schneider determined, after an analysis based on 12,717 paychecks of 129 co-managers, that 2,693 co-manager paychecks were for less than 50 compensable hours. (Id. P 22.) He found that the co-manager paychecks for less than 50 compensable hours occurred to 110 (85 percent) of the 129 co-managers, at 48 (96 percent) of the 50 stores, and in 297 (97 percent) of the 306 workweeks. (Id.)

Dr. Schneider performed a similar analysis for department managers. (Id. P 27.) He analyzed 31,117 paychecks of 188 department managers and found that 1,724 [*10] department manager paychecks were for less than 40 compensable hours. (Id.) Paychecks of less than 40 compensable hours occurred to 158 (84 percent) of 188 department managers, at 48 (96 percent) of 50

stores, and in 296 (97 percent) of 306 workweeks. (Id.)

Dr. Schneider also measured changes to the time records of department managers by Gristede's. (Id. PP 29-33.) He found management edits in 17,552 (79 percent) of the 22,083 person workweeks. [4] (Id. P 30.) He found that 50 of these edits had no net change in hours, 3,831 (22 percent) had net gains in hours, and 13,671 (78 percent) had net losses in hours. (Id.) Dr. Schneider's measure of the hours lost by department managers during the study period showed a net loss of 42,175 hours. (Id.) He noted, "[o]n a net basis, Gristede's subtracted 10.9 hours for every one hour it added. A total of 7,500 (55 percent) of the 13,671 persons workweeks with net loss hours had credited hours of exactly 40 hours . . . ." (Id.) Dr. Schneider found that Gristede's edits resulted in a gain of 68 person workweeks and a loss of 6,897 person workweeks, out of the 22,083 person workweeks. (Id. at P 32.)

> 4  Dr. Schneider noted, "For my analyses, the edited punches by Gristede's management were used when actual punches by the department managers were missing on days worked." (Schneider Report P 29.)

[*11] Defendants contend that Dr. Schneider's report is deficient because "(1) he failed to analyze the data relating specifically to the named plaintiffs; and (2) he failed to determine and account for the extent of the problem of missed punches and their correlation to edits." (Defs.' Mem. Opp'n Mot. 18.)

Defendants provide their own expert report, Expert Report of Mark Berkman, Ph.D. (Nash Decl. Ex. B [hereinafter Berkman Report].) Dr. Berkman's report shows a high correlation between Gristede's edits and employees' missed punches. He determined that edits coincided with missed punches 99% of the time with respect to co-managers and 91% of the time with respect to department managers. (Berkman Report P 12.) As a result, Dr. Berkman shows a net overall gain in credited hours for the class as a whole. (Id. PP 12-13.) Dr. Berkman contends that, "[e]ach employee's records would have to be examined to determine whether any observed edits or failures to pay a full 50 or 40 hour week was unwarranted." (Id. P5(e).)

B. Analysis of Duties

The parties have sharply different descriptions of the duties of co-managers and department managers. Gristede's claims that all of the [*12] named plaintiffs and would-be class members are exempt because of the duties in which they engaged. [5] (Defs.' Mem. Opp'n Mot. 2.) Co-managers engaged in management functions, such as: supervising stores when store managers were not present (Nash Decl. Ex. N (Deleon Dep. 42:23-43:13, 87:5-88:10, June 9, 2005) [hereinafter Deleon Dep.]); retaining keys to open and close the store (Nash Decl. Ex. E (Torres Dep. 246:8-12, May 4, 2005) [hereinafter Torres Dep.]; Nash Decl. Ex. O (Phelps Dep. 17:13-17, June 9, 2005) [hereinafter Phelps Dep.]); having access to the store safe (Nash Decl. Ex. C (Chewning Dep. 121:5-24, June 30, 2005) [hereinafter Chewning Dep.]); and, handling employee problems and disciplinary actions. (Deleon Dep. 46:4-11; Torres Dep. 94:21-115:25, 128:23-130:14.) Further, Gristede's contends that night managers oversaw staff of up to five employees. (Nash Decl. Ex. M (Mora Dep. 111:3-113:17, 154:20-21, Sept. 1, 2004).) As to department managers, these employees oversaw staff in their departments (Nash Decl. Ex. S (Dipreta Dep. 22:21-23:2, 49:2-22 June 8, 2005) [hereinafter Dipreta Dep.); (Nash Decl. Ex. R (Salegna Dep. 23:20-24:9 June 20, 2005) [hereinafter Salegna [*13] Dep.]); had to achieve gross profit goals (Nash Decl. Ex. Q (Misuraca Dep. 46:21-47:9, June 16, 2005); Nash Decl. Ex. T (Pastorino Dep. 39:15-40:3, Aug. 6, 2005) [hereinafter Pastorino Dep.]; Salegna Dep. 24:2-3); made decisions on merchandise orders (Nash Decl. Ex. P (Crema Dep. 66:18-67:5, June 8, 2005) [hereinafter Crema Dep.]; Dipreta Dep. 24:11-21; Pastorino Dep. 39:15-40:3; Phelps Dep. 10:14-12:2, June 9, 2005; Salegna Dep. 24:5); handled merchandise quality issues (Phelps Dep. 15:22-16:7); and, oversaw employee staffing. (Dipreta Dep. 24:22-24; Pastorino Dep. 42:15-23; Salegna Dep. 25:19-26:25.)

> 5  Gristede's contends that plaintiffs are "all managerial type employees with Supervisory responsibilities making more than $ 250 per week and/or constitute a 'bona fide executive' within the meaning of state law." (Answer to Third Am. Class Action Compl. P59.) Gristede's also entertains the possibility that class members could be "subject to inquiry as either 'executive' or 'administrative' employees." (Defs.' Letter Br. 1.)

