# Exhibit EE

1 of 1 DOCUMENT

**MARTIN J. HENS, PAUL VAN VOORHEES, DAWNE DOMAGALA, and JENNIFER VITELLO, individually and on behalf of all others similarly situated, Plaintiffs, v. CLIENTLOGIC OPERATING CORPORATION, Defendant.**

05-CV-381S

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

*2006 U.S. Dist. LEXIS 69021*

**September 22, 2006, Decided
September 26, 2006, Filed**

**COUNSEL:** [*1] For Martin J. Hens, Paul Van Voorhees, individually and on behalf of all others similarly situated, Plaintiffs: George A. Hanson, Stueve Siegel Hanson Woody LLP, Kansas City, MO; Justin M. Swartz, Cara Elizabeth Greene, Carmelyn Malalis, Renika Cheraun Moore, Outten & Golden LLP, New York, NY; Jules L. Smith, Blitman & King, Rochester, NY.

For Dawne Domagala, Jennifer Vitello, Plaintiffs: George A. Hanson, Stueve Siegel Hanson Woody LLP, Kansas City, MO; Justin M. Swartz, Cara Elizabeth Greene, Carmelyn Malalis, Renika Cheraun Moore, Outten & Golden LLP, New York, NY.

For ClientLogic Operating Corporation, Defendant: Glenn Edward Murray, Buffalo, NY; Kenneth W. Africano, Robert C. Weissflach, Harter, Secrest and Emery LLP, Buffalo, NY.

**JUDGES:** William M. Skretny, United States District Judge.

**OPINION BY:** William M. Skretny

**OPINION**

**ORDER**

**I. INTRODUCTION**

Plaintiffs, current and former hourly telephone customer service employees, commenced this action on behalf of themselves and others similarly situated on May 31, 2005, seeking unpaid wages from Defendant pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201*. Currently before this Court is [*2] the Plaintiffs' Motion for Conditional Certification as an FLSA Collective Action and for Court Authorized Notice. Plaintiffs also seek discovery of the names and other identifying information of Defendant's current and former employees to facilitate notification. For the reasons that follow, Plaintiffs' motion is granted.

**II. BACKGROUND**

**A. Facts**

Defendant ClientLogic Operating Corporation ("ClientLogic") is a "leading global business process outsourcing provider in the customer care, fulfillment and back office processing industry." (*Goldsberry Dec.,* P 2). ClientLogic employs over 23,000 associates in 52 locations in 14 countries throughout North America, Europe, Asia, Central America and Africa. (*Goldsberry Dec.,* P 2). Currently, ClientLogic employs approximately 7,000 full-time and part-time hourly telephone customer service employees at its 17 call centers in the United States. (*Goldsberry Dec.,* P 7). ClientLogic has promulgated official work, pay and timekeeping policies, (*Goldsberry Dec.,* P 12), including an official "Paid Time Policy," which provides that "[n]onexempt associates are paid for their actual hours worked plus overtime pay as [*3] specified or governed by wage-hour/labor law." (*Goldsberry Dec.,* Ex. A).

Plaintiffs Martin Hens, Paul Van Voorhees, Dawne Domagala, and Jennifer Vitello were employed by ClientLogic as hourly telephone customer service representatives at ClientLogic's call center facilities on Ellicott Street and Hertel Avenue in Buffalo, New York. (*Am. Compl.,* PP 15, 20, 25, 29). Plaintiffs were hired by ClientLogic to work at an agreed hourly rate of pay. (*Am. Compl.,* PP 16, 21, 26, 30). Plaintiffs allege that it has been ClientLogic's willful policy, pattern and/or practice to not pay its employees for time worked for the company's benefit, including, in some cases, time worked in excess of 40 hours a week. (*Am. Compl.,* P 95; *Hens Dec.,* P 3; *Van Voorhees Dec.,* P 3; *Domagala Dec.,* P 3; *Vitello Dec.,* P 3).

