<u>ORAL ARGUMENT IS REQUESTED</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X

SIRI DIAZ, CAROLYN SIEGEL, TALIA        :
BUMB, BLERTA VIKKI, DANIELLE                      Case No. 07 Civ. 8718 (RMB)(THK)
OWIMRIN, on behalf of themselves and    :
all others similarly situated,

                                              :

                 Plaintiffs,

                                              :

          -against-

                                              :

SCORES HOLDING COMPANY, INC.; GO
WEST ENTERTAINMENT, INC. a/k/a            :
SCORES WEST SIDE; and SCORES
ENTERTAINMENT, INC., a/k/a SCORES    :
EAST SIDE,

                 Defendants.        :
————————————————————X


DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR CROSS-MOTION TO DISMISS OR ALTERNATIVELY
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND
<u>COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA</u>


GREENBERG TRAURIG, LLP

Jerrold F. Goldberg (JG-7471)
Neil A. Capobianco (NC-5262)

200 Park Avenue
New York, New York  10166
(212) 801-9200

*Attorneys for Defendants Scores Holding
Company, Inc. and Go West Entertainment,
Inc. a/k/a Scores West Side*

On the brief:

    Lauren B. Tanen
    Irika A. Sargent

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................iv

PRELIMINARY STATEMENT ......................................................................1

ARGUMENT ...............................................................................................2

I.      PLAINTIFFS' AMENDED COMPLAINT MUST BE
        DISMISSED AS TO SCORES HOLDING AND AS TO
        ANY CLUBS OTHER THAN GO WEST ...........................................2

        A.      Scores Holding Should Be Dismissed From Plaintiffs' Action
                Because Scores Holding Is Not A Joint Employer Of The Plaintiffs ...........2

        B.      Plaintiffs' Complaint Should Be Dismissed Insofar As It
                Seeks Relief For Any Persons Not Employed At Go West .........................5

II.     The Plaintiffs' NYLL Class Action Claims Must Be
        Dismissed as Inherently Inconsistent With the FLSA ..............................6

        A.      Allowing Plaintiffs To Proceed With Their State Wage
                and Hour Opt-Out Class Claims Would Contravene the
                Congressionally-Mandated Written Consent
                Requirement of FLSA Section 16(b) ..............................................6

        B.      Plaintiffs' State Law Class Claims Under Rule 23 Violate
                The Rules Enabling Act Because They Abridge The Substantive
                Rights of Plaintiffs To Have Their Overtime Claims Adjudicated
                Only With Their Written Consent ..................................................9

        C.      Since The Members of the Putative Rule 23 Class Are
                Mostly Transient, Unfindable, and Therefore Unlikely to Receive
                Notice, They Will Not Have an Effective Opportunity To Opt Out ..............11

        D.      The Court Should Decline To Exercise Supplemental
                Jurisdiction Over Plaintiffs' New York Labor Law Claims ..........................12

III.    PLAINTIFFS' MOTION FOR CONDITIONAL
        CERTIFICATION AND COURT AUTHORIZED
        NOTICE SHOULD BE DENIED ......................................................14

A.  Plaintiffs Must Provide a Factual Basis for Demonstrating That Purportedly Similarly Situated Employees are Subject to Common Employment Policies and Practices.................................................................14

B.  Plaintiffs Have Submitted No Evidence Regarding Policies and Practices at Clubs Outside New York or at the East Side Club .............15

   1.  There is Absolutely No Evidence of Any Employment Policies or Practices at Clubs Outside New York.............15

   2.  There is No Specific Evidence of Uniform Policies and Practices at the East Side Club, Let Alone Policies and Practices Between Clubs ....................................17

C.  A Collective Action Against Go West Is Inappropriate .................................17

   1.  There is  Insufficient Evidence of Uniform Policies and Practices at Go West............................................................17

   2.  The Court Should Not Grant Conditional Certification Where the Analysis Will Necessitate Highly Individualized Determinations......................................................18

   3.  The Determination of Plaintiffs' Claims Will Require Individualized Factual Analyses of Their Experiences Regarding Compensation, Uniforms, and Diamond Dollars ..................18

      a.  There Was No Common Usage of Diamond Dollars ........................18

      b.  There Was No Common Policy Concerning Uniforms.....................20

      c.  Plaintiffs' Minimum Wage Claims Require A Detailed and Individualized Factual Analysis ....................................21

      d.  Plaintiffs' Cannot Demonstrate a Uniform Policy of Requiring and Not Paying Overtime Pay ..........................22

      e.  The Issue of the Alleged Misclassification of Dancers Is Wholly Different from Issues Raised by the Other Plaintiffs and Will Require Highly Individualized Analysis .............22

D.  Assuming Arguendo That Conditional Certification Were Granted, Plaintiffs' Proposed Notice Is Not Appropriate For Distribution To The Putative Class .........................................................24

1.  Plaintiffs' Proposed Notice is Not Neutral ...............................................25

2.  The Court Should Appoint A Neutral Third -Party
    Administrator to Oversee and Facilitate
    Notice of Collective Action ...................................................................26

3.  The Notice Should Not Be Sent to Any
    Person Employed Prior to .......................................................................27

4.  Plaintiffs' Description of the Claims and
    Collective Action Class is Overbroad and Misleading ...........................28

5.  The Notice Fails to Provide Putative Class Members
    with Information About Participation In the Action................................29

6.  The Notice Should Not Be Sent To Those
    Engaged Solely as Dancers......................................................................29

CONCLUSION...................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Acquino v. Home Depot U.S.A., Inc.,*
No. 06 CV 4100, 2006 WL 2023539 (D.N.J. July 18, 2006) ..................................... 13

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ......................................................................................... 9

*Anglada v. Linens 'N Things, Inc.,*
No. 06 CV 12901, 2007 WL 1552511 (S.D.N.Y. May 29, 2007) ........................... 16

*Archer v Sullivan County,*
129 F.3d 1263, 1997 WL 720406 (6th Cir. 1997) .............................................. 27

*Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305 (S.D.N.Y. 1998) .......................... 20

*Brock v. Superior Care, Inc.,* 840 F.2d 1054 (2d Cir. 1988) ................................... 23

*Cameron-Grant v. Maxim Healthcare Services, Inc.,*
347 F.3d 1240 (11th Cir. 2003) ................................................................... 7, 11

*Carlson v. Leprino Foods Co.,*
No. 05 CV 798, 2006 WL 1851245 (W.D. Mich. June 30, 2006) ........................... 16

*Carter v. Dutchess Cmty. Coll.,*
735 F.2d 8 (2d Cir. 1984) ................................................................................. 4

*Danneskjold v. Hausrath,*
82 F.3d 37 (2d Cir. 1996) ................................................................................. 4

*De Luna-Guerrero v. The North Carolina Growers's Assoc., Inc.,*
338 F. Supp. 2d 649 (E.D.N.C. 2004) ............................................................. 13

*Diaz v. Electronics Boutique of America, Inc.,*
No. 04 CV 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..................... 15, 18

*Evancho v. Sanofi-Aventis U.S. Inc.,*
No. 07 CV 2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007) ........................ 7, 8, 24

*Flores v. Osaka Health Spa, Inc.,*
No. 05 CV 962, 2006 WL 695675 (S.D.N.Y. March 16, 2006) ........................... 15

*Glewwe v. Eastman Kodak Co.,*
No. 05 CV 6462T, 2006 WL 1455476 (W.D.N.Y. May 25, 2006) ......................... 13

*Gulf Oil Co. v. Bernard,*
452 U.S. 89, 100 (1981) ................................................................................. 25

*Hatfield v. Oak Hill Banks,*
115 F. Supp. 2d 893 (S.D. Ohio 2000) ............................................................... 9

*Herring v. Hewitt Assocs. Inc.,*
No. 06 CV 267, 2006 WL 2347875 (D.N.J. Aug. 11, 2006) ................................. 8

iv

*Himmelman v. Cont'l Cas. Co.,*
  No. 06 CV 166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006))................................................ 8

*Hoffman v. Sbarro, Inc.,*
  982 F.Supp. 249 (S.D.N.Y. 1997) ................................................................................... 14

