# EXHIBIT 16

Westlaw.

Not Reported in F.Supp.2d    FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

C
Matson v. 7455, Inc.
D.Or.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.
Karen MATSON, aka Kerissa, Plaintiff,
v.
7455, INC., an Oregon corporation, dba Jiggles of Tualatin, and Frances Schmitz, an individual, Defendants.
No. CV 98-788-HA.

Jan. 14, 2000.

Charles J. Merten, Attorney at Law, Beaverton, OR, for petitioner.
Andrew M. Cole, Attorney at Law, James C. Tait, Tait & Associates, Oregon City, OR, for defendants.

OPINION AND ORDER

HAGGERTY

I INTRODUCTION

*1 The plaintiff, Karen Matson, a former exotic dancer at the "Jiggles" nightclub in Tualatin, Oregon, alleges seven claims for relief against Defendant 7455, Inc., the owner of the nightclub, and Defendant Frances Schmitz, the general manager of the nightclub. These claims consist of the following: 1.) failure to pay minimum wage in violation of the Federal Labor Standards Act (F.L.S.A.), 29 U.S.C. § 206; 2.) liquidated damages for willful violation of the Federal Labor Standards Act; 3.) failure to pay wages in violation of Oregon Revised Statutes § 652.140; 4) penalty wages pursuant to Oregon Revised Statutes §§ 652.150 and 653.055; 5) wrongful termination; 6.) conversion; and 7.) coercion. These claims were filed in this court pursuant to federal jurisdictional statutes 28 U.S.C. §§ 1331 and 1367(a).

Pending before the court is the defendants' motion for summary judgment (doc. # 49) against all of these claims. For the reasons set forth below, this court grants the defendants' motion with respect to the plaintiffs' F.L.S.A. minimum wage claim and orders that all other claims are now moot.

II FACTUAL BACKGROUND

Plaintiff worked as an exotic dancer at Jiggles from May, 1993 through September, 1993; from May, 1994, through June, 1995; from April 1996 through October, 1997; and in 1988. The defendants claim that throughout this period, the plaintiff worked as an independent contractor at Jiggles pursuant to a written agreement between the parties stating the following:

Be it herein known that the undersigned is an individual contractor and is solely responsible for payment of his/her federal, state, and social security taxes and state industrial accident insurance and does hereby relieve 7455 Inc. DBA Jiggles from any or all responsibility for payment of said taxes on my behalf.

The plaintiff concedes to signing this agreement.[FN1] However, she claims that she did not fully understand the implications of the agreements. Nevertheless, consistent with the agreement, she filed tax returns as an independent contractor until 1994. She has not filed her income tax returns since 1994.

> FN1. The plaintiff signed three identical agreements on April 13, 1988, September 16, 1990, and April 22, 1993.

Throughout her time at Jiggles, the plaintiff was subject to the following system of compensation that was in place for all dancers at the club: For use of building, stage, dressing rooms, bar, staff, facilities and access to defendants' clientele, dancers payed a "house fee" in the amount of $30.00 per six hour shift. Dancers payed this fee in cash or in an equivalent amount by inducing patrons to purchase

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at least five "ladies drinks" per shift. The defendants fixed the price of table dances at $5.00 for topless dances and $10.00 for nude dances. The dancers collected and kept as compensation for their services these fees, plus any additional tip offered by a customer. These fees and tips were the dancers' sole form of compensation.

In 1993, the plaintiff worked 580 hours at the defendants' club and earned an average of between $4,000 to $6,000 per month for an average hourly wage of between $82.75 and $124.14. In 1997, the plaintiff worked 975 hours and earned an average wage between $6,000 to $8,000 per month for an average hourly wage between $73.85 and $98.46 per hour.[FN2] These average hourly wages were far beyond the required state and federal minimum wage in 1993 or 1997.[FN3] The plaintiff has not specified her earnings at Jiggles for 1994, 1995, or 1996; however, the record indicates that in 1994, she worked 1021 hours; in 1995, 326 hours; and in 1996, 582 hours.

> FN2. These numbers are based on the plaintiff's estimations as noted in her deposition testimony.

> FN3. For the years 1991 through 1996, the Oregon minimum wage was $4.75 per hour, and for 1997-98, the Oregon minimum wage was $5.50 per hour.

