**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Anjana Samant  (AS 5163)
Tammy Marzigliano (TM 2934)
Cara E. Greene (CG 0722)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No.
24001807) (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas  77002
Telephone:  (713) 877-8788

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB, BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN LEVIN, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**SCORES HOLDING COMPANY, INC.; GO WEST ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; and SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST SIDE.; ENTERTAINMENT MANAGEMENT SERVICES, INC.; and 333 EAST 60th STREET, INC. a/k/a SCORES EAST SIDE.**<br><br>**Defendants.** | **No. 07 Civ. 8718 (RMB)** |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY UNDER FEDERAL RULE OF CIVIL PROCEDURE ("RULES") 56(F) AND 12(D), AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(B) OF THE FLSA

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

PROCEDURAL AND FACTUAL BACKDROP ............................................................ 2

ARGUMENT ................................................................................................................... 2

    I. THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE IT DOES NOT IDENTIFY THE PROCEDURAL MECHANISMS UPON WHICH DEFENDANTS RELY. .................................. 2

    II. SCORES HOLDING COMPANY CANNOT ESCAPE LIABILITY, AT LEAST NOT AT THIS EARLY STAGE OF THE CASE. ................................................................................................ 3

        A. Plaintiffs Adequately State a Claim That SHC is Liable for Wage and Hour Violations. 3

        B. The Licensing Agreements and the Smith Declaration Do Not Satisfy Defendants' Summary Judgment Burden. ................................................................................ 6

        C. The Limited Discovery Plaintiffs Have Taken is Sufficient to Defeat a Summary Judgment Motion. .............................................................................................. 7

        D. Alternatively, the Court Should Grant Plaintiffs' Cross-Motion for Discovery Under Rule 12(d) and Rule 56(f). ................................................................................. 8

    III. PLAINTIFFS' STATE A CLAIM FOR RELIEF FOR EAST SIDE WORKERS. ................... 9

    IV. PLAINTIFFS MAY BRING A CLASS ACTION AND A COLLECTIVE ACTION TOGETHER .......... 10

        A. The Class Mechanism is Important to NYLL Enforcement. .......................................... 12

        B. Defendants' "Incompatibility" Argument Is an "Imaginary Legal Doctrine." ............... 13

        C. Plaintiffs' NYLL Class Action Does Not Violate The Rules Enabling Act. .................. 14

        D. The Court Has Jurisdiction over Plaintiffs' NYLL Claims. ........................................... 16

            1. The Court has Original Jurisdiction Over the State Law Claims Under the Class Action Fairness Act. .......................................................................................... 16

            2. This Court has supplemental jurisdiction over Plaintiffs' state law claims. ............... 17

        E. Effective Court-Supervised Notice to the NYLL Class Can Easily Issue ..................... 19

            1. Courts are Well-Equipped to Ensure Effective Notice. ............................................... 19

i

2. Defendants' Opposition to Class Certification is Premature and Without Merit. ....... 20

3. A Well-Crafted Notice Will Not Be Confusing. .......................................................... 20

V. NOTICE TO THE MEMBERS OF THE COLLECTIVE IS APPROPRIATE AND NECESSARY ............. 21

A. Scores East and Scores West Share Common Policies. ................................................... 22

B. Scores East and Scores West Share Common Control. .................................................... 22

C. Both Clubs Have the Same Diamond Dollar Policy – Not to Exchange Them For Their Full Value ............................................................................................................................. 23

D. Scores' Uniform Policies Are Uniform. ......................................................................... 23

E. Although Now is Not the Time for a Merits Determination, Scores' Arguments Raise Issues Common to the Collective. ......................................................................................... 24

1. Whether Club Worker Attire is a Uniform Can be Determined on A Class-Wide Basis. ........................................................................................................................................ 25

2. Whether Dancers are "Employees" Can be Determined on A Class-Wide Basis. ....... 25

3. Whether Scores Informed Employees of 29 U.S.C. § 203(m) Can Be Determined On a Class-Wide Basis. .............................................................................................................. 29

F. Equitable Tolling Cannot be Ruled Out at this Stage. ..................................................... 30

G. Plaintiffs' Proposed Notice is Appropriate. .................................................................... 30

CONCLUSION ........................................................................................................................... 30

## TABLE OF AUTHORITIES

**CASES**

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..................................................................................4

*Aetna Casualty & Surety  Co. v. Aniero Concrete Co. Inc.*,
   404 F.3d 566 (2d Cir. 2005)...............................................................................9

*In re "Agent Orange" Prod. Liability Litigation*,
   818 F.2d 145 (2d Cir. 1987)..............................................................................19

*Aguayo v. Oldenkamp Trucking*,
   No. CV-F-04-6279, 2005 U.S. Dist. LEXIS 22190 (E.D. Cal. Oct. 3, 2005) ........................11

*Allen v. Coughlin*,
   64 F.3d 77 (2d Cir. 1995) ..................................................................................6

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
   326 F.3d 63 (2d Cir. 2003)..................................................................................4

*America Casualty Co. v. Nordic Leasing, Inc.*,
   42 F.3d 725 (2d Cir.1994)..................................................................................6

*Ansoumana v. Gristede's Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ..............................................................10, 12, 17, 18, 20, 21

*Arculeo v. On-Site Sales & Marketing, LLC*,
   425 F.3d 193 (2d Cir. 2005)..................................................................................5

*Ayres v. 127 Restaurant Corp.*,
   12 F. Supp. 2d 305 (S.D.N.Y. 1998).......................................................................25

*Baas v. Dollar Tree Stores, Inc.*,
   No. 07-03108, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007) ........................10, 16

*Bahramipour v. Citigroup Global Markets, Inc.*,
   No. C 04-4440, 2006 U.S. Dist. LEXIS 9010 (N.D. Cal. Feb. 22, 2006)...............................11

*Bamonte v. City of Mesa*,
   No. Cv 06-01860, 2007 U.S. Dist. LEXIS 50101 (D. Ariz. July 10, 2007) .....................10, 19

*Bartleson v. Winnebago Industrial Inc.*,
   No. C02-3008, 2003 U.S. Dist. LEXIS 19058 (N.D. Iowa Oct. 24, 2003) .......................11, 17

*Barnett v. Washington Mut. Bank, FA*,
　No. 03-00753, 2004 U.S. Dist. LEXIS 18491 (N.D. Cal. Sept. 9, 2004) ...............................11

*Belbis v. County of Cook*,
　No. 01 C 6119, 2002 U.S. Dist. LEXIS 22426 (N.D. Ill. Nov. 13, 2002) .............................11

*Bell Atlantic Corp. v. Twombly*,
　127 S. Ct. 1955 (2007) ......................................................................................................4

*Beltran-Benitez v. Sea Safari, Ltd.*,
　180 F. Supp. 2d 772 (E.D.N.C. 2001)...........................................................................11, 17

*Bodner v. Banque Paribas*,
　202 F.R.D. 370 (E.D.N.Y. 2000) .........................................................................................20

*Bonham v. Copper Cellar Corp.*,
　476 F. Supp. 98 (E.D. Tenn. 1979).....................................................................................29

*Breeden v. Benchmark Lending Group, Inc.*,
　229 F.R.D. 623 (N.D. Cal. 2005).........................................................................................11

*Brickey v. Dolencorp, Inc.*,
　244 F.R.D. 176 (W.D.N.Y. 2007).............................................................................10, 19, 21

*Brock v. Superior Care, Inc.*,
　840 F.2d 1054 (2d Cir. 1988)..........................................................................................27, 28

*Brzychnalski v. UNESCO, Inc.*,
　35 F. Supp. 2d 351 (S.D.N.Y. 1999)....................................................................................10

*Bursell v. Tommy's Seafood Steakhouse*,
　Civ. No. H-06-0386, 2006 U.S. Dist. LEXIS 80526 (S.D. Tex. Nov. 3, 2006) .....................29

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986).............................................................................................................6

*Chan v. Sung Yue Tung Corp.*,
　No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) .............................29

*Chan v. Triple 8 Palace*,
　No. 03-6048, 2004 U.S. Dist. LEXIS 9359 (S.D.N.Y. May 24, 2004) ......................10, 12, 18

*Chateau de Ville Products, Inc. v. Tams-Witmark Music Library, Inc.*,
　586 F.2d 962 (2d Cir. 1978)................................................................................................20

*Chavez v. IBP, Inc.*,
　No. 01-5093, 2002 U.S. Dist. LEXIS 24598 (E.D. Wash. Oct. 28, 2002) ........................11, 17

*Chung v. New Silver Palace Restaurant, Inc.*,
    246 F. Supp. 2d 220 (S.D.N.Y. 2002)................................................................4, 29

*Cryer v. Intersolutions, Inc.*,
    No. 06-2032, 2007 U.S. Dist. LEXIS 29241 (D.D.C. Apr. 20, 2007).................10, 18, 21, 27

*Damassia v. Duane Reade, Inc.*,
    No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006) ...........................21

*De Asencio v. Tyson Foods, Inc.*,
    342 F.3d 301 (3d Cir. 2003)...............................................................................11

*DeLeon-Granados v. Eller & Sons Trees, Inc.*,
    497 F.3d 1214 (11th Cir. 2007) ..........................................................................11

*De Luna-Guerrero v. N.C. Grower's Association, Inc.*,
    338 F. Supp. 2d 649 (E.D.N.C. 2004)....................................................................12

*Doe v. Abington Friends School*,
    480 F.3d 252 (3d Cir. 2007)..................................................................................8

*Dominguez v. Don Pedro Restaurant*,
    No. 2:06 cv 241, 2007 U.S. Dist. LEXIS 72444 (N.D. Ind. Sep. 26, 2007)..........................29

*Donovan v. Tavern Talent & Placements, Inc.*,
    Civ. No. 84-F-401, 1986 U.S. Dist. LEXIS 30955 (D. Colo. Jan. 8, 1986) ..........................26

*Duchene v. Michael L. Cetta, Inc.*,
    244 F.R.D. 202 (S.D.N.Y. 2007) ...............................................................10, 11, 21

*Eisen v. Carlisle & Jacquelin*,
    391 F.2d 555 (2d Cir. 1968)...............................................................................13

*Ellis v. Edward D. Jones & Co.*,
    No. 06-66, 2007 U.S. Dist. LEXIS 94664 (W.D. Pa. Dec. 18, 2007) ....................................15

*Ellison v. Autozone, Inc.*,
    No. C06-07522, 2007 U.S. Dist. LEXIS 70187 (N.D. Cal. Sept. 13, 2007) .........11, 13, 14, 16

*Farhy v. Janney Montgomery Scott, LLC*,
    Nos. 06-3202, 06-3969, 2007 U.S. Dist. LEXIS 39112 (E.D. Pa. Apr. 6, 2007) ...................15

*In re Farmers Insurance Exch. Claims Representative Overtime Pay Litigation*,
    No. 1439, 2003 U.S. Dist. LEXIS 25717 (D. Or. May 19, 2003) ....................................11, 27

*Fowlkes v. Adamec*,
    432 F.3d 90 (2d Cir. 2005)................................................................................3

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).....................................................................10

*Frank v. Gold'n Plump Poultry, Inc.*,
    Civ. No. 04-1018 2005 U.S. Dist. LEXIS 20441(D. Min. Sep. 14, 2005)..............17

*Freeman v. Hoffmann-Laroche, Inc.*,
    No. 07-1503, 2007 U.S. Dist. LEXIS 92589 (D.N.J. Dec. 18, 2007)............10, 13, 14, 20

*Gieseke v. First Horizon Home Loan Corp.*,
    Civ. No. 04-2511, 2006 U.S. Dist. LEXIS 76732 (D. Kan. Oct. 11, 2006)..............30

*Globecon Group, LLC v. Hartford Fire Insurance Co.*,
    434 F.3d 165 (2d Cir. 2006)................................................................................6

*Goldman v. RadioShack Corp.*,
    No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611 (E.D. Penn. Apr. 16, 2003)..............17

