**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Tammy Marzigliano (TM 2934)
Cara E. Greene (CG 0722)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No.
24001807) (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB, BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN LEVIN, on behalf of themselves and all others similarly situated, <br><br>         **Plaintiffs,** <br><br>     -against- <br><br> SCORES HOLDING COMPANY, INC.; GO WEST ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; and SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST SIDE.; ENTERTAINMENT MANAGEMENT SERVICES, INC.; and 333 EAST 60th STREET, INC. a/k/a SCORES EAST SIDE. <br><br>         **Defendants.** | **No. 07 Civ. 8718 (RMB)** |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR CONDITIONAL
## CERTIFICATION AND COURT-AUTHORIZED
## NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ................................................................. 1

II.  STATEMENT OF FACTS .................................................................... 1

   A.  The Parties ................................................................................ 1

   B.  Scores West and Scores East are a Part of an Integrated Operation ........................ 2

   C.  Scores West and Scores East Have the Same Personnel Policies. ............................ 4

   D.  Scores West and Scores East Have the Same Compensation Policies. ................... 4

      1.  Both Clubs Confiscate a Portion of Their Workers' Tips Through the "Diamond Dollar" Scheme. ................................................................ 4

      2.  Scores Pays Workers Less than the Statutory Minimum Wage. ........................... 5

      3.  Scores Does Not Pay Workers' Uniform Expenses. ............................................. 6

III. ARGUMENT .................................................................................. 7

   A.  Court-Authorized Notice is Fair, Efficient, and Advances Public Policy Goals. ..... 7

   B.  Plaintiffs Meet and Exceed Their Low Burden. ......................................................... 9

   C.  Plaintiffs and Potential Plaintiffs Are Similarly Situated With Respect To Their FLSA Claims. ................................................................ 11

      1.  Scores Paid All Workers Less Than the Applicable Minimum Wage................. 12

      2.  All Workers Are Similarly Situated With Respect to Scores' Likely "Tip Credit" Defense. ................................................................ 12

      3.  Whether Dancers are "Employees" Can be Determined on a Class-Wide Basis. 14

      4.  Scores Uniform Violations Were Uniform. ......................................................... 18

   D.  The Court Should Approve Plaintiffs' "Timely, Accurate and Informative" Proposed Notice. ................................................................ 20

IV.  CONCLUSION ................................................................................ 20

i

## TABLE OF AUTHORITIES

### CASES

*Anglada v. Linens n Things, Inc.*,
   No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS (S.D.N.Y. Apr. 26, 2007) ...................................16

*Ayres v. 127 Restaurant Corp.*,
   12 F. Supp. 2d 305 (S.D.N.Y. 1998) ......................................................................................19

*Bonham v. Copper Cellar Corp.*,
   476 F. Supp. 98 (E.D. Tenn. 1979) .........................................................................................14

*Braunstein v. E. Photo. Laboratories, Inc.*,
   600 F.2d 335 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) .......................................8, 9

*Brock v. Superior Care, Inc.*,
   840 F.2d 1054 (2d Cir. 1988) ....................................................................................16, 17, 18

*Bursell v. Tommy's Seafood Steakhouse*,
   No. H-06-0386, 2006 U.S. Dist. LEXIS 80526 (S.D. Tex. Nov. 3, 2006) .............................13

*Carter v. Indianapolis Power & Light Co.*,
   No. IP 102CV01812, 2003 U.S. Dist. LEXIS 23398 (S.D. Ind. Dec. 23, 2003) ....................11

*Chan v. Sung Yue Tung Corp.*,
   No. 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) ..................12, 13, 14

*Chowdhury v. Duane Reade, Inc.*,
   No. 06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007) ...........................16

*Chung v. New Silver Palace Restaurant Inc.*,
   246 F. Supp. 2d 220 (S.D.N.Y. 2002) ................................................................................12, 13

*Cuzco v. Orion Builders*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007) ....................................................................................10

*Cuzco v. Orion Builders, Inc.*,
   No. 06 Civ. 2789, 2007 U.S. Dist. LEXIS 21473 (S.D.N.Y. March 8, 2007) ......................8, 9

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) ...........9, 10, 11, 16

*Dominguez v. Don Pedro Restaurant*,
   No. 2:06 CV 241, 2007 U.S. Dist. LEXIS 72444 (N.D. Ind. Sep. 26, 2007) .........................13

*Donovan v. Tavern Talent & Placements, Inc.*,
    Civ. No. 84-F-401, 1986 U.S. Dist. LEXIS 30955 (D. Colo. Jan. 8, 1986) ...........................15

*Fasanelli v. Heartland Brewery, Inc.*,
    516 F. Supp. 2d 317 (S.D.N.Y. 2007)....................................................................11, 13, 14, 18

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003)..............................................................................9, 10

*Gutescu v. Carey Int'l., Inc.*,
    No. 01-4026-CIV, 2003 U.S. Dist. LEXIS 27507 (S.D. Fla. June 17, 2003)..........................16

*Hallissey v. America Online, Inc.*,
    Civ. No. 99-cv-3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008)....................10

*Harrell v. Diamond A Entertainment, Inc.*,
    992 F. Supp. 1343 (M.D. Fla. 1997) ....................................................................................15

*Harrington v. Education Management Corp.*,
    No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 17, 2002)...........................16

*Hoffman-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989).......................................................................................................8, 20

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ...............................................................................8, 9, 10

*Holbrook v. Smith & Hawken, Ltd.*,
    246 F.R.D. 103 (D. Conn. 2007).........................................................................................18

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363, 368 (S.D.N.Y. 2007) .................................................................................10

*Jacobsen v. The Stop & Shop Supermarket Co.*,
    No. 02 Civ. 5915, 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y. May 15, 2003)...........................16

*Khalil v. The Original Homestead Restaurant, Inc.*,
    No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ...........................11

*Krueger v. N.Y. Tele. Co.*,
    Nos. 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993).....................10

*Krzesniak v. Cendant Corp., Number C 05-05156*,
    2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007) ......................................................15

*Lee v. ABC Carpet & Home*,
  236 F.R.D. 193 (S.D.N.Y. 2006) ...................................................16

*Legrand v. Education Management Corp.*,
  No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004)...................................11

*Lemus v. Burnham Painting & Drywall Corp.*,
  No. 2:06-cv-01158, 2007 U.S. Dist. LEXIS 46785 (D. Nev. June 25, 2007) ........................16

*Lima v. International Catastrophe Solutions, Inc.*,
  493 F. Supp. 2d 793 (E.D. La. 2007)...................................................16

*Lynch v. United Services Automobile Association*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007)...................................................10

*Masson v. Ecolab, Inc.*,
  No. 04-CV-4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005)...................10, 11

