# EXHIBIT FF

1986 U.S. Dist. LEXIS 30955, *; 104 Lab. Cas. (CCH) P34,773

**RAYMOND J. DONOVAN, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, Plaintiff, v. TAVERN TALENT AND PLACEMENTS, INC., a corporation; INTERNATIONAL ENTERTAINMENT CONSULTANTS, INC., a corporation; HAROLD LOWRIE individually; and JOHN TITELLO, individually, Defendants.**

**Civil Action No. 84-F-401**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

*1986 U.S. Dist. LEXIS 30955*; *104 Lab. Cas. (CCH) P34,773*

**January 8, 1986, Decided
January 8, 1986, Filed**

**DISPOSITION:**   [*1]  Motion for injunctive relief DENIED. Plaintiff's motion for summary judgment GRANTED in part and DENIED in part. Defendants' motion for summary judgment DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, the U.S. Department of Labor and its Secretary (DOL), filed suit against defendants, two corporations and two individuals, pursuant to § 17 of the Fair Labor Standards Act of 1938 (Act), *29 U.S.C.S. § 201 et seq.*, to enjoin defendants from continuing to withhold back wages from employees. The DOL alleged that defendants did not pay their tipped employees the minimum wage. Cross-motions for summary judgment were filed.

**OVERVIEW:** The two corporate defendants employed nude entertainers at topless bars. The two individual defendants were the president or manager of the two corporations. The records showed that the entertainers were paid the prevailing minimum wage and that appropriate taxes were deducted. Defendants argued that *§ 203(m)* of the Act was not the exclusive method of computing tipped employees' wages and that nothing in the Act prevented an employee from contracting with an employer that tips could be used towards satisfying the full minimum wage requirement. The court held that: (1) one corporation was an employer and the other was a joint employer and the two individual defendants were also employers and all were jointly and severally liable for any back wages; (2) the entertainers were tipped employees; (3) the DOL Wage Hour Administrator previously gave notice to all employers that tips had to be retained by the employees as required by the Act and that any agreements remitting tips to employers were invalid; (4) defendants failed to pay the minimum wage as required by § 206 of the Act; and (5) an injunction to prevent future violations was not necessary.

**OUTCOME:** The court granted the DOL's motion for summary judgment in part and denied in part and denied defendants' motion for summary judgment in a suit to enjoin defendants from continuing to withhold back wages from their employees.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Employment Relationships > At-Will Employment > Employers*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers*
[HN1] Employer is defined, in part, as any person acting directly or indirectly in the interest of an employer in relation to an employee. *29 U.S.C.S. § 203(d)*. This language has been interpreted expansively in order to effectuate Congress' remedial intent. In determining employer status, "economic reality" prevails over technical common law concepts of agency. There may be several simultaneous employers. A joint employer is one who acts directly or indirectly in the interest of an employer with regard to employees and the employment by one employer is not completely disassociated from employment by the other employer.  29 U.S.C.S. § 791.2. A corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the Fair Labor Standards Act for unpaid wages.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Employers*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage*

Case 1:07-cv-08718-RMB-THK    Document 54-33    Filed 03/28/2008    Page 3 of 7

Page 2
1986 U.S. Dist. LEXIS 30955, *; 104 Lab. Cas. (CCH) P34,773

[HN2] Section 6 of the Fair Labor Standards Act (Act) requires that each employer subject to the Act must pay its employees a minimum wage. *29 U.S.C.S. § 206.*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage*
*Labor & Employment Law > Wage & Hour Laws > Statutory Application > General Overview*
[HN3] Pursuant to *29 U.S.C.S. § 203(t)*, a "tipped employee" is any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. *29 U.S.C.S. § 203(m)* provides in part: in determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per cent of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employees unless (1) such employee has been informed by the employer of the provisions of this subdivision, and (2) all tips received by such employee have been retained by the employee.

