# EXHIBIT OO

**RUDY LEMUS, et al., Plaintiffs, vs. BURNHAM PAINTING AND DRYWALL CORPORATION, et al., Defendants.**

Case No. 2:06-cv-01158-RCJ-PAL

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA

*2007 U.S. Dist. LEXIS 46785*

**June 25, 2007, Decided**
**June 25, 2007, Filed**

**SUBSEQUENT HISTORY:** Motion denied by *Lemus v. Burnham Painting & Drywall Corp., 2007 U.S. Dist. LEXIS 66444 (D. Nev., Sept. 4, 2007)*

**COUNSEL:** [*1] For Rudy Lemus, Manuel Lopez Zarate, Arturo Carreno Garcia, Norma Uribe, Lino Calderon Mendoza, Plaintiffs: Brooke D. Pierman, LEAD ATTORNEY, Kristina L. Hillman, LEAD ATTORNEY, Law Offices of Kristina L. Hillman, Reno, NV; Felix De La Torre, LEAD ATTORNEY, Felix De La Torre, Weinberg, Roger & Rosenfeld, Sacramento, CA.

For Burnham Painting & Drywall Corp., Lyle T. Burnham, Defendants: Anthony D. Guenther, LEAD ATTORNEY, McDonald Carano Wilson LLP, Las Vegas, NV; Jacquelyn S. Leleu, LEAD ATTORNEY, Las Vegas, NV.

For Pulte Home Corporation, Defendant: Rick D Roskelley, LEAD ATTORNEY, Littler Mendelson, PC, Las Vegas, NV; Shondella L. McClellan, Littler Mendelson, Las Vegas, NV.

For Centennial Drywall Systems, Inc., Defendant: Terry L. Hutchinson, LEAD ATTORNEY, TERRY L. HUTCHINSON, LTD., Mesquite, NV.

For Rudy Lemus, Manuel Lopez Zarate, Arturo Carreno Garcia, Norma Uribe, Lino Calderon Mendoza, Counter Defendants: Brooke D. Pierman, LEAD ATTORNEY, Law Offices of Kristina L. Hillman, Reno, NV; Felix De La Torre, Weinberg, Roger & Rosenfeld, Sacramento, CA.

**JUDGES:** PEGGY A. LEEN, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** PEGGY A. LEEN

**OPINION**

*ORDER*

(M/Conditionally Certify - # 60)

Before the court is Plaintiff's Motion [*2] for Collective Action Class Certification and Court Supervised Notice of Pending Collective Action (# 40), filed March 20, 2007. The defendants' filed an Opposition (# 57) on April 30, 2007. Defendant Pulte Homes filed a joinder (# 54) on April 30, 2007. The plaintiffs filed a Reply (# 59) on May 14, 2007. The court conducted a hearing on June 5, 2007.

*BACKGROUND*

Plaintiffs Rudy Lemus, Manuel Lopez Zarate, Arturo Carreno Garcia, Narman Uribe and Lino Calderon Mendoza ("The Lemus Plaintiffs") brought an action on behalf of themselves and others similarly situated and seek class and conditional collective action certification, asserting defendants Centennial Drywall Systems, Inc., ("Centennial") and Burnham Painting and Drywall Corporation ("Burnham") violated the provisions of the Fair Labor Standards Act ("FLSA") by failing to pay overtime wages.

The Motion for Collective Action Class Certification and Court Supervised Notice of Pending Collective Action (# 40) asserts the plaintiffs' complaint allegations coupled with the declarations of plaintiffs Lemus, Garcia, and Uribe, attached as Exhibits "A," "B," and "C" to the motion, establish the plaintiffs and other painters employed by the [*3] defendants were subjected a common, unlawful practice of working in excess of forty hours a week without overtime compensation. The plaintiffs thus argue they have satisfied the "similarly situated" requirement necessary for conditional collective action certification under *Section 216(b)* of the FLSA.

The Lemus Plaintiffs define the putative class as:

> All painters who performed work for Centennial Drywall Systems, Inc. and Burnham Painting and Drywall Corp. for the time period from September 15, 2003

to the present and were not paid wages and overtime compensation pursuant to the Fair Labor Standards Act.

(Mot. at 4:13-16.) The three declarations of plaintiffs Lemus, Garcia, and Uribe supporting the motion aver that they, and other painters employed by the defendants, routinely worked in excess of forty hours per week but were not paid overtime. Rather, the plaintiffs and other painters with whom they worked were paid on a piece-rate basis regardless of the number of hours worked. Each of the named plaintiffs filled out employment forms indicating they were independent contractors.

