# EXHIBIT YY

Case 1:07-cv-08718-RMB-THK    Document 54-52    Filed 03/28/2008    Page 1 of 7

LEXSEE


Cited
As of: Jan 18, 2008

LIXIN ZHAO, n behalf of herself and all others similarly situated, Plaintiffs, v. BENIHANA, INC., Defendant.

01 Civ. 1297 (KMW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2001 U.S. Dist. LEXIS 10678; 6 Wage & Hour Cas. 2d (BNA) 1881

May 7, 2001, Decided
July 5, 2001, Filed

**CORE TERMS:** tip, notice, server, envelope, retaliation, sentence, restaurant, opinion letter, morning, pool, talking, tipped, class members, similarly situated, threshold, opposition papers, supplemental, retaliate, warning, kitchen, helpers, Fair Labor Standards Act, reply papers, customarily, authorize, regularly, pooling, tipping, poster, modest

**COUNSEL:** [*1] For LIXIN ZHAO, plaintiff: Karl J. Stoecker, New York, NY.

For BENIHANA, INC., defendant: Richard Schaeffer, J. Cody Fitzsimmons, Dornbush, Mensch, Mandelstam & Schaeffer, L.L.P., New York, NY.

**JUDGES:** Before: HON. KIMBA M. WOOD, District Judge.

**OPINION BY:** KIMBA M. WOOD

**OPINION**

THE COURT: Good morning.

MR. SCHAEFFER: Good morning, your Honor.

MR. FITZSIMMONS: Good morning, your Honor.

MR. STOECKER: Good morning your Honor.

THE COURT: I am prepared to rule, shortly, on plaintiff's motion for expedited notice. If counsel would like to be heard with respect to anything new that you haven't already submitted, I am prepared to hear you on that.

Mr. Stoecker.

MR. STOECKER: Well, your Honor, beyond what I said in the papers, I would just point out that they cite three cases at the conclusion of their brief in which the court denied to send out notice. The first case is a District of Minnesota case in which the evidence before the court was limited -- it wasn't even evidence, it was the allegations of the complaint. There was nothing beyond the complaint before the court in that case, and it was an age discrimination case in which the plaintiff wanted to send notice to anyone over 40 years old [*2] who was ever terminated by the company. And the court said no.

And the other two cases that they cite in the footnote are pre-*Hoffmann-La Roche* cases in which the court debated whether it was even appropriate to send out notice before the Supreme Court had resolved that issue.

So that's the only authority that they have cited which indicates that notice, on the facts of those cases, was inappropriate.

THE COURT: Who would like to speak for defendant?

MR. FITZSIMMONS: Cody Fitzsimmons, your Honor.

There were a few points that were raised by the plaintiff in her reply papers that are therefore not ad-

Page 1

Case 1:07-cv-08718-RMB-THK   Document 54-52   Filed 03/28/2008   Page 3 of 7

2001 U.S. Dist. LEXIS 10678, *; 6 Wage & Hour Cas. 2d (BNA) 1881

dressed in our opposition papers I would just like to address briefly this morning.

One of the points is the claim that side tips were "often," I think is the word that was used in the plaintiff's reply affidavit, received by the chefs.

Your Honor, side tips, or these additional tips that are referenced by the plaintiff, are not received at all by the majority of chefs. The few chefs that do receive side tips because of the extraordinary skill they have in entertaining and serving the customers are received on very rare occasions, like once or twice a week, your Honor, and are [*3] just that, they are side tips that are in addition to the tips that are left on the table that are given in recognition of the show that some of these chefs have the skill to put on. And this was not addressed in our opposition papers because it was just raised for the first time, and I was able to receive from Mr. Suwanrut, who was a chef who was --

THE COURT: How do you spell that?

MR. FITZSIMMONS: S-U-W-A-N-R-U-T, and he is a chef at the restaurant for the past approximately ten years. And I have a supplemental affidavit, if your Honor would be inclined to accept that, which I just received Friday evening and, therefore, I have not yet served it on opposing counsel.

THE COURT: What does it say?

MR. FITZSIMMONS: The supplemental affidavit says just that, essentially -- it is two pages long and it says that the side tips are not received by a majority of the chefs, that the few chefs who are skilled enough to receive side tips on very few occasions receive them, once or twice a week on average.