[*14] Plaintiffs, by contrast, claim that co-managers spent most of their time doing manual work (Neilan Decl. Ex. A (Chewning Aff. P 10) [hereinafter Chewning Aff.];

Neilan Decl. Ex. E (Damassia Decl. P 5) [hereinafter Damassia Decl.]; Neilan Decl. Ex. F (Deleon Decl. P7) [hereinafter Deleon Decl.]; Neilan Decl. Ex. H (Irizarry Aff. P 11) [hereinafter Irizarry Aff.]; Neilan Decl. Ex. J (Mora Decl. P 7) [hereinafter Mora Decl.]; Neilan Decl. Ex. N (Santiago Decl. P 5) [hereinafter Santiago Decl.]; Neilan Decl. Ex. O (Torres Decl. P 7) [hereinafter Torres Decl.]); functioned as clerks (Chewning Aff. PP 9-10; Neilan Decl. Ex. C (Croker Aff. P 4) [hereinafter Croker Aff.]; Damassia Decl. P 5; Deleon Decl. P 7; Irizarry Aff. PP 6,8; Mora Decl. PP 7, 15, 23, 27; Santiago Decl. PP 5-7; Torres Decl. PP 7, 15, 21, 25); did not have keys to the store (Chewning Aff. P 14. Damassia Aff. P 11; Irizarry Aff. PP 7, 13; Mora Decl. PP 20, 25, 30); did not supervise other employees (Chewning Aff. P 11; Croker Decl. PP 9, 10; Damassia Decl. P 12; Deleon Aff. P 9; Irizarry Aff. P 12; Mora Decl. PP 12, 29; Santiago Decl. P 9); did not determine merchandise orders (Chewning Aff. P 12; Croker [*15] Aff. P 10; Damassia Decl. P 7; Deleon Decl. P 9; Irizarry Aff. P 7); did not have authority to make hiring or firing decisions (Chewning Aff. P 12; Croker Aff. PP 11-12; Damassia Decl. PP 8-9; Deleon Decl. PP 10-11; Irizarry Aff. PP 9-10; Mora Decl. P 8; Santiago Decl. P 9; Torres Decl. P 8); and, had little or no discretion in performing their job. (Irizarry Aff. P 11; Mora Decl. P 19; Santiago Decl. P 12; Torres Decl. P 9.) In some instances, according to Plaintiffs, department managers worked alone and did not supervise any full-time employees. (James Supp. Decl. Ex. A (Familia Aff. P 8 ("Department Managers generally worked alone and supervised nobody.") [hereinafter Familia Aff.]); Nash Decl. Ex. Q (Miruscura Dep. 45:24-46:7).)

### C. Unauthorized Overtime

Gristede's employees testified that the company enforces a corporate policy not to pay for overtime unless it is pre-approved. (Pls.' Mem. 4.) The Gristede's policy is simply that employees work the hours for which they are scheduled. (Defs.' Mem. Opp'n Mot. 10.) If hourly employees were scheduled to work additional hours beyond their shift, they would be paid for those hours. (Clusan Dep. 178:20-179:10.) Further, if employees [*16] were not approved to work beyond their shift, they would not be compensated for those additional hours. (Id.) Other central office employees testified that Gristede's requires employees to work according to their schedules and that employees are compensated for hours actually scheduled. (Lang Dep. 113:2-116:24, 134:2-7; Neilan Decl. Ex. U (Criscuolo Dep. 260:19-261:3, May 25, 2005); Neilan Decl. Ex. D (Daly Decl. P 5) [hereinafter Daly Decl.]; Neilan Decl. Ex. CC (Montalvo Dep. 25:12-22, July 1, 2005).)

Store managers testified that it was Gristede's general practice to not pay overtime to department managers, unless it had been pre-approved. (Familia Aff. P 3; Daly Decl. P 5.) This was consistent from store to store. (Familia Aff. P 3; Daly Decl. P 7.) They also testified that they themselves eliminated hours from department managers' time records "in order to follow Gristede's policy that Department Managers were not to be credited for working more than their scheduled 40 hours per week unless they had prior authorization." (Familia Aff. P 13; see Daly Decl. P 7; Paliophilos Dep. 139:8-142:24, July 19, 2005.) Co-managers also reported seeing store managers implement this [*17] policy. (Chewning Dep. 101:16-105:9; Irizarry Aff. PP 22-23; Chewning Aff. PP 5-7.)

Store managers stated that upper management exerted significant pressure on them and other store managers to meet payroll budgets. (Familia Aff P 4-5; Daly Decl. PP 11-12.) They testified that Gristede's central management eliminated overtime hours for hourly workers by making edits to employees' time records. (Familia Aff. PP 14-16; Daly Decl. PP 9-10; see also Washington Dep. 72:24-73:12, 70:6-20, 74:16-20; Lang Dep. 134:2-11.)

### D. Working Past the Clock

Generally, plaintiffs testified they worked in excess of their scheduled hours and Gristede's did not pay them overtime. (Chewning Aff. P 4; Neilan Decl. Ex. B (Crema Decl. P 4) [hereinafter Crema Decl.]; Croker Aff. P 6; Damassia Decl. P 4; Deleon Decl. 5; Dipreta Decl. P 3; Irizarry Aff. P 5; Misuraca Decl. P 4; Mora Decl. PP 4, 13, 31; Salegna Aff. P 4; Santiago Aff. P 4; Torres Aff PP 3, 27.) Plaintiffs worked prior to the start of their shifts, but were not paid for this time. (Crema Decl. PP 6, 11; Dipreta Decl. P 8; Irizarry Aff. P 19; Misuraca Decl. P 6; Pastorino Aff. P 6; Salegna Aff. P 6; Familia Aff. P 10.) In addition, plaintiffs [*18] continued working after their shifts ended, but were not paid for this time. (Crema Decl. PP 7, 11; Deleon Decl. P 13; Irizarry Aff. P 20; Pastorino Aff. P 8; Phelps Aff. P 8; Salegna Aff. P 6; Santiago Aff. P 14; Familia Aff. P 10.) Plaintiffs say that their supervisors were aware that they worked off-the-clock. (Crema Decl. P 8; Dipreta Decl. P 9; Irizarry Aff. P 20; Pastorino Aff. PP 7, 9; Phelps Aff. P 9;

Salegna Aff. P 12; James Supp. Decl. Ex. L (Markiewicz Aff. P 7) [hereinafter Markiewicz Aff.].) In some instances, supervisors instructed plaintiffs to punch-out and continue working after their shifts ended. (Pastorino Aff. PP 7,9; Phelps Aff. P 10; Salegna Aff. P 12; Markiewicz Aff. P 9.) Plaintiffs worked through their lunch breaks, but were not paid for this time. (Crema Decl. P 5; Daly Decl. PP 6, 8; Dipreta Decl. P 6; Misuraca Decl. P 5; Pastorino Aff. P 10; Salegna Aff. P 8; Familia Aff. P 9; Markiewicz Aff. P 6.)