Plaintiff Hens alleges that he was instructed during formal training to come into work prior to the start of his shift and to stay after the end of his shift to complete certain tasks. (*Hens Dec.,* P 4). He was advised that he would not be paid for the time he worked before the start of his shift. (*Hens Dec.,* P 4). It was Hens' understanding that he would [*4] be disciplined, written up, or reprimanded if he was not logged on and ready to take calls at the time his shift officially began. (*Hens Dec.,* P 5). Accordingly, he routinely arrived at the ClientLogic facility approximately 20 to 30 minutes before the start of his shift to perform essential tasks such as finding a desk, booting up the computer system, logging into computer applications, checking e-mails and updates, and reviewing the "to do" list of open cases. (*Hens Dec.,* PP 7, 8). Hens alleges that ClientLogic did not pay him for the time he worked before the start of his scheduled shifts. (*Hens Dec.,* P 7).

Plaintiff Voorhees alleges that he performed work for which he was not compensated before and after his regular scheduled shifts and during his unpaid lunch breaks. (*Van Voorhees Dec.,* PP 3, 6, 7, 13, 16). Approximately 2 or 3 times a week during his employment with ClientLogic, after the completion of his scheduled shift, Van Voorhees would end his last customer service call, close out of his computer programs and shut down his computer, a process which took him 5 to 30 minutes to complete. (*Van Voorhees Dec.,* P 13). Approximately 2 or 3 times per week, [*5] Van Voorhees spent five minutes per day, reviewing "Hot News" and company e-mail during his unpaid lunch break. (*Van Voorhees Dec.,* P 16). Van Voorhees was required to check "Hot News" at least twice a day, but he did not have time to read it during his scheduled shift. (*Van Voorhees Dec.,* P 16).

Plaintiff Domagala alleges that she worked after her scheduled shift for approximately 10 minutes per day, 3 or 4 nights a week. (*Domagala Dec.,* P 11). As a Product Specialist, Domagala filled in for her supervisor 2 or 3 times a month. (*Domagala Dec.,* P 11). On those occasions, Domagala worked about 30 minutes after her scheduled shift, after all of the members of her team were "logged out" of the telephone system. (*Domagala Dec.,* P 11). Domagala is confident that her supervisors knew that she worked after her scheduled shift because she advised them that she worked overtime or they saw her working after her shift was over. (*Domagala Dec.,* P 13). Nonetheless, her supervisors told her that she would not be paid for work performed after her scheduled shift. (*Domagala Dec.,* P 13). In addition to working after her shifts, Domagala worked through part of her unpaid [*6] lunch break for an average of 3 to 15 minutes per day, approximately once or twice a week, to finish up phone calls. (*Domagala Dec.,* P 14).

Plaintiff Vitello alleges that her supervisors and managers regularly instructed her to arrive at the call center early to be ready to take calls at the beginning of her shift. (*Vitello Dec.,* P 4). When she complained about not being paid for that time, her supervisor told her that it was her responsibility to arrive early to find seating and get her computer working so that she would be ready to take calls at the start of her scheduled shift. (*Vitello Dec.,* P 4 & 6). Vitello claims that she also performed work after her regularly scheduled shift, sometimes up to 45 minutes, and during her lunch break for which she was not compensated. (*Vitello Dec.,* PP 14, 16). Vitello and the other Plaintiffs saw other employees on her team performing work "off the clock." (*Vitello Dec.,* P 11; *Hens Dec.,* P 11; *Van Voorhees Dec.,* P 11; *Domagala Dec.,* P 9).

**B. Procedural History**

Plaintiffs commenced this action on May 31, 2005, by filing a Complaint in the United States District Court for the Western District of New [*7] York. Plaintiffs amended the Complaint on August 31, 2005. On December 29, 2005, Plaintiffs filed the instant Motion for Conditional Certification as an FLSA Collective Action and for Court Authorized Notice Pursuant to *29 U.S.C. § 216(b)*.[1] This Court heard oral argument on April 20, 2006, and reserved decision at that time.