*Hoffman-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989).................................................................................. 10, 24, 25

*Johnson v. Nyack Hosp.,*
  86 F.3d. 8 (2d Cir. 1996)................................................................................................. 27

*LaChappelle v. Owens-Illinois, Inc.,*
  513 F.2d 286 (5th Cir. 1975) ........................................................................................... 8

*Lee v. ABC Carpet & Home,*
  186 F.Supp.2d 447 (S.D.N.Y. 2002)......................................................................... 22, 23

*Lenoble v. Best Temps, Inc.,*
  352 F. Supp.2d 237 (D. Conn. 2005)................................................................................ 4

*Leuthold v. Destination America, Inc.,*
  224 F.R.D. 462 (N.D. Cal 2004)..................................................................................... 12

*Madrigal v. Green Giant Co.,*
  No. C-78-157, 1981 WL 2331 (E.D. Wash. July 27, 1981) ............................................. 9

*Masson v. Ecolab, Inc.,*
  No. 04 CV 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ................................... 14

*Matson v. 7455, Inc.,*
  No. CV 98-788-HA, 2000 WL 1132110 (D.Or. Jan. 14, 2000) ..................................... 23

*McClain v. Leona's Pizzeria, Inc.,*
  222 F.R.D 574 (N.D.Ill. 2004)........................................................................................ 12

*Moeck v. Gray Supply Corp.,*
  No. 03 CV 1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006)................................................. 8

*Morales v. Plantwork , Inc.,*
  No. 05 CV 2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ................................... 14, 15

*Moran v. GTL Construction, LLC,*
  No. 06 CV 168, 2007 WL 2142343 (July 24, 2007)...................................................... 27

*Neary v. Metropolitan Property and Casualty Insurance Co.,*
  472 F. Supp. 2d 247 (D. Conn. 2007)............................................................................. 13

*Otto v. Pocono Health Sys.,*
  457 F. Supp. 2d 522 (M.D. Pa. 2006) .............................................................................. 8

*Patraker v. Council on the Environment of NYC,*
  No. 02 CV 7382, 2003 WL 22703522 (S.D.N.Y. Nov. 17, 2003) ........................... 27, 28

*Prizmic v. Armour, Inc.,*
  No. 05 CV 2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006)................................... 15

v

*Rodriguez v. The Texan,*
   No. 01 Civ. 1478, 2001 WL 1829490 (N.D. Ill. Mar. 7, 2001) .................................................. 8

*Seever v. Carrols Corp.,*
   No. 02 CV 6580L, 2007 WL 4409776 (W.D.N.Y. Dec. 17, 2007) ......................................... 16

*U.S. v. Silk,*
   331 U.S. 704 (1947) ....................................................................................................... 22, 23

*Viciedo v. New Horizons Computer Learning Ctr.,*
   246 F. Supp.2d 886 (S.D. Ohio 2003) ........................................................................ 27

## **Statutes and other Authorities**

H.R. Rep. No. 80-71 (1947) ................................................................................................... 7

Secretary of Labor Amicus Letter Brief in
   *Long John Silver Rests., Inc. v. Cole*
   No. 6:05-CV-3039 (D.S.C. Filed Dec. 13, 2005) ................................................... 10

28 U.S.C. § 1367(c) ............................................................................................................. 12

28 U.S.C. § 2072(b) ......................................................................................................... 6, 9

29 U.S.C. § 203(m) ............................................................................................................. 21

29 U.S.C. § 216(b) ............................................................................................................... 6

29 U.S.C. § 251(a)(l) .......................................................................................................... 7

29 U.S.C. § 255(a) ............................................................................................................... 5

*NY 238,667,375v1 2/1/2008*

## PRELIMINARY STATEMENT

Defendants Scores Holding Company Inc. ("Scores Holding") and Go West Entertainment, Inc. ("Go West"), respectfully submit this memorandum of law: (1) in support of their cross-motion to dismiss or alternatively for summary judgment with respect to Scores Holding and the state law claims against Go West, and (2) in opposition to Plaintiffs' motion for conditional certification and court-authorized notice pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").

Plaintiffs' Amended Complaint[1] should be dismissed as against Scores Holding since it is not a joint employer of the putative class members. Scores Holding is a mere licensor of "Scores" trademarks and has no club-level authority or control over the class members. Plaintiffs also cannot assert claims against the east side club since it is not named as a defendant and Plaintiffs have not offered evidence that its practices and those of Go West were common.

Plaintiffs' state law claims under New York Labor Law ("NYLL") should also be dismissed because they are inherently inconsistent with the Congressionally-mandated opt-in procedure applicable to FLSA collective actions, would violate the Rules Enabling Act, transient class members are unlikely to receive proper notice, and therefore the Court should decline to exercise supplemental jurisdiction over them.

---

[1] On October 9, 2007, Plaintiffs filed a Complaint in this Court alleging violations of the NYLL and the FLSA by Scores Holding, Go West and Scores Entertainment, Inc. On or about November 6, 2007, Plaintiffs served Scores Holding and Go West with an Amended Complaint adding allegations as to a new and distinct group of persons, specifically persons engaged as dancers. Plaintiffs allege, purportedly pursuant to the FLSA, that Go West: (1) failed to pay the minimum wage (seventh count), overtime (eight count), (2) required uniform expenses (ninth count), and (3) committed recordkeeping violations (tenth count). Plaintiffs further allege, purportedly pursuant to the NYLL, that Go West: (1) failed to pay minimum wage (first count), overtime (second count), and spread-of-hours (third count), (2) made unlawful wage deductions (fourth count), (3) failed to reimburse required uniform expenses (fifth count), and (4) committed recordkeeping violations (sixth count).

Plaintiffs' motion for conditional certification and court-authorized notice should be denied. Plaintiffs have failed to provide a factual basis demonstrating FLSA-relevant policies and practices common to all putative class members. Plaintiffs offer no evidence for clubs outside New York and insufficient evidence for the east side club.

Finally, a collective action against Go West is inappropriate since Plaintiffs have failed to demonstrate common policies or practices capable of collective action treatment. Plaintiffs cannot even demonstrate common policies or practices amongst themselves. Indeed, the FLSA issues raised by Plaintiffs require highly fact-specific individualized inquiry and analysis.

## ARGUMENT

## I. PLAINTIFFS' AMENDED COMPLAINT MUST BE DISMISSED AS TO SCORES HOLDING AND AS TO ANY CLUBS OTHER THAN GO WEST

### A. Scores Holding Should Be Dismissed From Plaintiffs' Action Because Scores Holding Is Not A Joint Employer Of The Plaintiffs

The Court should dismiss Plaintiffs' action against Scores Holding because Scores Holding is a mere licensor of the "Scores" name and does not exercise club-level operational control over the employees and dancers. While Plaintiffs try to lump all the defendants into one collective entity that they call "Scores," the licensing agreements reveal that Scores Holding is not an employer or joint employer of any club-level employee like the Plaintiffs.

Scores Holding is a publicly-traded company that holds the intellectual property rights to the name "Scores" which it licenses to Entertainment Management Services, Inc., which in turn sublicenses the use of the "Scores" name to individual nightclubs. Smith Decl. ¶¶ 2-5 & Ex. A.[2]

---

[2] References to the accompanying record are cited herein as follows:

| | |
|---|---|
| "AC" | Plaintiffs' Amended Complaint (Samant Decl. Ex. B). |
| "Bumb Dep." | Deposition transcript of Plaintiff Talia Bumb (Sargent Decl. Ex. 4). |
| "Samant Decl." | Declaration of Sanjana Samant (accompanying Pls' Motion). |
| "Sargent Decl." | Declaration of Irika Sargent (annexed to Defs' Notice of Cross-Motion). |
| "Siegel Dep." | Deposition transcript of Plaintiff Carolyn Siegel (Sargent Decl. Ex. 3). |
| "Smith Decl." | Declaration of Curtis Smith (annexed to Defs' Notice of Cross-Motion). |

The trademarks also include trademarks for "Diamond Dollars" which function as a system of payment pursuant to the rules of a particular club. Smith Decl. ¶ 2. In contrast, Go West, one of these sub-licensees, has, since March 1, 2004, been the owner and operator of an adult-entertainment nightclub and restaurant known as "Scores West" located at 533-535 West 27th Street in Manhattan. *Id.* at ¶ 6 & Ex. B. Scores Entertainment, Inc. – which has not appeared in this action – has not operated a "Scores" club since it ceased operating the east side club on September 30, 2003. *Id.* at ¶ 7.[3]

Pursuant to the license agreement, Go West pays a royalty based on its gross revenue for the privilege of using the "Scores" name at its nightclub and on the sale of commercial merchandise. Smith Decl. ¶ 8. The license agreements do not authorize or allow Scores Holding to exercise any control over the terms or conditions for club-level employees or independent contractors. Nor do the license agreements authorize or allow Scores Holding to have any say in the payroll practices used at the club level. *Id.* at ¶ 9. While a sub-licensee like Go West may use the Diamond Dollars trademark, the license agreements do not require any specific financial arrangement concerning the use of Diamond Dollars. It is up to the individual sub-licensee to determine its own rules, practices, and financial incentives for the Diamond Dollars used in that particular club for customers, employees, and independent contractors. *Id.* at ¶ 10.