*2 During her tenure at Jiggles, the plaintiff was subject to designated "house rules" implemented by the defendants concerning the conduct expected of dancers at the club. These rules included a provision that no dancer was to come closer than six inches from a customer, or to make any intimate contact with a customer. Jiggles imposed this provision on the dancers to avoid criminal liability.[FN4] The defendants enforced this rule with warnings, and after repeated violations, with nominal fees, which were collected from the offending dancers and given to a charity.[FN5]

> FN4. The defendants claim that the purpose of this rule was to avoid prostitution charges for the club. A person commits the crime of prostitution if a "... person engages in or offers or agrees to engage in sexual contact in return for a fee." ORS 167.007(1)(a). "Sexual contact" means any touching of the sexual organs or other intimate parts of a person not married to the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 167.002(5). "A person commits the crime of promoting prostitution if, with intent to promote prostitution, the person knowingly ... [o]wns, controls, manages, supervises, or otherwise maintains a place of prostitution or a prostitution enterprise ..." ORS 167.012(1)(a).

> FN5. According to the defendants, these rules were kept behind the bar in the club and are posted in the dancers' dressing room; however, the plaintiff claims that the rules were only posted in the dressing room for a brief period of time while she was working at Jiggles.

The plaintiff attended several meetings with other dancers where the house rules were discussed. In these meetings, the plaintiff expressed her disapproval of these rules and objected to them as being too confining and controlling. The plaintiff believed that if she was an independent contractor, the defendants did not have the right to tell her what she could and could not do. Particularly, she objected to the rule requiring her body to be at least six inches from the customer at all times. Additionally, the plaintiff objected to the defendants' table dance prices because she felt that the defendants had no right to limit the price for a dance.

The plaintiff asserts that she frequently expressed to Jiggles managers and co-workers, her disagreement with work rules and characterization of dancers as independent contractors. However, the plaintiff's deposition testimony indicates that until this lawsuit was filed, she never demanded

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d   FOR EDUCATIONAL USE ONLY   Page 3
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

from the defendants that she be paid a minimum wage in addition to her other compensation from the club. Rather, she only talked about this minimum wage amongst her co-workers.

The plaintiff was fined twice for not obeying the defendants' rules. First, in approximately 1995, the plaintiff was fined $10.00 for not calling to notify the defendants that the plaintiff would be late for her shift. Second, on October 30, 1997, the plaintiff was called up by the shift manager, Veronica Duman, and fined $20.00 for violating the "six-inch" house rule.[FN6] Ms. Duman claimed that Matson had violated the rule by touching a customer. The plaintiff asserts that she argued with Ms. Duman over this fine, but she agreed to pay the money because Ms. Duman told her that she could not dance again without paying the $20.00. However, the plaintiff then asked for a written receipt for the $20.00. The plaintiff objected to the narrative in the receipt that the plaintiff had her "boobs in the face" of a customer, and the plaintiff demanded that Ms. Duman rewrite the receipt. When Ms. Duman refused to change the receipt, the plaintiff refused to pay the $20.00 fine. Ms. Duman and Defendant Frances Schmitz then asked her to go home. Subsequently, the plaintiff asked the defendants if she could come back to work, but they refused to invite her back. The plaintiff concedes that she has never heard the defendants make any derogatory statement against her.

> FN6. The plaintiff had been warned on other occasions about physical contact with the customers but was never fined.

*3 The plaintiff then filed this lawsuit. The plaintiff's First and Second Claims for Relief allege that in addition to the compensation she has already received from her work at Jiggles, she is entitled to a minimum wage pursuant to Oregon Revised Statutes § 652.140 and 29 U.S.C. § 206 (Fair Labor Standards Act). The plaintiff seeks $2,755 for 1993, $4,859.75 for 1994, $1,548.50 for 1995, $2,764.50 for 1996, and $5,362.50 for 1997, plus pre and post-judgment interest and attorney's fees. In her Third and Fourth Claims for Relief, the plaintiff is seeking penalty wages and liquidated damages for a willful violation of the state and federal wage laws. In her Fifth Claim for Relief, the plaintiff alleges wrongful termination due to her resistance to unlawful employment practices by defendants. In her Sixth Claim for Relief, the plaintiff alleges that by charging a house fee for the use of the facilities at the defendants' establishment and by imposing fines for failure to obey house rules, the defendants converted $17,983.00 during the period of the plaintiff's employment. In her Seventh Claim for Relief, the plaintiff alleges that she was coerced into paying fines and house fees by threat of termination.