*Gottlieb v. Carnival Corp.*,
    436 F.3d 335 (2d Cir. 2006)................................................................................16

*Greene v. Robert Half International, Inc.*,
    No. C05-03248, 2006 U.S. Dist. LEXIS 97050 (N.D. Cal. Mar. 28, 2006)..............11, 12, 13

*Gutescu v. Carey Int'l., Inc.*,
    01-4026-CIV, 2003 U.S. Dist. LEXIS 27507 (S.D. Fla. June 17, 2003)..............27

*Harrell v. Diamond A Entertainment, Inc.*,
    992 F. Supp. 1343 (M.D. Fla. 1997).....................................................................26

*Hart v. Federal Ex Ground Package System Inc.*,
    457 F.3d 675 (7th Cir. 2006)................................................................................16

*Herman v. RSR Sec. Services Ltd.*,
    172 F.3d 132 (2d Cir. 1999)................................................................................4

*Herrera v. Unified Management Corp.*,
    No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406 (N.D. Ill. Aug. 18, 2000)..............30

*Hollander v. America Cyanamid Co.*,
    172 F.3d 192 (2d Cir. 1999)................................................................................6

*Horn v. Associated Wholesale Grocers Inc.*,
    555 F.2d 270 (10th Cir. 1977)................................................................................13

*Hunt v. Pritchard Industrial, Inc.*,
    No. 07 Civ. 0747, 2007 U.S. Dist. LEXIS 47749 (S.D.N.Y. July 3, 2007).............................16

*Iglesias-Mendoza v. LaBelle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) .............................................................................10, 17, 18

*Information Handling Services, Inc. v. Defense Automated Printing Services*,
    338 F.3d 1024 (D.C. Cir. 2003) ........................................................................................8

*Jankowski v. Castaldi*,
    No. 01-0164, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006) ....................................10

*Kelley v. SBC, Inc.*,
    No. 97-CV-2729, 1998 U.S. Dist. LEXIS 18643 (N.D. Cal. Nov. 13, 1998) ..................11, 17

*Kern ex rel. Estate of Kern v. Siemens Corp.*,
    393 F.3d 120 (2d Cir. 2004).............................................................................................20

*Klein v. Ryan Beck Holdings*,
    No. 06 Civ. 3460, 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13 2007)..........10, 13, 14, 15

*K.P. v. Corsey*,
    77 Fed. Appx. 611 (3d Cir. 2003) ....................................................................................12

*Krueger v. New York Telephone Co.*,
    Nos. 93 *Civ. 0178, 93 Civ. 0179*, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21,
    1993) ..........................................................................................................................24

*Krzesniak v. Cendant Corp.*,
    No. C 05-05156, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ...........................26

*La Barbera v. Cretty Enterprises, Inc.*,
    Nos. 03-6112, 04-5178, 2007 U.S. Dist. LEXIS 87560 (E.D.N.Y. Nov. 28, 2007).................5

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
    No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000) ................................11

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) .................................................................................10, 27

*Legrand v. Education Management Corp.*,
    No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004)...................................24

*Lehman v. Legg Mason, Inc.*,
    No. 06-2484, 2007 U.S. Dist. LEXIS 69648 (M.D. Pa. Sept. 20, 2007) ................................14

*Lemus v. Burnham Painting & Drywall Corp.*,
  No. 2:06-cv-01158, 2007 U.S. Dist. LEXIS 46785 (D. Nev. June 25, 2007) ........................27

*Lenahan v. Sears, Roebuck & Co.*,
  No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006)......................................11

*Leyva v. Buley*,
  125 F.R.D. 512 (E.D. Wash. 1989)........................................................................................11

*Lihli Fashions Corp., Inc. v. NLRB*,
  80 F.3d 743 (2d Cir. 1996)......................................................................................................5

*Lima v. International Catastrophe Solutions, Inc.*,
  493 F. Supp. 2d 793 (E.D. La. 2007) ...............................................................................19, 27

*Lindsay v. Government Employees Insurance Co.*,
  448 F.3d 416 (D.C. Cir. 2006) .................................................................11, 13, 15, 17, 18, 19

*Long John Silver's Restaurants, Inc. v. Cole*,
  409 F. Supp. 2d 682 (D.S.C. 2006)........................................................................................15

*Long John Silver's Restaurants, Inc. v. Cole*,
  No. 06-1259, 2008 U.S. App. LEXIS 1798 (4th Cir. Jan. 28, 2008)......................................15

*Lyon v. Whisman*,
  45 F.3d 758 (3d Cir. 1995)....................................................................................................17

*Martens v. Smith Barney, Inc.*,
  No. 96-3779, 2003 U.S. Dist. LEXIS 11587 (S.D.N.Y. June 19, 2003) ...................................3

*Martens v. Thomann*,
  273 F.3d 159 (2d Cir. 2001)....................................................................................................2

*Mascol v. E & L Transportation, Inc.*,
  No. CV-03-3343, 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. 2005)........................................10

*Matson v. 7455, Inc.*,
  No. CV 98-788-HA, 2000 WL 1132110 (D.Or. 2000)...........................................................26

*McLaughlin v. Liberty Mutual Insurance Co.*,
  224 F.R.D. 304 (D. Mass. 2004)............................................................................................11

*Mendez v. Radec Corp.*,
  411 F. Supp. 2d 347 (W.D.N.Y. 2006) ..................................................................................10

*Miller v. Wolpoff & Abramson L.L.P.*,
  321 F.3d 292 (2d Cir. 2003)....................................................................................................8

*Morton v. Valley Farm Transport, Inc.*,
   No. C 06-2933, 2007 U.S. Dist. LEXIS 31755 (N.D. Cal. Apr. 13, 2007) ............................10

*Neary v. Metropolitan Prop. & Casualty Insurance Co.*,
   472 F. Supp. 2d 247 (D. Conn. 2007) .......................................................................10, 12, 14

*Nerland v. Caribou Coffee Co., Inc.*,
   05 Civ. 1847-PJS, slip op. at 17–18 (D. Minn. Apr. 6, 2007) .................................................27

*Noble v. 93 University Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ............................................................................................10

*O'Brien v. Encotech Construction Services, Inc.*,
   203 F.R.D. 346 (N.D. Ill. 2001) .............................................................................................11

*O'Connell v. Hove*,
   22 F.3d 463 (2d Cir. 1994).......................................................................................................15

*Ouedraogo v. Durso Associates*,
   No. 03 CV 1851, 2005 U.S. Dist. LEXIS 11954 (S.D.N.Y. June 16, 2005) ....................10, 18

*Overnite Transport Co. v. Tianti*,
   926 F.2d 220 (2d Cir. 1991).....................................................................................................14

*Pac. Merchant Shipping Association v. Aubry*,
   918 F.2d 1409 (9th Cir. 1990) .................................................................................................14

*Parker v. Time Warner Entertainment Co.*,
   331 F.3d 13 (2d Cir. 2003).......................................................................................................20

*Pendlebury v. Starbucks Coffee Co.*,
   No. 04 Civ. 80521, 2007 U.S. Dist. LEXIS 74846 (S.D. Fla. Sept. 20, 2007).......................27

*Petrosky v. New York State Department of Motor Vehicles*,
   971 F. Supp. 75 (N.D.N.Y. 1997) .............................................................................................4

*Quinteros v. Sparkle Cleaning, Inc.*,
   Civ. No. AW-07-0628, 2008 U.S. Dist. LEXIS 6955 (D. Md. Jan. 28, 2008) .......................27

*Ramirez v. RDO-BOS Farms, LLC*,
   No. 06-174, 2007 U.S. Dist. LEXIS 40633 (D. Or. Jan. 23, 2007) ...................................10, 21

*Recinos-Recinos v. Express Forestry, Inc.*,
   233 F.R.D. 472 (E.D. La. 2006)...............................................................................................10

*Reich v. Circle C. Investments, Inc.*,
   998 F.2d 324 (5th Cir. 1993) ...................................................................................................26

*Reich v. Priba Corp.*,
      890 F. Supp. 586 (N.D. Tex. 1995) ...............................................................26, 28

*Romero v. Producers Dairy Foods, Inc.*,
      235 F.R.D. 474 (E.D. Cal. 2006) ...............................................................11

*Salazar v. AgriProcessors, Inc.*,
      No. 07-CV-1006-LRR, 2007 U.S. Dist. LEXIS 78222 (N.D. Iowa, Oct. 22, 2007) ...............10

*Saur v. Snappy Apple Farms, Inc.*,
      203 F.R.D. 281 (W.D. Mich. 2001) ...............................................................11

*Schering Corp. v. Home Insurance Co.*,
      712 F.2d 4 (2d Cir. 1983) ...............................................................8

*Scholtisek v. Eldre Corp.*,
      229 F.R.D. 381 (W.D.N.Y. 2005)...............................................................10

*Scott v. Aetna Services, Inc.*,
      210 F.R.D. 261 (D. Conn. 2002)...............................................................10, 13

*Sjoblom v. Charter Communications, LLC*,
      No. 3:07-cv-0451, 2007 U.S. Dist. LEXIS 93879 (W.D. Wis. Dec. 19, 2007)
      ...............................................................10, 12, 14, 15, 16, 21

*Smellie v. Mount Sinai Hospital*,
      No. 03-0805, 2004 U.S. Dist. LEXIS 24006 (S.D.N.Y. Nov. 29, 2004)...............................10

*Takacs v. A.G. Edwards & Sons, Inc.*,
      444 F. Supp. 2d 1100 (S.D. Cal. 2006)...............................................................11

*Thomas v. Speedway SuperAmerica, LLC*,
      506 F.3d 496 (6th Cir. 2007) ...............................................................11

*Tierno v. Rite Aid Corp.*,
      No. C 05-02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006)...........................26

*Tomlinson v. Indymac Bank, F.S.B.*,
      359 F. Supp. 2d 898 (C.D. Cal. 2005) ...............................................................11

*Torres v. Gristede's Operating Corp.*,
      No. 04-3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006)......................1, 10, 20

*Trinidad v. Breakaway Courier System, Inc.*,
      No. 05 Civ. 4116 , 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007) ...............................10

*Trotter v. Perdue Farms, Inc.*,
No. Civ. A.99-893-RRM, 2001 U.S. Dist. LEXIS 13212 (D. Del. Aug. 16, 2001) ...............11

*United Mine Workers v. Gibbs*,
383 U.S. 715 (1966)................................................................................................17

*Wang v. Chinese Daily News, Inc.*,
231 F.R.D. 602 (C.D. Cal. 2005) ...........................................................................26

*Westerfield v. Washington Mutual Bank*,
No. 06-CV-2817, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007)
......................................................................................10, 12, 13, 14, 15, 16

*Westfall v. Kendle International, CPU, LLC*,
Civ. No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304 (N.D. W.Va. Feb. 15, 2007) ..........27

*Whiteway v. FedEx Kinko's Office & Print Services*,
No. C 05-2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sep. 13, 2006)...................... 26-27

*Wraga v. Marble Lite, Inc.*,
No. 05-5038, 2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006)................................10

*Zavala v. Wal-Mart Stores, Inc.*,
393 F. Supp. 2d 295 (D.N.J. 2005) ........................................................................27

*Zheng v. Liberty Apparel Co. Inc.*,
355 F.3d 61 (2d Cir. 2003)......................................................................................4

*Zhong v. August August Corp.*,
498 F. Supp. 2d 625 (S.D.N.Y. 2007)................................................................... 4-5

## STATUTES

28 U.S.C. § 2072(b) ................................................................................................15

29 U.S.C. § 203(m) ................................................................................................29

29 U.S.C. §216(b) ................................................................................................21, 22

29 U.S.C. § 218(a) ................................................................................................14

28 U.S.C. §1332(d) ................................................................................................16

New York Labor Law § 650 ....................................................................................12

New York Labor Law § 196(1)(b)...........................................................................13

New York Labor Law § 196(2) ..................................................................................................13

**RULES**

Fed. R. Civ. P. 12(b)(6)...............................................................................................................3

Fed. R. Civ. P. 12(d) ...............................................................................................................4, 9

Fed. R. Civ. P. 56(f) ...................................................................................................................4

Fed. R. Civ. P. 12(g)(2)...............................................................................................................5

Fed. R. Civ. P. 12(h)(1)...............................................................................................................5

Fed. R. Civ. P. 56(e)(1)...............................................................................................................3

**MISCELLANEOUS**

DOL's Wage & Hour Field Operations Handbook § 30c12(f) ....................................................25

## PRELIMINARY STATEMENT

Defendants' motion is an unnecessary make-work exercise – procedurally premature and substantively meritless.[1]  It should not have been brought.[2]

Defendants take a cavalier approach to motion practice that puts Plaintiffs and the Court in a difficult position.  They do not tie any of their arguments to procedural mechanisms, leaving Plaintiffs and the Court to guess as to which rule(s) Defendants hope will allow them relief.  They also fail to acknowledge on-point in-district authority throughout their brief.   They prematurely attack Plaintiffs' class allegations, relying on arguments that have been soundly rejected in this district and in well-reasoned opinions elsewhere.  They oppose supplemental jurisdiction, while ignoring Plaintiffs well-pled allegations of *original* jurisdiction.[3]   They also oppose Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), a motion that courts in this District "typically grant[]," *Torres v. Gristede's Operating Corp.***,** No. 04-3316, 2006 U.S. Dist. LEXIS 74039, at *23 (S.D.N.Y. Sept. 29, 2006), while providing no reason that this Court should stray from the usual practice of conditionally certifying cases like this one.