*Montoya v. S.C.C.P. Painting Contractors, Inc.*,
  Civ. No. CCB-07-455, 2008 U.S. Dist. LEXIS 16354 (D.Md., Feb. 26, 2008).....................16

*Nerland v. Caribou Coffee Co., Inc.*,
  No. 05 Civ. 1847-PJS, slip op. at 17–18 (D. Minn. Apr. 19, 2007) ........................................16

*Patton v. Thomson Corp.*,
  364 F. Supp. 2d 263 (E.D.N.Y. 2005) ...................................................10

*Pendlebury v. Starbucks Coffee Co.*,
  No. 04 Civ. 80521, 2007 U.S. Dist. LEXIS 74846 (S.D. Fla. Sept. 20, 2007).......................16

*Quinteros v. Sparkle Cleaning, Inc.*,
  Civ. No. AW-07-0628, 2008 U.S. Dist. LEXIS 6955 (D. Md. Jan. 28, 2008) ........................16

*Realite v. Ark Restaurants Corp.*,
  7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...................................................8, 9, 13

*Reich v. Chez Robert, Inc.*,
  28 F.3d 401 (3d Cir. 1994)...................................................13

*Reich v. Circle C. Investments, Inc.*,
  998 F.2d 324 (5th Cir. 1993) ...................................................15

*Reich v. Priba Corp.*,
  890 F. Supp. 586 (N.D. Tex. 1995) ...................................................15, 17, 18

*Roebuck v. Hudson Valley Farms, Inc.*,
    239 F. Supp. 2d 234 (N.D.N.Y. 2002) ...................................................................................11

*Scholtisek v. Eldre Corp.*,
    229 F.R.D. 381 (W.D.N.Y. 2005) .........................................................................................14

*Schwed v. General Electric Co.*,
    159 F.R.D. 373 (N.D.N.Y. 1995) .........................................................................................11

*Sipas v. Sammy's Fishbox, Inc.*,
    No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) ........................9

*Tierno v. Rite Aid Corp., Number C 05-02520*,
    2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006) .....................................................15

*Torres v. Gristede's Oper. Corp.*,
    No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) .............9, 10, 16

*Wang v. Chinese Daily News, Inc.*,
    231 F.R.D. 602 (C.D. Cal. 2005) .........................................................................................15

*Westfall v. Kendle Intern., CPU, LLC*,
    Civ. No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304 (N.D. W.Va. Feb. 15,
    2007) .....................................................................................................................................16

*Whiteway v. Federal Ex Kinko's Office & Print Services, Number C 05-2320*,
    2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sep. 13, 2006) ...............................................15, 16

*Zavala v. Wal-Mart Stores, Inc.*,
    393 F. Supp. 2d 295 (D.N.J. 2005) .......................................................................................16

*Zhao v. Benihana, Inc.*,
    No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) ...........................13

**RULES**

29 C.F.R. § 778.217(a) ...............................................................................................................19

29 C.F.R. § 778.217(b)(2) ...........................................................................................................19

**STATUTES**

29 U.S.C. § 203(m) ..............................................................................................................12, 13

29 U.S.C. § 206(a)(1) ..................................................................................................................12

29 U.S.C. § 206(a), *as amended by* 121 Stat. 112, 188 ................................................................12

29 U.S.C. § 216(b) ................................................................................................................1, 7

29 U.S.C. § 201 *et seq*..........................................................................................................1, 7

## I.    PRELIMINARY STATEMENT

This case is about a chain of adult nightclubs that confiscates its workers' tips, fails to pay them proper minimum wage and overtime compensation, and fails to reimburse them for uniform expenses as required under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*  Plaintiffs seek to protect the rights of hundreds of current and former workers at two of these clubs, one on the West Side of New York City ("Scores West") and one on the East Side ("Scores East"), by sending them Court-approved notice of this action and letting them decide whether to join and attempt to recover their unpaid wages.

Plaintiffs far exceed their low burden on this motion.  Through declarations and deposition testimony[1] of Scores workers, the well-pled allegations in Plaintiffs' Second Amended Complaint ("SAC"), and through Defendants' own documents, Plaintiffs demonstrate that Defendants subjected other Scores workers to the same policies and practices to which they subjected Plaintiffs, and that other "similarly situated" Scores workers will benefit from Court-authorized notice pursuant to 29 U.S.C. § 216(b).

## II.    STATEMENT OF FACTS

### A.    The Parties

Defendants[2] collectively own and/or operate a chain of adult nightclubs that includes the two New York locations at which Plaintiffs worked and that are the subject

---

[1] As used throughout this brief, "Ex." refers to exhibits attached to the Declaration of Tammy Marzigliano ("Marzigliano Dec.").  Declarations of all Plaintiffs are included as Exhibits A through F to the Marzigliano Dec. and are referred to herein as "PLAINTIFF NAME Dec."  All deposition transcripts are included as Exhibits G through K to the Marzigliano Dec. and are referred herein as "NAME Tr. XX."
[2] Defendants are Scores Holding Company, Inc.; Go West Entertainment, Inc., d/b/a Scores West Side; Scores Entertainment, Inc., d/b/a Scores East Side; Entertainment

of this motion.[3]  Defendant Scores Holding Company, Inc. ("Scores Holding") is a publicly traded company with ownership rights to the "Scores" brand-name and other related intellectual property, and which promotes Scores as "the premier adult entertainment club in the United States."[4]

Since Plaintiff Diaz commenced this action, five other workers have joined as Plaintiffs and/or Opt-in Plaintiffs (collectively "Plaintiffs").  The Named Plaintiffs are three dancers (Blerta Vikki, Susan Levin, and Danielle Owimrin), a server (Carolyn Siegel), a bartender (Siri Diaz), and a cocktail waitress (Talia Bumb).[5]

### B.    Scores West and Scores East are a Part of an Integrated Operation.

Scores credits much of its success in the adult-entertainment business to the strict uniformity of its nightclubs' operations.[6]  On its website, Scores promises patrons a "quality-assured environment," and claims that all Scores locations "maintain the highest standards of operation particularly with their performers in the areas of personal appearance and personality as well as the ability to interact intelligently with customers and engage them in meaningful conversation."[7]  Scores' requires all clubs, including Scores West and Scores East, to meet "stringent quality-of-experience criteria…."[8]

Scores West and Scores East have close ownership and operational ties.  Most

---

Management Services, Inc., and 333 East 60th Street, Inc., a/k/a Scores East Side (collectively "Scores" or "Defendants").

[3] SAC ¶ 1, at Ex. L; *see also* Scores SEC filing at 8, at Ex. M.

[4] Scores Operations Webpage, at Ex. N; *see also* Neilson Tr. 11:7-12.