*Administrative Law > Judicial Review > Standards of Review > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Breach*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Minimum Wage*
[HN4] The Wage Hour Administrator gave notice to all employers that tips had to be retained by employees as required by the Fair Labor Standards Act (Act) and henceforth any agreements remitting tips to employers were invalid. The Administrator further reiterated the Act's requirement that the employer must pay, regardless of the amount of tips, at least one half the minimum wage. The Department of Labor has maintained this interpretation of the statute for over 10 years and trial courts are obligated to give great weight to this interpretation.

*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN5] While a trial court recognizes that summary judgment is a drastic measure, which is to be applied with caution, it is appropriate where there is no dispute as to material facts.

**COUNSEL:** Francis X. Lilly, Deputy Solicitor of Labor, Tedrick A. Housh, Jr., Regional Solicitor, Henry C. Mahlman, Associate Regional Solicitor, Martgaret A. Miller, Attorney U.S. Department of Labor, Office of the Solicitor, Denver, CO.

DREXLER, WALD & ABRAMOVITZ, P. C. Rick Budd, Benjamin Spitzer, Denver, CO.

**JUDGES:** Sherman G. Finesilver, Chief Judge, United States District Court.

**OPINION BY:** Sherman G. Finesilver

**OPINION**

-ORDER-

Sherman G. Finesilver, Chief Judge

THIS MATTER is before the Court on cross motions for summary judgment. We have carefully reviewed the briefs, exhibits and affidavits submitted by the parties, as well as the applicable law. We are of the view that the plaintiff's motion for summary judgment should be GRANTED in part and DENIED in part. Defendant's motion for summary judgment is DENIED.

I.

Plaintiff brought this action pursuant to § 17 of the Fair Labor Standards Act of 1938 as amended (*29 U.S.C. § 201 et seq.*)(hereinafter referred to as the "Act"), to enjoin defendants from violating the Act and from continuing to withhold back wages due employees. Plaintiff alleged that defendants did not pay their tipped employees the minimum wage. Defendants responded by denying that any violations of the Act exist.

Defendants, Tavern Talent and Placements, Inc., (Tavern) and International Entertainment Consultants, [*2] Inc., (IEC), jointly employ nude entertainers at topless bars. Tavern provides the nude entertainers, dancers, and waitresses to the topless nightclubs and generally supervises them. IEC provides and supervises the club managers who supervise the entertainers for each of the topless nightclubs. All of the employees of the nightclubs, including the entertainers, are paid through a bookkeeping establishment, Titello and Associates.

The first corporate defendant in this case is Tavern Talent. Tavern is an organization that hires and employs nude dancers, entertainers, and waitresses. The employees are generally solicited through newspaper advertisements in Denver and Colorado Springs. (Deposition of Kristen Benson, Director of Tavern, p.14, 25-26, 42). Once Tavern has hired an entertainer, that employee is assigned to work at a topless nightclub. The nightclubs

Case 1:07-cv-08718-RMB-THK    Document 54-33    Filed 03/28/2008    Page 4 of 7

Page 3
1986 U.S. Dist. LEXIS 30955, *; 104 Lab. Cas. (CCH) P34,773

include PT's of Denver, Boogie Down, Shotgun Willies Saturdays, and PT's of Colorado Springs (Deposition of Kristen Benson ("KB"), p.14, 25, 42).

The entertainers are hired and fired only by Tavern Talent, but they report to work each night at the nightclub where they are assigned (Deposition of John Titello, ("JT"), president [*3] of IEC, p. 7-9). At the club they provide nude entertainment to the club patrons. The entertainers, while working at the clubs are under the general supervision of the club managers. The club managers set the schedule of work for the entertainers, see that they record the hours they work on a time card, and generally oversee their conduct (Deposition of KB, p.26, 33-34).

Each of the managers at the topless clubs is hired and supervised by IEC. IEC hires and fires the club managers and supervises their daily activities by sending out IEC employees to check on each of the clubs daily (Deposition of JT, p. 6-9). The club managers hire and fire bartenders and doormen. They keep time records for all employees and supervise the work schedules of all employees. The managers collect the time cards of the employees and then submit those cards to the accounting and bookkeeping firm of Titello and Associates. Titello, in turn, calculates the payroll for all of the employees of all of the clubs (Deposition of KB, p. 6,7 and 15). Club managers are also responsible for the money that is collected by each of the clubs. IEC sends an employee daily to each of the clubs to collect the money, check [*4] with the club manager and see that business is running smoothly.