The Lemus Plaintiffs argue that because twenty-five individuals have filed consents to opt in with the five [*4] named plaintiffs prior to circulation of the notice of conditional certification, there is a "strong indication" others are similarly situated and interested in joining this collective action. The Lemus Plaintiffs ask the court to conditionally certify the collective class action as described, approve the proposed notice attached as Exhibit "D," and order the defendants to turn over the names and addresses of all individuals covered by the class description.

Defendants Burnham and Pulte both oppose the motion, arguing that plaintiffs have not met their burden of demonstrating that potential class members are similarly situated. Acknowledging that the case law requires only a modest factual showing, the defendants argue the plaintiffs' motion and supporting affidavits omit important facts, specifically, that all of the workers' individual situations vary, and that some of the workers were independent contractors rather than employees. The defendants contend that the determination of whether a worker is an employee or an independent contractor is a fact intensive inquiry, and that unless the court determines the workers were employees, they would not be entitled to overtime pay. Additionally, [*5] defendants argue there is a valid dispute concerning whether all painters who performed work for Burnham and Centennial from September 15, 2003 until the present are similarly situated. Burnham asserts that on June 1, 2005, Burnham and Centennial entered into an agreement for which Centennial was to furnish labor for Burnham projects. This agreement ended December 15, 2006. Each of the workers performing work as a touch-up painter, finisher, prepper, sprayer, or masker on Burnham projects from June 1, 2005 until December 15, 2006 executed independent contractor agreements with Centennial, including each of the five named plaintiffs.

Burnham also argues that plaintiffs requested notice is overly broad in seeking to notify any painter who worked for Burnham and Centennial from September 2003 to the present, because there was no relationship between Centennial and Burnham prior to June 1, 2005. Thus, painters who worked for either Burnham or Centennial prior to June 1, 2005 are not similarly situated to the named plaintiffs or the remainder of the proposed class. Burnham relies on the depositions of three of the named plaintiffs to support its arguments that the named plaintiffs were independent [*6] contractors, rather than employees and argues that based on discovery conducted to date, the individual circumstances of the proposed plaintiffs are so dissimilar that the court should not grant conditional certification.

Defendant Pulte Home Corporation ("Pulte") filed a Joinder (# 54) objecting to certification of any class that involves or references Pulte Home or employees of Burnham or Centennial who worked on a Pulte Home project. Pulte joins Burnham's arguments that conditional certification of a collective action is inappropriate in this case because plaintiffs cannot demonstrate they are similarly situated to potential plaintiffs, because analysis of each potential plaintiff's claim requires a highly individualized inquiry. Specifically, the determination of whether each individual is an independent contractor or an employee is such a highly factual and individualized inquiry that conditional certification of a class pursuant to *Section 216(b)* is inappropriate. Finally, Pulte argues that plaintiffs' only claims against it are under state law, and that even if the court decides to certify a conditional class against Burnham and Centennial, it would be inappropriate to certify [*7] the same class against Pulte.

In reply, the Lemus Plaintiffs note that this district has employed the majority two-tiered approach to determine whether potential plaintiffs are similarly situated for purposes of conditional class certification. The plaintiffs' burden under the first tier is light and may be based on the pleadings and affidavits of the plaintiffs. The plaintiffs argue the defendants incorrectly apply the more stringent second tier analysis in opposing the motion, and contend that factual determinations regarding the propriety and scope of the class are more appropriately made at the completion of discovery on defendants' motion for decertification. Plaintiffs point out that the defendants have not submitted any declarations which contradict those submitted by the plaintiffs. Plaintiffs also argue that the existence of signed independent contractor agreements does not control whether the parties' relationship is that of employer/employee for purposes of the FLSA. Finally, plaintiffs acknowledge they do not have a direct FLSA claim against Pulte, but assert class certification against Pulte is nevertheless appropriate. Plaintiffs base their claim against Pulte on *N.R.S. 608.150* [*8] which treats the general contractor as an employer of subcontractors' employees, and gives the employees a private right of action against a general contractor and/or

Case 1:07-cv-08718-RMB-THK   Document 54-42   Filed 03/28/2008   Page 4 of 6

Page 3
2007 U.S. Dist. LEXIS 46785, *

subcontractor. Plaintiffs reason that because *N.R.S. 608.150* makes Pulte liable for debts of Burnham and Centennial, Pulte must participate in the conditional certification process or risk waiving its right to defend liability later.