THE COURT: Is there any objection to my receiving this at this point?

MR. STOECKER: No, your Honor. I don't think it is relevant to the issues before the Court.

THE COURT: Feel free [*4] to submit it to me.

MR. FITZSIMMONS: Thank you, your Honor.

(Pause)

THE COURT: I will take a moment to review the supplemental affidavit of Pornput Suwanrut dated May 4.

(Pause)

All right, I have read it. Thank you.

MR. FITZSIMMONS: Thank you, your Honor.

I just have a few additional points, if I may.

In her reply papers, the plaintiff cites to the case of Bonham v. The Copper Cellar, 476 F. Supp. 98, which is an Eastern District of Tennessee case from 1979, and the plaintiff cites to that case for the proposition that a poster cannot suffice to satisfy the notice requirement of the tip credit under the Fair Labor Standards Act.

Your Honor, there is a much more recent case, which is Davis v. B & S, Inc., and I will provide you with the cite of that case, your Honor. It is 38 F. Supp. 2d 707, and the relevant page is 719. And in that case the district court pointed out dicta in other cases as well that the notice requirement can be met by prominently displaying a poster. And that case is about 20 years more recent than the Bonham case.

The only other point I would like to make, your Honor, is that the plaintiff makes the point that voluntariness with respect to the tip [*5] practices at the restaurant is not a relevant issue. Essentially, the plaintiff is making the point that if tips are distributed to noncustomarily-tipped employees, whether or not that's voluntarily done or involuntarily done, that that invalidates the entire tip arrangement. Your Honor, that is just simply not correct. And the plaintiff cites in support of that proposition to a Department of Labor opinion letter that's dated November 4, 1997.

Let me just say right up front, I'm not suggesting that the plaintiff intended to mislead the Court in any way. I am assuming that this was just an error because there was very short order for the plaintiff to respond to our opposition papers and I recognize that. But in that opinion letter, it actually stands for the exact opposite proposition.

The opinion letter states, and I quote: "An employer will lose the benefit of the exception from the tip retention requirement if tipped employees are required to share their tips with" -- and then it goes on to list allegedly noncustomarily --

THE COURT: Just one moment.

MR. FITZSIMMONS: Sure, your Honor.

(Pause)

THE COURT: How many paragraphs into it are you?

MR. FITZSIMMONS: I believe it is [*6] on the second page and it is in the second paragraph --

THE COURT: Oh, it is the last sentence of the first full paragraph on page 2?

MR. FITZSIMMONS: Yes, the one that begins "On the other hand."

Case 1:07-cv-08718-RMB-THK   Document 54-52   Filed 03/28/2008   Page 4 of 7

2001 U.S. Dist. LEXIS 10678, *; 6 Wage & Hour Cas. 2d (BNA) 1881

THE COURT: OK.

MR. FITZSIMMONS: So that is one portion of it, your Honor.

THE COURT: Let me just reread it.

MR. FITZSIMMONS: Sure.

(Pause)

THE COURT: Go ahead. I am still trying to follow the point that you think this makes that helps you.

MR. FITZSIMMONS: OK. Further down, it states a sentence that begins with "Furthermore," which is in the next paragraph. It is about three quarters of the way down. That one says: "Furthermore, where a tipped employee as a condition of his or her employment is required to share tips with other employees, e.g., dishwashers, who do not meet the definition of a tipped employee, the tip pool is invalid."

And the only point I was making there is that this opinion letter I believe stands for the proposition that it is only where these contributions to these allegedly noncustomarily-tipped employees, it is only where those contributions are required by the employer that they may be considered unlawful. If they are wholly voluntary, certainly they are [*7] not unlawful. An employee can share his or her tips with anyone that they like on a voluntary basis, and that is the only reason why I raise that, your Honor.

THE COURT: All right. One of the many things I found interesting in this opinion letter is that the Department of Labor had before it there claims by the employer that the employer "will not exercise control over the tips that the waiters/waitresses," etc., but will advise them that tip pooling is permissible and "that the employer recommends certain percentages."