### III. Applicable Law

#### A. Fair Labor Standards Act

FLSA sets out a framework for minimum wage and overtime requirements, providing that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for [*19] a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

*29 U.S.C. § 207(a)(1).*

Any employer that violates the *29 U.S.C. § 207* overtime provision is liable to the employee affected for overtime compensation, liquidated damages, prejudgment interest, attorneys' fees and costs. *29 U.S.C. § 216(b)*. Bona fide executives, administrators, or professionals are exempt, however, from the FLSA overtime provisions. [6] *29 U.S.C. § 213(a)(1)*. In order to qualify for this exemption, an employee must satisfy both a "duties test" and a "salary basis" test. *29 CFR §§ 541.100, 541.200, 541.300*. The "duties test" according to federal regulations provides that an executive employee is one:

> [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department of subdivision thereof;
>
> [w]ho [*20] customarily and regularly directs the work of two or more other employees; and
>
> [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Id. § 541.100.*

[6] Defendants do not claim that either co-managers or department managers could be exempt as a professional employee.

Similarly, the federal regulations provide that an administrative employee is one:

> [w]hose primary duty is the performance of office or non-manual work directly related to the management of general business operations of the employer or the employer's customers; and
>
> [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id. § 541.200* (emphasis added).

The salary test consists of two elements: "a requirement that the exempt employee receive no less than a specified [*21] level of compensation, and a requirement that the employee's compensation be paid 'on a salary basis.'" *Hoffmann v. Sbarro, Inc. 982 F. Supp. 249, 250-51 (S.D.N.Y. 1997)*. The salary test covers employees who "regularly receive[] each pay period . . . a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *29 C.F.R. § 541.602(a)*. "An exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.*

*29 U.S.C. § 255* provides a two-year statute of limitations for claims arising from the FLSA overtime provisions. *29 U.S.C. § 255(a)*. If the employer willfully violates the provisions, a three-year statute of limitations applies. *Id.*

#### B. FLSA Collective Action

The Fair Labor Standards Act provides, in part, that:

> [a]n action to recover [unpaid wages] may be maintained against any employer . . . by any one or more employees for and in behalf of himself [*22] or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*29 U.S.C. § 216(b).*

This section provides a mechanism that is "something akin to a class action." *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 386 (W.D.N.Y. 2005). The primary differences between an FLSA collective action and a *Rule 23* class action are: (1) the collective action binds only potential plaintiffs who "opt-in," whereas *Rule 23* requires class members to opt-out, if they wish not to be included; and (2) FLSA only requires employees be "similarly situated," whereas *Rule 23* requirements are more detailed. *Sipas v. Sammy's Fishbox, Inc.,* No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *4 (S.D.N.Y. Apr. 24, 2006).

Neither the FLSA nor its implementing regulations define the term "similarly situated." *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. at 261. Generally, courts proceed in two stages in determining whether a matter should be certified as a FLSA collective [*23] action. *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 197 (S.D.N.Y. 2006). In the first stage, the court will look at affidavits and pleadings and, if the plaintiff satisfies "the minimal burden of showing that the similarly situated requirement is met," the court certifies the class as a collective action. *Id.* At this juncture -- also termed the "notice stage" -- the court applies "a fairly lenient standard" and (when it does so) typically grants "conditional certification." *Moss v. Crawford & Co.,* 201 F.R.D. 398, 409 (W.D. Pa. 2000). Potential class members are then notified and given an opportunity to opt-in. *Id.* At the second stage, the court examines the record again, with the benefit of discovery, and revisits the question of whether plaintiffs are similarly situated. *Masson v. Ecolab, Inc.,* No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, , 2005 WL 2000133, at *13-14 (S.D.N.Y. Aug 17, 2005). The second stage is usually precipitated by a defendant's motion for decertification of the class, *id.,* and involves "a higher standard" in analyzing the "similarly situated" issue. [7] *Moss v. Crawford & Co.,* 201 F.R.D. at 409.

[7] The proceedings in this case do not mirror the traditional two-stage process described. Plaintiffs moved for certification of collective action class after discovery had already been conducted. Accordingly, Defendants have not moved to decertify the not-yet-existent class and, instead, oppose certification of the collective action class.

[*24] **C. New York Labor Law**

New York labor law provides wage and overtime protections for employees similar to those required by the FLSA. New York labor law also requires employers to pay employees one and one-half times the regular rate for time worked in excess of forty hours during any workweek, unless they are exempt. *12 N.Y.C.R.R. § 142-2.2.* Similar exemptions, as in the FLSA, exist for bona fide executives, administrators, or professionals. *12 N.Y.C.R.R. § 142-2.14;* see also *id. §§ 142-2.14(c)(4)(i)* (defining executive employee), *142-2.14(c)(4)(ii)* (defining administrative employee).

Employees paid less than the wage required by the law "may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorney's fees as may be allowed by the court, and if such underpayment was willful, an additional amount as liquidated damages . . . ." *N.Y. Lab. Law § 663(1).* New York law imposes a six-year statute of limitations on these types of actions. *Id. § 663(3).*

**D. New York Common Law Fraud Claim**

Under New York common law, "[i]n an action to recover damages for fraud, the plaintiff must prove [*25] a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996) (citation omitted); see also *Vermeer Owners, Inc. v. Guterman,* 78 N.Y.2d 1114, 1116, 585 N.E.2d 377, 578 N.Y.S.2d 128 (1991) (setting out elements of fraud as "a representation of material fact, falsity, scienter, reliance and injury"). The plaintiff must demonstrate each of the fraud elements

"by clear and convincing evidence." *Vermeer Owners, Inc. v. Guterman, 78 N.Y.2d at 1116*. Moreover, the "elements of fraud are narrowly defined." *Gaidon v. Guardian Life Ins. Co., 94 N.Y.2d 330, 331, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999)*.

### E. *Rule 23* Certification

Class action cases are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Tel. Co. v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)* (quoting *Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)*). Class certifications [*26] are desirable in those cases in which the "issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." Id. (quoting *Califano, 442 U.S. at 701*) (internal quotation marks omitted.) Under these circumstances, a class action may conserve the resources of both the court and the parties. See *Califano, 442 U.S. at 701*.

*Fed.R.Civ.P. 23* sets forth the requirements for bringing and maintaining a class action in federal court. The Second Circuit has instructed district courts to apply *Rule 23* "according to a liberal, rather than restrictive, interpretation," *Lee v. ABC Carpet & Home, 236 F.R.D. at 202* (citations omitted), and to "adopt a standard of flexibility." *Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)*. The District Court, however, must perform a "rigorous analysis" to be certain that "the prerequisites for [class certification] are met." *Dodge v. County of Orange, 208 F.R.D. 79, 87 (S.D.N.Y)* (quoting *General Tel. Co. v. Falcon, 457 U.S. at 161*); [*27] see also *Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999)*.