1   In support of their Motion for Conditional Certification, Plaintiffs filed a memorandum of law, a declaration by Justin M. Swartz, with attached declarations by Raymond Abbott, Brian Anderson, Brandi Bruner, Alexander Cain, Leland Clopton, Brenda Davis, Dawne Domagala, Lisa Duchesne, Brett Feinblatt, Susan George, Gilberto Guemes, Michelle Hall, Chad Harper, Martin Hens, Justin Herring, Sohn Hester, Lau-don Hudguns, Wayne Johnson, Darrell Kirby, Christopher Korbel, Monica Lewis, Garry Lum, Deborah Maggiore, Robert Marsh, Christina Martin, Linda Medina, Daniel Miller, Desiree Miller, William Miller, Stacey Miner, Christopher Moody, Darolyn Nicholls, Christine Olen, Deborah Peck, John Peck, Victor Perez, Deona Pippen, Edward Ralicki, Charles G. Smith, Tamekia Sparks, Marc Spaugh, Christpher Teal, Mary Tillman, Paul Van Voorhees, Jennifer Vitello, Edward Voyzey, Amanda Wagner, Anthony Wilk, and an exhibit, a separately filed declaration by Christopher Moody, a reply memorandum of law, and a reply declaration by Justin M. Swartz with exhibits. Defendant filed a memorandum, a declaration by Ginni Goldsberry with numerous exhibits, and declarations by Lisa Weaver, Jason Flowers, Alexis Whitham, Chuck Moore, Darryl Mouzon, Janice Blue, Lavell Williams, Daphna D. Klein, Tammie Vrooman, and Carolyn Mixon in opposition to Plaintiffs' Motion.

[*8] **III. DISCUSSION**

The FLSA was enacted to "eliminate low wages and long hours," *Lee v. ABC Carpet & Home, 236 F.R.D. 193, 196 (S.D.N.Y. 2006)* (internal citations omitted), to "guarantee [] compensation for all work or employment engaged in by employees covered by the Act," *Reich v. New York City Transit Auth., 45 F.3d 646, 648-649 (2d Cir. 1995)* (internal citations omitted), and to eradicate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *29 U.S.C. § 202(a)*. Under *Section 216(b) of the FLSA*, an employee has a private right of action "to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions." *Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003)* (quoting *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y.1997)*).

An action to recover unpaid wages may be brought "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly [*9] situated," as a collective action. *29 U.S.C. § 216*; *Gjurovich, 282 F. Supp. 2d at 103*. A FLSA collective action differs from a class action under *Rule 23 of the Federal Rules of Civil Procedure*. *Gjurovich, 282 F. Supp. 2d at 103*. "[U]nder the FLSA, potential plaintiffs must 'opt in' to a collective action to be bound by the judgment (and to benefit from it)." *Sbarro, Inc., 982 F. Supp. at 260*. Put another way, an employee is not a party to an FLSA action unless he or she files his or her written consent to become a party plaintiff in the court in which the suit is brought. *Sbarro, 982 F. Supp. at 260*. Moreover, a named plaintiff in a collective action need not demonstrate other factors -- numerosity, commonality, typicality, and adequacy of representation -- which are required to bring a class action. *Scholtisek v. Eldre Corp., 229 F.R.D. 381, 386 (W.D.N.Y. 2005)*.

To determine whether a lawsuit should proceed as a collective action, courts employ a two-step process. First, the court must determine based on the pleadings, affidavits and [*10] declarations, if the named plaintiff has demonstrated that the proposed class members are "similarly situated" to him or her. *Gjurovich, 282 F. Supp. 2d at 104*. To meet his or her burden, a plaintiff need only make a "modest factual showing" that he or she and the proposed class members "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Sbarro, 982 F. Supp. at 261*). Plaintiff's burden at this juncture is minimal, "especially since the 'determination that potential plaintiffs are similarly situated' is merely a 'preliminary' one." *Gjurovich, 282 F. Supp. 2d at 104* (quoting *Sbarro, 982 F. Supp. at 261*).