The marketing control that Scores Holding needs to exercise under its licensing agreements to preserve the value, goodwill and reputation of the Scores trademarks (Smith Decl. Ex. 9) has no bearing on the terms and conditions imposed at the club level upon employees or independent contractors. Neither the Complaint nor Plaintiffs' motion papers provide a scintilla

---

"Vikki Dep."            Deposition transcript of Plaintiff Blerta Vikki (Sargent Decl. Ex. 5).
[3] Plaintiffs have not named the entity which has operated the east side club since October 1, 2003, despite having knowledge thereof. *See* Samant Decl. Ex. I at ¶ 5 & Ex. M at ¶¶ 51-52.

of evidence to suggest that a joint employer relationship between Scores Holding and any nightclub exists with respect to the Plaintiffs.[4]

In determining whether entities are joint employers under the FLSA, the Court must evaluate the "economic reality" of the employment relationship, which includes inquiries into whether the alleged employer:  (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984).  *See Danneskjold v. Hausrath*, 82 F.3d 37, 43 (2d Cir. 1996) (applying *Carter* test to FLSA).  Significantly, as a mere licensor, Scores Holding cannot be a joint employer.  *Lenoble v. Best Temps, Inc.*, 352 F. Supp.2d 237, 246 (D. Conn. 2005) (***as a matter of law***, entity that merely licensed its trade name, symbols, and logos, and exercised no control over the hiring, firing, conduct or payroll of the licensee was not a joint employer).

With respect to the club-level servers, cocktail servers, bartenders, and dancers that Plaintiffs' attorneys seek to represent, Plaintiffs cannot seriously contend that Scores Holding had the power to hire and fire, supervised or controlled work schedules or conditions, determined payroll policies, or maintained records.  At a minimum, the licensing agreements make clear that Scores Holding did not have any control over these club-level responsibilities.  The agreements do not authorize or allow Scores Holding any operational say in how the servers, bartenders, and dancers will be paid.  The fact that Scores Holding licenses the "Diamond Dollars" trademarks to the individual clubs and that Diamond Dollars may make up a portion of Plaintiffs'

---

[4] While there are clubs in cities other than New York that have licensed the name "Scores," neither Scores Holding nor Go West have any role in determining employment policies or payroll practices of those clubs or have any control over the conditions of employment of the employees at such clubs.  Plaintiffs' counsel was so advised of that fact in a letter from counsel for two of those clubs.  Sargent Decl. Ex. 1.

compensation does not suggest – much less establish – that Scores Holding has any involvement whatsoever in the rates or methods of payment applied by the sub-licensee clubs.

At a minimum, nothing in the license agreements (Smith Decl. Exs. A-B), or in the Plaintiffs' declarations (Samant Decl. Exs. C-G), or in the Scores Holding web pages (Samant Decl. Exs. I-J) shows that Scores Holding is a joint employer of the Plaintiffs. Nor does any evidence suggest that Scores Holding dictates any "common policy" on how persons who work for the various clubs are to be compensated vis-à-vis Diamond Dollars.

Since Scores Holding cannot be deemed a "joint employer" of the Plaintiffs, Scores Holding should be dismissed from this action.

**B.    Plaintiffs' Complaint Should Be Dismissed Insofar As It
Seeks Relief For Any Persons Not Employed At Go West**

Plaintiffs' Amended Complaint should be dismissed to the extent it seeks relief for, or representative status on behalf of, persons employed at any club other than Go West – that is, at "night clubs in New York City (...on the East Side ...), Chicago, Las Vegas and New Orleans" (AC ¶¶ 33, 70). Plaintiffs do not allege any facts which would establish that Go West has any employment relationship with persons engaged as employees or dancers at any club other than Go West (AC ¶ 33). Rather, those clubs are licensees of the "Scores" name and independently exercise employment control over the persons working at that club. Accordingly, employees engaged at the east side club, and at clubs outside of New York City, are not subject to Go West's employment conditions, and, to the extent that the Amended Complaint seeks relief for such persons, it must be dismissed.

Further, the fact that plaintiffs have named as a defendant Scores Entertainment, Inc. – which ceased operating the east side club on September 30, 2003 – cannot justify continuing the FLSA action, which is subject to, at most, a three year statute of limitations (29 U.S.C. § 255(a)),

as to the east side club employees and dancers. Therefore, the Amended Complaint, as it relates to employees or dancers at the east side club or outside New York City, must be dismissed.

## II. THE PLAINTIFFS' NYLL CLASS ACTION CLAIMS MUST BE DISMISSED AS INHERENTLY INCONSISTENT WITH THE FLSA

Plaintiffs' claims under the NYLL (first through sixth counts) – which they seek to prosecute as a Rule 23 class action – should be dismissed because they irreconcilably conflict with federal law.

First, Plaintiffs cannot bring federal wage and hour claims on an opt-out class basis under Rule 23 because doing so contravenes the FLSA's opt-in requirement. Second, Plaintiffs' attempt to pursue an opt-out class action on their state law overtime claims contravenes the Rules Enabling Act ("REA"), which prohibits the application of a rule of practice and procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Finally, because many of the putative class members are transient, unfindable, and would not receive notice of suit, it would be a travesty of justice for their rights to be adjudicated in their absence. While the dancers have historically been treated as independent contractors – and have filed taxes on such basis – any attempt to change that status without their knowledge or consent should be avoided. Accordingly, Plaintiffs' state law class action claims should be dismissed.

### A. Allowing Plaintiffs To Proceed With Their State Wage and Hour Opt-Out Class Claims Would Contravene the Congressionally-Mandated Written Consent Requirement of FLSA Section 16(b)

Section 16(b) of the FLSA expressly limits the scope of representative class actions for minimum wage and overtime pay by requiring potential plaintiffs to affirmatively **consent in writing** to the adjudication of their FLSA rights. *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In fact, Congress specifically amended the FLSA in 1947 to ban opt-out class actions in order to avoid having

worker rights under the FLSA adjudicated *in absentia*. As Congress explained, unless plaintiffs
are prevented from aggregating claims under the opt-out class action device, "the payment of . . .
liabilities would bring about financial ruin of many employers ... [and] the courts of the country
would be burdened with excessive and needless litigation." Portal-to-Portal Act of 1947
§ 1(a)(1), (7), codified at 29 U.S.C. § 251(a)(l), (7). Congress disapproved of class action
discovery practices, particularly the burden on the employer to produce information regarding
each and every employee. As the relevant House Committee report put it:

> The procedure in these suits follows a general pattern. A petition is filed
> under section 16(b) ... by one or two employees on behalf of many others.
> To this is attached interrogatories calling upon the employer to furnish
> specific information regarding each employee during the entire period of
> employment. The furnishing of this data alone, is a tremendous financial
> burden to the employer.