III SUMMARY JUDGMENT STANDARD

FRCP 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact, and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact.*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party shows the absence of any issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Id.* at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.), *cert. denied,* 493 U.S. 809 (1989). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."*Id.* at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the non-moving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."*Id.* at 249-50. When a nonmoving

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                        Page 4
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. *California v. Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1470, (9th Cir.1987), *cert. denied,* 484 U.S. 1006 (1988) (cite omitted). The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."*Id.* at 1468.

IV DISCUSSION

A. FEDERAL LABOR STANDARDS ACT WAGE CLAIM

1. Plaintiff's independent contractor status

*4 The plaintiff alleges that she was not paid a minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 206; however, this Act only affords "minimum wage" protection to employees and not independent contractors. In this case, there is no genuine issue of material fact calling into question the plaintiff's status as an independent contractor at Jiggles; therefore, her F.L.S.A. claim fails, and summary judgment is granted with respect to this claim.

"In deciding whether an individual is an employee within the meaning of the F.L.S.A., the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship."*Donovan v. Tehco,* 642 F.2d 141, 143 (5th Cir.1981); Under this "economic reality" test, "the focal inquiry in the characterization process is thus whether the individual is or is not, as a matter of economic fact, in business with [herself]."*Id.*Five criteria have emerged to guide this determination: (1) the permanency of the working relationship, (2) the opportunity for profit and loss, (3) investment in material, (4) the degree of control, and (5) the individual's skill. *Id.*

An application of these factors to the instant case undisputably leads to the conclusion that the plaintiff was an independent contractor "who [was], as a matter of economic fact, in business with [herself]." The written agreement that was signed by the plaintiff three different times during her tenure at Jiggles is the most telling indicator of her status as an independent contractor. This agreement expressly articulated that the plaintiff was "an individual contractor [who was] solely responsible for payment of [her] federal, state, and social security taxes and state industrial accident insurance" and that she did hereby "relieve 7455 Inc. DBA Jiggles from any or all responsibility for payment of said taxes on [her] behalf."Additionally, the plaintiff was paid exclusively through fees and tips for table dances, income which was largely dependent on the plaintiff's own skill to attract customers and not on any salary or hourly wage set by the defendants. Through this method of compensation, the plaintiff was in control of her opportunity for profit.

Nevertheless, the plaintiff argues that the degree of control that the defendants kept and exercised over the job performance of the dancers compels the conclusion that Matson was an employee. In particular, the plaintiff points to the "six inch" rule as demonstrative of this control. This rule prohibits dancers from coming within six inches of the customer. The plaintiff's argument fails because this rule is not reflective of the defendants' control over her job performance. Instead, it was implemented by the defendants to avoid potential criminal liability for acts of prostitution in their nightclub.

Thus, the plaintiff has failed to establish any material fact disputing her status as an independent contractor. Accordingly, her F.L.S.A. claim cannot survive summary judgment.

2. F.L.S.A. claim analyzed under the assumption that the plaintiff was an employee.

*5 Even if the plaintiff was assumed to be an employee by this court, her F.L.S.A. claim still fails under the summary judgment standard as she has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                                    Page 5
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

not provided any support for her allegation that she was improperly compensated under the Act. The plaintiff simply rests on her pleadings in support of this allegation without establishing any material fact disputing appropriate compensation under the federal law.

The plaintiff claims that the defendants did not pay her a "minimum wage" in violation of the Federal Labor Standards Act, 29 U.S.C. § 206. In support of this argument, the plaintiff specifically cites to 29 U.S.C. § 203(m). This statute allows an employer to take a credit for tips received by a "tipped employee" to offset the minimum wage due under the federal law; however, this credit is limited. Only a portion of the tips may count toward the "minimum wage" requirement. Section 203(m) describes how tips are to be included in the "minimum wage" calculation.

In determining the wage an employer is required to pay a "tipped employee,"[FN7] the amount paid such employee by the employer shall be an amount equal to -

> FN7. A "tipped employee" means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. The plaintiff clearly falls within this category.

(1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996 [minimum wage on that date was ($4.25)], and

(2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the [minimum wage in effect].