---

[1]      As used throughout this brief, "Ex." refers to exhibits attached to the Declaration of Tammy Marzigliano ("Marzigliano Dec.").

[2]      Defendants' timing is inexplicable.  They moved to dismiss the Amended Complaint, knowing that it would no longer be operative because Plaintiffs intended to amend it again.  (Ex. 6.)  They also moved for summary judgment before producing a single document in response to Plaintiffs' document requests and before Plaintiffs completed a single deposition.  (Marzigliano Dec. ¶ 6.)   In an attempt to avoid wasting resources, Plaintiffs proposed that Defendants withdraw their motion, wait for Plaintiffs to file their Second Amended Complaint, agree to an expedited schedule for discovery on the issues Defendants raise in their motion, and ask the Court to set a new briefing schedule.  (Ex. 8.)  Defendants summarily rejected this proposal, as well as Plaintiffs' alternate proposal addressing Defendants' stated concerns.  (Exs. 9, 10.)

[3] Plaintiffs alerted Defendants to this oversight and offered to allow them to withdraw their motion and re-file it with a section opposing Plaintiffs' allegations of original jurisdiction. Defendants refused this offer.  (Ex. 10.)

# FACTUAL BACKGROUND[4]

Plaintiffs are servers, bartenders, dancers, and other tipped employees who work or have worked at two Scores nightclubs in New York City. (Ex. 7, Second Amended Class Action Complaint ("SAC") ¶¶ 12, 16, 24, 28, 32, 94, 104.) They bring this representative action under the FLSA and New York Labor Law ("NYLL") to recover unpaid wages, misappropriated tips, and unlawful deductions from their wages. (SAC ¶¶ 9, 10.) Defendants are the owners and operators of Scores' New York City clubs and are all Plaintiffs' "employers" under the FLSA and NYLL. (SAC ¶¶ 35-40.)

## ARGUMENT

### I.    THE COURT SHOULD DENY DEFENDANTS' MOTION BECAUSE IT DOES NOT IDENTIFY THE PROCEDURAL MECHANISMS UPON WHICH DEFENDANTS RELY.

The Court should deny Defendants' motion because their arguments are not tethered to any procedural mechanisms. They make them in a vacuum. Although Defendants' Notice of Motion refers to four Federal Rules of Civil Procedure ("Rule" or "Rules"), 12(b)(1), 12(b)(6), 12(b)(7), and 56, their supporting memorandum does not mention even one.

This is not just bad form, it is a substantive failing. *See Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001) (failure to identify procedural mechanism is not merely a "procedural formality," but can "severely burden[]" review and disposition of a motion). It leaves Plaintiffs and the Court with the impossible task of divining which provisions Defendants attempt to employ for which argument, and how. Without knowing which rules Defendants invoke for which arguments, Plaintiffs and the Court cannot know what standards to apply in analyzing them. *Id.* (each procedural mechanism "carries its own procedures, its own standards for

---

[4]    (*See also* Plaintiffs' Memorandum of Law in Support of Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion") filed on January 18, 2008.)

granting relief by the district court, and its own standards of review . . . , thus making identification of the precise nature of the motion an essential . . ."). The Court should deny Defendants' motion for this reason alone. *See Martens v. Smith Barney, Inc.*, No. 96-3779, 2003 U.S. Dist. LEXIS 11587, at *13–14 (S.D.N.Y. June 19, 2003) (denying motion, after remand, for failure to identify procedural mechanism).

Although procedural ambiguity should doom Defendants' motion, Plaintiffs will attempt to respond to Defendants' substantive arguments head-on, guessing which rules Defendants invoke, providing the Court with the relevant standards, and applying the standards.

## II.    SCORES HOLDING COMPANY CANNOT ESCAPE LIABILITY, AT LEAST NOT AT THIS EARLY STAGE OF THE CASE.

The Court should deny Defendants' premature attempt to eliminate Scores Holding Company, Inc. ("SHC") from the case under any imaginable standard. Defendants fail under Rule 12(b)(6) because Plaintiffs adequately plead two theories under which SHC can be held liable.[5] They fail under Rule 56 because even limited discovery demonstrates genuine issues of material fact as to SHC's potential liability, and because a summary judgment motion is exceptionally premature.

### A.    Plaintiffs Adequately State a Claim That SHC is Liable for Wage and Hour Violations.

Plaintiffs clearly "state a claim upon which relief can be granted." Rule 12(b)(6). They plead two separate theories under which Defendants are liable to them – "joint employment" and "single integrated enterprise." In deciding a Rule 12(b)(6) motion, the Court must take Plaintiffs' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted). The Court should only

---

[5]    If the Court holds that Plaintiffs do not adequately state a claim for SHC's liability, Plaintiffs respectfully request leave to amend their pleading to cure the deficiency.

"assess the legal feasibility of the complaint," not weigh the evidence.  *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003).  Plaintiffs must only "provide the grounds upon which [their] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).[6]

Under "joint employer" liability, two or more entities control aspects of a workers' employment.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003).  Relevant factors include whether the alleged employer (1) had the power to hire and fire, (2) controlled work schedules or employment conditions, (3) made compensation decisions, or (4) maintained employment records.  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  Courts also consider overlapping ownership interests.  *See Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 230 (S.D.N.Y. 2002).  No single factor is dispositive.  *See Zheng,* 355 F.3d at 68–71.  Courts look to the "economic reality" of the relationship.  *Id.*

Plaintiffs clearly allege that SHC employed them (SAC ¶¶ 35, 36, 62, 64, 111, 112, 113, 114),[7] and "jointly employed" them (SAC ¶¶ 35, 36, 62).  This is enough to put Defendants on notice of Plaintiffs' claims.  *See Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628–29

---

[6]    If the Court considers Defendants' motion to be a motion to dismiss, it should exclude the supporting materials Defendants submit and decide the motion in Plaintiffs' favor.  Rule 12(d); *see also Petrosky v. N.Y. State Dep't of Motor Vehicles*, 971 F.Supp. 75, 76–77 (N.D.N.Y. 1997) ("The Second Circuit mandates that where materials outside the pleadings are offered on a motion to dismiss, a district court should adhere strictly to the language of Rule 12(b)") Alternatively, if the Court does not exclude Defendants' supporting materials, the Court should consider this a motion for summary judgment under Rule 56, and grant Plaintiffs cross-motion for discovery and the opportunity to present supporting material.  *See* Rule 12(d), 56(f); Section II(D), *infra*.  Plaintiffs submit declarations in support of their opposition to Defendants' motion only out of an abundance of caution.  If the Court excludes the materials that Defendants submit, the Court should similarly disregard Plaintiffs' supporting materials.

[7]    Plaintiffs cite to allegations in the SAC, the operative pleading, which Defendants knew Plaintiffs planned to file before pressing this motion.  Plaintiffs suggested that Defendants withdraw their motion without prejudice and decide whether to re-file it, but Defendants rejected this suggestion.  (Ex. 9, 10.)

(S.D.N.Y. 2007).  Plaintiffs also allege specific facts supporting joint employment liability.[8]

Under "single integrated enterprise" liability, two or more "nominally separate companies" share liability if they "are actually part of a single integrated enterprise" such as "separate corporations under common ownership and management."  *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).  Courts consider the interrelation of operations; common management; centralized control of labor relations; and common ownership, *see Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996); as well as the use of shared office facilities and equipment and connections between or among enterprises.  *La Barbera v. Cretty Enters., Inc.*, Nos. 03-6112, 04-5178, 2007 U.S. Dist. LEXIS 87560, *5–6 (E.D.N.Y. Nov. 28, 2007).  "[S]ingle employer status . . . is characterized by absence of an arm's length relationship found among un-integrated companies." *Lihli Fashions Corp Inc.*, 80 F.3d at 747.

Defendants do not challenge the sufficiency of Plaintiffs' allegations that SHC and Scores West Side are an "integrated enterprise" (SAC ¶ 35), or Plaintiffs' substantial supporting allegations,[9] which are more than enough to put Defendants on notice of Plaintiffs' integrated enterprise theory.  Because Defendants' do not move against Plaintiffs' integrated enterprise allegations, they waive their right to do so.  *See* Rule 12(g)(2), 12(h)(1).

---

[8]     SHC had the "power to hire and fire Plaintiffs and Class Members" (SAC ¶ 111); "supervised and controlled Plaintiffs and the Class Members' schedules and conditions of work" (SAC ¶ 112); "determined the rate and method of payment of Plaintiffs and the Class Members" (SAC ¶ 113); "maintained employment records for Plaintiffs and the Class Members" (SAC ¶ 114); "has had substantial control over Plaintiffs' working conditions, over their compensation, over their work schedules, and over the unlawful policies and practices" (SAC ¶58); "has and exercises operational control over its licensees, including but not limited to control over: compensation of workers. . ." (SAC ¶64); and "supervised and controlled Plaintiffs and the Class Members' schedules and conditions of work" (SAC ¶112).

[9]     The operations of SHC and Scores West Side were interrelated and commonly managed (SAC ¶¶ 46, 51, 54, 57), both had control over labor relations (SAC ¶¶ 55, 58, 111, 112, 113); and there was common ownership (SAC ¶¶ 41-45, 56).

5

### B.      The Licensing Agreements and the Smith Declaration Do Not Satisfy Defendants' Summary Judgment Burden.

The Court should deny Defendants' motion for summary judgment because Defendants do not meet their burden to establish the absence of a factual issue as to SHC's liability. Summary judgment is appropriate only where "there is no genuine issue of material fact." *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The Court must draw all reasonable inferences in favor of the nonmoving party. *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir. 1995). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants base their entire argument on two licensing agreements and a declaration from SHC's CEO, Curtis Smith ("Smith"), none of which address the questions of SHC's liability as a joint employer or as part of a single integrated enterprise. Defendants misstate the terms of the licensing agreements when they claim that they "do not authorize *or allow* Scores Holding to exercise any control over the terms or conditions for club-level employees. . ." Def. Mem. at 3 (emphasis added). A careful reading of the licensing agreements reveals that they do not prohibit operational control over the clubs – they are silent on the question.[10] While a Court could infer that Defendants are correct, such an inference in favor of a moving party is not appropriate. *See Am. Cas. Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994).[11]

---

[10]    Additionally, the licensing agreements are not in admissible form, so the Court should not consider them. Defendants do not establish that Smith "is competent to testify on the matters stated," Rule 56(e)(1), including on the admissibility, authenticity, or relevance of the licensing agreements. *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999). For instance, Smith does not claim to have signed the licensing agreements, or to know who did, and never states that the licensing agreements were ever actually operative, or during what period. There is also no evidence that the licensing agreements, which are dated Mar. 31, 2003, applied during the early part of the NYLL liability period, which begins on Sept. 17, 2001. (SAC ¶ 94.)