[5] SAC ¶¶ 12, 16, 20, 24, 28, 32, at Ex. L; Bumb Dec. ¶¶ 1, 2; Diaz Dec. ¶¶ 1, 2; Siegel Dec. ¶¶ 1, 2; Levin Dec. ¶¶ 1, 2; Vikki Dec. ¶¶ 1, 2; Owimrin Dec. ¶¶ 1-2.

[6] Scores Operations Webpage (noting that the environment at Scores nightclubs "is carefully monitored, in terms of maintenance, music selection, entertainer and waitress appearance and all aspects of customer service on a continuous basis"), at Ex. N.

[7] Scores Operations Webpage, at Ex. N.

[8] Scores Profile Webpage, at Ex. O.

2

apparent is Richard Goldring's ("Goldring") overlapping ownership interests and shared

operational control. Goldring is the co-owner and President of both Scores West and

Scores East.[9]   He also operates, manages, and handles the day to day operations of both

clubs.[10]  Goldring and Elliott Osher ("Osher") are the sole shareholders of the Scores

West and Scores East Side clubs.[11]  Osher is also an officer of both clubs.  Scores greets

new employees with a welcome letter signed by Goldring and Osher.[12]   The two clubs

also employ some of the same supervisory personnel,[13] and share employees.[14]

Scores Holding also binds the Scores West and Scores East clubs.  Together,

Goldring and Osher are the majority shareholders in Scores Holding (Goldring alone

owns 46% of Scores Holding),[15] and are both Scores Holding officers.[16]   Goldring signs

checks on behalf of the clubs, payable to Scores Holding,[17] and participated on both sides

of negotiations between Scores Holding and the clubs over the licensing agreements.[18]

John Neilson, Scores Holding's President, assists Goldring with club operations and

---

[9]  Neilson Tr. 31:25-32:5, 39:23-40:2; Smith Tr. 19:23-20:6, 21:6-15.

[10] Neilson Tr. 35:23-36:4, 42:14-16.

[11] State Complaint ¶ 13, at Ex. P; Neilson Tr. 31:25-32:5, 39:23-40:2; Smith Tr. 21:16-22

[12] Diaz Dec. Ex. B at P173.

[13] Vikki Tr. 23:18-24:5; Owimrin Dec. ¶ 4.

[14] Vikki Tr. 23:2-24:13; Owimrin Dec. ¶ 4.  Additionally, notwithstanding their claim
that they are totally separate from Scores East Side, SHC, and Scores West, Defendants'
counsel introduced several employment documents from Scores East Side at Plaintiff
Vikki's deposition, (*see* ("Vikki Dep. Exhibits"), at Ex. Q)), and produced others to her
counsel (("East Side Documents"), at Ex. R).  These documents were not obtained from
Plaintiffs or pursuant to a subpoena.  Marzigliano Dec. ¶¶ 2-3.   If SHC and Scores West
were completely separate from Scores East, they would not have access to such
documents.

[15] Smith Tr. 7:7-16, 11:11-19.

[16] "State Complaint" ¶ 13, at Ex. P.

[17] Smith Tr. 36:5-9, 63:13-18.

[18] Smith Tr. 26:22-27:3, 47:22-49:14, 89:3-13, 91:7-22.

advises Goldring about "business decisions" related to the operation of the clubs.[19]  Until

he resigned in the wake of a plea-bargain agreement,[20] Goldring was the President of

Scores Holding and issued himself a paycheck from Scores Holding.[21]

**C.    Scores West and Scores East Have the Same Personnel Policies.**

Scores applies the same employment policies to workers at Scores West and

Scores East.  The two clubs share an employee handbook ("Handbook")[22] that they

distribute to "all present and future employees and other personnel" at Scores West and

Scores East[23] in order to "provide as much information as possible concerning company

policies, practices, benefits and rules of conduct."[24]  The clubs also share a training

manual ("Training Manual").[25]

**D.    Scores West and Scores East Have the Same Compensation Policies.**

Scores applies the same compensation policies and practices to workers at Scores

West and Scores East,[26] some of which are set forth in the Handbook.[27]

**1.    Both Clubs Confiscate a Portion of Their Workers' Tips Through the "Diamond Dollar" Scheme.**

Scores' has a policy of failing to pay workers the full value of the tips they earn in

"Diamond Dollars," an imitation currency (*see* Siegel Dec. Ex. B, Sample Diamond

---

[19] Neilson Tr.  37:13-38:3.
[20] Smith Tr. 20:21-21:5.
[21] Smith Tr. 36:14-37:25.
[22] Diaz Dec. Ex. B at P173; Neilson Tr. 41:8-42:7.
[23] Diaz Dec. Ex. B at P172.
[24] Diaz Dec. Ex. B at P173; *see also* Bumb Dec. Ex. B at P091.
[25] Bumb Dec. Ex. B; Diaz Dec. Ex. B.
[26] SAC ¶¶ 35, 52-55, 58, at Ex. L; Vikki Tr. 23:2-15; Owimrin Dec. ¶ 3.
[27] Diaz Dec. Ex. B at P195-196, P204.

Dollar) that Scores sells to credit card-paying customers in $20.00 denominations.[28] This policy applies to all tipped workers and does not vary between Scores West and Scores East.[29]

Regardless of their positions, workers at Scores West and Scores East, rely on customer tips for much of their income. Scores West and Scores East both encourage customers to tip workers using Diamond Dollars.[30] The Handbook and the Training Manual address the use of Diamond Dollars at both clubs.[31]

It is not surprising that the clubs encourage customers to tip with Diamond Dollars because Scores keeps for itself some of every Diamond Dollar tip.[32] When Scores converts workers' Diamond Dollar tips to into cash, it pays the workers $0.90 on the dollar – keeping $2.00 out of each $20.00 Diamond Dollar tip the workers earn.[33] Scores does not deny that this is the policy at both clubs.

**2. Scores Pays Workers Less than the Statutory Minimum Wage.**

Scores does not pay workers the applicable statutory minimum wage.[34] It pays

---

[28] Customers may use Diamond Dollars <u>only</u> to tip workers. Scores does not accept Diamond Dollars for payment of food, drinks, or admission to its nightclubs. Diaz Dec. Ex. B at P179.

[29] SAC ¶¶ 106-110, at Ex. L; Diaz Dec. ¶ 8; Levin Dec. ¶ 9; Vikki Dec. ¶ 10; Owimrin Dec. ¶¶ 3, 13-14, 17; Vikki Tr. 106:14-107:08; Siegel Tr. 100:6-17.

[30] Bumb Dec. ¶¶ 6, 7; Diaz Dec. ¶¶ 6-7; Levin Dec. ¶ 8; Siegel Dec. ¶¶ 7-8; Vikki Dec. ¶ 9; Owimrin Dec. ¶¶ 12-13. Diamond Dollars are an important part of Scores' business model and protected intellectual property. *See* State Complaint, at Ex. P.