The president of Tavern Talent is defendant Harold Lowrie. Although Mr. Lowrie may not initially interview each employee who applies for a position as a nude entertainer, he makes the final decision regarding who should be hired. He also makes the final decision with regard to the placement of an entertainer at a particular club, their transfer to another club, and firing when necessary. Lowrie sets the amount of compensation that is to be paid to the entertainers, makes adjustments in that compensation when needed, and instructs the accountants, Titello and Associates on the preparation of Tavern Talents payroll. He is further responsible for all policy and employment practices of Tavern Talent (Deposition of KB, p. 25-27).

John Titello is the manager of IEC and is the person primarily responsible for that business' activities. Mr. Titello directs the managers of each of the clubs and the IEC office employees who go out daily to meet with the club managers (depositions of KB, p. 25,30,43 and JT, p. 6-7). Mr. Titello establishes the employment practices and policies of IEC and is involved generally in its day to day [*5] activities.

The amount of pay for each dancer and entertainer is determined by Harold Lowrie and Tavern Talent (Deposition of KB, p. 27). Employees who are classified as entertainers enter into written employment agreements with Tavern Talent. These agreements provide that the entertainer is to be paid the prevailing minimum wage, which is $ 3.35 per hour. The agreements also provide that the first $ 4.35 received from customers each hour as tips or gratuities is the property of Tavern Talent. The agreements require the entertainers to account to Tavern on a daily basis and to either actually turn over the funds or to credit Tavern for the funds. In practice, the entertainers usually turned over $ 1.00 of the first $ 4.35 received each hour and credited to Tavern any amounts additionally due Tavern under the agreement. Each employee received over $ 4.35 in tips each hour which they worked.

Thus, under this scheme, the entertainers were allowed to keep $ 3.35 per hour earned as tips designated as owned by Tavern Talent, as well as all tips in excess of $ 4.35 per hour. The payroll records then showed that the dancers and entertainers were paid $ 4.35 per hour and appropriate taxes [*6] were deducted. These deductions were actually made from the $ 1.00 per hour submitted by the employee and any excess was returned to the employee (Deposition of KB, p. 15-18, 29, 40-42, and JT, p. 8). Tavern Talent, with a few exceptions, did not pay any of its dancers/entertainers from its own funds, that is, from funds that were other than those derived from employee tips. This tip-back scheme was the primary method used to pay entertainers and is the main issue in this case.

II.

The first issue which we must decide is whether the defendants are employers within the meaning of the Act. [HN1] Employer is defined, in pertinent part, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *29 U.S.C. § 203(d)*. This language has been interpreted expansively in order to effectuate Congress' remedial intent. *Donovan v. Janitorial Services, Inc., 672 F.2d 528 (5th Cir. 1982)*. In determining employer status, "economic reality" prevails over technical common law concepts of agency. *Goldberg v. Whitaker, 366 U.S. 28, 33, 6 L. Ed. 2d 100, 81 S. Ct. 933 (1961)*. There may be several simultaneous employers. *Falk v. Brennan, 414 U.S. 190, 194, 38 L. Ed. 2d 406, 94 S. Ct. 427* [*7] *(1973)*.

Based on the facts, taken from the depositions of defendants, there is no question that Tavern Talent is an employer in relation to the entertainers. Tavern Talent hires, places and supervises the entertainers. Moreover, we believe it is equally clear that IEC is a joint employer. A joint employer is one who acts directly or indirectly in

1986 U.S. Dist. LEXIS 30955, *; 104 Lab. Cas. (CCH) P34,773

the interest of an employer with regard to employees and the employment by one employer is not completely disassociated from employment by the other employer. 29 U.S.C. § 791.2.