## *DISCUSSION*

### I. *Conditional Certification Standard*

Under the Fair Labor Standards Act, an employee may initiate a class action on behalf of himself and others similarly situated. *29 U.S.C. § 216(b)*. The requirements for class action certification under *Fed. R. Civ. P. 23(a)* do not apply to claims arising under the Act. *Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977)*. The FLSA permits an action to recover minimum wages, overtime compensation, liquidated damages, or injunctive relief. While a plaintiff may bring an action on behalf of himself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." *29 U.S.C. § 216(b)*. This [*9] is commonly referred to as the "opt-in" provision. The Supreme Court has held that district courts have the discretion, in appropriate cases, to implement *§ 216(b)* by facilitating notice to potential plaintiffs. *Hoffmann-LaRouche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. The Act does not define the term "collective action." However, the Ninth Circuit has held that a collective action is "an action brought by an employee or employees for and in behalf of himself or themselves and other employees similarly situated." *Gray v. Swanney-McDonald, Inc., 436 F.2d 652, 655* (*quoting H. R. Rep. No. 326, 80th Cong., 1st Sess. at 14*) (internal quotations omitted).

A number of courts have adopted a two-step approach for determining whether potential plaintiffs are "similarly situated" for purposes of class certification under *§ 216(b)*. This approach involves notification to potential class members of the representative action followed by a final "similarly situated" determination after discovery is completed. At the first, or "notice stage" the court usually relies on the pleadings and any affidavits submitted, and applies a lenient standard which typically results in "conditional certification" [*10] of a representative class. *Mooney v. Aramco Services, Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)*; *Kane v. Gage, 138 F. Supp. 2d 212, 214 (D. Mass. 2001)*. At the initial notice stage, plaintiff needs only to make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law. *Mooney, Id. at 1214 n. 8*.

In *Edwards v. City of Long Beach, 467 F.Supp.2d 986 (C.D.Cal., 2006)* the court found conditional certification of a *§ 216(b)* collective action to be appropriate. The named plaintiff, Edwards, brought suit on behalf of himself and between 900 and 1,000 police officers represented by the Long Beach Police Officers' Association. Plaintiff alleged that the department had a policy and practice of denying plaintiffs and other officers thirty-minute uninterrupted meal periods. The defendant opposed conditional class certification, pointing out differences between Edwards' job duties and another potential member of the collective action. Defendants presented a detailed analysis of the difference in the two officers' positions and duties and the differences in their potential claims. However, the court found the plaintiffs met their [*11] threshold showing that the potential members of the *Section 216(b)* collective action were "similarly situated" based on plaintiffs' complaint allegations, and supporting affidavits and exhibits that asserted Edwards routinely worked unpaid overtime in violation of the FLSA, and that his experiences were shared by members of the proposed collective action. *Id. at 991*. The court also found that defendants arguments were better suited for the more stringent second step of the *Section 216(b)* collective action certification analysis in a motion to decertify the *Section 216(b)* collective action after notice had been given and the deadline to opt in had passed. *Id. at 990*.

Similarly, in *Leuthold v. Destination America, 224 F.R.D. 462 (N.D.Cal. 2004)*, the court applied the two-tiered approach to evaluate whether a FLSA collective action should be certified to provide initial notice to prospective plaintiffs followed by a final evaluation whether plaintiffs who opted in were similarly situated. There, the plaintiffs sought FLSA collective action certification pursuant to *Section 216(b)* on behalf of a class consisting of all current or former tour directors of two separate, but interrelated companies [*12] who worked or resided in the United States while working for the companies. Although finding it a close question, given the extensive discovery that had already taken place, the court determined notice should be sent to the proposed class for several reasons. *Id. at 468*. First, although extensive discovery had taken place, there were numerous discovery disputes and it was unclear to the district court whether a complete factual record had been developed and presented. *Id*. Second, the majority two-tier approach contemplates a progression in which the court first reaches the threshold question whether conditional certification and notice are appropriate, and then applies more rigorous analysis in a motion to decertify the class. *Id*. Applying the more lenient first tier analysis, the court found the plaintiffs had met their threshold burden by making substantial allegations that the putative class members were subject to a single illegal policy, plan or decision. *Id*. The

Case 1:07-cv-08718-RMB-THK   Document 54-42   Filed 03/28/2008   Page 5 of 6

Page 4
2007 U.S. Dist. LEXIS 46785, *

plaintiffs' complaint allegations that tour directors and tour managers employed by defendants had not been paid overtime wages, together with plaintiffs' affidavits which described their job duties, asserted that they [*13] often worked more than forty hours per week without overtime pay, and claimed that their experiences were common to the proposed class were enough to support this threshold showing. *Id.* The *Leuthold* court noted that the number and type of plaintiffs who chose to opt in to the class might affect the court's second tier inquiry concerning the disparate factual and employment situations of the opt in plaintiffs, and that bypassing the first tier notice stage potentially prejudiced the plaintiffs. Specifically, the *Leuthold* court found that bypassing the first step of the analysis would "deprive the court of information and might deprive some plaintiffs of a meaningful opportunity to participate." *Id.*