So the facts are not quite on all fours with our case, but they are also not that far away from our case.

All right, anything further here?

MR. FITZSIMMONS: No. Thank you, your Honor.

Decision

THE COURT: All right, I am going to go ahead and rule.

In ruling, I rely on the parties' briefing, the affidavits of Ms. Zhao and Mr. Yuhara, and the copy of the disciplinary warning given to Ms. Zhao by Mr. Yuhara on July 13, 1997. I have determined that expedited notice is appropriate to the other servers at the West 56th Street location for the reasons I am about to explain.

It is well settled that the Court has discretion to authorize the sending of notice to potential [*8] class members in a collective action brought pursuant to Section 216(b) of the Fair Labor Standards Act. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (1978).

The FLSA provides that employers may take a tip credit against the wages of a "tipped employee" by paying them a slightly lower hourly wage, provided that:

"such employee has been informed by the employer of the provisions of [the law] and ... all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. Section 203(m).

It is undisputed that Benihana took a tip credit against its servers at the West 56th Street location. Plaintiff, a former server, claims that the tip credit was unlawful because (1) servers were not informed of the applicable provisions of law; and (2) tip sharing was overseen and enforced by management and tips were shared with employees who do not "customarily and regularly" [*9] receive tips (kitchen helpers). At this stage of the proceedings, plaintiff seeks to send class notice to the other servers at the West 56th Street location.

The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiff has demonstrated that potential class members are "similarly situated." See 29 U.S.C. Section 216(b). To meet this threshold, plaintiff must make a "modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law." See Jackson v. New York Telephone Company, 163 F.R.D. 429, 431 (S.D.N.Y. 1995); see also Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998) (collecting cases). The Court need only reach a preliminary determination that potential plaintiffs are similarly situated; the inquiry is "less stringent than the ultimate determination that the class is properly constituted." See Jackson, 163 F.R.D. at 431. I find that plaintiff meets this light standard.

I first examine whether plaintiff and the potential plaintiffs were alleged victims [*10] of a "common policy or plan," and I find that they were. Plaintiff has offered a copy of a warning notice for "disorderly conduct," signed by Mr. Yuhara, the manager of the restaurant, admonishing plaintiff for taking to the restroom before going to the cashier's booth, and telling her she must take tips straight to the cashier's booth, stating that tips "belong not only to her but to other employees as well."

Case 1:07-cv-08718-RMB-THK    Document 54-52    Filed 03/28/2008    Page 5 of 7

2001 U.S. Dist. LEXIS 10678, *; 6 Wage & Hour Cas. 2d (BNA) 1881

Have I correctly read the word "her"? I was assuming that very faint word is H-E-R.

MR. FITZSIMMONS: I believe you have, your Honor.

THE COURT: This statement suggests that management oversaw and helped enforce the tip policy in place at the West 56th Street location. The Court finds further evidence of a restaurant-wide tip policy in the affidavit of Mr. Yuhara, who described "tip handling practices engaged in by the employees of the Restaurant" in terms that make it clear that the employees at the West 56th Street location followed a standard and rigid tipping policy. (Yuhara Affidavit Paragraphs 6 to 11.) This evidence meets the threshold for a "modest factual showing" that the servers at West 56th Street were similarly situated in terms of the tip policy. I reiterate here [*11] that I have not determined that class certification is appropriate, only that class notice should proceed. See Realite, 7 F. Supp. 2d at 309.

I next consider whether plaintiff has alleged that this common policy or plan violates the law. I need not evaluate the merits of plaintiff's claims; like the defendants in Krueger v. New York Telephone Co., 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058 (S.D.N.Y. July 21, 1993), defendant here "seeks to contest the merits of plaintiff's claims more vigorously than is necessary at this stage." As in Krueger, plaintiff's allegations and supporting affidavits "successfully engage defendant's affidavits to the contrary" for purposes of the present motion." Id. (citing Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988).

Plaintiff alleges that a portion of her tips were given to ineligible employees in violation of the tip credit provisions of the FLSA. According to plaintiff, she was required to place the tips she received in a locked box that was opened only in the presence of a chef and that the chef took about 50 percent of these tips and proceeded to share a portion of these tips with the kitchen helpers, [*12] that is, a portion of the chef's portion of the tips.