In seeking certification of a class, the plaintiff bears the burden of satisfying the requirements of *Rule 23*. *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*; *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp., 222 F.3d 52, 58 (2d Cir. 2000)*. The district court must accept all of the allegations in the pleadings as true on a motion for class certification. *In re Indep. Energy Holdings PLC Sec. Litig., 210 F.R.D. 476, 478 n.5 (S.D.N.Y. 2002)*. At the class certification stage, the district court should avoid conducting an inquiry into the merits of the plaintiffs' case. *Wal-Mart Stores, Inc. v. Visa USA Inc. (In re Visa Check/MasterMoney Antitrust Litig.), 280 F.3d 124, 133 (2d Cir. 2001)* ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of *Rule 23* are met.") (quoting *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)*); see also *Sirota v. Solitron Devices, Inc., 673 F.2d 566, 570-72 (2d Cir.)*, [*28] cert. denied, *459 U.S. 838, 103 S. Ct. 86, 74 L. Ed. 2d 80 (1982)* (same).

#### 1. Requirements for Certification

To be certified as a class under *Rule 23*, the moving party must satisfy the four prerequisites of *subsection (a)*. If the prerequisites of *subsection (a)(1)-(4)* are satisfied and one of the three conditions set forth in *Rule 23(b)* is met, then a class action may be maintained.

### DISCUSSION

### I. FLSA Collective Action

Plaintiffs allege that Defendants willfully violated FLSA by (1) failing to properly record hours worked by Plaintiffs and others similarly situated in excess of 40 hours per workweek; and (2) failing to properly credit or compensate Plaintiffs and others similarly situated for that work. (Third Am. Class Action Compl. P 175.) Plaintiffs allege that Defendants violated Plaintiffs' rights by implementing three company-wide policies: (1) erasing so-called "unauthorized" overtime from its payroll records; (2) pretending that hourly workers were, in fact, paid salaries; and (3) classifying workers as exempt company "executives" without reference to their actual job duties. Plaintiffs move this Court for a determination that written notice be sent, [*29] pursuant to *29 U.S.C. § 216(b)*, to all similarly situated employees that they may opt into this action should they wish to assert claims under FLSA.

Plaintiffs must demonstrate that members of the class are "similarly situated" in order to qualify for collective action treatment. *29 U.S.C. § 216(b)*. Post-discovery, as is the case with the instant motion, the Court applies heightened scrutiny to this inquiry as compared to pre-discovery. *Harrington v. Educ. Mgmt. Corp., No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *4-*5 (S.D.N.Y. May 17, 2002)*. The Second Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" and the great majority of cases involve certification at the

initial stages of the litigation. Accordingly, the Court will look to other districts and circuits for what they have done in similar cases.

In *Thiessen v. General Electric Capital Corporation*, the Tenth Circuit considered post-discovery certification under the FLSA standard and noted that "[u]nfortunately, § 216(b) does not define the term 'similarly situated,' and there is [*30] little circuit law on the subject." *267 F.3d 1095, 1102 (10th Cir. 2001).* [8] The Thiessen court noted that district courts have adopted "at least three" different approaches in making this determination. Id. Under the first approach, a court determines "on an ad hoc case-by-case basis, whether plaintiffs are 'similarly situated.'" Id. (citation omitted). "During this 'second stage' analysis, a court reviews several factors[, among which the relevant ones] includ[e] (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (citation omitted). The second and third approaches incorporate either the current *Rule 23* requirements or the pre-1966 requirements. Id. The Thiessen court concluded that "the ad hoc approach is the best of the three approaches . . . because it is not tied to the *Rule 23* standards." *Id.*; see also *Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)* (stating that "it is clear that the requirements [*31] for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under *Rule 23*"). Accordingly, this Court adopts the Tenth Circuit's holding and applies the ad hoc approach.

> 8    This case concerned claims under the Age Discrimination in Employment Act ("ADEA"). *29 U.S.C. §§ 621 et seq.* The enforcement provision of the ADEA, *29 U.S.C. § 626(b),* incorporates the *FLSA § 216(b)* "similarly situated" requirement.

**A. Disparate Factual and Employment Settings**

Under the applicable federal regulatory "salary" test, *29 C.F.R. §§ 541.100, 541.200,* Plaintiffs have presented convincing evidence that Defendants systematically docked the wages of co-managers and department managers. First, company officials admitted that comanagers and department managers were not guaranteed a weekly salary. Clusan, Gristede's Director of Payroll, testified that if co-managers and department [*32] managers "[we]re not putting in the hours . . . that they are expected to work for that minimum salary, they are not going to . . . get paid that minimum salary." (Neilan Decl. Ex. S (Clusan Dep. 343:22-344:2). In addition, Clusan testified that, for "salaried" employees such as co-managers and night managers, if an employee missed half a day's work, Gristede's would dock a day's pay (id. 502:8-504:12); see also (Neilan Decl. Ex. X (Helwig Dep. (88:8-22) (describing instance of getting docked for not working a full workweek)). Furthermore, Plaintiffs' expert found, in his study of payroll data, that a high percentage of department managers received payments for less than 40 compensable hours (i.e., 84% of department managers in 96% of stores in 97% of workweeks). (Schneider Report PP 25-38.) Similarly, the data showed that co-managers also received payments for less than 50 compensable hours for their workweeks (i.e., 85% of co-managers in 96% of stores in 97% of workweeks). (Schneider Report P 22.) Gristede's clearly sought to treat workers as "hourly" for some purposes (i.e., docking them for hours not worked during the workweek), but "salaried" for other [*33] purposes (i.e., not paying them overtime for hours worked in excess of the workweek).

Federal regulations impose a conjunctive "duties" and "salary" test requirement for exemption from its overtime payment requirement. See *29 C.F.R. §§ 541.100* (executive employees), *541.200* (administrative employees); see also id. *§ 541.602* (defining "salary basis"). Given Gristede's practice of treating co-managers and department managers as hourly workers, it is irrelevant that some individual plaintiffs or others similarly situated may have assumed duties that would otherwise make them exempt under the regulations. See *Davis v. Lenox Hill Hosp., No. 03 Civ. 3746, 2004 U.S. Dist. LEXIS 17284, 2004 WL 1926087, at *4 (S.D.N.Y. Aug. 31, 2004)* (employees were not exempt from FLSA because the employer paid on an hourly basis, not a salary).