If the plaintiff meets the "similarly situated" requirement, a court may certify the class as a collective action, *ABC Carpet & Home, 236 F.R.D. at 197*; *see also Masson v. Ecolab, Inc., 2005 U.S. Dist. LEXIS 18022, 04 Civ. 4488, 2005 WL 2000133, at *12-14 (S.D.N.Y. Aug. 18, 2005)*, and authorize notification of potential class members to permit them to "opt-in" to the collective action. *See Scholtisek, 229 F.R.D. at 387*.

The second step of a court's collective [*11] action determination occurs after discovery. At that juncture, the court examines the evidentiary record to determine

whether the "opt-in" plaintiffs are, in fact, similarly situated to the named plaintiff. *See ABC Carpet & Home, 236 F.R.D. at 197*. If the evidence suggests that the "opt-in" plaintiffs are similarly situated, the collective action may proceed to trial. *Id.; Scholtisek, 229 F.R.D. at 387*. If they are not, the court must decertify the class, dismiss the claims of the "opt-in" plaintiffs without prejudice, and adjudicate only those claims brought by the class representative. *ABC Carpet & Home, 236 F.R.D. at 197*; *Scholtisek, 229 F.R.D. at 387*.

In the instant case, this Court finds that the named Plaintiffs have satisfied their burden of showing that certain proposed class members are "similarly situated" to them. As an initial matter, Plaintiffs have alleged that Defendant has a common policy, pattern and/or practice to deny wages to its hourly telephone customer service employees, including overtime wages, for work that they were required to perform. (*Am. Compl.,* P 95; *Hens Dec.,* P 3; *Van Voorhees* [*12] *Dec.,* P 3; *Domagala Dec.,* P 3; *Vitello Dec.,* P 3). Specifically, Plaintiffs have alleged that they were required to perform essential tasks before and after their scheduled shifts, and during lunch, without compensation. (*Hens Dec.,* PP 4 & 5; *Van Voorhees,* PP 13 & 16; *Domagala Dec.,* PP 11, 13, 14; *Vitello Dec.,* PP 4, 6, 14, 16).

Moreover, this Court finds that Plaintiffs have demonstrated a "factual nexus between [their] situation and the situation of other current and former employees" of ClientLogic, who potentially were also denied regular and overtime wages. *Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998)*; *see also Gjurovich, 282 F. Supp. 2d at 104*. Numerous current and former ClientLogic employees have already consented to become party plaintiffs in this case and have declared that they were also denied wages for work that they performed for the company. At the time of oral argument, Defendant indicated that a majority of the proposed plaintiffs' declarations, approximately 47, were filed by former employees of ClientLogic's centers in Buffalo, New York, on Ellicott Street and Hertel Avenue. ( [*13] *Tr.* at 32). [2] Another 15 declarations were submitted by employees from six other ClientLogic facilities in Norman and Bartlesville, Oklahoma; Kingston, South Carolina; Starkville, Mississippi; Lake City, Florida; and Las Vegas, Nevada. (*Tr.* at 32).

> 2   "Tr." refers to the transcript of the oral argument on the instant motion, which took place before the undersigned on April 20, 2006. The transcript is maintained in paper form in the Clerk's office. (Docket No. 325).

In opposition to Plaintiffs' Motion, Defendant argues that it is ClientLogic's official policy to pay nonexempt employees, including telephone customer service employees, "their actual hours worked plus overtime pay as specified or governed by wage-hour/labor law," (*Goldsberry Dec.,* Ex. A), and that isolated deviations from this lawful policy cannot possibly constitute an unlawful common policy or plan. However, the substantial number of declarations submitted by potential "opt-in" plaintiffs belie Defendant's suggestion that the wage violations [*14] were isolated rather than systemic at certain ClientLogic facilities.