H.R. Rep. No. 80-71, at 4 (1947), *reprinted in* 1947 U.S.C.C.A.N. 1029. Congress intended to
free employers from the burden of litigating wage and hour claims against absent class members.
Congress's goal in adding the opt-in provision was to prevent collective actions "from being
brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit."
*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003). By
attempting to litigate wage and hour claims on an opt-out class basis under Rule 23, Plaintiffs are
improperly attempting to sidestep the Congressional mandate that group wage and hour claims
should be adjudicated, if at all, through the opt-in mechanism.

For this reason, many courts – in 2006 and 2007 alone – have dismissed state law
overtime claims sought to be brought as opt-out class actions as "inherently incompatible" with
the FLSA's written consent requirement. *Evancho v. Sanofi-Aventis U.S. Inc.,* No. 07 CV 2266,
2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) ("Plaintiffs, however, are not permitted to
circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon

state statutes similar to the FLSA, as this would undermine Congress's intent to limit these types of claims to collective actions").

In *Evancho*, the court rejected plaintiffs' attempt to maintain an overtime claim under the Pennsylvania Minimum Wage Act. The court held that the FLSA collective action opt-in procedure conflicted with the state statute and concluded that "plaintiffs cannot simultaneously bring a Rule 23 state law class action and an FLSA collective action for overtime compensation." *Evancho*, 2007 WL 4546100, at *5). Similarly, in *Moeck*, the court rejected plaintiffs' attempt to maintain a New Jersey state law overtime claim as an opt-out class action under Rule 23. *Moeck v. Gray Supply Corp.*, No. 03 CV 1950, 2006 WL 42368, at *15-16 (D.N.J. Jan. 6, 2006). The court held: "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." *Id.* at *15 (citations omitted). The court further ruled that "[a]llowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA would undermine Congress's intent to limit these types of claims to collective actions." *Id.* at *16. Other recent decisions have reached the same conclusion. *See Himmelman v. Cont'l Cas. Co.*, No. 06-166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006)(dismissing state law claims as "inherently incompatible" with the FLSA opt-in procedure); *Herring v. Hewitt Assocs. Inc.*, No. 06 CV 267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (plaintiff's state law class action seeking overtime pay is "legally incompatible" with the FLSA opt-in requirement).

The United States District Court for the Middle District of Pennsylvania analyzed the trio of decisions in *Moeck*, *Herring*, and *Himmelman*, and concluded that it would follow the "clear path being blazed by our sister district court as well as the direction taken by some of our sister circuits." *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006) (citing

*LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (Section 216(b) and Rule

23 are "mutually exclusive and irreconcilable"). *See also Rodriguez v. The Texan,* No. 01 Civ.

1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001) ("That policy [of opting in under the

FLSA] and the underlying congressional intent would be thwarted if a Plaintiffs were permitted

to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar

state statutes that lack such an opt-in requirement"); *Madrigal v. Green Giant Co.*, No. C-78-

157, 1981 WL 2331, at *3 (E.D. Wash. July 27, 1981) (dismissing state law class claims that

were based on violations of the FLSA, ruling that, "[i]f such a result were permitted, the

statutory requirements of the FLSA would effectively be gutted"); *Hatfield v. Oak Hill Banks*,

115 F. Supp. 2d 893, 898 (S.D. Ohio 2000) (holding that plaintiffs may not maintain state law

class claim where allowing plaintiffs to do so would "subvert the will of Congress" because an

analogous federal law did not permit class actions).

      In view of the foregoing, the Court should dismiss Plaintiffs' state law wage and hour

class claims because these claims irreconcilably conflict with the express written opt-in

requirements established by Congress for representative actions under the FLSA.

**B.     Plaintiffs' State Law Class Claims Under Rule 23 Violate The Rules
Enabling Act Because They Abridge The Substantive Rights of Plaintiffs
To Have Their Overtime Claims Adjudicated Only With Their Written Consent**

      Litigating Plaintiffs' state law wage and hour claims under Rule 23's opt-out procedure

would also violate the Rules Enabling Act ("REA"). The REA provides that the application of

the federal rules of civil procedure – which includes Rule 23 – "shall not abridge, enlarge or

modify any substantive right." 28 U.S.C. § 2072(b). Rule 23 is a procedural rule, which creates

no substantive rights. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997) ("[We

are] mindful that Rule 23's requirements must be interpreted in keeping with Article III

constraints, and with the Rules Enabling Act").

Conversely, section 16(b) of the FLSA creates a substantive right in employees to have their claims adjudicated only following the court filing of their written consent. As the United States Secretary of Labor recently explained:

> Section 16(b) of the FLSA unambiguously provides employees the right not to have their statutory claims litigated without their written consent. The Secretary, as the official responsible for the administration of the FLSA (*see* 29 U.S.C. 204), has a significant interest in protecting this clearly delineated employee right.    * * * *
> The advance written consent requirement, as distinguished from procedural provisions in the FLSA, goes to an employee's fundamental right not to be included as a plaintiff in a lawsuit or arbitration. Thus, in the Secretary's view, the right to participate in a collective action only upon submission of one's written consent is a substantive right, and therefore cannot be waived.

Secretary of Labor Amicus Letter Brief in *Long John Silver's Rests., Inc. v. Cole*, No. 6:05-CV-3039 (D.S.C. Filed Dec. 13, 2005) (*see* Sargent Decl. Ex. 2). Moreover, the authors of Rule 23 recognized that, as a procedural rule, the opt-out provisions of Rule 23 must give way to the express opt-in requirement that Congress created in section 16(b). Fed R. Civ. P. 23 advisory committee's note ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

In addition to granting employees the right not to be bound without their written consent, Congress granted employers the substantive right to defend wage and hour claims only against individuals who file their written consent in the court action. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that 1947 amendments to the FLSA were enacted for "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Permitting Plaintiffs to use Rule 23 to litigate state wage and hour claims on an opt-out basis would deprive defendants of the right to have these claims adjudicated against them only on an opt-in, filed written consent basis.

**C.    Since The Members of the Putative Rule 23 Class Are
Mostly Transient, Unfindable, and Therefore Unlikely to Receive
Notice, They Will Not Have an Effective Opportunity To Opt Out**

In this case, most of the putative Rule 23 class members that Plaintiffs seek to include in

this action are transient and unfindable.  Servers, cocktail servers, bartenders, and dancers – all

of whom typically work at the nightclub until about 4 in the morning – understandably tend to be

young and, as a result, also tend to move around a lot.  For example, Plaintiff Blerta Vikki

testified that she lived with her aunt for a month, then moved in with a friend for 4 months,

before living by herself at a different location for a year, then moved to her cousin's home for 3-

4 months, and moved again to a different place for 6-7 months, before moving to her current

address after she quit working altogether.  Vikki Dep. 78:21-84:22.

Under such circumstances, notice sent to each putative class member's last known

address is unlikely to be received.  This concern is exacerbated by Plaintiffs' attorneys'

insistence that the putative class include all servers, bartenders, and dancers since September 17,

2001 (Samant Decl. Ex. A).  Notably, Plaintiff Vikki testified that she never received two of the

tax documents mailed to one of her addresses by Go West.  Vikki Dep. 141:21-142:25; 146:11-

15 & Sargent Exs. 7-8.  Therefore, the vast majority of putative class members are unlikely to

ever learn about this action or have the opportunity to opt out.  As the Eleventh Circuit has

noted:

> Congress's aim in adding the "opt-in" language to § 216(b) was to prevent
> large group actions, with their vast allegations of liability, from being
> brought on behalf of employees who had no real involvement in, or
> knowledge of, the lawsuit.  The "consent in writing" requirement sought
> to eradicate the problem of totally uninvolved employees gaining recovery
> as a result of some third party's action in filing suit.

*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003)

(quotations and citations omitted).

Plaintiffs' attorneys understandably seek to litigate on behalf of putative class members who will not and cannot have any real involvement in or even knowledge of this lawsuit. This is precisely the result that Congress sought to avoid when it passed the Portal-to-Portal Act of 1947. Accordingly, Plaintiffs' state law claims should be dismissed.

### D.    The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' New York Labor Law Claims

Plaintiffs seek to persuade the Court that it should exercise supplemental jurisdiction over their New York State Labor Law claims pursuant to 28 U.S.C. § 1367 (AC ¶ 49). However, the statute specifically authorizes district courts to "decline to exercise supplemental jurisdiction" over a state law claim if:

> (1) the claim raises novel or complex issues of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or]
>
> (3) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Supplemental jurisdiction may be declined in the sound discretion of the Court if any one of these three grounds is found to exist.