The additional amount on the account of tips may not exceed the value of the tips actually received by an employee.

Moreover, Section 203(m) states that an employer cannot use tips to offset a "minimum wage" requirement unless the employee has been notified of it.

The plaintiff argues that in violation of Section 203(m), the defendants failed to pay any cash wages, and solely left her to be compensated with tips from the customers for whom she danced. However, the plaintiff fails to understand that Section 203(m) does not apply to the mandatory fees she received from the customers. The $5 and $10 mandatory fees paid by the customers for table dances were not tips as defined by 29 C.F.R. § 531.52-a regulation interpreting 29 U.S.C. § 203:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment or a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.

29 C.F.R. § 531.55 gives further insight on the definition of a tip: A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t).

*6 These definitions make it abundantly clear that the fixed fees collected by the plaintiff in exchange for table dances are not "tips." No limitation in the F.L.S.A. statute exists precluding the use of such fixed fees in the calculation of an employee's minimum wage.

Nevertheless, in addition to these fixed fees, it is true that the plaintiff received actual "tips" from Jiggles' patrons. These tips implicate Section 203(m) and can only be used to offset a portion of the minimum wage requirement;[FN8] however, the plaintiff did not maintain records distinguishing her tips from the fixed fees, and she now claims that she has no method of separating the tips from the

Case 1:07-cv-08718-RMB-THK    Document 30-17    Filed 02/22/2008    Page 7 of 7

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 6
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

mandatory fees. With such a deficient record, the plaintiff cannot specify an amount by which she was allegedly undercompensated, and she has no factual basis upon which to assert an F.L.S.A. claim. Moreover, she has not alleged or provided any evidence of the amount of total compensation which she earned at Jiggles in 1994, 1995, or 1996. She has only provided estimates of total compensation for 1993 and 1997 through deposition testimony-years in which her average hourly wage was far beyond the minimum wage. In 1993, the plaintiff's hourly wage was between $82.75 and $124.14. In 1997, the plaintiff's hourly wage was between $73.85 and $98.46.[FN9]

> FN8. The plaintiff also claims that the defendants did not give the notice required by Section 203(m) of their intention to offset her minimum wage with monies received by her from customers. First, this requirement of notice only applies to the actual "tips" that she received. This requirement does not apply to the $5 and $10 fixed fees since they do not implicate Section 203(m) as discussed above. Second, as the plaintiff concedes on page 2, paragraph 4, of her own affidavit, she was originally told by the defendants that her compensation was to come solely from the customers in the form of tips and fees. Thus, it does not make logical sense for the plaintiff to simultaneously assert that she was not on notice that her wages consisted solely of fees and tips from customers.

> FN9. These estimates were calculated without separation of mandatory fees and tips as there is no record of this separation.

Under such deficient facts, the plaintiff cannot meet her initial burden under the F.L.S.A. An employee carries the initial burden of proving that "[s]he has in fact performed work for which she was improperly compensated and ... [producing] sufficient evidence to show the amount and the extent of that work as a matter of just and reasonable inference."*Donovan v. Simmons Petroleum Corporation,* 725 F.2d 83, 85 (10th Cir.1983), *citing Anderson v. Mt. Clemens Pottery Co,* 328 U.S. 680, 686-87 (1946). Although this is a very minimal burden, the plaintiff has presented absolutely no evidence that she was wrongfully compensated.

Thus, there is no genuine dispute as to any material fact, and the defendant is entitled to summary judgment as a matter of law on the plaintiff's F.L.S.A. claim. Pursuant to this ruling, all other claims for relief are moot. The plaintiff's Liquidated Damages claim for willful violation of the F.L.S.A. is moot as it was dependent on a finding of liability on the plaintiff's F.L.S.A. claim. The plaintiff's state statutory and common law claims for relief are moot as this court no longer has federal subject matter jurisdiction over them pursuant to 28 U.S.C. §§ 1331 and 1367(a).

THEREFORE, IT IS HEREBY ORDERED:

1. The defendant's motion for summary judgment is granted with respect to the plaintiff's Fair Labor Standards Act claim.

2. All other claims for relief alleged by the plaintiff are moot.

3. All of the plaintiff's claims for relief are dismissed.

D.Or.,2000.
Matson v. 7455, Inc.
Not Reported in F.Supp.2d, 2000 WL 1132110 (D.Or.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.