[11]    Likewise, Smith's declaration, although purporting to explain the content of the licensing agreements, says nothing about what actually happens at the clubs. Although he had every opportunity to do so, Smith never directly states that SCH did not actually exercise operational

**C.    The Limited Discovery Plaintiffs Have Taken is Sufficient to Defeat a Summary Judgment Motion.**

Even after only limited discovery, there is an obvious issue of fact as to SHC's liability. Most glaring are Richard Goldring's ("Goldring") overlapping ownership interests and shared operational control.  Goldring is a major shareholder in SHC (46%) and is the co-owner and President of Scores West Side and Scores East Side.  (Transcript of John Neilson ("Neilson"), dated Feb. 7, 2008 ("Neilson Tr.") 11:22-12:8, 22:2-8, 31:25-32:5, 39:23-40:2, at Ex. 4; Transcript of Curtis Smith, dated Feb. 7, 2008 ("Smith Tr.") 7:7-16, 13:5-8, 19:23-20:6, 21:6-15, at Ex. 3.)[12]  Goldring operates, manages, and handles the day to day operations of the East and West Side clubs.  (Neilson Tr. 22:12-14, 35:23-36:4, 42:14-16, at Ex. 4.)  Goldring also signs checks on behalf of Entertainment Management Services, Inc. ("EMS"), payable to SHC. (Smith Tr. 36:5-9, 63:13-18, at Ex. 3.)  He participated on both sides of negotiations between SHC and the clubs over the licensing agreements.  (*Id.* at 26:22-27:3, 47:22-49:14, 89:3-13, 91:7-22.)  Goldring and Elliott Osher, who are, "together, majority shareholders of Scores Holding, and the sole shareholders of … 333 East 60th and Go West," and "officers of all three companies" (Samant Dec.[13] Ex. M "State Complaint" ¶ 13), welcome new employees with a letter (Diaz Dec. Ex. B at P173).  Until he resigned in the wake of a plea-bargain with the District Attorney's office (Smith Tr. 20:21-21:5, at Ex. 3), Goldring was the President of SHC and issued himself a paycheck from SHC while he also operated the clubs.  (*Id.* at 36:14-37:25.) SHC and EMS share a common office located at 533 W. 27th Street, NY, NY.  (*Id.* at 14:6-16:12,

---

control and is silent on single integrated enterprise issues.  As Plaintiffs explain in Section II(C), *infra*, even at this early stage of discovery, there is evidence of control and integration.

[12]    Defendants do not dispute that Scores West Side is Plaintiffs' employer.

[13]    (*See* Declaration of Anjana Samant in Support of Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Samant Dec.").) Declarations of all Plaintiffs and Opt-in Plaintiffs are included as Exhibits C through G to the Samant Dec. and are referred to herein as "PLAINTIFF NAME Dec."

32:13-33:25, at Ex. 3.)

Additionally, Neilson, the President of SHC, assists Goldring with Scores West Side's operations.  (Neilson Tr. 37:21-38:3, at Ex. 4.)  Neilson advises Goldring about "business decisions, decisions relating to the operation of the business, ideas, suggestions," (Neilson Tr. 37:18-20, at Ex. 4), and helps make decisions concerning improving profitability, (Neilson Tr. 37:21-38:3, at Ex. 4).

### D.    Alternatively, the Court Should Grant Plaintiffs' Cross-Motion for Discovery Under Rule 12(d) and Rule 56(f).

If the Court does not agree that Plaintiffs have already identified material issues of fact as to SHC's liability, it should still deny Defendants' premature summary judgment motion under Rule 56(f) and grant Plaintiffs' cross-motion for time to conduct discovery.  Pre-discovery summary judgment should be granted only in rare cases.  *Miller v. Wolpoff & Abramson L.L.P.*, 321 F.3d 292, 303–04 (2d Cir. 2003).  It is "well established" that a party opposing a summary judgment motion must be given "adequate opportunity to obtain discovery."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007); *see also Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1032 (D.C. Cir. 2003).

Rule 56(f) provides a mechanism for Courts to deny premature summary judgment motions and allow parties time to engage in necessary discovery.  Where, as here, summary judgment motions are filed early in litigation before a realistic opportunity for discovery, courts freely grant Rule 56(f) applications.  *See*, *e.g.*, *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983) ("[S]ummary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information.").[14]

---

[14]     Additionally, when a moving party presents material outside the pleadings, the court converts the motion to a summary judgment motion and "[a]ll parties must be given a reasonable

In short, discovery here is in its very early stages.  It is not scheduled to close until May 21, 2008.  (Ex. 5. (Scheduling Order).)  As required by the case law, *see Aetna Cas. & Surety Co. v. Aniero Concrete Co. Inc.*, 404 F.3d 566, 606 (2d Cir. 2005), plaintiffs provide the details of discovery by affidavit.  (*See* Marzigliano Dec. ¶¶ 4-26.)

### III.    PLAINTIFFS' STATE A CLAIM FOR RELIEF FOR EAST SIDE WORKERS.

Without citing a procedural mechanism, Defendants also ask the Court to "dismiss" Plaintiffs' claims on behalf of workers at the East Side club[15] because, Defendants claim, Plaintiffs do not name an entity that employed Plaintiffs during the FLSA liability period.  In fact, Plaintiffs name three: SHC, Scores Entertainment, Inc. ("SEI"), and 333 East 60th Street, Inc. ("333").  (SAC ¶¶ 1, 35, 36, 37, 38, 40, 62, 75, 80.)  As Plaintiffs argue in Section II, *supra*, claims against SHC should not be dismissed, at least not at this early stage of discovery.  Defendants admit that SEI operated the East Side club until September 30, 2003 – for more than two years of the NYLL liability period.  (Def. Mem. at 5; Smith Dec. ¶ 7.)  And Defendants do not deny that 333 employed the East Side workers from September 2003 through the present.[16]

Moreover, Plaintiffs have already gathered substantial evidence that the operations of the West Side club and the East Side club are so intertwined that it is difficult to differentiate between them.  Both clubs are owned and operated by Goldring and they share employment policies, practices, and procedures.  (Transcript of Blerta Vikki, dated January 28, 2008 ("Vikki Tr.") 23:2-15, 106:14-107:8, 158:6-18, at Ex. 11; Neilson Tr. 41:21-42:7, at Ex. 4.)  Both clubs

---

opportunity to present all the material that is pertinent to the motion."  Rule 12(d).  This also entitles Plaintiffs to discovery.

[15]    Plaintiffs do not bring claims on behalf of workers at clubs outside of New York City. (SAC ¶¶ 94, 104.)

[16]    Plaintiffs repeatedly asked Defendants' counsel to disclose the name of the entity that operated the East Side club.  Defendants' counsel, although admitting that they would represent that entity in this litigation, refused, and forced Plaintiffs to learn it through discovery. (Marzigliano Dec. ¶ 28.)

use virtually the same employee handbook.  (Neilson Tr. 41:18-42:7, at Ex. 4.)  They share

supervisory personnel (Vikki Tr. 23:25-24:5; 23:18-24, at Ex. 11), and employees (Vikki Tr.

23:2-24:13, at Ex. 11).  In order to fully respond to Defendant's motion, however, Plaintiffs need

full discovery on this issue, which they have requested.  (Marzigliano Dec. ¶¶ 23-31.)

## IV.    PLAINTIFFS MAY BRING A CLASS ACTION AND A COLLECTIVE ACTION TOGETHER.

Defendants seek to dismiss Plaintiffs' NYLL class claims without citing any procedural

mechanisms and based on arguments that have little or no basis in law.  Defendants ignore the

substantial weight of authority in this circuit[17] and around the country[18] allowing standard

---

[17]    *See, e.g.*, *Iglesias-Mendoza v. LaBelle Farm, Inc.¸* 239 F.R.D. 363, 374 (S.D.N.Y. 2007); *Brickey v. Dolencorp, Inc.*, 244 F.R.D. 176 (W.D.N.Y. 2007); *Westerfield v. Wash. Mut. Bank*, 06-CV-2817, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007); *Klein v. Ryan Beck Holdings*, 06 Civ. 3460, 2007 U.S. Dist. LEXIS 51465 (S.D.N.Y. July 13 2007); *Trinidad v. Breakaway Courier Sys., Inc.*, 05 Civ. 4116 , 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. 2007); *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.,* 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006); *Mendez v. Radec Corp.*, 411 F. Supp. 2d 347 (W.D.N.Y. 2006); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006); *Jankowski v. Castaldi*, No. 01-0164, 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 13, 2006); *Wraga v. Marble Lite, Inc.*, No. 05-5038, 2006 U.S. Dist. LEXIS 60457 (E.D.N.Y. Aug. 22, 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005); *Ouedraogo v. Durso Assocs.*, 03 CV 1851, 2005 U.S. Dist. LEXIS 11954 (S.D.N.Y. June 16, 2005); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381 (W.D.N.Y. 2005); *Mascol v. E & L Transp., Inc.*, CV-03-3343, 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. 2005); *Smellie v. Mount Sinai Hosp.*, No. 03-0805, 2004 U.S. Dist. LEXIS 24006 (S.D.N.Y. Nov. 29, 2004); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004); *Chan v. Triple 8 Palace*, No. 03-6048, 2004 U.S. Dist. LEXIS 9359 (S.D.N.Y. May 24, 2004); *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 264–68 (D. Conn. 2002); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001); *Brzychnalski v. UNESCO, Inc.,* 35 F. Supp. 2d 351 (S.D.N.Y. 1999).  *But see Neary v. Metro. Prop. & Cas. Ins. Co.*, 472 F. Supp. 2d 247 (D. Conn. 2007).

[18]    *See, e.g.*, *Sjoblom v. Charter Commc'ns., LLC*, 3:07-CV-0451, 2007 U.S. Dist. LEXIS 93879 (D. Wis. Dec. 19, 2007); *Freeman v. Hoffmann-Laroche, Inc.*, 07-1503, 2007 U.S. Dist. LEXIS 92589  (D.N.J. Dec. 18, 2007); *Baas v. Dollar Tree Stores, Inc*., No. 07-03108, 2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007); *Salazar v. AgriProcessors, Inc.*, No. 07-CV-1006-LRR, 2007 U.S. Dist. LEXIS 78222 (N.D. Iowa, Oct. 22, 2007); *Bamonte v. City of Mesa*, No. CV 06-01860, 2007 U.S. Dist. LEXIS 50101 (D. Ariz. July 10, 2007); *Cryer v. Intersolutions, Inc.*, No. 06-2032, 2007 U.S. Dist. LEXIS 29241 (D.D.C. Apr. 20, 2007); *Morton v. Valley Farm Transp., Inc.*, No. C 06-2933, 2007 U.S. Dist. LEXIS 31755 (N.D. Cal. Apr. 13, 2007); *Ramirez v. RDO-BOS Farms, LLC*, No. 06-174, 2007 U.S. Dist. LEXIS 40633 (D. Or. Jan. 23, 2007); *Recinos-Recinos v. Express Forestry, Inc.,* 233 F.R.D. 472 (E.D. La. 2006);

"hybrid" wage and hour cases like this one (where Plaintiffs bring opt-in FLSA collective actions alongside opt-out Rule 23 state law class actions) to proceed.  *See Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) (courts in the Second Circuit "routinely" allow hybrid actions).  The Eleventh and D.C. Circuits have rejected challenges to hybrid actions, *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007) (affirming class certification of opt-out claims under AWPA alongside opt-in FLSA claims); *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006) (finding no conflict between a NYLL opt-out class action and an FLSA opt-in collective action),  while the Sixth Circuit acknowledged a district court's hybrid certification without comment, *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007).[19]