[31] Diaz Dec. Ex. B at P179; Bumb Dec. Ex. B at P109.

[32] SAC ¶ 3, 4, at Ex. L; Vikki Tr. 106:14-107:8; Siegel Tr. 100:6-17; Diaz Dec. ¶¶ 5, 8; Siegel Dec. ¶¶ 6, 9; Levin Dec. ¶¶ 6, 9; Vikki Dec. ¶¶ 7, 10; Owimrin Dec. ¶ 14.

[33] Diaz Dec. ¶ 8; Levin Dec. ¶ 9; Vikki Dec. ¶ 10; Owimrin Dec. ¶¶ 14; Vikki Tr. 106:14-107:08; Siegel Tr. 100:6-17. At times, Scores would keep $4.00 out of each $20.00 Diamond Dollar tip the workers earn. Vikki Tr. 106:14-107:8; Owimrin Dec. ¶ 14.

[34] SAC ¶ 213, 214, at Ex. L; Bumb Dec. ¶ 3; Diaz Dec. ¶ 3; Siegel Dec. ¶ 3; Levin Dec. ¶ 3; Vikki Dec. ¶ 3; Owimrin Dec. ¶ 5; Siegel Tr. 46:2-14; Bumb Tr. 76:12-13.

servers, cocktail waitresses, and bartenders, at a reduced minimum wage rate,[35] and does

not pay dancers any hourly wages at all.[36]  This policy applies to all Plaintiffs and

potential plaintiffs and does not differ between Scores West and Scores East.[37]

### 3. Scores Does Not Pay Workers' Uniform Expenses.

Scores requires all workers at both clubs to meet strict attire and appearance

standards but does not reimburse workers for their uniform expenses.[38]  Scores' policies

and practices with respect to uniforms apply to workers at Scores West and Scores East.[39]

Scores workers are not allowed to wear their own street clothes while at work.[40]

Dancers are not even allowed to wear their own "street underwear."[41]  The Training

Manual, which applies at both clubs, requires service staff to wear a "*uniform*, purchased

from [their] Manager."[42]  Siegel's, Bumb's, and Diaz's uniform was a black corset, a

special black skirt (or "skort" with built-in underwear), tights and black boots.[43]

---

[35] Bumb Dec. ¶ 3, Ex. A; Diaz Dec. ¶ 3, Ex. A; Siegel Dec. ¶ 3, Ex. A; Siegel Tr. 46:2-14; Bumb Tr. 76:12-13.

[36] Vikki Dec. ¶ 4; Levin Dec. ¶ 3; Owimrin Dec. ¶ 5.

[37] SAC ¶¶ 107, 108, 109, at Ex. L; Vikki Tr. 23:2-15; Vikki Dec. ¶ 3; Owimrin Dec. ¶ 3. In addition to failing to pay the proper minimum wage rate, Scores does not pay its employees overtime compensation for all hours worked over 40 per workweek. Diaz Dec. ¶ 11; Vikki Dec. ¶ 4.

[38] SAC ¶¶ 196, 197, 229, 230, at Ex. L; Diaz Dec. ¶ 13, Ex. B at P195; Bumb Dec. ¶ 12, Ex. B at P098; Siegel Dec. ¶ 14; Levin Dec. ¶ 12; Vikki Dec. ¶ 13; Siegel Tr. 51:15-52:9; Vikki Tr. 31:9-36:19, 42:3-48-13, 138:3-139:7, 181:20-185:7; Bumb Tr. 37:8-21, 66:4-20.

[39] SAC at ¶ 107-109, at Ex. L; Diaz Dec. Ex. B at P195; Owimrin Dec. ¶¶ 3, 18.

[40] Bumb Dec. ¶ 13, Ex B at P098; Diaz Dec. ¶ 14, Ex. B at P195; Levin Dec. ¶¶ 12-13; Siegel Dec. ¶¶ 14-15; Vikki Dec. ¶¶ 13-14; Vikki Tr. 31:9-21, 32:9-21, 32:23-33:8; Siegel Tr. 48:19-52:9.

[41] Vikki Tr. 35:11-15; Owimrin Dec. ¶ 18.

[42] Bumb Dec. Ex. B at P098.

[43] Siegel Tr. 48:19-49:25; Bumb Tr. 66:4-7, 48:20, 48:3-49:5; Diaz Dec. ¶ 13.

Dancers must buy their own uniforms, including "all dresses and other supplies."[44]  Scores requires dancers to wear long gowns or short dresses, garter belts, stockings, a specific type of underwear, and open-toed "high-heels."[45]   The dresses are not ordinary "dinner dresses." They are of a special design which must be "accepted" by Scores.[46]  Scores sells these dresses to dancers in the dancers' dressing room.[47]   Plaintiff Vikki purchased her dresses from Scores because, despite her efforts, she could not find "Scores-approved" dresses anywhere else.[48]   Scores also requires dancers to purchase specialized underwear designed and sold by Scores.[49]  Additionally, on "theme nights" Scores requires workers to wear special uniforms consistent with the night's theme.[50]

## III.    ARGUMENT

### A.    Court-Authorized Notice is Fair, Efficient, and Advances Public Policy Goals.

The FLSA authorizes private parties to sue in federal court to recover damages. 29 U.S.C. § 201, *et seq.*  In addition to bringing individual suits, aggrieved employees may bring a collective action "on behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).

---

[44] Contractor Agreement, at Ex. S.
[45] Levin Dec. ¶ 12; Vikki Dec. ¶ 13; Vikki Tr. 33:14-25, 34:2-21; Owimrin Dec. ¶ 18. Scores does not provide workers an allowance to purchase or launder their mandatory uniforms. SAC ¶¶ 108, 123, 130, 136, 144, 152, 160, 229-231, at Ex. L; Bumb Dec. ¶¶ 14-16; Diaz Dec. ¶ 16; Siegel Dec. ¶ 17; Levin Dec. ¶ 14; Vikki Dec. ¶ 15; Owimrin Dec. ¶ 21.
[46] Vikki Tr. 31:9-21, 32:9-33:8; Owimrin Dec. ¶¶ 18, 26.
[47] Vikki Tr. 31:9-21, 32:9-33:8; Owimrin Dec. ¶ 22.
[48] Vikki Tr. 44:21-45:3, 46:13-16.
[49] Vikki Tr. 35:4-17, 46:13-16, 47:8-12; Owimrin Dec. ¶ 18.
[50] Siegel Tr. 89:7-15; Vikki Tr. 181:20-25; Levin Dec. ¶ 13; Diaz Dec. ¶ 15; Owimrin Dec. ¶ 20.  Plaintiffs used Scores' facilities to change from their ordinary street clothes into their uniforms.  Bumb Tr. 64:20-24, 65:7-14, 66:4-20; Siegel Tr. 47:3-5, 51:15-23, 96:11-14; Vikki Tr. 11:8-17, 31:9-21, 32:23-33:8; Owimrin Dec. ¶ 19.