IEC manages, sets hours and generally oversees the daily activities of the entertainers. If an entertainer acts in a manner which could jeopardize the liquor license of a club, then IEC may require that employee to leave the nightclub. The entertainers perform work which simultaneously benefits both IEC and Tavern Talent. They are subject to the direction and control of both entities. Therefore, both entities are responsible for the activities of the entertainers and are jointly and severally liable for any violations of the Act.

It is also clear from the facts that Harold Lowrie and John Titello each act directly in the interest of Tavern Talent and IEC, respectively, [*8] in relation to the employees or joint employees of each entity, and are therefore employers within the meaning of the Act. The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages. *See Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)* and cases listed therein. Harold Lowrie is the president and primary manager of Tavern Talent. He has the final word on who is hired and fired, he directs the day-to-day activities of Tavern Talent and he makes the management decisions (Deposition of KB, p. 25-27). He sets the amount of wage, determines which club the employee will work in, and generally controls the manner of work and compensation. John Titello is the president of IEC. He works in the office daily, directing the employees who collect the money for delivery to the bank and check on the nightclubs (Deposition of JT, p. 5,6,14 and 12). He hires and fires IEC employees, nightclub managers and other employees. He manages the day-to-day activities of all of the clubs, and sets the general employment policy (Deposition [*9] of JT, p.5-7). Mr. Titello controls IEC and its employees and Mr. Lowrie is the primary controller of Tavern Talent and its employees. This control places Lowrie and Titello squarely in the position of employers for purposes of the Fair Labor Standards Act. *See Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33, 6 L. Ed. 2d 100, 81 S. Ct. 933 (1961)*.

Accordingly, the two corporate defendants, with the two individual defendants, are jointly and severally liable for any back wages due as a result of violations of the Act.

III.

Having decided that the defendants are employers, we must now determine whether they have failed to pay their employees the minimum wage as required by [HN2] section 6 of the Fair Labor Standards Act. This section requires that each employer subject to the Act must pay its employees a minimum wage. That wage, since January 1, 1980, has been designated by Congress to be not less than $ 3.35 per hour. *29 U.S.C. § 206*. There is no question that the entertainers in this case are tipped employees. *See* [HN3] *29 U.S.C. § 203(t)*("tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $ 30 a month in tips"). *Section 203(m)* provides [*10] in relevant part:

> In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 50 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employees unless (1) such employee has been informed by the employer of the provisions of this subdivision, and (2) all tips received by such employee have been retained by the employee....

Plaintiff argues correctly that under the provisions of the Act, employers must pay the applicable minimum wage unless they fall into one of the limited exceptions. One such exception is for tipped employees. If an employee is a tipped employee he may be paid in accordance with Section 3(m) if the employer so choses. If the employer does not choose to pay according to the method described in 3(m) for tipped employees then he must pay the full minimum wage as prescribed by the Act. *Richard* [*11] *v. Marriott, 549 F.2d 303, 305 (4th Cir. 1977)*.

Defendant does not contend that its tip-back scheme complies with section 3(m). Rather, they argue that section 3(m) is not the exclusive method of computing tipped employees' wages and that nothing under FLSA prevents an employee from contracting with his employer that tips could be used toward satisfying the full minimum wage requirement. Defendants rely on *Hodgson v. Bern's Steak House, Inc., 1971 U.S. Dist. LEXIS*

Case 1:07-cv-08718-RMB-THK   Document 54-33   Filed 03/28/2008   Page 6 of 7

Page 5

1986 U.S. Dist. LEXIS 30955, *; 104 Lab. Cas. (CCH) P34,773

11396, 66 Lab. Cas. (CCH) P32,571 (M.D. Fla. 1971). In that case, the employer and its waiters had entered into an agreement whereby the waiters agreed to accept tips as wages under the Act, and the employer agreed to make up the difference if any waiter did not receive the statutory minimum wage in tips. Concluding that "(n)either Section 3(m) not Section 3(t) impose the sole or exclusive method by which employers who employ persons who receive tips in the course of their employment must be compensated," the court found that the agreement met the Act's minimum wage requirements. Defendants argue that this case should control this situation.