Here, the defendants object to conditional class certification, asserting plaintiffs have not established they are similarly situated to proposed members of the class. Defendants rely upon arguments that the named plaintiffs were independent contractors rather than employees and point to the deposition testimony of three of the named plaintiffs which, it is argued, demonstrate each of their factual situations varied. During oral argument, counsel for Burnham conceded that for purposes of the [*14] FLSA, the courts have adopted a more expansive interpretation of the definitions of "employer" and "employee," than the common law concepts of "employee" and "independent contractor." Counsel also conceded that the label parties use in contract documents do not control whether overtime pay is required by the FLSA. *See Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (C.A.Cal. 1979)* (reversing district judge's grant of summary judgment which found employees were "independent contractors" as a matter of law based on parties' contract and identifying factors a trial court should consider in determining whether plaintiffs were employees for purposes of the FLSA.)

The Supreme Court has identified a number of factors useful in distinguishing employees from independent contractors for purposes of social legislation such as the FLSA. *Bartels v. Birmingham, 332 U.S. 126, 130, 67 S. Ct. 1547, 91 L. Ed. 1947, 1947-2 C.B. 174 (1947)*. The factors identified by the court in *Bartels* are illustrative but not exhaustive. Additionally, the determination of whether an employee/employer relationship exists for purposes of social legislation such as the FLSA depends "upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947)*. [*15] For purposes of social legislation such as the FLSA, the court looks to economic reality in determining whether individuals are the employees of a business in the sense they are dependent upon the business to which they render service. *Bartels v. Birmingham, 332 U.S. at 130*.

The court finds that plaintiffs' complaint allegations, coupled with their declarations which aver they regularly worked in excess of forty hours per week without overtime pay compensation, and that all of the painters with whom they worked, worked similar hours and were not paid overtime, meet the plaintiffs' threshold burden. For purposes of the first tier of the two-tier analysis, plaintiffs have established they are similarly situated to other plaintiffs employed by Burnham and Centennial for purposes of *Section 216(b)* conditional certification and notice. Plaintiffs have made substantial allegations that defendants Burnham and Centennial had a policy or plan which deprived the plaintiffs of overtime pay in violation of the FLSA. The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether the plaintiffs are [*16] sufficiently similarly situated to maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed. Once discovery has been completed, the defendants may move to decertify the collective action class on a fully developed record.

**II.** *Notice of Conditional Collective Action Certification*

During oral argument, counsel for Burnham argued that if the court was inclined to grant the motion, the court should limit notice to "production workers" of Burnham and Centennial. Counsel for Burnham also argued that the proposed time period, from September 15, 2003 to the present was overly broad, and exceeded the applicable statute of limitations for asserting these claims. Counsel agreed to meet and confer in an effort to agree on a proposed notice to circulate to the class. The court required counsel to meet and confer in an effort to arrive at a mutually agreeable form of proposed notice of pendency of collective action and to submit this stipulated notice on June 15, 2007, or, in the event the parties were unable to agree, to submit their competing proposals. The parties submitted a Stipulation and proposed order memorializing [*17] their agreements on certain issues (# 68), and submitted their competing proposals (## 69, 70) on the issues where no agreement was reached. The court will, therefore, enter a separate order outlining the contents of the notice of pendency of collective action lawsuit.

Having reviewed and considered the matter,

**IT IS ORDERED:**

  1. Plaintiffs' Motion for Collective Action Certification and Court Supervised

Notice of Pending Collective Action (# 40) is GRANTED in part and DENIED in part. The motion is granted to the extent the court's supervised notice of pending collective action to painters working for Burnham and Centennial will be circulated in a form approved by the court in a separate written order.

2. The Motion for Collective Action Class Certification and Court's Supervised Notice of Pending Collective Action (# 40) is DENIED with respect to the request to include defendant Pulte Homes in the notice.

3. Burnham and Centennial shall serve counsel for plaintiff with a list of names, telephone numbers if available, and last known addresses of individuals who fit the class description, as defined by the court in its separate written order **no later than fifteen days** [*18] from entry of the order.

Dated this 25th day of June, 2007.

PEGGY A. LEEN

UNITED STATES MAGISTRATE JUDGE