I find that plaintiff has provided sufficient evidence of a mandatory tip pool that included ineligible employees. Mr. Yuhara concedes that he disciplined plaintiff -- at the behest of a chef -- for what he characterized as violating the tip agreement between the servers and the chefs (Yuhara Affidavit Paragraph 25; and Disciplinary Warning); Mr. Yuhara's active involvement in policing the tip policy suggests that management either instituted or adopted the tip sharing agreement as a matter of restaurant policy and that the tip pool was therefore not voluntary. This is sufficient evidence to "engage" defendant's alternative explanations and supporting affidavits -- which argue, indeed, that the chefs voluntarily gave some of their tips to the kitchen helpers -- and to warrant class notice.

I agree with defendant that plaintiff has provided scant evidence that the servers as a group were not informed of the necessary FLSA law; plaintiff relies solely on her "best knowledge" to allege that members of the potential class failed to receive proper notice of the tip credit. Nevertheless, I note that one of the policy reasons underlying [*13] early class notice is that "the experiences of other employees may well be probative of the existence vel non" of an unlawful practice, "thereby affecting the merits of the plaintiff's own claims." Frank v. Capital Cities Communications, Inc., 88 F.R.D. 674, 676 (S.D.N.Y. 1981). Because class notice is appropriate on the unlawful tipping pool portion of plaintiff's claims, and because it will be relatively easy to determine whether any servers who opt into the class were informed of the tip credit, it seems most expeditious to allow notice of this claim to proceed at this stage.

For these reasons, I conclude that notice to other potential class members is appropriate.

I am now ready to discuss the form of the class notice. Have you conferred on this and reached a consensus?

MR. FITZSIMMONS: We have not, your Honor.

THE COURT: All right. Let me urge you to do that and I will come back down as soon as you are ready.

MR. FITZSIMMONS: Thank you, your Honor.

MR. STOECKER: Thank you, your Honor.

(Recess)

THE COURT: Please have a seat, counsel. Have you had a chance to confer?

MR. STOECKER: Yes, we have, your Honor.

THE COURT: All right, who would like to report?

[*14] MR. STOECKER: I would be pleased to report.

There are two issues that we haven't been able to reach agreement on. One is a sort of mundane issue as to whether we should have a return envelope with the address of the court for people to place the consent form into.

Initially, we had them mailing the consents back to my office. We changed that to the "Clerk of the Court" to remove any ambiguity as to when notices were mailed back to me and to --

Case 1:07-cv-08718-RMB-THK     Document 54-52     Filed 03/28/2008     Page 6 of 7

2001 U.S. Dist. LEXIS 10678, *; 6 Wage & Hour Cas. 2d (BNA) 1881

THE COURT: Why would there be ambiguity if they are postmarked?

MR. STOECKER: Well, I don't think there would be, but technically the statute of limitations is cut off when the notice is filed with the court. So, as the defendant's counsel correctly pointed out, that places my office in the middle, exposes me to getting them back and down to the court immediately. So it probably is better. And in *Schwed* they went to the court, as well.

THE COURT: OK.

MR. STOECKER: I guess our only question is how do we address the envelopes such that they get properly processed by the Clerk's office.

THE COURT: We are talking about how many envelopes?

MR. STOECKER: I don't know how many people we are talking about exactly.

MR. FITZSIMMONS: Your [*15] Honor, I think we are talking about 10 to 12 to serve, or something along those lines.

THE COURT: So you are wondering how to address them?

MR. STOECKER: Yes.

THE COURT: The Clerk of the Court, then in re this case, I suppose.

MR. STOECKER: OK.

THE COURT: With the docket number.

MR. STOECKER: OK. Right on the envelope itself?

THE COURT: On the envelope, that should have the docket number and then on the sheet of paper, I suppose.

MR. STOECKER: OK. And there is a dispute as to whether we even include envelopes with the mailing. I believe they should be included.

THE COURT: Any precedent?

MR. STOECKER: I don't know of any one way or the other, your Honor.

MR. FITZSIMMONS: Your Honor, my only response to that is that in the *Schwed* case, there is no indication that there was a self-addressed or, excuse me, an addressed envelope included in the packet, it was just the consent form and the notice of pendency of action form.