Moreover, plaintiffs have amply shown that they "were . . . subject to a common practice or scheme" that violated the law. *Scholtisek v. Eldre Corp., 229 F.R.D. at 390;* see also *Ayer v. SGS Control Servs., Inc., No. 03 Civ 9078, 2004 U.S. Dist. LEXIS 25646, 2004 WL 2978296, at *4 (S.D.N.Y. Dec. 21, 2004)* (plaintiffs required to [*34] show "that they and potential plaintiffs together were victims of a common policy or plan that violated the law"). Thus, the Court finds that issues related to

potential disparate factual and employment settings do not defeat Plaintiffs' valid basis for moving forward with collective action. [9]

> 9  In any event, although some of the evidence is inconsistent, Plaintiffs have made a credible showing that co-managers and department managers did not engage in exempt duties. Ordinarily, employers must demonstrate that they are entitled to a particular exemption. *Martin v. Malcolm Pirnie, Inc.,* 949 F.2d 611, 614 (2d Cir. 1991). Because the FLSA is a remedial statute, its exemptions are narrowly construed against the employer. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S. Ct. 453, 4 L. Ed. 2d 393 (1960); *Bilyou v. Dutchess Beer Distribs., Inc.,* 300 F.3d 217, 222 (2d Cir.2002); *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 340 (S.D.N.Y. 2004). Defendants contend that whether co-managers and department managers are protected by FLSA turns "on an individual fact-specific analysis of each employee's job responsibilities." *Morisky v. Pub. Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 498 (D.N.J. 2000); see also *Dean v. Priceline.com, Inc.,* No. 00 Civ. 1273, 2001 U.S. Dist. LEXIS 24982, at **6-7 (D. Conn. June 5, 2001). Defendants further maintain that differences in job responsibilities make it impossible for Plaintiffs to show that they and the FLSA class members are similarly situated.

On balance, however, Plaintiffs demonstrated that employees (and co-managers in particular) did not engage in "executive" duties, such as "having primary management of the enterprise," 29 C.F.R. § 541.100(a)(2), "customarily and regularly direct[ing] the work of two or more other employees," id. § 541.100(a)(3), and having "the authority to hire or fire other employees." Id. § 541.100(a)(4). Plaintiffs submitted extensive employee testimony -- particularly from co-managers and night managers -- that they did not perform management tasks, did not supervise other employees, had little input in employee promotions and firing, and spent most of their time doing manual labor.

Moreover, Defendants reliance on Morisky is misplaced. The individual plaintiffs in Morisky consisted of technical procedure writers, a nuclear plant pipe designer, a senior engineer in charge of leak rate testing, a senior staff engineer working on design change packages, and an installation and test engineer. *Morisky,* 111 F. Supp. 2d at 495-496. These employees "included a range of administrative, supervisory and technical employees," *Scott v. Aetna Servs.,* 210 F.R.D. 261, 265 (D. Conn. 2002), and engaged in duties vastly different from those of the positions at issue in this case.

[*35] **B. Potential Defenses**

Any defenses Defendants raise regarding the admitted company policy of docking compensation for not working the designated hours in a workweek does not implicate individual plaintiffs because, here, "the standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct." *Evans v. Lowe's Home Ctrs., Inc.,* No. 03 Civ. 438, 2006 U.S. Dist. LEXIS 32104, at *14 (M.D. Pa. May 18, 2006) (granting post-discovery, second-stage collective action); see also *Moss,* 201 F.R.D. at 410 (even individualized defenses can be managed and do not make the opt-in class unmanageable). [10]

> 10  Even if defendants were to raise "highly individualized defenses," the Court may grant collective action and bifurcate trial, as necessary, to address those defenses. See *Thiessen v. General Elec. Capital Corp.,* 267 F.3d at 1106.

**C. Fairness and Procedural Considerations**

In taking into account [*36] fairness and procedural considerations, the Court is mindful of the Supreme Court's discussion of FLSA, in which it stated:

> Congress has stated its policy that [plaintiffs] should have the opportunity to proceed collectively. A collective action allows [plaintiffs] the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common is issues of law and fact arising from the same alleged . . . activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170,

*110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)* (cited in *Gregory v. Home Depot U.S.A., Inc., No. 01 Civ. 372, 2001 U.S. Dist. LEXIS 25922, at *4 (D. Conn. July 3, 2001)*). The Court finds that, on balance, the policy objectives of reducing cost and increasing efficiency are best furthered by granting collective action without undue prejudice to any party. See *Evans v. Lowe's Home Ctrs., 2006 U.S. Dist. LEXIS 32104, at *15* (same -- granting post-discovery, second stage collective action motion); *Moss, 201 F.R.D. at 410* (same).

In sum, all three factors weigh in favor of one FLSA collective [*37] action rather than three hundred separate actions. This lawsuit will be a more effective use of the Court's and parties' resources. Accordingly, Plaintiffs' motion for collective action is GRANTED.

## II. Class Certification -- New York Labor Law and Common Law Fraud Claims

In addition to § 216(b) collective action, Plaintiffs seek class certification for violations of New York Labor Law and a common law fraud claim pursuant to Federal *Rule 23* of a class defined as:

> All persons employed by defendants as Department Managers or Co-Managers who were not paid proper overtime premium compensation for all hours that they worked in excess of forty in a workweek any time between April 30, 1998 and the date of final judgment in this matter (the "class period").

(Pls.' Br. at 1.)

This Court may exercise supplemental jurisdiction under *28 U.S.C. § 1367(a)* of Plaintiffs' state law claims if they and the FLSA claims "derive from a common nucleus of operative fact," such that the parties "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).* In this case, [*38] Plaintiffs are asserting FLSA and state law claims from the same set of facts. District courts in this Circuit have previously exercised jurisdiction over cases involving both FLSA and NYLL claims. See *Ouedraogo v. Durso Associates, Inc., No. 03 Civ. 1851, 2005 U.S. Dist. LEXIS 11954, 2005 WL 1423308, at *2 (S.D.N.Y. June 16, 2005)* (citing *Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184 (S.D.N.Y. 2001)* and *Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y.1999))*.