Defendant also argues that ClientLogic could not have an unlawful policy of uniformly denying overtime pay because several of the named Plaintiffs received overtime compensation. (*Goldsberry Dec.,* Exs. G, H, I, J). However, this Court need not resolve whether Plaintiffs were actually denied compensation to determine if conditional certification under the FLSA is appropriate. It is axiomatic that "[o]nce the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff." *Gjurovich, 282 F. Supp. 2d at 105*. At this juncture, this Court "need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here." *Sbarro, 982 F. Supp. at 262*; *see also Jacobsen v. Stop & Shop Supermarket Co., 2003 U.S. Dist. LEXIS 7988, 02 Civ. 5915(DLC), 2003 WL 21136308, at *1 (S.D.N.Y. May 15, 2003)*. "The ultimate determination regarding the merits of the case, and whether the class is properly situated - which requires a more [*15] "stringent" inquiry - is made later in the litigation process, after more thorough discovery." *Gjurovich, 282 F. Supp. 2d at 105*.

Plaintiffs seek to conditionally certify this class as a collective action on behalf of "all hourly telephone customer service employees who worked in ClientLogic's call center facilities between May 31, 2002, and the mailing of the notice." (*Pl.'s Not. of Mot.,* p. 1). This Court finds that Plaintiff's proposed class is overly broad in that it includes all of ClientLogic's domestic facilities, and includes a time frame in which ClientLogic did not own or operate some of those facilities. Accordingly, the

certified class to receive notice will be limited to current and former employees at those ClientLogic facilities where Plaintiffs have made some showing that potential violations of the FLSA have occurred. Based on the declarations submitted by Plaintiffs, those facilities include the two call centers in Buffalo, New York, and those in Norman and Bartlesville, Oklahoma; Kingston, South Carolina; Starkville, Mississippi; Lake City, Florida; and Las Vegas, Nevada.

The record reflects that three of these enumerated facilities - Norman, [*16] Oklahoma; Starkville, Mississippi; and Lake City, Florida - were wholly owned and operated by an unrelated company, Service Zone, until ClientLogic acquired them on December 20, 2003. (*Def.'s Mem.,* pp. 8-9, fn. 6). Accordingly, notice will be further limited to the hourly customer service employees who worked at those three facilities between December 21, 2003, and the mailing of the notice.

To facilitate notice, Plaintiffs have requested that Defendant provide the name, last known mailing address, last known telephone number, Social Security number, work location, and dates of employment of the certified class members. Most of this information is essential to identifying and notifying potential "opt-in" plaintiffs, and should be disclosed. In the interest of privacy, however, Defendant will not be required to release the Social Security numbers of the certified class members. In the view of this Court, the potential certified class members' interest in keeping such information confidential is more important than facilitating Plaintiffs' search for those members.

### IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Conditional Certification as an FLSA Collective [*17] Action and for Court Authorized Notice is granted. Notice shall be sent to all hourly telephone customer service employees who worked in ClientLogic's call center facilities in Buffalo, New York; Bartlesville, Oklahoma; Kingston, South Carolina; and Las Vegas, Nevada between May 31, 2002, and the mailing of the notice; and those employed at ClientLogic's call centers in Norman, Oklahoma; Starkville, Mississippi; and Lake City, Florida between December 21, 2003, and the mailing of the notice.

### V. ORDERS

IT HEREBY IS ORDERED that Plaintiffs' Motion for Conditional Class Certification and for Court Authorized Notice (Docket No. 285) is GRANTED.

FURTHER, that the proposed class is certified pursuant to *Section 216(b) of the FLSA*, consistent with the foregoing decision.

FURTHER, that notice shall be sent to the certified class as defined in the foregoing decision.

SO ORDERED.

Dated: September 22, 2006

Buffalo, New York

/s/ William M. Skretny

United States District Judge