Go West submits that attempting to prosecute, defend, and adjudicate NYLL claims on a Rule 23 opt-out basis – going back 6 years from the date of filing no less – raises novel and complex issues of state law. First, enabling Plaintiffs to pursue their state law minimum wage and overtime claims as an opt-out action simultaneously with their opt-in action under the FLSA would create challenges with respect to manageability of the action. Moreover, asking potential class members both to opt-in and to opt-out with respect to the FLSA and NYLL claims would likely cause considerable confusion. *See Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal 2004) ("Confusion would likely result in asking potential plaintiffs both to opt in and to opt out of the claims in this suit."); *McClain*, 222 F.R.D. at 577 ("it may be confusing for

a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others").

Furthermore, proceeding as a Rule 23 class action would arguably produce a large number of plaintiffs litigating state law claims, which would overshadow those litigating FLSA claims. *Glewwe v. Eastman Kodak Co.*, No. 05 CV 6462T, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006) ("it is clear that the state claims would substantially predominate over the FLSA claim."); *De Luna-Guerrero v. The North Carolina Growers's Assoc., Inc.*, 338 F. Supp. 2d 649, 652-53 (E.D.N.C. 2004) (declining supplemental jurisdiction over state wage and hour claims noting that the size of any potential state law class and potential for confusion of plaintiffs and that judicial efficiency will be better served if state law claims are dismissed). Moreover, given the likelihood that few individuals will actually receive notice of this lawsuit and that even fewer individuals will realistically sign a piece of paper and file it with the Court if they receive the notice, it appears extremely probable that very few individuals would opt in to the FLSA collective action and that a very large number of individuals would be deemed members of the Rule 23 state law class action. Based on the resulting number of individuals participating in each set of claims, the state law claims would substantially predominate over the FLSA claims for which the Court has original jurisdiction. *See Neary v. Metropolitan Property and Casualty Insurance Co.*, 472 F. Supp. 2d 247, 251-52 (D. Conn. 2007) (declining to exercise supplemental jurisdiction because state law claims would predominate); *Acquino v. Home Depot U.S.A., Inc.*, No. 06 CV 4100, 2006 WL 2023539 (D.N.J. July 18, 2006)(same).

Lastly, as set forth more fully in points A, B, C, and above, exceptional circumstances exist and there are compelling reasons for the Court to decline to exercise supplemental jurisdiction over the NYLL claims in this case. For all of the foregoing reasons, Plaintiffs' NYLL class claims should be dismissed.

## III. PLAINTIFFS' MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT AUTHORIZED NOTICE SHOULD BE DENIED

Plaintiffs have moved for conditional certification of an FLSA collective action on behalf of all servers, cocktail servers, bartenders, and dancers at "Scores" clubs (Samant Decl. Ex. A). While Plaintiffs' complaint refers to *Scores* as if it were some monolithic national employer operating "night clubs in New York City (one on the East Side and one on the West Side), Chicago, Las Vegas and New Orleans" (AC ¶¶ 33, 70), *Scores* is merely a licensed trade name. Plaintiffs have been disingenuously vague about the scope of their intended class, presenting evidence only about employment practices at Go West, from persons who have worked almost exclusively at the Go West club, while alluding to the existence of other clubs which utilize the name "Scores" and the Diamond Dollars trademark, in an effort to justify authorization for a collective action which would include both New York clubs as well as clubs outside New York. Yet, as shown below, Plaintiffs have absolutely no evidence of employment policies and practices – let alone payroll practices – at clubs outside of New York. Plaintiffs lack clear evidence as to such policies at the east side club. Indeed, Plaintiffs' deposition testimony demonstrates an absence of uniform policies and procedures within the Go West club itself.

**A.    Plaintiffs Must Provide a Factual Basis for**
**Demonstrating That Purportedly Similarly Situated**
**Employees are Subject to Common Employment Policies and Practices**

In order to determine whether conditional certification of an FLSA collective action is appropriate, a two-stage certification process must be followed. *Morales v. Plantwork , Inc.*, No. 05 CV 2349, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006). At the first "notice" stage, the court should examine the available evidence to determine whether the named plaintiff and putative class members are similarly situated. *Id*. citing *Masson v. Ecolab, Inc.*, No. 04 CV 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005). If the court finds that they are similarly situated, it conditionally certifies the class and permits notice to be sent to putative

class members. *Id*. In the Second Circuit, FLSA plaintiffs must shows that "they and potential plaintiffs together were victims of a **common policy or plan** that violated the law." *Morales*, 2006 WL 278154, at *2 (emphasis added), citing *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997). A plaintiff must "provide evidence of a factual nexus between his situation and those that he claims are similarly situated." *Prizmic v. Armour, Inc.*, No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). Though the first stage of class certification requires a modest factual showing, a common policy or plan must be demonstrated. *Morales*, 2006 WL 278154, at *3, citing *Hoffman*, 982 F.Supp. at 261. Broad conclusory allegations are not enough to meet conditional certification requirements. *Id.*; *Flores v. Osaka Health Spa, Inc.*, No. 05 CV 962, 2006 WL 695675, at *2 (S.D.N.Y. March 16, 2006).

**B.    Plaintiffs Have Submitted No Evidence Regarding Policies and Practices at Clubs Outside New York or at the East Side Club**

In order to establish that there is a common policy or plan amongst the clubs outside of New York and at the east side club, Plaintiffs have to present evidence of common operational control over compensation and employees in clubs outside of New York and at the two New York clubs. *See Diaz v. Electronics Boutique of America, Inc.*, No. 04 CV 0840E, 2005 WL 2654270, at *3-4 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification because the policies, practices and duties of the employees differed among the many stores).

**1.    There is Absolutely No Evidence of *Any* Employment Policies or Practices at Clubs Outside New York**

Plaintiffs are unable to present any evidence even *suggesting* common policies and procedures at clubs outside of New York. Plaintiffs merely point to general "quality-of-experience" statements from the Scores Holding website. Plaintiffs do not identify a single statement on the website regarding a common practice controlling or relating to the payment of wages, payment of overtime, or calculation of tips, or even as to the particular terms and

conditions of employees and dancers at each club. Rather, the website describes the

"experience" – that is, the experience for the customer – associated with the "Scores" name. As

shown above, each licensed club determines its own policies and practices concerning

compensation and the use of Diamond Dollars (Smith Decl. ¶¶ 9-10). In sum, Plaintiffs' website

references to the Scores customer experience does not demonstrate that a common policy or plan

alleged to violate the FLSA exists between clubs.

Plaintiffs are entirely unaware of the policies and practices applicable to clubs outside of

New York and they are largely unaware of east side club policies, let alone whether those

policies and practices are "common" within the Go West club itself. Indeed, Plaintiff Carolyn

Siegel admitted in her deposition that she has no knowledge of the employment practices at any

other club that licenses the "Scores" name. Siegel Dep. 100:25, 101:1-4.

Conditional certification must be limited in scope to the situs of plaintiff's work. *Carlson

v. Leprino Foods Co.*, No. 05 CV 798, 2006 WL 1851245 (W.D. Mich. June 30, 2006).

Plaintiffs did not work at clubs outside of New York and therefore cannot attest to the policies or

procedures implemented by any club located in Chicago, Las Vegas, or New Orleans. Therefore,

conditional certification of a nationwide class based on non-existent common employment

practices must be denied. *See, e.g., Seever v. Carrols Corp.*, No. 02 CV 6580L, 2007 WL

4409776, at *12 (W.D.N.Y. Dec. 17, 2007) (denying conditional certification given the breadth

of the proposed class, a single "isolated" affidavit from a former employee at a store where the

named plaintiffs did not work was "insufficient to meet even plaintiffs' minimal burden to

demonstrate the existence of an FLSA-violative policy" at all of the nearly 350 stores); *Anglada

v. Linens 'N Things, Inc.*, No. 06 CV 12901, 2007 WL 1552511, at *5 (S.D.N.Y. May 29, 2007)

(limiting conditional certification to two stores, where plaintiff offered no supporting

declarations or affidavits from similarly situated employees who were located at other stores, and

averred no personal knowledge of the policies or practices of any store other than the two stores in which plaintiff worked).