---

*Ellison v. Autozone, Inc.*, No. C06-07522, 2007 U.S. Dist. LEXIS 70187 (N.D. Cal. Sept. 13, 2007); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100 (S.D. Cal. 2006); *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 494 (E.D. Cal. 2006); *Bahramipour v. Citigroup Global Mkts., Inc.*, No. C 04-4440, 2006 U.S. Dist. LEXIS 9010 (N.D. Cal. Feb. 22, 2006); *Greene v. Robert Half Int'l, Inc.*, No. C05-03248, 2006 U.S. Dist. LEXIS 97050, (N.D. Cal. Mar. 28, 2006); *Aguayo v. Oldenkamp Trucking*, NO. CV-F-04-6279, 2005 U.S. Dist. LEXIS 22190 (E.D. Cal. Oct. 3, 2005); *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623 (N.D. Cal. 2005); *Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 898 (C.D. Cal. 2005); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004); *Barnett v. Washington Mut. Bank, FA*, 03-00753, 2004 U.S. Dist. LEXIS 18491 (N.D. Cal. Sept. 9, 2004); *In re Farmers Ins. Exch. Claims Representative Overtime Pay Litig.*, No. 1439, 2003 U.S. Dist. LEXIS 25717 (D. Or. May 19, 2003); *Bartleson v. Winnebago Indus. Inc.*, No. C02-3008, 2003 U.S. Dist. LEXIS 19058 (N.D. Iowa Oct. 24, 2003); *Belbis v. County of Cook*, No. 01 C 6119, 2002 U.S. Dist. LEXIS 22426 (N.D. Ill. Nov. 13, 2002); *Chavez v. IBP, Inc.*, No. 01-5093, 2002 U.S. Dist. LEXIS 24598 (E.D. Wash. Oct. 28, 2002); *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772 (E.D.N.C. 2001); *Trotter v. Perdue Farms, Inc.*, No. Civ. A.99-893-RRM, 2001 U.S. Dist. Lexis 13212 (D. Del. Aug. 16, 2001); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281 (W.D. Mich. 2001) (FLSA and Migrant and Seasonal Agricultural Worker Protection Act ("AWPA") class claims); *O'Brien v. Encotech Constr. Servs., Inc.*, 203 F.R.D. 346 (N.D. Ill. 2001); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 U.S. Dist. LEXIS 17832 (N.D. Ill. Dec. 1, 2000); *Kelley v. SBC, Inc.*, No. 97-CV-2729, 1998 U.S. Dist. LEXIS 18643 (N.D. Cal. Nov. 13, 1998);  *Leyva v. Buley*, 125 F.R.D. 512 (E.D. Wash. 1989).

[19]     While only the Third Circuit has rejected a hybrid action, it did so only after finding that supplemental jurisdiction existed, but was improperly exercised by the district court.  *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 312 (3d Cir. 2003) (district court improperly accepted

Critically, Defendants ignore the practical consequence of their motion – creating two lawsuits out of one.  If the Court grants Defendants' motion, Plaintiffs would be forced to re-file their NYLL class claims either in New York Supreme Court or in Federal Court under the Class Action Fairness Act.[20]  Such parallel proceedings would cause "great potential for confusion of issues; considerable unnecessary costs, inefficiency and inconsistency of proceedings and results; and other problems inherent in parallel class action litigation."  *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 96 (S.D.N.Y. 2001).[21]

### A.     The Class Mechanism is Important to NYLL Enforcement.

Class treatment of NYLL overtime claims advances the important public policy goals of New York's wage-and-hour laws.  New York adopted these laws in order to eliminate inequitable wages, declaring that "it is the policy of the state of New York that such conditions be eliminated as rapidly as practicable . . ."  NYLL § 650.  The Attorney General of the State of New York encouraged private class-actions enforcement in its *amicus* appearance in another private wage and hour action case.  (Ex. 14, at 8-10.)  Without class-action enforcement,

---

supplemental jurisdiction over novel issue of state law claims where Plaintiffs waited 17 months, until after discovery had closed, to move for Rule 23 class certification of state law claim allegations that Plaintiffs' had not asserted previously); *see K.P. v. Corsey*, 77 Fed. Appx. 611, 614 (3d Cir. 2003) (Rendell, C. J. dissenting) (noting the "unique circumstances" in *De Asencio* and to "voic[ing] confidence in, and support for, the proposition that under our current statutory scheme, the district courts may exercise supplemental jurisdiction to decide issues of state law pursuant to 28 U.S.C. § 1367.").

[20]     If the state law claims are dismissed, "[p]laintiffs are free to pursue their state law claims, including potential class claims, in the state courts." *De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F.Supp.2d 649, 653 (E.D.N.C. 2004); *Neary*, 472 F.Supp.2d at 253.

[21]     *See also*, *Sjoblom*, 2007 U.S. Dist. LEXIS 93879, at *17–18 ("I am not persuaded that separate adjudication of these claims will reduce confusion among potential class members who would still receive two notices concerning almost identical facts"); *Westerfield*, 2007 U.S. Dist. LEXIS 54830, at *5 ("The Court can perceive no injury to potential plaintiffs by having these actions proceed together rather than separately."); *Greene*, 2006 U.S. Dist. LEXIS 97050, at *12–13 (noting the inefficiency of parallel state and federal proceedings involving the same case or controversy); *Chan*, 2004 U.S. Dist. LEXIS 9359, at *8 ("Requiring separate federal and state cases . . . would be wasteful and foolish.").

individuals could be left without a practical remedy since the New York State Department of

Labor is not required to sue on an employee's behalf and an action by the state Attorney General

is not available to individuals as a matter of right.  NYLL §§ 196(2), 196(1)(b); *see also* Ex. 14,

at 8-10.  Employees with legitimate claims for back wages may not pursue their remedies for the

very real fear of retaliation and coercion.  *See Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268

(D. Conn. 2002) ("[C]lass members may fear reprisal and would not be inclined to pursue

individual claims.").  Class actions ensure that those who cannot be expected to confront their

employer can still have their rights protected.  *See Horn v. Associated Wholesale Grocers Inc.*

555 F.2d 270, 275 (10th Cir. 1977).  While not insubstantial, Plaintiffs' claims are too small to

warrant individual actions.  Class actions provide a method of obtaining redress for such claims.

*See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 560 (2d Cir. 1968).

### B.    Defendants' "Incompatibility" Argument Is an "Imaginary Legal Doctrine."

Without citing any procedural mechanism, Defendants move to "dismiss" Plaintiffs' state

law claims arguing the FLSA and its collective action procedures are "incompatible" with

NYLL's class action procedures.  In rejecting this "incompatibility" argument, one court called it

an "imaginary legal doctrine."  *Westerfield v. Wash. Mut. Bank*, 06-CV-2817, 2007 U.S. Dist.

LEXIS 54830, at *7 (E.D.N.Y. July 26, 2007).  The only court in this district to have addressed it

also rejected it.  *Klein v. Ryan Beck Holdings*, 06 Civ. 3460, 2007 U.S. Dist. LEXIS 51465

(S.D.N.Y. July 13, 2007).[22]

Defendants point to no Rule or standard by which the Court may strike claims simply for

---

[22]    *See also*, *e.g.*, *Lindsay*, 448 F.3d at 424 (no conflict between an opt-out NYLL action and
an opt-in FLSA action); *Freeman*, 2007 U.S. Dist. LEXIS 92589 (rejecting "inherent
incompatibility" argument); *Ellison*, 2007 U.S. Dist. LEXIS 70187, at *6 ("FLSA collective and
Rule 23 class actions are not incompatible"); *Greene*, 2006 U.S. Dist. LEXIS 97050, at **12-13
("claims based on opt-in procedures are not irreconcilable with pendant state claims based on
Federal Rule 23 opt-out procedures").

"incompatibility." As the *Westerfield* court held, "there is no legal doctrine, of which the Court is aware, that permits the Court to dismiss a cause of action solely on the grounds that it is 'inherently incompatible' with another action before it." 2007 U.S. Dist. LEXIS 54830, at *7.

Moreover, Defendants' logic is faulty. Plaintiffs SAC does not "circumvent" the FLSA's opt-in requirement – Plaintiffs properly bring their FLSA claims as an opt-in action. (SAC ¶ 104.) Plaintiffs invoke Rule 23 only to bring their NYLL claims; this does not offend the FLSA procedures at all. *See Ellison v. Autozone, Inc.*, No. C06-07522, 2007 U.S. Dist. LEXIS 70187, at *4–5 (N.D. Cal. Sept. 13, 2007) ("Plaintiff does not attempt to certify a FLSA collective class under Rule 23, but rather intends to prosecute both under their respective procedures.").

Under Defendant's logic, no state law wage claim could ever be brought as a class action. Congress, however, never intended to limit workers' rights under state laws. To the contrary, the purpose of the FLSA is to "establish a floor under which wage protections cannot drop. . ." *Pac. Merch. Shipping Ass'n v. Aubry,* 918 F.2d 1409, 1425 (9th Cir. 1990). States are free to provide greater wage protections to their workers, subject to broader-reaching procedures. *See* 29 U.S.C. § 218(a); *see*, *e.g.*, *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) (the FLSA does not preempt state overtime wage law).

## C.    Plaintiffs' NYLL Class Action Does Not Violate The Rules Enabling Act.

Defendants' Rules Enabling Act ("REA") argument has also been soundly rejected by district courts in the Second Circuit[23] and elsewhere.[24] Defendants not only ignore the on-point,

---

[23]    *Klein*, 2007 U.S. Dist. LEXIS 51465; *Westerfield*, 2007 U.S. Dist. LEXIS 54830; *Neary*, 472 F. Supp. 2d at 250–51.

[24]    *See also Sjoblom*, 2007 U.S. Dist. LEXIS 93879 (rejecting REA argument); *Freeman*, 2007 U.S. Dist. LEXIS 92589 (same); *Lehman v. Legg Mason, Inc.*, No. 06-2484, 2007 U.S. Dist. LEXIS 69648 (M.D. Pa. Sept. 20, 2007) (same); *Farhy v. Janney Montgomery Scott, LLC*, Nos. 06-3202, 06-3969, 2007 U.S. Dist. LEXIS 39112 (E.D. Pa. Apr. 6, 2007) (same).

in-Circuit authority rejecting the REA argument, they fail to cite a single case accepting it.[25]

The REA grants the federal courts the authority to establish their own procedural rules but does not allow these rules to "abridge, enlarge, or modify [] substantive right[s]."  28 U.S.C. § 2072(b).  Defendants argue that allowing a NYLL class action would diminish absent class members' substantive right "to have their claims adjudicated only following the court filing of their written consent."  This is meritless.  The FLSA's "opt-in" procedure is just that – a procedure, not a substantive right.[26]  The REA does not address procedural mechanisms.

Like other defendants before them, Defendants rely on a United States Department of Labor ("DOL") *amicus* letter in support of a federal court action to vacate an arbitration award, *Long John Silver's Restaurants, Inc. v. Cole*, 409 F. Supp. 2d 682 (D.S.C. 2006), that characterized the opt-in procedure as a "substantive right."  Other courts have rejected this argument.  *Sjoblom v. Charter Communications, LLC*, No. 3:07-cv-0451, 2007 U.S. Dist. LEXIS 93879, at *11–18 (W.D. Wis. Dec. 19, 2007); *Westerfield*, 2007 U.S. Dist. LEXIS 54830, at *1. The Fourth Circuit also explicitly rejected the DOL's position, affirming the arbitrator's certification of an *opt-out* FLSA class action.  *Long John Silver's Rests., Inc. v. Cole*, No. 06-1259, 2008 U.S. App. LEXIS 1798, at *15 (4th Cir. Jan. 28, 2008) ("[N]o court has explicitly ruled that the 'opt-in' provision of the § 16(b) provision creates a substantive . . . right.")