Allowing FLSA suits to proceed as collective actions furthers the goal of judicial economy. Collective actions enable the "efficient resolution in one proceeding of common issues of law and fact…." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws.

Collective actions also provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources." *Id.* at 170. Individual Scores workers are unlikely to have the resources to pursue their claims individually. If they are not pooled in a collective action, many claims will go unheard and Scores' unlawful practices will go unchecked.

To participate in a collective action, an employee must "opt in" by executing a written consent and filing it with the court. *Id.* at 168. The statute of limitations runs on each employee's claims until her consent form is filed. *Hoffman*, 982 F. Supp. *v. Sbarro, Inc.,* 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

In furtherance of the "broad remedial purpose" of the FLSA, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.[51] This is the preferred method for managing collective actions because, for the "intended benefits of the collective action … to accrue, employees must receive 'accurate and timely notice concerning the pendency'" of the litigation. *Cuzco v. Orion Builders, Inc.,* 06 Civ. 2789 (SCR), 2007 U.S. Dist. LEXIS 21473, at *14-15 (S.D.N.Y.

---

[51] *Hoffman-La Roche*, 493 U.S. at 169; *Braunstein v. E. Photo. Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *Realite v. Ark Rests. Corp.,* 7 F. Supp. 2d 303 (S.D.N.Y. 1998).

March 8, 2007) (quoting *Hoffman-La Roche*, 493 U.S. at 170). The Second Circuit

"encourages the sending of notice to 'similarly situated' individuals." *Sipas v. Sammy's*

*Fishbox, Inc.,* 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318, at *5 (S.D.N.Y. Apr.

24, 2006) (quoting *Braunstein v. E. Photo. Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1975),

*cert. denied*, 441 U.S. 944 (1979)).

### B.    Plaintiffs Meet and Exceed Their Low Burden.

Courts in the Second Circuit typically employ a two-step approach in handling

collective actions.  *Cuzco,* 2007 U.S. Dist. LEXIS 21473, at *6; *Sipas,* 2006 U.S. Dist.

LEXIS 24318, at *6-7 & n.1.  At the initial "notice stage" – the current stage of this case

– the court determines, on the basis of pleadings and affidavits, whether to notify

potential members of the collective that the case is pending.  *Torres v. Gristede's Oper.*

*Corp.,* 04 Civ. 3316 (PAC), 2006 U.S. Dist. LEXIS 74039, at *23-24 (S.D.N.Y. Sept. 28,

2006).  To obtain notice, plaintiffs must merely establish the existence of other

employees who were "similarly situated" to them.  *Realite v. Ark Rests. Corp.,* 7 F. Supp.

2d 303, 306 (S.D.N.Y. 1998).  Employees are "similarly situated" if they have been

subjected to the same policies and practices that the plaintiffs challenge in their

complaint. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104

(S.D.N.Y. 2003).

At the initial stage, plaintiffs face only a "minimal" burden. *Damassia v. Duane*

*Reade, Inc.,* 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, at *9-10 (S.D.N.Y. Oct.

5, 2006).  They must only make a "modest factual showing" that they and other

employees were victims of "a common policy or plan that violated the law." *Hoffmann*

982 F. Supp. at 261.  Courts apply "a fairly lenient standard" in evaluating motions for

conditional certification and, when they do, they "typically grant[]" them. *Torres*, 2006

U.S. Dist. LEXIS 74039, at *37-38 (quotations omitted).

Extensive discovery is not necessary at the initial stage.[52]  In lieu of discovery,

courts rely upon the allegations set forth in the complaint and in employee declarations.

*Gjurovich*, 282 F. Supp. 2d at 104.  Courts do not weigh the merits of the underlying

claims in determining whether plaintiffs are similarly situated to potential plaintiffs.[53]

At the second stage, after full discovery, typically on a motion for decertification,

courts undertake a more searching factual inquiry and re-examine whether members of

the collective are, in fact, similarly situated.  *Torres*, 2006 U.S. Dist. LEXIS 74039, at

*37-38; *Gjurovich*, 282 F. Supp. 2d at 104 n.1.  The fact that some discovery has

occurred does not subject Plaintiffs to a heightened second-stage burden.[54]  Here,

---

[52] *Patton v. Thomson Corp*., 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (ordering notice before full discovery); *Hoffmann*, 982 F. Supp. at 262  ("Nor must this Court wait for defendant to complete its discovery before authorizing class notice"); *Lynch v. United Servs. Auto Ass'n*, 491 F.Supp.2d 357, 369 (S.D.N.Y. 2007) (extensive discovery is not necessary); *Masson v. Ecolab, Inc.*, No. 04-CV-4488, 2005 U.S. Dist. LEXIS 18022, at *14-15 (S.D.N.Y. Aug. 17, 2005) (defendant's stated need for discovery does not bear on the collective action issue) *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 368 (S.D.N.Y. 2007)(courts should not wait until after discovery to certify the collective action).

[53] *E.g., Hoffman*, 982 F. Supp. at 262 ("the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here"); *Krueger v. N.Y. Tele. Co.*, Nos. 93 Civ. 0178-79, 1993 U.S. Dist. LEXIS 9988, at *6 (S.D.N.Y. July 21, 1993) ("even if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out *not* to be similarly situated, notification at this stage . . . may enable more efficient resolution of the underlying issues. . .").

[54] *Hallissey v. America Online, Inc*., Civ. No. 99-cv-3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008);  *Cuzco v. Orion Builders,* 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) ("even though discovery is underway, it would be inappropriate at this time to attempt to make more than the first-step certification decision" whether putative class members are "similarly situated"); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (where "[o]nly very limited discovery" had taken place, plaintiffs are entitled to rely on pleadings and own declarations in seeking, and court is to apply "fairly lenient" standard in granting, conditional certification); *Damassia v. Duane*

Defendants have not completed their document production and have not produced five witnesses that Plaintiffs have noticed for depositions.[55]  The deadline for document discovery is not until June 30, 2008 and the final discovery cut-off is September 12, 2008.[56]

## C.    Plaintiffs and Potential Plaintiffs Are Similarly Situated With Respect To Their FLSA Claims.

Based on their declaration and deposition testimony, the allegations in their Second Amended Complaint, and other documentary evidence, Plaintiffs comfortably exceed the "modest factual showing" required for conditional certification.  Courts in this Circuit and elsewhere regularly authorize notice on much thinner records.[57]

Plaintiffs allege that Scores has violated several provisions of the FLSA.  Each violation is the result of a policy or practice that affects all Plaintiffs and potential plaintiffs, at both clubs, in similar ways.  Each of these policies and practices warrants conditional certification of the collective and court-authorized notice to all potential plaintiffs.  *See Fasanelli v. Heartland Brewery, Inc.,* 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (conditionally certifying collective action covering workers at six restaurant

---

*Reade, Inc.*, 04 Civ. 8819 GEL, 2006 U.S. Dist. LEXIS 73090, at *12 (S.D.N.Y. Oct. 5, 2006) (refusing to hold plaintiffs to more stringent standard where discovery was "in its early phases").