We disagree. This circuit rejected a very similar proposition in *Doty v. Elias, 733 F.2d 720 (10th* [*12] *Cir. 1984)*. In *Doty*, the defendant, relying on the *Hodgson* case, argued that an employer who allows employees to keep their tips complies with the Act so long as the employees make at least as much in tips as they would if they received only the minimum hourly wage. Thus he argued that his failure to pay a hourly wage was not a violation of the Act. In rejecting this argument, the court stated that this "interpretation of the Act's requirements does violence to the language of *§ 203(m)* and would render much of that section superfluous. Moreover, Elias construction contravenes Congress' purpose in enacting *§ 203(m)*: to ensure that an employer may not use the tips of a tipped employee to satisfy more than a specified percentage of the Act's minimum hourly wage." (citations omitted). The court specifically noted that the issue of whether an agreement whereby the employer would own the tips received and could use those tins to satisfy the minimum wage was valid was not addressed. We now hold that such an agreement is not valid under the Act.

The 1974 amendments to *section 203(m)*(which essentially resulted in the sections present form), were intended to "make clear the original [*13] congressional intent that an employer could not use the tins of a "tipped employee" to satisfy more than 50 percent of the Act minimum wage." 1974 Senate Report.

Also, in 1974 the Wage Hour Administrator issued an opinion letter concerning this provision of the Act and congressional intent that was reprinted in the National Restaurant Association's newsletter. That opinion letter and subsequent ones repudiated earlier opinions that sanctioned agreements between employers and employees to accept tips in lieu of wages. [HN4] The Administrator gave notice to all employers that tips had to be retained by employees as required by the Act and henceforth any agreements remitting tips to employers were invalid. The Administrator further reiterated the Act's requirement that the employer must pay, regardless of the amount of tips, at least one half the minimum wage.

See *Richard v. Marriott Corp., 549 F.2d 303, 304-305 (4th Cir. 1977)*. The Department of Labor has maintained this interpretation of the statute for over ten years and the courts are obligated to give great weight to this interpretation. See *Ehlert v. United States, 402 U.S. 99, 105, 28 L. Ed. 2d 625, 91 S. Ct. 1319 (1971)*. Moreover, [*14] to accept the defendants' position would exalt form over the substance and intent of the statute. Accordingly, we find that the defendants have failed to pay the entertainers the minimum wage as required by *section 206* of the Fair Labor Standards Act.

IV.

Plaintiffs allege that defendants owe $ 511,136.00 in back wages to their employees. Defendants dispute plaintiffs calculations. This is an issue of fact which is not appropriately resolved on a Motion for Summary Judgment. Given this court's finding of liability however, the parties are DIRECTED to attempt to resolve the issue of amount owed as back wages without further involvement of the court. The parties are DIRECTED to meet, with principals present, prior to February 7, 1986. The parties shall inform the court as to whether this issue has been resolved no later than 5:00 p.m., February 7, 1986.

Finally, the plaintiff seeks an injunction permanently enjoining violations of Section 15 of the Act. Defendants assert that they will comply with the Act and that an injunction is not necessary. We are of the view that an injunction is not necessary in this case. Accordingly, the motion for injunctive relief is DENIED.

V.

[HN5] While [*15] we recognize that summary judgment is a drastic measure, which is to be applied with caution, *Frito-Lay, Inc. v. Retail Clerks Union Local No. 7, 629 F.2d 653, 656 (10th Cir. 1980)*, it is appropriate where, as here, there is no dispute as to material facts. See *LeFevre v. Space Communications Company, 771 F.2d 421 (10th Cir. 1985)*; *Charczuk v. Commissioner of Internal Revenue, 771 F.2d 471 (10th Cir. 1985)*; *Weir v. The Anaconda Co., 773 F.2d 1073 (10th Cir. 1985)*.

Accordingly, consistent with this opinion, it is ordered that plaintiff's motion for summary judgment be GRANTED in part and DENIED in part. Defendants' motion for summary judgment is DENIED.

Dated at Denver, Colorado this *8* day of January, 1986.

BY THE COURT:

Sherman G. Finesilver, Chief Judge

United States District Court