THE COURT: If I have no precedent to guide me and we are talking about 10 to 12 people, I would include return envelopes.

MR. STOECKER: Yes, your Honor.

The only other issue, your Honor, is with respect to the language in the notice regarding retaliation [*16] --

THE COURT: All right, what page is this?

MR. STOECKER: On page 4 and 5 of the proposed notice.

THE COURT: OK.

MR. STOECKER: We have agreed, I think, that we should leave in the first two sentences of the first paragraph, and then after the words "You should know that employers are not permitted to retaliate against you," we have inserted the additional words "in any fashion if you decide to join this action," and then strike out the remainder of that paragraph.

THE COURT: This is what plaintiff proposes?

MR. STOECKER: No, this is what we have agreed upon.

THE COURT: Agreed. OK. So you have agreed in the second sentence of that paragraph, you are going to add the words "in any fashion" after the word "you" in line 4.

MR. STOECKER: That is correct.

THE COURT: The first word "you," and then you are going to strike the remainder of that paragraph?

MR. STOECKER: Right, after the conclusion of that sentence.

THE COURT: All right. And what about the next paragraph?

MR. STOECKER: That's where the dispute centers, your Honor. Based upon my conversations with the plaintiff, I think there is a generalized fear among the employees that there will be retaliation if they join the [*17] suit. The plaintiff I believe is in her 30s and she was one of the youngest employees there. So her feeling is that many of them think that they will not be able to get another job if they lose this job; so they are very concerned about any kind of retaliation.

I don't want them to know that they have a right without a means of effectuating it. So I simply say if you think there is a problem, contact my office, rather than having them worry about, you know, well, who do I see, where do I go if I'm retaliated against, do I have to pay an attorney. If they have a problem, they can call my office. That's why I wanted to have the language in the last paragraph in there. That's what the defendant's counsel objects to.

2001 U.S. Dist. LEXIS 10678, *; 6 Wage & Hour Cas. 2d (BNA) 1881

THE COURT: May I hear defense counsel?

MR. FITZSIMMONS: Thank you, your Honor.

I don't exactly know what the basis is for the plaintiff's counsel's claim that they have a fear of retaliation. But I do know that even given that, the very first two sentences address that head on. They say those of you currently employed by Benihana may naturally be concerned whether you will be able to, you know, continue in your jobs, and it says that you should know that employers are [*18] not permitted to retaliate against you in any fashion.

I don't know how it could be any clearer than that, your Honor, and to say anything further would really be along the lines of soliciting retaliation claims against the company if you go on to say if you feel you have been retaliated against, you should contact and then have a lawyer's name and office there. That is too suggestive and does amount to solicitation of retaliation claims.

THE COURT: There is another possible approach, which is if you believe that Benihana has discriminated against you for purposes of participating in this lawsuit, you should promptly contact the court. You could leave it there if you are worried about solicitation.

MR. FITZSIMMONS: If your Honor is inclined to do that, that would be fine. I would just note that in the *Schwed* case it simply points out that an employer is not permitted to retaliate and it doesn't say anything further.

THE COURT: All right. I take Mr. Stoecker's point on this issue, and so I will substitute the word "court" for "The Law Offices of Karl J. Stoecker," and I'm going to give them a number to call at court here, Mr. Paul Robilotti. Court: Courtroom Deputy Paul Robilotti, [*19] and then at 212-805-0125.

All right, any other issues on the notice?

(Pause)

MR. FITZSIMMONS: Nothing that I don't think we can resolve amongst ourselves, your Honor.

THE COURT: OK. Just so it is clear, since you are putting it in final form, what I have done is strike "The Law Offices of Karl J. Stoecker," and I have replaced that with Court: Courtroom Deputy Paul Robilotti at 212-805-0125.

Now, I will need to see a final copy of this before it is disseminated, but I will approve it as soon as you send it to me.

MR. STOECKER: OK.

THE COURT: OK. Thank you very much.

MR. STOECKER: Thank you.

MR. FITZSIMMONS: Thank you, your Honor.

MR. SCHAEFFER: Thank you, your Honor.