### A. *Rule 23(a)* Requirements

The class action is different from a FLSA action because it requires the Plaintiffs to meet the strict requirements of numerosity, typicality, commonality, and adequacy of representation. *Fed.R.Civ.P. 23(a)(1)-(4).* *Levinson v. Primedia Inc., No. 02 Civ. 2222, 2003 U.S. Dist. LEXIS 20010, 2003 WL 22533428, at *1 (S.D.N.Y. Nov. 6, 2003).*

### 1. Numerosity

*Rule 23(a)(1)* requires that the class be "so numerous that joinder of all members is impracticable." "Impracticability does not mean impossibility of joinder, but rather difficult or inconvenience of joinder." *In re Indep. Energy, 210 F.R.D. at 479.* The [*39] Second Circuit has held that a class of more than forty members satisfies the numerosity requirement. *Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 198 (S.D.N.Y. 1992).* The plaintiff is required to "show some evidence or reasonably estimate the number of class members." *Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66, 70 (E.D.N.Y. 2001).* Plaintiff contends that Gristede's own records show that there are at least 300 identified class members. (Schneider Report PP 22, 27; James Decl. Ex. E. (Class Lists).) The Court finds that Plaintiff has made a reasonable estimate that the class of individuals who may assert state law claims against Gristede's is potentially numerous enough to make joinder impracticable.

### 2. Commonality

The Court finds that there are common questions of law and fact to the proposed class. "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani, 126 F.3d at 376.* Plaintiffs have shown that a number of questions of law and fact are common [*40] to all class members. These include:

> 1. Whether Defendants failed to keep true and accurate time records for all hours worked by proposed class;
>
> 2. Whether Defendant improperly

Case 1:07-cv-08718-RMB-THK    Document 20-30    Filed 01/18/2008    Page 13 of 17

2006 U.S. Dist. LEXIS 74039, *40                                      Page 12

edited the time records of class members to reduce the amount of compensation it owed to class members;

3. Whether proof of hours worked is sufficient where employers fail in duty to maintain true and accurate time records;

4. Whether Defendants have failed to compensate class members for all the work they required, encouraged or permitted class members to perform;

5. Whether Defendants have failed to compensate class members for work performed in excess of 40 hours per workweek with overtime premium wages;

6. Whether Defendants engaged in a pattern, practice, or policy encouraging class members to work "off the clock" and/or failing to pay class members for hours worked in excess of 40 hours per workweek.

7. Whether Defendants failed or refused to pay class members overtime pay for hours worked in excess of 40 hours per workweek; and

8. Whether Defendants intentionally and pursuant to standard policy or practice made misrepresentations or omissions of material fact by altering time, attendance, [*41] and payroll records to understate employees' true earnings.

(Third Am. Class Action Compl. P 74).

Defendants contend that there are no common questions of law or fact for the proposed class. They assert that determining "whether employees are exempt requires an individualized fact intensive inquiry, in which the court must consider the specific duties and responsibilities of each employee." (Defs.' Mem. Opp'n Mot. 13.) For purposes of class certification, New York Labor Law and implementing regulations govern employee exemptions from overtime provisions. As noted previously, the governing provisions are *12 N.Y.C.R.R. § 142-2.14(b)(4)(i)* and *§ 142-2.14(b)(4)(ii)*, which define executive and administrative employees,

respectively. Both of these definitions are conjunctive and require both certain specified duties, and the payment of a salary. If either element is absent, then the definition is not satisfied.

Unlike federal regulations, which expressly define "salary basis," see *29 C.F.R. § 541.602*, the New York implementing regulations do not define "salary." In determining the meaning of "salary", the Court looks to New York law regarding statutory [*42] construction. See *Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 333 (2d Cir. 2005)* (applying Vermont law with regard to statutory construction of Vermont provision). In Orens v. Novello, the New York Court of Appeals explained that this analysis begins with the language of the statute. *99 N.Y.2d 180, 185, 783 N.E.2d 492, 753 N.Y.S.2d 427 (2002)*. The court stated:

> If the terms are clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used . . . . In cases where the term at issue does not have a controlling statutory definition, courts should construe the term using its usual and commonly understood meaning.

*Id. at 185-86*. The Orens court then looked to dictionary definitions for assistance. *Id. at 186* (citing Merriam-Webster's Collegiate Dictionary and Black's Law Dictionary).

Webster's Third New International Dictionary 2003 (2002) defines "salary" as "fixed compensation paid regularly (as by the year, quarter, month, or week) for services." Black's Law Dictionary 1364 (8th ed. 2004) defines "salary" as "an agreed compensation for services - especially professional or [*43] semiprofessional services - usually paid at regular intervals on a yearly basis, as distinguished from an hourly basis." Under New York implementing regulations, the Court finds that "salary" means receipt of fixed, regular compensation (i.e., not subject to weekly variation by hours worked). Further, Defendants' must satisfy both a "duties" test and "salary" test in order to establish exemption. 11

---

11   Defendants assert that implementing New York regulations impose a "duties" test alone and no requirement with regard to "salary" to establish exemption. Defendants cite a number of cases that

concluded otherwise; however, these cases are mostly inapplicable. Three of the cases on which Defendants rely - *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181 (E.D.N.Y. 2004), *Davis v. Lenox Hill Hosp.*, 2004 U.S. Dist. LEXIS 17284, 2004 WL 1926087, at *1, and *Dingwall v. Friedman Fisher Assocs.*, 3 F. Supp. 2d 215 (N.D.N.Y. 1998) - are entirely inapposite as they concerned "professional" employees. Unlike executive and administrative employees, under the regulation, the definition for "professional" employees imposes no salary requirement. See *12 N.Y.C.R.R. § 142-2.14(c)(4)(iii)*. In each of these three cases, the court held that the employers need not show that the plaintiffs received salaries since they were professional employees and the "salary" test did not apply for determining exemptions. *See, e.g., Bongat v. Fairview Nursing Care Ctr.*, 341 F. Supp. 2d at 187 ("[W]ith respect to the professional capacity exception, New York law differs from the federal law . . . in that to establish the exception, the employer need not satisfy a 'salary' test, only a duties test." (citing Dingwall; internal quotation marks omitted)); *Davis v. Lenox Hill Hosp.*, 2004 U.S. Dist. LEXIS 17284, 2004 WL 1926087, at *5 (same); *Dingwall v. Friedman Fisher Assocs.*, 3 F. Supp. 2d at 220 (with regard to professional employees, "in order to establish the exception, the employer need not satisfy a 'salary' test, only a duties test").