### 2.    There is No Specific Evidence of Uniform Policies and Practices at the East Side Club, Let Alone Policies and Practices Between Clubs

Similarly, Plaintiffs offer no specific evidence of uniform policies and practices at the east side club.  In fact, of the persons who are named plaintiffs or have joined the action, only three even claim to have worked at all at the east side club, and only two of those have filed a declaration in support of Plaintiffs' motion.[5]  One, Susan Levin, states that she worked as a dancer for five months, at the east side club and occasionally at Go West (Susan Levin Decl. ¶ 1).  Yet, her declaration fails to state whether the policies and practices of which she complains were in effect at the Go West club, the east side club, or both.  Similarly, Blerta Vikki, who states that she worked at both clubs, fails to specify whether particular policies or practices applied at one or both clubs.[6]

Aside from the fact that Plaintiffs have failed to name the operator of the east side club as a defendant, there is absolutely no evidence concerning a uniform FLSA-relevant policy or practice common to both the east side club and Go West.  Therefore, Plaintiffs cannot satisfy even the minimal burden necessary to demonstrate a uniform practice violative of law.

### C.    A Collective Action Against Go West Is Inappropriate

### 1.    There is Insufficient Evidence of Uniform Policies and Practices at Go West

Plaintiffs are left solely with the allegations of various allegedly unlawful payroll practices at Go West which, they assert, are common to all persons in similar job classifications and which violate the law.  Among other things, Plaintiffs claim that:  (1) a portion of the

---

[5]  Lead Plaintiff Siri Diaz's declaration should be disregarded because she has failed to appear for deposition despite the fact that her deposition was noticed on December 3, 2007.
[6]  Another Plaintiff, Danielle Owimrin, has offered no declaration at all and has failed to appear for deposition despite its being noticed on December 3, 2007.

Diamond Dollar tips obtained by workers at all "Scores clubs" was kept by "Scores" (AC ¶ 3);
(2) "Scores clubs" refused to cash Diamond Dollars (AC ¶ 73(b)); and (3) "Scores clubs"
participated in a common policy that required all servers, cocktail waitresses, bartenders, and
dancers to purchase and launder their own uniforms without reimbursement (AC ¶ 187).  Yet, as
the facts shown below demonstrate, there was no common policy at Go West even as to those
issues; rather, the practices varied by individual, rendering the collective action inappropriate.

### 2.    The Court Should Not Grant Conditional Certification Where the Analysis Will Necessitate Highly Individualized Determinations

Even if Plaintiffs could establish a general policy or plan on the above issues at Go West,
a collective action against Go West would still not be warranted, given the material differences
in each Plaintiff's experience.  Where a court must undertake a highly fact-specific and detailed
analysis of each plaintiff's circumstances, collective action treatment is inappropriate.  *Diaz v.
Electronics Boutique of America*, 2005 WL 2654270, at *3-4 (denying conditional certification
where a "detailed factual analysis of his daily activities and responsibilities" was necessary and
each putative class member's circumstances varied).  As shown below, Plaintiffs' FLSA claims
will require a detailed factual analysis that makes each Plaintiff and putative class member's
claim distinct and, therefore, inappropriate for a collective action.

### 3.    The Determination of Plaintiffs' Claims Will Require Individualized Factual Analyses of Their Experiences Regarding Compensation, Uniforms, and Diamond Dollars

#### a.    There Was No Common Usage of Diamond Dollars

Plaintiffs claim that they and the putative collective action members were subjected to the
common practice of taking a percentage of their tips received through Diamond Dollars.
However, experiences with Diamond Dollars varied from employee to employee and dancer to
dancer.  Indeed, Plaintiffs fail to present any evidence as to how Diamond Dollars are dealt with,

in terms of compensation to employees and dancers, uniformly.  Plaintiffs' own testimony shows that Plaintiffs were *not* subject to a common practice.

Plaintiff Talia Bumb testified that she never received a valid Diamond Dollar.  Bumb Dep. 81:15-18, 82:2-4, 93:23-94:2.  Ms. Bumb explained that a Go West patron gave her an expired Diamond Dollar, which she was unable to cash.  Bumb Dep. 81:15-18.  Plaintiff Carolyn Siegel testified she received three Diamond Dollars, but could not figure out how to exchange them for cash.  Siegel Dep. 62:10-16; 67:4-18.

Plaintiff Blerta Vikki – who routinely received and cashed in the Diamond Dollars she received – testified that she did not know how the Diamond Dollars worked for the bartenders or cocktail waitresses.  Vikki Dep. 175:7-18; 188:6-16.  Ms. Vikki's declaration must be disregarded in its entirety because she testified that she did not see a copy before she signed it and that *she did not read it before she signed it*.  Vikki Dep. 189:6-8, 189:15-21.  She also testified that although the declaration indicates that it was signed on January 17, 2008, she did not see or sign the declaration on said date.  Vikki Dep. 185:25, 186:2-5.  Ms. Vikki testified that she received expired Diamond Dollars from club patrons on two occasions, as indicated by an expiration date printed on the Diamonds Dollars.  Vikki Dep. 168:3-9, 168:12-15.  She admitted that she was able to cash in Diamond Dollars that were expired when she received them.  Vikki Dep. 167:2-6.  On the second occasion, the Diamond Dollar was also expired when the club patron gave it to her, but she chose not to ask if the club would cash it in.  Vikki Dep. 167:2-9, 167:25, 168:3-11.  Therefore, Vikki admitted that there was *never* a time when she tried to cash a Diamond Dollar and was refused.  Vikki Dep. 167:2-6.  These varying experiences demonstrate that there was no common policy and practice concerning Diamond Dollars and that the Court would have to engage in a highly fact-specific individualized analysis to determine the tip confiscation issue alleged by Plaintiffs.

### b.     There Was No Common Policy Concerning Uniforms

Similarly, there was no common policy regarding uniforms. First, it must be noted that a uniform does NOT consist of clothing that may be worn as part of an employee's ordinary wardrobe. *Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 310 (S.D.N.Y. 1998). Therefore, the Court would be required to conduct an individualized inquiry into whether the particular piece of clothing at issue could or could not be worn as part of an employee's ordinary wardrobe.

Moreover, Plaintiffs' own uniform-relevant testimony conflicts with Plaintiffs' Amended Complaint. Plaintiffs allege that Go West requires servers, cocktail waitresses, and bartenders to wear black uniforms, which the worker must purchase and launder (AC ¶ 187).

Plaintiff Carolyn Siegel, however, testified that she was given the uniform and admitted that she did *not* have to pay for it. Siegel Dep. 51:6-7. Plaintiff Talia Bumb claims that she was told that the cost of the uniform would be taken out of her check, but admitted that she never actually had, as far as she knows, the money subtracted from her pay. Bumb Dep. 34:14-17.

Plaintiff Blerta Vikki – a dancer – claims that she was required to buy numerous long gowns or short dresses, a garter belt, certain underwear and high heeled shoes. Vikki Dep. 41:20-22. Not only does Ms. Vikki claim differ significantly from the other Plaintiffs, but the Court would have to engage in an individualized assessment of whether each item of clothing could be worn as part of the individual's ordinary wardrobe.

Moreover, the clothing for the dancers, servers, cocktail waitresses, and bartenders did not require "Scores" or Go West logos, but rather were items that could be considered appropriate for occasions outside of the work environment. Bumb testified that she continues to wear on a weekly basis the shoes that were a required part of the uniform she wore at Go West. Bumb Dep. 37:11-15. Siegel testified that as part of her regular wardrobe she already had the boots, tights, and theme outfit that she wore as part of her uniform. Siegel Dep. 88:24-25, 89:1,

89:18-20. Vikki testified that the heels she wore as part of her uniform could be worn outside of the club. Vikki Dep. 46:16-19.

In the absence of a common policy or plan – and especially in view of the need for an individualized assessment of each article of clothing – collective action treatment is improper.