Finally, as *Westerfield* explains, "[e]ven if the right to opt-in is a substantive right, the right is not modified or abridged in any way by permitting a state law opt-out class to proceed alongside the FLSA opt-in class in the same case" because Plaintiffs do not seek to "invoke the

---

[25]    Such cases do exist.  *See, e.g.*, *Ellis v. Edward D. Jones & Co.*, No. 06-66, 2007 U.S. Dist. LEXIS 94664 (W.D. Pa. Dec. 18, 2007).

[26]    *See O'Connell v. Hove*, 22 F.3d 463, 468 (2d Cir. 1994) (the FLSA's substantive right is to overtime protection); *Lindsay*, 448 F.3d at 424 (the difference between Rule 23 and 29 U.S.C. §216(b) is a "mere procedural difference . . . ."); *Sjoblom*, 2007 U.S. Dist. LEXIS 93879, at *11–18; *Klein*, 2007 U.S. Dist. LEXIS 51465, at *6–7; *Westerfield*, 2007 U.S. Dist. LEXIS 54830, *4–10.

procedures of Rule 23 to pursue the FLSA claim as an opt-out class." 2007 U.S. Dist. LEXIS

54830, at *5; *see also Ellison*, 2007 U.S. Dist. LEXIS 70187, at *4–5 ("Plaintiff does not attempt

to certify a FLSA collective class under Rule 23, but rather intends to prosecute both under their

respective procedures.")

### D.    The Court Has Jurisdiction over Plaintiffs' NYLL Claims.

####    1.    The Court has Original Jurisdiction Over the State Law Claims Under the Class Action Fairness Act.

Defendants' argument that the Court lacks supplemental jurisdiction over Plaintiffs'

claims is moot because the Court has original jurisdiction under the Class Action Fairness Act

("CAFA"), 28 U.S.C. §1332(d). (*See* SAC ¶ 83.) Although Defendants do not cite a procedural

mechanism for their jurisdictional argument, Plaintiffs assume they intend to move under Rule

12(b)(1), under which the Court must accept as true the facts Plaintiffs allege and draw all

reasonable inferences in Plaintiffs favor. *See Hunt v. Pritchard Indus., Inc.*, No. 07 Civ. 0747,

2007 U.S. Dist. LEXIS 47749, at *9–10 (S.D.N.Y. July 3, 2007).

CAFA grants original jurisdiction over state law claims in class actions with 100 or more

members, where the amount in controversy exceeds $5,000,000, and there is minimal diversity

between the parties. 28 U.S.C. §1332(d); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 341 n.7 (2d

Cir. 2006).[27] The SAC satisfies CAFA. (SAC ¶¶ 87-91.) Defendants do not challenge

Plaintiffs' pleading in this regard.

---

[27]    *See also Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675 (7th Cir. 2006)
(upholding CAFA jurisdiction in wage and hour case); *Westerfield,* 2007 U.S. Dist. LEXIS
54830, at *3 n.1 (defendants abandoned supplemental jurisdiction argument in light of CAFA);
*Sjoblom*, 2007 U.S. Dist. LEXIS 93879, at *9 (recognizing that CAFA jurisdiction in wage
case); *Ellison*, 2007 U.S. Dist. LEXIS 70187, at *2 (D. Cal. 2007) (accepting CAFA jurisdiction
over federal and state law wage claims); *Baas*, 2007 U.S. Dist. LEXIS 65979 (same). It is
premature to strike Plaintiff's state law claims, especially since this Court has independent
jurisdiction over these claims under CAFA.

2.    This Court has supplemental jurisdiction over Plaintiffs' state law claims.

Even if the Court did not have original jurisdiction over Plaintiffs' NYLL claims, it would still have supplemental jurisdiction under 28 U.S.C. § 1367(a).[28]  Defendants completely ignore Judge Hellerstein's opinion in *Ansoumana*, the seminal case on the issue of supplemental jurisdiction over a NYLL class action, which holds:

> the federal FLSA claims and the [NYLL] claims arise from the same nucleus of operative facts, are substantially related to each other, and naturally would be treated as one case and controversy. Indeed, it would be difficult to try them separately, for the findings in one case would tend to be preclusive as to the other or, if not preclusive, could expose the parties to inconsistent results. . . . The test of relatedness under Section 1367 is satisfied, and the federal FLSA claim confers supplemental jurisdiction over the [NYLL] claim.

201 F.R.D. at 93.  Defendants also ignore *Lindsay*, the only circuit court to address the issue squarely; "we think it is clear that section 1367(a) authorizes a district court to exercise its supplemental jurisdiction [over NYLL claims] in mandatory language."  448 F.3d at 421.

State claims are part of the same case or controversy where they "derive from a common nucleus of operative fact."  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  "[W]hen the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious and federal courts routinely exercise supplemental jurisdiction over the state law claims."  *Lyon v. Whisman*, 45 F. 3d 758, 761 (3d Cir. 1995).  Supplemental jurisdiction is proper here because the very same actions that violate the FLSA, denial of pay and withholding

---

[28]    *See Lindsay*, 448 F.3d at 421; *see also Iglesias-Mendoza*, 239 F.R.D. at 370, 373–75; *Frank v. Gold'n Plump Poultry, Inc.*, 2005 U.S. Dist. LEXIS 20441, at *1–2 (D. Min. Sep. 14, 2005), *14 n.4; *Bartleson*, 2003 U.S. Dist. LEXIS 19058, at *16–18; *Goldman v. RadioShack Corp.*, No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611, at *15–16, (E.D. Penn. Apr. 16, 2003); *Ansoumana*, 201 F.R.D. at 89–95; *Beltran-Benitez*, 180 F. Supp. 2d at 773–74. *Cf. Chavez*, 2002 U.S. Dist. LEXIS 24598, at *3–6 (state class members exceeded FLSA class members; state violations were essentially FLSA violations; need to calculate state law damages did not cause state law to predominate); *Kelley*, 1998 U.S. Dist. LEXIS 18643, at *39–40 (rejecting contention that state law claims would predominate in context of certifying both Rule 23 state law class action and FLSA class action).

of tips, form the basis of Plaintiffs' NYLL claims.[29]  Federal courts regularly exercise

supplemental jurisdiction over state law claims.[30]

Section 1367 requires a district court to exercise supplemental jurisdiction over claims

that are part of the same case or controversy unless one of the exceptions in section 1367(b) or

(c) applies.  No exception applies here.  While Defendants claim that a NYLL class action raises

novel and complex issues of state law (Def. Mem. at 12), they merely repackage their

"incompatibility" argument.  No novel or complex issues of state law are implicated by a NYLL

class action.  *Ouedraogo v. Durso Assocs.*, 03 CV 1851, 2005 U.S. Dist. LEXIS 11954

(S.D.N.Y. June 16, 2005); *Ansoumana*, 201 F.R.D. at 95.[31]

Defendants also are wrong when they claim that the state claims predominate because the

state law class is larger.  "Predominance under section § 1367(c)(2) relates to the type of claim

being brought rather than the size of the respective classes." *Iglesias-Mendoza*, 239 F.R.D. at

375; *see also Lindsay*, 448 F.3d at 425 ("Predominance under section 1367(c)(2) relates to the

type of claim," not the number of claimants).

Nor do exceptional circumstances exist that justify the denial of supplemental

jurisdiction.  "[T]he difference between the opt-in procedure provided by section 216(b) for

FLSA claims and the opt-out procedure for state law claims provided by Rule 23 [is not an]

'exceptional circumstance' [or] 'other compelling reason'" for declining supplemental

---

[29]    *See Chan*, 2004 U.S. Dist. LEXIS 9359, at *8 ("Indeed, the very same acts of the
defendants that are alleged to violate federal law form the basis of the state claims.");
*Ansoumana*, 201 F.R.D. at 93, *Lindsay*, 448 F.3d at 424 (supplemental jurisdiction over New
York wage claims existed where plaintiffs "performed the same type of work for the same
employer and were deprived of overtime compensation as a result of the same action taken by
their employer").

[30]    *See*, *e.g.*, notes 17, 18, *supra*.

[31]    *See also Cryer,* 2007 U.S. Dist. LEXIS 29241, at *12–13 (claims for overtime owed
under Maryland state law were neither "novel" nor "complex").

jurisdiction." *Lindsay,* 448 F.3d at 425.[32]

**E.    Effective Court-Supervised Notice to the NYLL Class Can Easily Issue.**

Defendants grasp at straws by arguing, without citing a procedural mechanism, that Plaintiffs class claims should be dismissed because of hypothetical problems with the class notice procedure.

**1.    Courts are Well-Equipped to Ensure Effective Notice.**

There is no reason to believe that the class members will not receive effective notice if the Court certifies Plaintiffs' NYLL class claims.  The Court should disregard Defendants' unsupported assertion that the class members "tend to be young and, as a result, also tend to move around a lot," and will not, therefore, be able to receive notice of their opportunity to opt-out of this case.[33]  (Def. Mem. at 11.)  Even where a putative class is transient and hard to reach, however, courts have at their disposal alternative notice methods to satisfy due process, such as radio announcements, newspaper and magazine postings, and internet postings, in addition to traditional mailed notice.  *See, e.g.*, *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 155, 169 (2d Cir. 1987) (upholding notice via mail, radio and television announcements, newspaper and magazine publications, and contacts with state governors); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793 (E.D. La. 2007) (approving alternate methods of FLSA collective action notice).[34]

---

[32]    *See Brickey*, 244 F.R.D. at179 (the "discrepancies between the Rule 23 and FLSA opt in/opt-out procedures" are not "'compelling reasons' to decline jurisdiction"); *Bamonte*, 2007 U.S. Dist. LEXIS 50101, at *11–12 (same).

[33]    While Defendants note that Vikki moved several times during her almost three years of employment by Defendants, Vikki testified that she listed an aunt's address as her primary address so that she could always be assured of receiving her mail.  (Vikki Tr. 81:4-82:6, at Ex. 11.)

[34]    Defendants also fail to offer support, either in the record or the caselaw, for their argument that Plaintiffs class claims should be dismissed because "few individuals will actually receive notice of this lawsuit and that even fewer individuals will realistically sign a piece of

2.    Defendants' Opposition to Class Certification is Premature and Without Merit.

Defendants' argument that allowing a NYLL class action to proceed alongside a FLSA collective action "would create challenges with respect to manageability of the action" (Def. Mem. p. 12), is a premature opposition to Plaintiffs' forthcoming class certification motion. *See* Rule 23(b)(3)(D) (the court is to consider "the likely difficulties in managing a class action" in determining whether to certify a class). It is inappropriate for the Court to consider such a challenge before full class certification discovery and before Plaintiffs bring their motion.[35]

Moreover, there are no "manageability" issues that prohibit Plaintiffs' class claims. "[D]ifficulties likely to be encountered in the management of the class portion of this action are not likely to be different or greater than in the management of the collective portion of this action." *Ansoumana*, 201 F.R.D. at 89; *see also Torres*, 2006 U.S. Dist. LEXIS 74039, at *55 ("[T]here is little reason to expect that the difficulties in managing this class action would be any greater than managing individual actions for the 300 Rule 23 class members").

3.    A Well-Crafted Notice Will Not Be Confusing.

There is little risk that class members will be confused by the opt-in and opt-out procedures in this hybrid action. The parties can minimize the risk of confusion by carefully

---

paper and file it with the Court." (Def. Mem. at 13.) Essentially, Defendants argue that Rule 23's opt-out mechanism is flawed, and should be replaced with an opt-in mechanism. Courts do not have such authority. *See Kern ex rel. Estate of Kern v. Siemens Corp.*, 393 F.3d 120, 126–27 (2d Cir. 2004). Due process does not require an opt-in mechanism. *Id.* at 124.