[55] Marzigliano Dec. ¶¶ 4-5.

[56] Katz's Order, at Ex. T.

[57] *See Khalil v. The Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (four named plaintiffs and one opt-in); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *1-2 (S.D.N.Y. Aug. 17, 2005) (three opt-ins); *Legrand v. Educ. Mgmt. Corp.*, No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004) (three named plaintiffs); *Carter v. Indianapolis Power & Light Co.*, IP 102 CV 01812, 2003 U.S. Dist. LEXIS 23398 (S.D. Ind. Dec. 23, 2003) (three affidavits and one opt-in); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002) (three affidavits); *Schwed v. Gen. Elec. Co.*, 159 F.R.D. 373, 376 (N.D.N.Y. 1995) (two affidavits in ADEA case).

locations "where all putative class members are employees of the same restaurant

enterprise and allege the same types of FLSA violations.")

### 1.    Scores Paid All Workers Less Than the Applicable Minimum Wage.

Scores has violated the FLSA's minimum wage provisions with respect to all

Plaintiffs and potential plaintiffs.  The FLSA requires employers to pay employees a

legally-prescribed minimum hourly wage.  *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048

(GEL), 2007 U.S. Dist. LEXIS 7770, at \*46 (S.D.N.Y. Feb. 1, 2007) (citing 29 U.S.C. §

206(a)(1)).  The federal minimum wage was \$5.15 per hour from the beginning of the

relevant period through July 24, 2007, when it increased to \$5.85 per hour.  29 U.S.C. §

206(a), *as amended by* 121 Stat. 112, 188.  Scores has not paid any Plaintiff or potential

plaintiff \$5.15 or \$5.85 per hour during the relevant period.  *See* Section II.D.2 *supra.*

All Plaintiffs and potential plaintiffs at both clubs are similarly situated with respect to

Scores' minimum wage violations.

### 2.    All Workers Are Similarly Situated With Respect to Scores' Likely "Tip Credit" Defense.

Scores may claim that it is entitled to pay certain workers a reduced minimum

wage by taking a "tip credit" pursuant to 29 U.S.C. § 203(m).  In order to take advantage

of Section 203(m), however, an employer must meet two prerequisites, which are to be

"strictly construed." *Chan,* 2007 U.S. Dist. LEXIS 7770, at \*46-47; *Chung v. New Silver*

*Palace Rest. Inc.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002).

The first prerequisite is that the employer must allow its tipped workers to retain

all of the customer tips they receive.  *Id.* at \*46-47 (citing 29 U.S.C. § 203(m)).

Employers that require workers to share tips with management or "the house" may not

take a tip credit. *Chung v. The New Silver Palace Rest., Inc.,* 246 F. Supp. 2d at 229-30 (S.D.N.Y. 2002); *Realite*, 7 F. Supp. 2d at 307. It is the employer's burden to prove that it has complied with Section 203(m). *Chan,* 2007 U.S. Dist. LEXIS 7770, at *52 (citing *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)).

      Scores does not allow any of its tipped workers to retain all of their tips. As explained above, Scores keeps for itself a percentage of all tips that its workers receive through Diamond Dollars. *See* Section II.D.1 *supra*. This policy affects workers in all positions at Scores West and at Scores East.[58] Courts in this District and elsewhere routinely authorize collective action notice where workers allege that their employer requires them to share tips with "the house" or other non-tip-eligible employees.[59]

      The second prerequisite for the tip credit is that the employer must inform its tipped workers of the minimum wage and tip credit provisions. 29 U.S.C. § 203(m) ("§203(m)"); *Dominguez v. Don Pedro Rest.*, No. 2:06 CV 241, 2007 U.S. Dist. LEXIS 72444, at *6 (N.D. Ind. Sep. 26, 2007) (employer must inform employee of the tip credit provisions irrespective of employee's previous knowledge). Scores has failed to do so across the board.[60] Although Scores may claim to have informed its workers of the provisions of §203(m) through a posting in the managers' offices, the Court need not decide this factual issue now. Whether this posting existed, and whether it was sufficient

---

[58] SAC ¶ 3, at Ex. L; Diaz Dec. ¶ 8; Levin Dec. ¶ 9; Vikki Dec. ¶ 10; Owimrin Dec. ¶ 17; Vikki Tr. 106:14-107:08; Siegel Tr. 100:6-17.

[59] *See Fasanelli,* 516 F. Supp. 2d at 322; *Dominguez v. Don Pedro Rest.*, 2:06 cv 241, 2007 U.S. Dist. LEXIS 6659, at *1-2, 8-10 (N.D. Ind. Jan. 25, 2007); *Bursell v. Tommy's Seafood Steakhouse*, Civil Action No. H-06-0386, 2006 U.S. Dist. LEXIS 80526, at *7-8 (S.D. Tex. Nov. 3, 2006); *Zhao v. Benihana, Inc.,* No. 01 Civ. 1297 (KMW), 2001 U.S. Dist. LEXIS 10678 at *11-13 (S.D.N.Y. May 7, 2001); *Realite,* 7 F. Supp. 2d at 306-08.

[60] Bumb Dec. ¶ 4; Diaz Dec. ¶ 4; Levin Dec. ¶ 5; Siegel Dec. ¶ 5; Siegel Tr. 45:20-25; Vikki Dec. ¶ 6, Owimrin Dec. ¶ 9.

are questions that can be answered on a class-wide basis.[61]

### 3. Whether Dancers are "Employees" Can be Determined on a Class-Wide Basis.

Scores may claim that it treats dancers as independent contractors and that, because of this (mis)classification they cannot be similarly situated to non-dancers.  This is a red herring.  First, as Plaintiffs explain, Scores subjected dancers to the same policies as non-dancers – including taking part of their customer tips, failing to pay them minimum wages, and failing to pay their uniform expenses.  This alone satisfies the lenient "similarly situated" standard.  A defendant cannot defeat a §216(b) motion by raising a defense against a subset of the putative collective.  The proper focus is on the Scores policies and practices, and to whom they applied.[62]

Moreover, Scores cannot deny that all of the dancers are similarly situated to one-another.  They all perform the same job duties – they dance for Scores' customers, and they are all subject to the same compensation structure – Scores does not pay them any direct wages, they work for tips.[63]

---

[61] Courts have held that similar efforts fell short.  *See Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 U.S. Dist. LEXIS 7770 (S.D.N.Y. Feb. 1, 2007) (poster in language employees did not understand was not sufficient notice); *Bonham v. Copper Cellar Corp.*, 476 F. Supp. 98, 101 n. 6 (E.D. Tenn. 1979) ("The evidence shows that the poster was not prominently displayed [and] employees were not directed to it . . . Under these circumstances, the poster does not satisfy the notice requirement.")