The Plaintiffs, clearly were not "professional" employees because their "primary duty [did not] consist[] of the performance of work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . . or original and creative in character in a recognized field of artistic endeavor . . . ." See *12 N.Y.C.R.R. § 142-2.14(c)(4)(iii)*. Defendants, further, do not so contend. Thus, *Dingwall*, *Bongat*, and *Davis* do not provide applicable support for Defendants' contention.

The remaining case on which Defendants rely is *Scholtisek v. Eldre Corp.* 229 F.R.D. at 381. Here, the district court appears to have cited Dingwall in error, failing to appreciate the narrow scope of Dingwall's holding (which was limited to professional employees) and extending the "no salary" requirement found in the provision for professional employees to executive and administrative employees. The Scholtisek court did so notwithstanding the express regulatory definitions, which the court even noted. *Id.* at 392 n.7. This Court respectfully declines to follow the Scholtisek conclusion.

[*44] Here, the two provisions at issue expressly require that executive and administrative employees be paid a salary. Such salaried compensation, by definition, cannot be the hourly wages Gristede's admitted company policy dictates. Since Plaintiffs have adduced convincing evidence that Gristede's acknowledged company policy treated co-managers and department managers as hourly employees, Defendants cannot defeat commonality by pointing to individualized exemption determinations on the basis of duties. Furthermore, Plaintiffs' grievances related to Gristede's failure to pay overtime compensation share a common question of law or fact, *Marisol A. v. Giuliani*, 126 F.3d at 376, to which determination of Plaintiffs' individual duties is entirely irrelevant.

To summarize, Plaintiffs work in allegedly non-management positions in supermarkets as Defendants' employees. Plaintiffs are all subject to the same corporate policies and practices. Plaintiffs share a common allegation that they were required to work in excess of forty hours per week. They have submitted evidence that Defendants suffered, encouraged, and required them to work beyond their shifts. Plaintiffs share a common [*45] factual claim that they were not paid for their additional work. They also share a common legal claim that Defendant failure to pay them for overtime hours is a violation of NYLL minimum wage and overtime regulations. *See, e.g., Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) (holding that the commonality requirement was satisfied where all potential class members are alleged to have been harmed by a common practice (i.e., defendants' failure to adequately compensate employees for overtime hours) and the legal theory set forth in plaintiffs' complaint is common to all class members (i.e., this alleged failure to pay overtime violates New York's labor law)); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 186 (S.D.N.Y. 2003) (same); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 267 (D. Conn. 2002) (same).

12

12 While differences may exist among employee responsibilities and hours worked, this inquiry implicates the damages owed to class members and will not prevent a finding of commonality. *Noble*, 224 F.R.D. at 343; see also *Ansoumana*, 201 F.R.D. at 86; *In re AM Int'l. Inc. Sec. Litig.*, 108 F.R.D. 190, 196 (S.D.N.Y.1985).

[*46] Plaintiffs have introduced sufficient evidence that their allegations apply to the proposed class as a whole.

### 3. Typicality

The Court finds that Plaintiffs have satisfied the typicality requirement of *Rule 23*. "Typicality . . . requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d at 376 (citation omitted). Where class representatives allege "that they were not paid overtime in violation of NYS labor law" and where "the same legal and factual claims are being made for each individual class member . . . the typicality requirement is satisfied." *Mascol v. E&L Transp., Inc.*, 2005 U.S. Dist. LEXIS 32634, at *17. Plaintiffs contend that all of the *Rule 23* class members, including the class representatives, were subject to the same allegedly illegal policies and practices. They all worked at Defendants' stores; used the same punch clock system; were subject to the same alleged misclassification as exempt employees; [*47] and were denied overtime wages.

Defendants contend that because of the individualized fact intensive inquiry required for determining whether an employee is exempt, each plaintiff will become a focus of the litigation. As previously discussed, the duties test in this case is not outcome determinative, but the salary test is. For purposes of class certification, Plaintiffs have shown that they will be able to adduce generalized proof related to Gristede's company-wide practices and procedures. Additionally, individual inquiry relates only to damages and not to Defendants' liability. Moreover, differences that do not destroy the underlying central and special claim presented by the Plaintiffs will not prevent a Court from find typicality in a *Rule 23* class. *Ansoumana*, 201 F.R.D. at 87 ("Differences concerning for whom any particular Plaintiff worked, or for what particular number of hours, cannot undermine the conclusion that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability."). Accordingly, the Court finds that class representative claims are typical of the class. [*48] [13]

[13] Defendants contend that because some department managers are subject to a collective bargaining agreement and none of the named plaintiffs are members of the union, claims of named plaintiffs are not typical or adequately representative of those of the putative class. Under the holding of the Supreme Court's case, *Barrentine v. Arkansas-Best Freight System, Inc.*, this argument is without merit because Plaintiffs are suing as individual on their statutory rights and not rights arising out of a collective bargaining agreement. *450 U.S. 728, 745, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)*. Although *Barrentine* has been called into question, later Supreme Court cases have reaffirmed the Court's "long-standing concern that union representation in arbitration might not fully vindicate the important individual rights granted by statute." See *Albertson's Inc. v. United Food & Commercial Workers*, 96 Civ. 398, 1997 U.S. Dist. LEXIS 4554, at **27-31 (D. Id. Mar. 10, 1997) (recounting history of related Supreme Court jurisprudence).

[*49] **4. Adequacy of Representation**

Federal *Rule 23(a)(4)* requires that "the representative parties will fairly and adequately protect the interests of the class." Two standards dictate whether the movant has fulfilled the adequacy of representation requirement: (1) class counsel must be qualified; and (2) class members must not have interests that are antagonistic to each other. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291-292 (2d Cir. 1992). Courts may consider other factors, "such as whether the putative representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. at 339.

Plaintiffs' counsel have declared they are experienced in and have previously prosecuted labor dispute actions such as this. (Klein Decl. PP 19-30;

Case 1:07-cv-08718-RMB-THK    Document 20-30    Filed 01/18/2008    Page 16 of 17

2006 U.S. Dist. LEXIS 74039, *49                                                Page 15

Swartz Decl. at 1-4; see also *Ansoumana, 201 F.R.D. at 87* (Outten & Golden LLP is qualified to prosecute wage-and-hour class actions). The Court finds class counsel is "qualified, experienced, and generally able to conduct the litigation." *Olsen v. New York Cmty. Bancorp, 233 F.R.D. 101, 109 (E.D.N.Y. 2005).* [*50] Thus this standard is met.