### c.    Plaintiffs' Minimum Wage Claims Require A Detailed and Individualized Factual Analysis

Plaintiffs claim a common policy or practice of not informing Plaintiffs and the putative class about the allowable tip credit to the minimum wage for tipped employees. Specifically, Plaintiffs claim that they were not informed of the minimum wage and tip credit rules as required by 29 U.S.C. § 203(m). Clearly, this is an individualized issue requiring a determination of whether each Plaintiff and putative class member was informed of such rules.

Go West, for its part, can show that it posted the minimum wage and tip credit rules on the wall in the manager's office frequented by employees and dancers alike. Moreover, even the minimal testimony taken thus far demonstrates that there are varying degrees of Plaintiffs' knowledge of the tip credit, which in and of itself undermines the use of a collective action.

For example, although Plaintiff Carolyn Siegel denied that she had seen the posting, she admitted that she did know the wage amount she would be paid although she was unsure how she came to know such information. Siegel Dep. 46:2-14. Indeed, Ms. Siegel and Talia Bumb both testified that they understood that they would be paid $4.60 per hour plus tips. Siegel Dep. 46:2-5; Bumb Dep. 32:20-23. Ms. Bumb said she did not know whether the minimum wage/tip credit posting was posted at the facility. Bumb Dep. 32:15-16.

Thus, Plaintiffs' claim that Go West failed to notify tipped employees of the minimum wage and tip credit requirements is simply too individualized for a collective action.

      **d.**    **Plaintiffs' Cannot Demonstrate a Uniform**
                **Policy of Requiring and Not Paying Overtime Pay**

Plaintiffs claim that all Plaintiffs and putative class members were denied overtime wages for hours they worked in excess of forty hours in a workweek (AC ¶ 180). Yet, not one of the Plaintiff employees testified that she worked more than forty hours in a workweek. Thus, not only is their no evidence of a "common practice," but indeed no evidence that overtime and failure to pay overtime indeed occurred regularly. Certainly, Plaintiffs' experiences fail to demonstrate that they are representative of each other, let alone other putative class members.

      **e.**    **The Issue of the Alleged Misclassification of Dancers**
                **Is Wholly Different from Issues Raised by the Other**
                **Plaintiffs and Will Require Highly Individualized Analysis**

Plaintiffs also claim that the dancers were misclassified as independent contractors and should be considered employees. Go West employed servers, cocktail waitresses, and bartenders as employees and dancers as independent contractors. Clearly, Go West dancers and Go West employees are not subject to a common compensation practice or plan. Though Plaintiffs claim that the dancers were incorrectly classified as independent contractors, consideration of the dancers' alleged wage and hour claims requires a unique and individual analysis of their independent contractor status.

To determine whether an individual is an "employee" under the FLSA (as opposed to an independent contractor), courts look to the economic reality of the business relationship. *U.S. v. Silk*, 331 U.S. 704, 716 (1947); *Lee v. ABC Carpet & Home*, 186 F.Supp.2d 447, 453 (S.D.N.Y. 2002). The following factors are relevant to determining whether an individual is an FLSA "employee":

    (1)    the degree to which the alleged employee is independent or subject to the control of the employer as to the manner in which the work was performed;

    (2)    the alleged employee's opportunities for profit or loss;

    (3)    the alleged employee's investment in the facilities and equipment of the business;

(4)     the permanency and duration of the relationship between the business and the alleged employee;

(5)     the degree of skill required to perform the work of the alleged employee; and

(6)     the extent to which the services rendered are an integral part of the employing entity.

*U.S. v. Silk*, 331 U.S. 704, 716 (1947); *Lee*, 186 F.Supp.2d at 453; *Matson v. 7455, Inc.*, No. CV-98-788-HA, 2000 WL 1132110 (D.Or. Jan. 14, 2000) (applying economic realities test to exotic dancer, court found that "the instant case indisputably leads to the conclusion that the plaintiff was an independent contractor"). "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988).

As an example of the individualized analysis which will be necessary, one need only examine the facts relating to one plaintiff, Blerta Vikki, who was engaged as a dancer. Vikki testified about her individual and varying opportunity for profit or loss. Vikki would make a large sum of money on certain nights, while other slow nights required that she take a loss. Vikki Depo 63:25, 64:1, 66:6-8, 66:16-18. Vikki also testified that she exercised control regarding fees, stating that she negotiated lower house fees with the manager. Vikki Dep. 67:6-8. At times Vikki ended her shift without paying the fee for that night, but chose to pay it later. Vikki Depo 154:12-21. Concerning a dancer's investment in her business, Vikki testified that certain dancers paid for surgical bodily enhancement to increase their individual profitability. Vikki Depo 123:25, 124:2-5. Vikki testified that she personally opted not to have surgical enhancement. Vikki Depo 123:21-24. Vikki processed her own 1099 form and independently paid her own taxes. Vikki Depo 124:6-16. Vikki claimed business expense deductions for costumes, fees, meals, cell phones, travel, and promotion, amongst others, which reduced her taxable income from approximately $35,806 to less than $9,721 for 2005. Sargent Decl. Ex. 6.

Notably, each dancer's independence, opportunity for profit and loss, investment, relationship duration, and skill would have to be assessed in order to determine for each dancer whether she was an FLSA "employee" or an independent contractor not subject to the FLSA. Clearly, a highly individualized factual analysis will be necessary.  At the very least, it is clear that the dancers are not similarly situated to the other named Plaintiffs and are not appropriately part of the collective action. *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07 CV 2266, 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007)(denying conditional class certification at notice stage because whether putative class members were improperly classified as FLSA-exempt is not appropriate for collective action treatment).  Certainly, if exempt versus nonexempt status is inappropriate for collective action treatment, employee versus independent contractor status is similarly an inappropriate issue for conditional certification.

**D.    Assuming *Arguendo* That Conditional Certification Were Granted, Plaintiffs' Proposed Notice Is Not Appropriate For Distribution To The Putative Class**

Should this Court decide to grant conditional certification, Plaintiffs' proposed form of notice to the putative collective action members is improper and inappropriate.  Plaintiffs offer two forms of notice to this Court:  (1) a proposed notice purportedly tailored to meet the needs of this particular case (Samant Decl. Ex. A); and (2) an alleged "'plain language' collective action notice proposed by the Federal Judicial Center" (Samant Decl. ¶ 13 & Ex. L).[7]

Courts have generally exercised their discretion in guiding parties in the construction of proper collective action notices.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989).  A court presiding over an FLSA collective action "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."  *Id.* at 170-71.  "Because of the potential for abuse, a district court has both the

duty and broad authority to exercise control over a [collective action] and to enter appropriate orders governing the conduct of counsel and the parties. *Id.* at 171 (*quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).  District courts exercise their managerial responsibility over a collective action under the FLSA by facilitating and directing the distribution of notices to the putative class members. "By monitoring preparation of and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.* at 172.  The Supreme Court has instructed: "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  *Id.* at 174.

Given this legal backdrop, Plaintiffs' proposed notice is improper and inaccurate because it:  (1) appears to be endorsed by the Court; (2) improperly seeks to enlarge a two- or three-year statute of limitations under the FLSA to an inappropriate six-year statute of limitations; (3) provides an inadequate description of Plaintiffs' claims and the purported class; and (4) fails to offer any explanation or description of the legal process and what may be required of a class member who opts in to the action.

### 1.    Plaintiffs' Proposed Notice is Not Neutral

While the notice is required to be "judicially neutral," *Hoffmann-La Roche*, 493 U.S. at 174, the draft appears to be endorsed and, in fact, promulgated by the Court.  Indeed, the heading on Plaintiffs' proposed notice states:

**COURT AUTHORIZED NOTICE**
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

[7]  The cited "plain language" collective action notice, attached as Exhibit L to the Samant Declaration, is in fact a proposed Rule 23 class action notice designed for an employment discrimination class action lawsuit, not an FLSA action.

Samant Decl. Ex. A. The notice further states: *"This is a court authorized notice. This is not solicitation from a lawyer."* *Id.* This form of notice is wholly inappropriate as it fails to adhere to the necessary judicial neutrality.