[35]    *See Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (a district court "should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues"); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21 (2d Cir. 2003) (reversing premature denial of class certification because the district court had improperly "precluded any class discovery and even the filing of a motion for class certification"); *Bodner v. Banque Paribas*, 202 F.R.D. 370, 373 (E.D.N.Y. 2000) ("[D]iscovery on the merits . . . is essential to determining whether class certification is appropriate"); *see also Freeman*, 2007 U.S. Dist. LEXIS 92589, at *11–12 (postponing supplemental jurisdiction decision over New Jersey and New York class claims until discovery had been had and plaintiffs moved for class certification).

crafting plain language, understandable notices. *Ansoumana*, 201 F.R.D. at 95 ("Competent

counsel will be able to draft appropriate notices, and they and the court should be able to manage

this case fairly and efficiently.")[36]  Moreover, class member confusion is unlikely because the

opt-in FLSA collective action notice will issue long before the opt-out NYLL class action notice

(Ex. 5 (scheduling order), eliminating any potential for confusion.[37]  Finally, the alternative –

requiring Plaintiffs' to re-file their state law claims in a separate action would be worse.[38]

## V.    NOTICE TO THE MEMBERS OF THE COLLECTIVE IS APPROPRIATE AND NECESSARY.

The *sole* question ripe for decision is whether Plaintiffs can meet their modest burden[39]

under 29 U.S.C. §216(b) to demonstrate that there are similarly situated workers – workers who

were subject to a common policy or plan.  If the answer is "yes," which it clearly is, the

collective should be conditionally certified and potential opt-ins should be given notice of this

action.  The ultimate merits of Plaintiff's claims and Scores' defenses are not yet on the table.

---

[36]    Numerous courts have also found that such potential difficulties can be overcome. *See, e.g.*, *Brickey*, 244 F.R.D. at 179 ("[T]he complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet"); *Cryer*, 2007 U.S. Dist. LEXIS 29241, at *12 ("This Court is not persuaded that having the FLSA claims and the state law claims in the same lawsuit will inject unacceptable complexities into the lawsuit that cannot be overcome with a well drafted class action notice explaining to potential class members their rights.").

[37]    *See Duchene*, 244 F.R.D. at 204 ("[T]here is no risk of confusing the potential class members, because the opt-in date for the collective action expired late in December, more than six months ago."); *Ramirez,* 2007 U.S. Dist. LEXIS 40633, at *5 (rejecting argument that opt-in opt-out notice would be too confusing because class notice to opt-out was subsequent to opt-in notice and the reality of potential for retaliation).

[38]    *See also, Sjoblom*, 2007 U.S. Dist. LEXIS 93879, at *17–18 ("I am not persuaded that separate adjudication of these claims will reduce confusion among potential class members who would still receive two notices concerning almost identical facts . . . "); *Cryer*, 2007 U.S. Dist. LEXIS 29241, at *12 ("[E]ven greater cause for concern about confusion of class members if the state law claims proceed in a separate court and class members thereby receive class action notices from two different courts.")

[39]    Notwithstanding some limited discovery, the Court should still apply a light standard because discovery is in its very early stages.  (Marzigliano Dec. 4-26.)  *See Damassia v. Duane Reade, Inc.*, 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at * 12–13 (S.D.N.Y. Oct. 4, 2006) (citations omitted).

The well-pled allegations in Plaintiffs SAC and the evidence developed thus far demonstrate that Scores' West Side and East Side clubs[40] share common control and policies, and that relevant aspects of Plaintiffs' employment are common to all of Scores' workers.

### A.    Scores East and Scores West Share Common Policies.

Scores East Side and Scores West Share use the same employee handbook and service training manual.  (*See* SAC ¶ 106; Bumb Dec. Ex. B; Diaz Dec. Ex. B.)  The handbook is provided to "all present and future employees and other personnel of 333 East 60th Street, Inc. and Go West Entertainment, Inc."  (Diaz Dec. Ex. B at P172.)  Its purpose is to "provide as much information as possible concerning company policies, practices, benefits and rules of conduct."  (*Id*.; *see also* Bumb Dec. Ex. B at P091.)

### B.    Scores East and Scores West Share Common Control.

New employees are introduced to Scores' by a letter from Richard Goldring and Elliott Osher, who are, "together, majority shareholders of Scores Holding, and the sole shareholders of … 333 East 60th and Go West," and "officers of all three companies."  (Diaz Dec. Ex. B at P173.)  Both clubs employ some of the same supervisory personnel (Vikki Tr. 23:25-24:5; 23:18-24, at Ex. 11), and share employees (Vikki Tr. 23:2-24:13, at Ex. 11).  (*See also*, Sections II(A), II(B), and II(C), *supra*.)[41]

---

[40]    Defendants arguments about "clubs outside of New York," Def. Mem. at 15-17, are moot because Plaintiffs do not seek to send notice to workers who worked outside of New York. (SAC ¶ 104.)

[41]    Additionally, notwithstanding their claim that they are totally separate from Scores East Side, SHC, and Scores West, Defendants' counsel introduced several employment documents from Scores East Side at Plaintiff Vikki's deposition, (*see* Ex. 15 ("Vikki Dep. Exhibits")), and produced others to her counsel (Ex. 18 ("East Side Documents")).  These documents were not obtained from Plaintiffs or pursuant to a subpoena.  Marzigliano.Dec. ¶ 8.  If SHC and Scores West were completely separate from Scores East, they would not have access to such documents.

**C.    Both Clubs Have the Same Diamond Dollar Policy – Not to Exchange Them For Their Full Value.**

Both clubs allow customers to tip workers with Diamond Dollars, an imitation currency Scores sells to customers.  (Bumb Dec. ¶¶ 6, 7; Diaz Dec. ¶¶ 6-7; Levin Dec. ¶ 8; Siegel Dec. ¶¶ 7-8; Vikki Dec. ¶ 9; Diaz Dec. Ex. B at P179.)  The Scores' employee handbook and training manual, which were used at both clubs, address the usage, limitations, and sale of Diamond Dollars.  (*Id.*; Bumb Dec. Ex. B at P109.)  Scores retains a portion (at least 10%) of the value of workers' Diamond Dollars when the workers exchange them for cash.  (SAC ¶ 3; Vikki Tr. 106:14-107:8, at Ex. 11; Siegel Tr. 100:6-17, at Ex. 12; Diaz Dec. ¶ 8; Levin Dec. ¶¶ 1, 9.)  Scores also refuses to exchange Diamond Dollars for their full value when they have "expire," (Levin Dec ¶ 10; Bumb Tr. 83:10-84:18, at Ex. 13; Vikki Tr. 101:18-104:7, 111:18-25, at Ex. 11),[42] and when the worker holding the Diamond Dollar is "no longer employed there," (Siegel Tr. 68:9-12, at Ex. 12).  Scores offers no evidence to the contrary and does not dispute that the policy violates FLSA's tip credit provisions.

**D.    Scores' Uniform Policies Are Uniform.**

Scores workers are not allowed to wear ordinary street clothes while working at Scores.  (Bumb Dec. at ¶ 13; Diaz Dec. at ¶ 14; Levin Dec. at ¶¶ 12-13; Siegel Dec. at ¶¶ 14-15; Vikki Dec. at ¶¶ 13-14; Vikki Tr. 31:9-21, 32:9-21, 32:23-33:8, at Ex. 11.)  Dancers are not even allowed to wear their own "street underwear."  (Vikki Tr. 35:11-15, at Ex. 11.)  Scores' training manual, which applies at both clubs, requires service staff to wear a "*uniform*, purchased from [their] Manager."  (Bumb Dec. Ex. B at P098 (emphasis added).)  Siegel's, Bumb's, and Diaz's uniform was a black corset, a special black skirt (or skort with built-in underwear), tights and

---

[42]    Scores points out that, on one occasion, Vikki did not attempt to redeem an expired Diamond Dollar.  (Def. Mem. at 26.)  However, exchanging expired Diamond Dollars costs workers time and was not guaranteed to be successful.  (Vikki Tr. 172:14-173:23, at Ex. 11.)  Vikki can hardly be blamed for simply dancing another song instead.  (*See id*. at 166:22-24.)

black boots.  (Siegel Tr. 48:19-49:25, at Ex. 12; Bumb Tr. 66:4-7, 48:20, 48:3-49:5, at Ex. 13; Diaz Dec. ¶ 13.)

Similarly, dancers must buy "all dresses and other supplies" they need to work at Scores. (Ex. 15 ("Vikki Dep. Exhibits") at Vikki Exhibit 2 ¶ D.)  Specifically, all dancers are required to wear a long gown or short dress, garter belt, stockings, a specific type of underwear, and open-toed super-high-heels.  (Levin Dec. ¶ 12; Vikki Dec. ¶ 13; Vikki Tr. 33:14-25, 34:2-21, at Ex. 11.)  The required dresses are not ordinary "dinner dresses;" rather, they are of a special design which had to be "accepted" by Scores.  (Vikki Tr. 31:9-21, 32:9-33:8, at Ex. 11.)  Scores sells these dresses to dancers in the dancers' dressing room.  (*Id.*)  Vikki always purchased her dresses from Scores because, despite her searches, she could not find "Scores-approved" dresses anywhere else.  (*Id.* at 44:21-45:3, 46:13-16.)  Scores also required dancers to purchase specialized underwear and garters designed and sold by Scores.  (Vikki Tr. 35:4-17, 46:13-16-47:8-12, at Ex. 11.)  Additionally, on "theme nights" Scores required workers to wear special uniforms consistent with the night's theme.  (Siegel Tr. 89:7-15, at Ex. 12; Vikki Tr. 181:20-25, at Ex. 11; Levin Dec. at ¶ 13; Diaz Dec. ¶ 15.)[43]

### E.    Although Now is Not the Time for a Merits Determination, Scores' Arguments Raise Issues Common to the Collective.

Defendants' (improper)[44] foray into the merits of Plaintiffs' claims backfires because it highlights common legal issues that further demonstrate that the "similarly situated" is met.

---

[43] Plaintiffs used Scores' dressing rooms to change from their ordinary street clothes into their uniforms.  (Bumb Tr. 64:20-24, 65:7-14, 66:4-20, at Ex. 13; Siegel Tr. 47:3-5, 51:15-23, 96:11-14, at Ex. 12; Vikki Tr. 11:8-17, 31:9-21, 32:23-33:8, at Ex. 11.)

[44]    *See Legrand v. Educ. Mgmt. Corp.*, No. 03-9798, 2004 U.S. Dist. LEXIS 17696, at *5 (S.D.N.Y. Sept. 2, 2004) ("To the extent that defendants are attempting [to] argue the merits of the case, they are raising an issue that is not material to the current application."); *Krueger v. N.Y. Tele. Co.*, 93 Civ. 0178, 93 Civ. 0179, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. July 21, 1993) ("[E]ven if plaintiffs' claims turn out to be meritless . . . notification at this stage . . . may enable more efficient resolution of the underlying issues. . .")

1.    Whether Club Worker Attire is a Uniform Can be Determined on A Class-
Wide Basis.

Defendants claim that Plaintiffs' uniform claims raise individualized inquiries. This is incorrect. The proper question, whether the attire Scores required workers to wear constitutes a uniform under the FLSA, can be determined on a class-wide basis.

Under the FLSA, "[i]f an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress the garments chosen would not be considered to be uniforms." *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) (quoting DOL's Wage & Hour Field Operations Handbook § 30c12(f)). On the other hand, "where the employer does prescribe a specific type and style of clothing to be worn at work, *e.g.*, where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms." *Id*.

With respect to service staff, the Defendants' own documents concede the point. The training manual admits that black corsets, special black skirts or skorts, tights, and black boots worn by its service staff constitutes a uniform. (Bumb Dec. Ex. B at P098.) With respect to dancers, the court can easily determine whether Scores-approved "stripper" dresses, heels, garters, and special underwear are "a specific type and style of clothing to be worn at work" that is not "ordinary basic street clothing of a general type." *Ayres*, 12 F. Supp. 2d at 310.