[62] *See Fasanelli,* 516 F. Supp. 2d at 322 (certifying collective of hourly workers holding different positions but who all "are employees of the same restaurant enterprise and allege the same types of FLSA violations."); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 390 (W.D.N.Y. 2005) (that plaintiffs had "different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiff's claims. What is important is that these employees were allegedly subject to a common practice or scheme … in violation of the FLSA).

[63] Vikki Dec. ¶ 3; Levin Dec. ¶ 3; Owimrin Dec. ¶ 5.

The dancer misclassification, itself, also presents common issues of law and fact that apply to all dancers the same way, and further supports this motion.[64]  Scores does not claim to have classified dancers as independent contractors by doing an individualized assessment of each dancer's work arrangement.  Scores admits that it simply "employed . . . dancers to be independent contractors."[65]  After having uniformly classified all dancers as independent contractors without performing individualized inquiries, Scores cannot now claim that the Court must do so to determine whether dancers are employees.

In other words, if Scores can make this determination on a collective basis, so can the Court.  As one district court recently explained,

> [Defendant] has had sufficient confidence that all Store Manager jobs are sufficiently similar that it . . . categorically classified all Store Managers as exempt employees . . . without making any individualized assessments to account for potential variation between individual Store Managers. Given this, [Defendant's] contention that each Store Manager position must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow.

*Tierno v. Rite Aid Corp.*, No. C 05-02520, 2006 U.S. Dist. LEXIS 71794, at *26–27 (N.D. Cal. Aug. 31, 2006).[66]  Courts routinely approve collective actions in

---

[64] Although the merits are not at issue here, courts have found that dancers are "employees" under the FLSA.  *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328–29 (5th Cir. 1993); *Reich v. Priba Corp.*, 890 F. Supp. 586, 594 (N.D. Tex. 1995); *Donovan v. Tavern Talent & Placements, Inc.*, Civ. No. 84-F-401, 1986 U.S. Dist. LEXIS 30955, at *6–7 (D. Colo. Jan. 8, 1986); *Harrell v. Diamond A Entmt., Inc.*, 992 F. Supp. 1343, 1353–54 (M.D. Fla. 1997).

[65] Scores Memorandum in Support of Their Cross-Motion to Dismiss or Alternatively for Summary Judgment and in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA; Docket No. 26, at 22.

[66] *See also, Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 613 (C.D. Cal. 2005); *Krzesniak v. Cendant Corp.*, No. C 05-05156, 2007 U.S. Dist. LEXIS 47518, at **46-47 (N.D. Cal. June 20, 2007) (citing *Whiteway v. FedEx Kinko's Office & Print Servs,* No. C

misclassification cases,[67] including cases in which workers are misclassified as

independent contractors.[68]

An examination of the individual factors relevant to the "employee" question also

reveals that Scores dancers are similarly situated to one another. One factor, whether

Scores exercised control over dancers' work, *see Brock v. Superior Care, Inc.*, 840 F.2d

1054, 1058-9 (2d Cir. 1988), is well suited for collective adjudication. To assess this

factor, the Court must only look to Scores' rules and practices, which do not vary from

dancer to dancer or between the two clubs. Scores determines all entertainers'

---

05-2320, 2006 U.S. Dist. LEXIS 69193, at *6 (N.D. Cal. Sep. 13, 2006)) ("Defendants cannot, on the one hand, argue that all managers are exempt from overtime wage and, on the other hand, argue that the Court must inquire into the job duties of each manager in order to determine whether the managers is exempt"); *Nerland v. Caribou Coffee Co., Inc.*, 05 Civ. 1847-PJS, slip op. at 17–18 (D. Minn. Apr. 19, 2007) ("The Court finds it disingenuous for [Defendant], on the one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption"); *Pendlebury v. Starbucks Coffee Co.*, 04 Civ. 80521, 2007 U.S. Dist. LEXIS 74846, at *20 (S.D. Fla. Sept. 20, 2007) (finding the *Nerland* court's reasoning "persuasive" in its decision to deny Defendants' motion for decertification of an FLSA collective).

[67] *See Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 U.S. Dist. LEXIS 73853 (S.D.N.Y. Oct. 2, 2007); *Anglada v. Linens 'n Things, Inc.*, No. 06 Civ. 12901, 2007 U.S. Dist. LEXIS, at *27 (S.D.N.Y. Apr. 26, 2007); *Torres*, 2006 U.S. Dist. LEXIS 74039, at *24 (S.D.N.Y. Sept. 29, 2006); *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *26; *Jacobsen v. The Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2003 U.S. Dist. LEXIS 7988, at *11-12 (S.D.N.Y. May 15, 2003); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *5 (S.D.N.Y. May 17, 2002).

[68] *See Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 198 (S.D.N.Y. 2006); *Quinteros v. Sparkle Cleaning, Inc.*, Civ. No. AW-07-0628, 2008 U.S. Dist. LEXIS 6955, at *22-23 n.5 (D. Md. Jan. 28, 2008) (conditionally certifying class of alleged "independent contractors"); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798–99 (E.D. La. 2007) (same); *Lemus v. Burnham Painting & Drywall Corp.*, 2:06-cv-01158, 2007 U.S. Dist. LEXIS 46785 (D. Nev. June 25, 2007) (same); *Westfall v. Kendle Intern., CPU, LLC*, Civ. No. 1:05-cv-00118, 2007 U.S. Dist. LEXIS 11304, at *42-43 (N.D. W.Va. Feb. 15, 2007); *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 325–26 (D.N.J. 2005); *Gutescu v. Carey Int'l., Inc.*, 01-4026-CIV, 2003 U.S. Dist. LEXIS 27507, at *2 (S.D. Fla. June 17, 2003) (same); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ. No. CCB-07-455, 2008 U.S. Dist. LEXIS 16354 (D.Md., Feb. 26, 2008).

schedules;[69] rules of conduct;[70] and attire (s*ee* Section II.D.3, *supra*). It requires dancers

to dance on stage at certain times,[71] to sell drinks to Scores' customers,[72] and to drink

with Scores' customers.[73] It also requires dancers to provide two weeks' notice before

quitting,[74] and has the power to terminate dancers' employment at will.[75] Dancers are

required to work specific days and are not allowed to work in other clubs.[76]

     The opportunity for profit and loss, *see Brock,* 840 F.2d at 1058-9, is another

factor that does not require an individualized determination. The amounts dancers pay to

the house, the DJ, and the makeup artist are controlled by Scores.[77] Scores sets the price

for private dances and determines how much customers must pay for VIP sessions with

dancers.[78] Dancers are not allowed to negotiate different prices for dances or for VIP

sessions.[79] Dancers do not "control the key determinants of profit and loss of a

successful enterprise." *See Reich v. Priba Corp.*, 890 F. Supp. 586, 593 (N.D. Tex.