Defendants challenge whether the class representatives are "of sufficient character to represent a class." (Defs.' Mem. Opp'n Mot. 23 (citing *Velez v. Majik Cleaning Serv., Inc., No. 03 Civ. 8698, 2005 U.S. Dist. LEXIS 709, 2005 WL 106895, at *3 (S.D.N.Y. Jan. 19, 2005).*) This is an odd defense by an employer who chose to hire these individuals. In any event, "the courts look to personal characteristics only insofar as they touch upon the lawsuit." *Martin v. New York City Dept. of Soc. Servs., 117 F.R.D. 64, 71 (S.D.N.Y. 1987)* (citing *Panzirer v. Wolf, 663 F.2d 365 (2d Cir.1981),* cert. denied, *458 U.S. 1107, 102 S. Ct. 3486, 73 L. Ed. 2d 1368 (1982)*). The court in Martin observed, "The inquiry . . . into the representatives' personal qualities is not an examination into their moral righteousness, but rather an inquiry directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." *Martin v. New York City Dept. of Soc. Servs., 117 F.R.D. at 71.*

Some of the Defendants' employees may have criminal pasts but that does not affect "their ability to represent other class members." (Defs. [*51] ' Mem. Opp'n Mot. 24.) The past conduct of some of the representative plaintiffs does not touch upon the subject of the lawsuit or affect the adequacy of their representation for other class members. [14] The Court finds without merit Defendants' contention that plaintiffs' "personal histories would obviously become a prime focus of any trial in this matter." (Id.) The Court thus finds counsel and representatives will provide adequate representation of the proposed class.

[14] Defendants exaggerate the records of some of the representative plaintiffs. (Defs.' Mem. Opp'n Mot. 23-24.) That said, Plaintiffs have withdrawn the two individuals with felony convictions as proposed class representatives. (Pls.' Reply Mem. 7.)

**B. 23(b)(3) Requirements**

**1. Predominance**

"The predominance criterion is, in effect, a stricter version of the commonality requirement of *Rule 23(a)(2).*" *Ansoumana, 201 F.R.D. at 89.* Plaintiffs have evidence showing that a number of questions of law and fact exist, [*52] common to all class members. Defendants contend that common questions do not predominate because the Court must inquire as to every employee 1) whether the employee is exempt, and 2) whether employee was deprived of overtime wages by improper editing. Defendants argue that this requires individualized determinations for each employee, and, thus, individual questions predominate.

The Court finds, however, that Plaintiffs have introduced generalized proof on the issue of Defendants' liability. *Noble v. 93 Univ. Place Corp., 224 F.R.D. at 345* (predominance found where "issues that are subject to generalized proof predominate over those issues premised on individualized findings"). Plaintiffs have introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay. This issue predominates over any individual calculations of overtime wages Defendants may owe, if liability is found. As the Noble court noted:

> [T]he class action is based on defendants' alleged policy of requiring employees to work overtime hours without adequate compensation. Thus, to prevail on the merits of this claim, plaintiffs must produce evidence that defendants [*53] implemented an illegal policy with respect to overtime pay. Indeed, the gravamen of the claim is that defendants engaged in a course of conduct that deprived employees of their right overtime pay. Although determinations as to damages, exempt status, and alleged labor agreements will require individualized findings, common liability issues otherwise predominate. As such, these individualized damages do not bar certification.

*224 F.R.D. at 345-46.* The Court finds that common issues predominate over individual issues.

**2. Superiority**

In determining whether a class action is superior to other methods, *Rule 23(b)(3)(A)-(D)* instructs the Court

to consider four factors. The Court finds that the class members' interests in individually controlling the prosecution are minimal. No class members wish to bring or have brought individual actions. Because litigation costs would likely exceed any gains from overtime wage recovery, class members would be unlikely to litigate individually. *Mascol, 2005 U.S. Dist. LEXIS 32634, at *24*. In addition, since some class members are still employees of Defendants', class members may fear reprisal and would not be [*54] inclined to pursue individual claims. *Scott v. Aetna Servs., Inc., 210 F.R.D. at 268*. The Court further finds that "a class action would eliminate the risk that questions of law common to the class will be decided differently in each lawsuit." Id.

Moreover, there is little reason to expect that the difficulties in managing this class action would be any greater than managing individual actions for the 300 *Rule 23* class members. Given the questions of law and fact common to class members, litigating in a common forum provides efficiency and a more suitable use of systemic resources than individual actions. The class action device also allows the Court to be flexible in accommodating Plaintiffs' FLSA claims with state claims. Judge Hellerstein in certifying a class and an FLSA collective action wrote:

> The protections of *Rule 23*, although directed to class actions, can be easily adapted to the management of a collective action under *section 216(b) of the FLSA*. *Federal Rule of Civil Procedure 16*, providing for the "just, speedy, and inexpensive disposition" of all civil cases before a district court, gives me ample discretion [*55] to supervise these proceedings and to take wisdom from the entire body of Civil Procedure, including *Rule 23*, to accomplish those goals.

*Ansoumana, 201 F.R.D. at 89*. The Court finds the class action superior to other methods of adjudicating Plaintiffs' claims.

In conclusion, Plaintiffs proposed class meets the requirements of *Rule 23(b)(3)*. Common questions of law or fact to members of the class predominate over any questions affecting individual members. Further, the class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Fed. R. Civ. P. 23(b)(3)*.

Accordingly, Plaintiffs' motion for class certification is GRANTED. [15]

> 15   The parties do not address the motion for class certification in light of Plaintiffs' fraud claim. The Court likewise finds it unnecessary to undertake such an analysis.

### III. Defendant's Liquidated Damages Contention

Defendants contend that class certification [*56] should be denied because New York Labor Law does not permit class actions claiming liquidated damages unless expressly provided for by the statute giving rise to the cause of action. See *N.Y. C.P.L.R. § 901(b)*; Defs.' Reply Mem. 5. New York law allows Plaintiffs to waive their liquidated damages claim for overtime wage class actions "as long as putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated damages claims." *Mascol v. E&L Transportation, Inc., 2005 U.S. Dist. LEXIS 32634, at *26-27*; see also *Ansoumana, 201 F.R.D. at 95*. The Court sees no problem with Plaintiffs waiving their liquidated damages as long as notice is provided to the *Rule 23* class instructing individuals how to opt-out in order to pursue liquidated damages.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for collective action and class certification is GRANTED. The Clerk of the Court is directed close out this motion.

Dated: New York, New York

September 28, 2006

SO ORDERED

PAUL A. CROTTY

United States District Judge