**2.   The Court Should Appoint A Neutral Third-Party
Administrator to Oversee and Facilitate Notice of Collective Action**

Understanding that the Court has the responsibility to oversee the administration of Plaintiffs' notice, the Court should appoint a neutral third-party administrator to facilitate notice of the collective action. This case presents a host of unique and sensitive issues concerning the identity of members of the putative class, particularly for the dancers. Each of the independent contractor dancers has adopted a business or "stage" name, by which she is known within the club. For instance, Susan Levin was known by her stage name "Brianna;" Blerta Vikki was known by her stage name "Marissa;" and Danielle Owimrin was known by her stage name "Paris." The sensitive and unique nature of these claims and the privacy of the Plaintiffs is further demonstrated by the fact that two Plaintiffs – dancer Susan Levin and cocktail waitress Talia Bumb – have redacted their addresses from the consents to sue filed in this case, thus shielding such addresses from public view. Similarly, even the cocktail servers and bartenders, given the nature of the clubs in which they are employed, may and have sought to protect their identity, concealing it with a "business" name, a preference Go West has obliged.

In view of the above, Go West submits that it would be inappropriate for any list of putative collective action member names and addresses to be turned over to Plaintiffs' attorneys. Disclosure of each member's real name and last known address would be invasive enough for the class members, but having to field telephone calls from Plaintiffs' attorneys would be unnecessarily invasive. Accordingly, the Court should appoint a neutral third-party claims administrator to facilitate distribution of any notice deemed appropriate by the Court.

**3.    The Notice Should Not Be Sent to Any
Person Employed Prior to October 9, 2004**

As proposed, Plaintiffs' proposed notice states:  "If you were employed by Scores as a
Server, Cocktail Server, Bartender or Dancer between **September 17, 2001** and the present,
please read this notice."  Samant Decl. Ex. A (emphasis added).  Plaintiffs' notice thus seeks to
enlarge the FLSA's two-year or three-year statute of limitations to the six-year statute of
limitations applicable to NYLL claims.[8]  In support of this overreaching date, Plaintiffs claim
that equitable tolling is appropriate in this case because, as Plaintiffs allege, Go West failed to
"post notice of minimum wage, overtime, and federal tip laws and regulations" (Pl. Br. 16).
First, Go West contends that the appropriate notices were posted.  Moreover, Plaintiffs cannot
demonstrate any basis for asserting the extraordinary circumstances required for application of
equitable tolling rather than the statute's limitation period, that is, two years (or three years for
willful violations).  *See Viciedo v. New Horizons Computer Learning Ctr.*, 246 F. Supp.2d 886,
904 (S.D. Ohio 2003)(failure to post notice required under the FLSA does not necessarily toll the
statute of limitations on overtime claims); *Archer v Sullivan County*, 129 F.3d 1263 (table), 1997
WL 720406, at *4 (6th Cir. 1997)(failure to post notice does not necessarily justify invocation of
tolling doctrine).

Courts will only toll the statute of limitations "if some extraordinary circumstance has
prevented the plaintiff from exercising his or her rights."  *Moran v. GTL Construction, LLC*, No.
06 CV 168, 2007 WL 2142343, at *3 (July 24, 2007)(*quoting Johnson v. Nyack Hosp.*, 86 F.3d.
8, 12 (2d Cir. 1996).  "Equitable tolling requires a party to pass with reasonable diligence
through the period it seeks to have tolled."  *Patraker v. Council on the Environment of NYC*, No.
02 CV 7382, 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003).  Tolling also requires that
Plaintiffs allege some "affirmative deception by the defendants."  *Id.; see also Moran*, 2007 WL

2142343, at *3 (denying equitable tolling because "plaintiff neither alleges that Defendant concealed Plaintiff's cause of action from her nor that it would have been impossible for a reasonably prudent person to learn of Plaintiff's cause of action.").

Since Plaintiffs only allege that Go West "fail[ed] to comply with the posting and/or notice requirements of the FLSA and NYLL" (AC ¶73(d)), this allegation is insufficient to permit equitable tolling of the applicable two- or three-year statute of limitations. In their individualized allegations, none of the Plaintiffs allege that they were unaware of minimum wage, overtime, and federal tip laws. Moreover, Plaintiffs' Amended Complaint makes no mention of any affirmative act of deception on the part of Go West. To the extent that Plaintiffs claim that Go West failed to inform them of an entitlement to overtime compensation, tolling the FLSA statute of limitations for that reason "would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime, as it would be a rare employer who failed to pay overtime by announcing to its employees that they were entitled to overtime compensation." *Patraker,* 2003 WL 22703522 at *2.

### 4. Plaintiffs' Description of the Claims and Collective Action Class is Overbroad and Misleading

Plaintiffs' proposed notice states: "Former hourly workers have sued Scores Holding Company, Go West Entertainment, and Scores Entertainment Inc. (together "Scores") claiming that Scores failed to pay all wages required by law." Samant Decl. Ex. A. First, as stated repeatedly herein, the use of the monolithic "Scores" is simply false and misleading. Further, Plaintiffs' description of their claim as one based on "Scores fail[ure] to pay **all** wages required by law" is extraordinarily overbroad and misleading. Rather, Plaintiffs have specifically sought relief for purported specific FLSA violations – namely, tip credit notice, improper tip pooling, and uniforms. Yet, Plaintiffs' proposed notice makes no mention of these claims, but seeks to

---

[8]  Plaintiffs' original Complaint was filed on October 9, 2007, not September 17.

entice all former "hourly workers" who potentially believe they were not paid "all wages required by law." Any notice to the putative class should identify the specific FLSA issues that are raised in the Amended Complaint in order to allow recipients to make an informed choice.

Second, not all of the Plaintiffs or putative class members were hourly workers. Indeed, the Plaintiffs have specifically sought to include dancers, who were never treated as hourly workers but as independent contractors. At a minimum, any notice should specifically inform dancers that the lawsuit seeks to challenge their independent contractor status and have them treated as employees.

### 5.    The Notice Fails to Provide Putative Class Members with Information About Participation In the Action

As proposed, Plaintiffs' proposed notice appears to promise a possibility of "getting money or benefits that may come from a trial or settlement," but it fails to specify what the responsibilities or obligations may be for a party who opts-in. The notice should explain in greater detail the legal procedure, what may be required of putative class members should they opt-in, and information concerning their legal representation. At a minimum, the notice should explain that opt-in plaintiffs may be called upon to produce documents and information and may be requested for deposition. Plaintiffs' attorneys' anticipated fees should also be disclosed. Furthermore, the opt-in plaintiffs' potential exposure to defendants' costs is similarly relevant for the notice. Most, if not all, of these putative class members have had little or no contact with the legal system; it behooves the parties to prepare a notice that offers as much useful information for the recipients as possible. Finally, Plaintiffs' proposed notice is devoid of a date by which the consents to sue are to be returned, which should be within 30 days of mailing.

### 6.    The Notice Should Not Be Sent To Those Engaged Solely as Dancers

As set forth above in Point III(B)(2), the dancers engaged by Go West are independent contractors. To include dancers in the collective action addressing payment of full versus tipped

minimum wage and overtime pay is inappropriate given the distinct issue of their employment status and the wholly separate range of different and individualized factual issues.  Therefore, including them in the putative class, or sending them notice of this collective action, is inappropriate.

## CONCLUSION

Accordingly, for the foregoing reasons, Scores Holding and Go West respectfully request that the Court:  (1) grant their motion to dismiss or alternatively for summary judgment dismissing the Amended Complaint as to Scores Holding and that portion seeking relief for persons who did not work at Go West, (2) dismiss Plaintiffs' NYLL class action claims; and (3) deny the Plaintiffs' motion for conditional certification and court authorized notice.

Dated: New York, New York
      February 1, 2008

      Respectfully submitted,

      **GREENBERG TRAURIG, LLP**

      By:

      Jerrold F. Goldberg (JG-7471)
      Neil A. Capobianco (NC-5262)

      200 Park Avenue
      New York, New York  10166
      (212) 801-9200

      *Attorneys for Defendants Scores Holding*
      *Company Inc. and Go West Entertainment,*
      *Inc. a/k/a Scores West Side*