2.    Whether Dancers are "Employees" Can be Determined on A Class-Wide
Basis.

Defendants do not contest that all dancers perform similar job duties – they dance for Scores' customers – and that they are all subject to the same compensation structure – Scores does not pay them any wages directly, they work for tips. (Vikki Dec. ¶ 3; Levin Dec. ¶ 3.) Plaintiffs contend that this compensation structure is unlawful. Whether Plaintiffs are right is a

question well-suited for collective adjudication.

Defendants claim that dancers are not similarly situated to one another because defendants classified them as independent contractors.[45] To the contrary, this blanket classification further supports Plaintiffs' motion. Defendants do not claim to have classified dancers as independent contractors by doing an individualized assessment of each dancer's work arrangement. They admit that they simply "employed . . . dancers to be independent contractors." (Def. Mem. at 22.)

After having uniformly classified all dancers as independent contractors without performing individualized duties inquiries, Defendants cannot now claim that the Court must conduct an individualized inquiry into each dancer's duties to properly determine her employment status. If Defendants can make this determination on a collective basis, so can the Court. As one district court in California recently explained,

> [Defendant] has had sufficient confidence that all Store Manager jobs are sufficiently similar that it . . . categorically classified all Store Managers as exempt employees . . . without making any individualized assessments to account for potential variation between individual Store Managers. Given this, [Defendant's] contention that each Store Manager position must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow.

*Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 U.S. Dist. LEXIS 71794, at *26–27 (N.D. Cal. Aug. 31, 2006).[46] Courts routinely aggregate independent contractor misclassification cases as

---

[45]    Although the merits are not at issue here, courts considering the issue have repeatedly found that dancers are employees under the FLSA. *See, e.g.*, *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328–29 (5th Cir. 1993); *Priba Corp.*, 890 F. Supp. at 594; *Donovan v. Tavern Talent & Placements, Inc.*, Civ. No. 84-F-401, 1986 U.S. Dist. LEXIS 30955, at *6–7 (D. Colo. Jan. 8, 1986); *Harrell v. Diamond A Entmt., Inc.*, 992 F. Supp. 1343, 1353–54 (M.D. Fla. 1997). *But see*, *Matson v. 7455, Inc.*, No. CV 98-788-HA, 2000 WL 1132110 (D.Or. 2000) (incorrectly relying on the label attached to the relationship rather than economic reality and dependence).

[46]    *See also* Wang *v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005); *Krzesniak v. Cendant Corp.*, No. C 05-05156, 2007 U.S. Dist. LEXIS 47518, at **46-47 (N.D. Cal. June 20, 2007) (citing *Whiteway v. FedEx Kinko's Office & Print Servs*, No. C 05-2320,

collective actions.[47]

An examination of the factors relevant Plaintiffs' "employee" status also reveals that Scores dancers are similarly situated to one another. One factor, whether Scores exercised control over dancers' work, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-9 (2d Cir. 1988), is well suited for collective adjudication. To assess this factor, the Court must only look to Defendants' rules and practices, which do not vary from dancer to dancer. For example, Scores determines all entertainers' schedules (Vikki Tr. 10:13-14:21, 12:9-22, at Ex. 11; Levin Dec. ¶ 20); rules of conduct (Vikki Dec. ¶ 25; Vikki Tr. 100:8-101:2, 121:3-122:21, 123:11-125:23, 126:9-24, 136:21-137:15, 164:25-165:10, at Ex. 11); and attire (*see* Section V(D), *supra*). Scores also requires dancers to dance on stage at certain times (Vikki Tr. 179:21-181:4, at Ex. 11), to sell drinks to Scores' customers (*id*. at 123:21-125:22), and to drink alcoholic beverages with Scores' customers, (*id*.). Scores also requires dancers to provide two weeks' notice before quitting, (*id*. at 53:12-54:5) and has the power to terminate dancers' employment at will (Vikki

---

2006 U.S. Dist. LEXIS 69193, at *6 (N.D. Cal. Sep. 13, 2006)) ("Defendants cannot, on the one hand, argue that all managers are exempt from overtime wage and, on the other hand, argue that the Court must inquire into the job duties of each manager in order to determine whether the managers is exempt."); *Nerland v. Caribou Coffee Co., Inc.*, 05 Civ. 1847-PJS, slip op. at 17–18 (D. Minn. Apr. 6, 2007) ("The Court finds it disingenuous for [Defendant], on the one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption."); *Pendlebury v. Starbucks Coffee Co.*, 04 Civ. 80521, 2007 U.S. Dist. LEXIS 74846, at *20 (S.D. Fla. Sept. 20, 2007) (finding the *Nerland* court's reasoning "persuasive" in its decision to deny Defendants' motion for decertification of an FLSA collective).

[47]   *See, e.g., Lee v. ABC Carpet & Home,* 236 F.R.D. at 198; *Quinteros v. Sparkle Cleaning, Inc.*, Civ. No. AW-07-0628, 2008 U.S. Dist. LEXIS 6955, at *22-23 n.5 (D. Md. Jan. 28, 2008) (conditionally certifying class of alleged "independent contractors"); *Lima v. Int'l Catastrophe Solutions, Inc*., 493 F.Supp.2d 793, 798–99 (E.D. La. 2007) (same); *Lemus v. Burnham Painting & Drywall Corp.*, 2:06-cv-01158, 2007 U.S. Dist. LEXIS 46785 (D. Nev. June 25, 2007) (same); *Westfall v. Kendle Intern., CPU, LLC*, Civ. No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304, at *42-43 (N.D. W.Va. Feb. 15, 2007); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 325–26 (D.N.J. 2005); *Gutescu v. Carey Int'l., Inc.*, 01-4026-CIV, 2003 U.S. Dist. LEXIS 27507, at *2 (S.D. Fla. June 17, 2003) (same).

Dec. ¶ 23; Levin Dec. ¶ 21).  Dancers are required to work five to six days per week and are not allowed to work in other clubs.  (Vikki Tr. 91:19-92:21, 125:9-24, at Ex. 11.)

The opportunity for profit and loss is another factor that does not require an individualized determination.  *Brock*, 840 F.2d at 1058-9.  The amounts dancers pay to the house, the DJ, and the makeup artist are controlled by Scores.  (Vikki Tr. 61:24-25, 62:23-67:13, 74:17-75:12, 75:17-21, 79:3-80:11, at Ex. 11; Vikki Dec. ¶ 5; Levin Dec. ¶ 4; Siegel Tr. 45:5-12, at Ex. 12.)  Scores sets price for a private dances and determines how much customers must pay for VIP sessions with dancers.  (Vikki Tr. 164:25-165:10, at Ex. 11.)  Dancers are not allowed to negotiate a different price for dances or VIP sessions.  (*Id*. at 56:16-24; 165:19-166:5.)  Dancers do not "control the key determinants of profit and loss of a successful enterprise."  *See Reich v. Priba Corp.*, 890 F. Supp. 586, 593 (N.D. Tex. 1995).  They are dependant on Scores to earn a living.

Another factor, investment in the business, *Brock*, 840 F.2d at 1059, also applies to all dancers similarly.  No matter the level of Dancers' "investment," it is quite low compared to Defendants' investment.[48]  The extent to which the services rendered by dancers are an integral part of Scores' business, *id.*, also requires no individualized proof.

Nor does the individual skill required to dance at Scores, *id.* at 1058-59, vary from dancer to dancer.  Exotic dancing requires no specialized skills.  *See Priba Corp.*, 890 F. Supp. 586 at

---

[48]      *See Priba Corp.*, 890 F. Supp. at 593 (defendant "spent millions of dollars to assure that the club would stand apart from its competitors. Entertainers at the club make no investment in its facilities or atmosphere aside from choosing what clothing to wear when performing. All investment and risk capital is provided by defendants. Indeed, but for defendants' provision of the lavish work environment, the entertainers at the club likely would earn nothing. The unique nature and appeal of the Cabaret Royale confirms, rather than denies, the entertainer's economic dependence.")

592–93.  Scores hires Dancers with no prior exotic dancing experience.[49]

3.    Whether Scores Informed Employees of 29 U.S.C. § 203(m) Can Be Determined On a Class-Wide Basis.

To claim a tip credit, Scores must inform its tipped employees of minimum wage and the tip credit provisions.  *See* 29 U.S.C. § 203(m) ("§203(m)"); *Dominguez v. Don Pedro Rest.*, No. 2:06 cv 241, 2007 U.S. Dist. LEXIS 72444, at *6 (N.D. Ind. Sep. 26, 2007) (employer must inform employee of the tip credit provisions irrespective of employee's previous knowledge). The requirements of §203(m) are to be strictly construed.  *Bursell v. Tommy's Seafood Steakhouse*, Civ. No. H-06-0386, 2006 U.S. Dist. LEXIS 80526, at *3 (S.D. Tex. Nov. 3, 2006); *Chung v. New Silver Palace Rest. Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).

Scores claims to have informed its workers of the provisions of §203(m) through a posting in the manager's office.  (Def. Mem. at 28.)  Whether this posting existed, and whether it was sufficient, are questions that can be answered on a class-wide basis.  Courts have held that similar efforts fell short.  *See Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) (poster in language employees did not understand was not sufficient notice); *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101 n. 6 (E.D. Tenn. 1979) ("The evidence shows that the poster was not prominently displayed [and] employees were not directed to it . . . Under these circumstances, the poster does not satisfy the notice requirement.").[50]

---

[49]    The only instructions Vikki received for her audition were from the "house mom." (Vikki Tr. 38:4-39:17, at Ex. 11.)  The instructions were "just go around the stage and to the pole and take your dress off."  (*Id.*)  Despite having no experience, Vikki was hired on the spot.  (*Id.*) After she was hired, managers screamed at Vikki to take her dress off or be fired.  (Vikki Tr. 136:18-137:5, at Ex. 11.)

[50]    Notably, every Plaintiff testifies that Defendants did not inform her of the tip credit provisions.  (Bumb Dec. ¶ 4; Diaz Dec. ¶ 4; Levin Dec. ¶ 5; Siegel Dec. ¶ 5; Siegel Tr. 45:20-25, at Ex. 11; Vikki Dec. ¶ 6.)

**H.** **Equitable Tolling Cannot be Ruled Out at this Stage.**

Defendants jump the gun by arguing that equitable tolling is not appropriate. This issue may be resolved only after discovery. All Plaintiffs ask here is that the Court leave open the *possibility* of equitable tolling by allowing Plaintiffs to notify workers who might benefit from it, and allowing them to join the case to protect their potential claims. Notice should "account for the possibility of tolling." *See Gieseke v. First Horizon Home Loan Corp.*, Civ. No. 04-2511, 2006 U.S. Dist. LEXIS 76732, at *3–4 (D. Kan. Oct. 11, 2006) (permitting a longer period of notice to account for the possibility of tolling). Even where "the court suspects that plaintiffs' suggested date is overinclusive," and it is well-established that "[i]t is more efficient to later restrict the class than to later propose, revise through a series of briefs, and send out another notice." *Id.* at *4 (quoting *Herrera v. Unified Mgmt. Corp.*, No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406, at *4 (N.D. Ill. Aug. 18, 2000)).

**I.** **Plaintiffs' Proposed Notice is Appropriate.**

For the reasons Plaintiffs asserted in their moving brief, Plaintiff's proposed notice is appropriate. Defendants' objections are without merit. If the Court is not inclined to accept it wholesale, however, Plaintiffs respectfully request that the Court direct the parties to meet and confer to attempt to craft a mutually acceptable notice, and that the Court toll the FLSA statute of limitations for all potential opt-in plaintiffs while the parties wrangle over the details.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) deny Defendants' Cross-Motion to Dismiss or in the Alternative for Summary Judgment, (2) grant Plaintiff's Cross-Motion for Discovery, and (3) grant Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice.

Dated: Feb. 22, 2008 (New York, NY)                    By: \s\ Justin M. Swartz_____

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Tammy Marzigliano (TM 2934)
Cara E. Greene (CG 0722)
Anjana Samant  (AS 5163)
3 Park Avenue, 29th Floor
New York, New York 10016

Telephone:  (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No. 24001807)
(admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas  77002
Telephone:  (713) 877-8788