1995). They are dependant on Scores to earn a living.

     Another factor, investment in the business, *see Brock*, 840 F.2d at 1059, also

applies to all dancers similarly. No matter the level of dancers' "investment," it is quite

low compared to Scores' investment. *See Priba Corp.*, 890 F. Supp. at 593 (defendant

---

[69] Vikki Tr. 10:13-14:21; Levin Dec. ¶ 20; Owimrin Dec. ¶ 27.
[70] Vikki Dec. ¶ 25; Vikki Tr. 100:8-101:2, 121:3-122:21, 123:11-125:23, 126:9-24, 136:21-137:15, 164:25-165:10.
[71] Vikki Tr. 179:21-181:4.
[72] Vikki Tr. 123:21-125:22, Owimrin Dec. ¶ 35.
[73] Vikki Tr. 123:21-125:22; Owimrin Dec. ¶ 35.
[74] Vikki Tr. 53:12-54:5.
[75] Vikki Dec. ¶ 23; Levin Dec. ¶ 21; Owimrin Dec. ¶ 31.
[76] Vikki Tr. 91:19-92:21, 125:9-24; Owimrin Dec. ¶¶ 27-28.
[77] Vikki Tr. 61:24-25, 62:23-67:13, 74:17-75:12, 75:17-21, 79:3-80:11; Vikki Dec. ¶ 5; Levin Dec. ¶ 4; Siegel Tr. 45:5-12; Owimrin Dec. ¶ 11.
[78] Vikki Tr. 164:25-165:10; Owimrin Dec ¶ 29.
[79] Vikki Tr. 56:16-24, 165:19-166:5; Owimrin Dec. ¶ 30.

"spent millions of dollars to assure that the club would stand apart from its competitors. Entertainers at the club make no investment in its facilities or atmosphere aside from choosing what clothing to wear when performing. All investment and risk capital is provided by defendants. Indeed, but for defendants' provision of the lavish work environment, the entertainers at the club likely would earn nothing. The unique nature and appeal of the Cabaret Royale confirms, rather than denies, the entertainer's economic dependence.").

The extent to which the services rendered by dancers are an integral part of Scores' business, *see Brock*, 840 F.2d at 1059, also requires no individualized proof. Nor does the level of skill required to dance at Scores, *see Brock*, 840 F.2d at 1058-59. Exotic dancing requires no specialized skills. *See Priba Corp.*, 890 F. Supp. 586 at 592–93.

The only question pertinent to this motion is whether dancers were subject to the same unlawful policies or practices as were other workers and as were one another.[80] They all were.

### 4. Scores Uniform Violations Were Uniform.

Scores subjected all Plaintiffs and potential plaintiffs to the same unlawful policy of not paying for the purchase and maintenance of mandatory uniforms. S*ee* Section II.D.3, *supra*.

---

[80] *E.g., Fasanelli,* 516 F. Supp. 2d at 322 (conditionally certifying class of "all hourly workers employed by the Defendants" regardless of title "because all putative class members are employees of the same restaurant enterprise and allege the same types of FLSA violations"); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) (conditionally rejecting defendant's objection to certification of class of employees who worked at different stores on grounds that "court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated").

Whether the particular attire Scores requires workers to wear constitutes a uniform under the FLSA can also be determined on a class-wide basis.  The FLSA prohibits employers from requiring employees to incur expenses solely for the employers' convenience.  29 C.F.R. § 778.217(a).  Expenses for mandatory "uniforms or special clothing" are among the expenses this provision contemplates.  29 C.F.R. § 778.217(b)(2).  "If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working  . . . the garments chosen would not be considered to be uniforms."  *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998) (quoting DOL's Wage & Hour Field Operations Handbook § 30c12(f)).  On the other hand, "where the employer does prescribe a specific type and style of clothing to be worn at work, *e.g.*, where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms." *Id.*

Scores requires all Plaintiffs and potential plaintiffs to wear specific uniforms but does not reimburse any of them for the purchase price or for the cost of laundering them. *See* Section II.D.3 *supra*.  With respect to service staff, Scores' own documents concede the point.  The Training Manual admits that black corsets, special black skirts or skorts, tights, and black boots worn by its service staff constitute a uniform.[81]  With respect to dancers, the court can easily determine whether Scores-approved "stripper" dresses, heels, garters, and special underwear are "a specific type and style of clothing to be worn at work" that is not "ordinary basic street clothing of a general type." *Ayres*, 12 F. Supp. 2d at 310.  Plaintiffs and potential plaintiffs are situated with respect to this claim as well.

---

[81] Bumb Dec. Ex. B at P098.

**D.    The Court Should Approve Plaintiffs' "Timely, Accurate and Informative" Proposed Notice.**

A collective action notice must be "timely, accurate, and informative." *Hoffman-La Roche,* 493 U.S. at 171-72.  Plaintiffs' Proposed Notice[82] meets this standard.  It is based on the model employment discrimination "plain-language notice" suggested by the Federal Judicial Center.[83]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court conditionally certify this case as a collective action; order Defendants to identify all Potential Opt-In Plaintiffs in a computer readable data file containing their names, last known mailing addresses, last known telephone numbers, Social Security numbers, work locations, and dates of employment; and authorize the issuance of Plaintiffs' Proposed Notice to all Potential Opt-In Plaintiffs employed by Defendant between October 9, 2004 and the mailing of the Notice.

Dated:        March 28, 2008
               New York, New York

                              Respectfully submitted,
                              **OUTTEN & GOLDEN LLP**
                              By:

                              /s/ Justin Swartz_____
                              Justin M. Swartz (JS 7989)

                              **OUTTEN & GOLDEN LLP**
                              Adam T. Klein (AK 3293)

---

[82] Notice, at Ex. U.
[83] Model Notice, at Ex. V.

20

Justin M. Swartz (JS 7989)
Tammy Marzigliano (TM 2934)
Cara E. Greene (CG 0722)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No. 24001807)
(admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas  77002
Telephone:  (713) 877-8788

**Attorneys for Plaintiffs and the Putative
Class**