UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

SIRI DIAZ, CAROLYN SIEGEL, TALIA        :
BUMB, BLERTA VIKKI, DANIELLE                        No. 07 Civ. 8718 (RMB)(THK)
OWIMRIN, and SUSAN LEVIN on behalf of   :
themselves and all others similarly situated,

                                        :

              Plaintiffs,               :

         -against-                      :

SCORES HOLDING COMPANY, INC.; GO        :
WEST ENTERTAINMENT, INC. a/k/a
SCORES WEST SIDE; and SCORES            :
ENTERTAINMENT, INC., a/k/a SCORES
EAST SIDE, ENTERTAINMENT               :
MANAGEMENT SERVICES, INC.; and
333 EAST 60th STREET, INC. a/k/a        :
SCORES EAST SIDE
                                        :

              Defendants.               :

———————————————————————X

---

## DEFENDANTS' CROSS-MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

---

Jerrold F. Goldberg, Esq.
Eric B. Sigda, Esq.
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
(212) 801-9200

*Attorneys for Defendants*

## TABLE OF CONTENTS

Pages

PRELIMINARY STATEMENT ................................................................... 1

ARGUMENT.................................................................................... 2

POINT I – THE PLAINTIFFS' NYLL CLASS ACTION CLAIMS MUST BE
DISMISSED AS INHERENTLY INCONSISTENT WITH THE FLSA ............................ 2

    A.    Allowing Plaintiffs To Proceed With Their State Wage and Hour
          Opt-Out Class Claims Would Contravene the Congressionally-
          Mandated Written Consent Requirement of FLSA Section 16(b) ................. 3

    B.    Plaintiffs' State Law Class Claims Under Rule 23 Violate The
          Rules Enabling Act Because They Abridge The Substantive
          Rights of Plaintiffs To Have Their Overtime Claims Adjudicated
          Only With Their Written Consent ..................................................... 6

    C.    Since The Members of the Putative Rule 23 Class Are
          Mostly Transient, Unfindable, and Therefore Unlikely to Receive
          Notice, They Will Not Have an Effective Opportunity To Opt Out ............... 7

    D.    The Court Should Decline To Exercise Supplemental
          Jurisdiction Over Plaintiffs' New York Labor Law Claims............................ 8

POINT II – THE COMPLAINT ON BEHALF OF PLAINTIFFS
DANIELLE OWIMRIN AND SUSAN LEVIN MUST BE DISMISSED.......................... 10

POINT III – PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND SENDING OF NOTICE SHOULD BE DENIED ........................................... 11

    A.    Plaintiffs Have Not Demonstrated Common Policies Or Practices
          Existing At Both Clubs With Regard To The Alleged Violations
          Of The FLSA And Thus Conditional Certification Of A Class
          Consisting Of Employees At The Two New York Clubs Is Inappropriate...... 12

        1.    Plaintiffs Have Submitted No Evidence Regarding The Existence
              of Common Policies and Practices with Regard to Payment of
              Minimum Wage, Failure to Pay Overtime, Charging of Uniform
              Expenses and Failure to Keep Records at Scores East Side and
              Scores West Side ................................................................. 13

        2.    There is No Specific Evidence of Any Wage Related
              Policies and Practices at the East Side Club, Let Alone
              Common Policies and Practices Between Clubs................................... 13

    B.    A Collective Action Against Go West Is Inappropriate................................... 14

        1.    There is Insufficient Evidence of Uniform Policies and Practices
              at Go West.......................................................................... 14

# TABLE OF CONTENTS
*(continued)*

Pages

2.  The Court Should Not Grant Conditional Certification Where the Analysis Will Necessitate Highly Individualized Determinations .......... 15

3.  The Determination of Plaintiffs' Claims Will Require Individualized Factual Analyses of Their Experiences Regarding Compensation, Uniforms, and Diamond Dollars ................................................. 15

    a.  There Was No Common Usage of Diamond Dollars .................... 15

    b.  There Was No Common Policy Concerning Uniforms ................ 17

    c.  Plaintiffs' Minimum Wage Claims Require A Detailed and Individualized Factual Analysis ....................................... 18

    d.  Plaintiffs' Cannot Demonstrate a Uniform Policy of Requiring and Not Paying Overtime Pay or Failing to Keep Records ........... 19

C.  A Collective Action Including Dancers and Entertainers Is Inappropriate ...... 19

    1.  The Issue of the Alleged Misclassification of Dancers Is Wholly Different from Issues Raised by the Other Plaintiffs and Will Require Highly Individualized Analysis ................... 20

    2.  The Lack of Interest to Proceed As a Collective Action with respect to Dancers Warrants Denial of Conditional Certification as to Dancers ................................................................. 22

POINT IV – ASSUMING ARGUENDO THAT CONDITIONAL CERTIFICATION WERE GRANTED, PLAINTIFFS' PROPOSED NOTICE IS NOT APPROPRIATE FOR DISTRIBUTION TO THE PUTATIVE CLASS ......................................... 23

A.  Plaintiffs' Proposed Notice Is Not Neutral Court Authorized Notice United States District Court Southern District Of New York .......................... 25

B.  The Court Should Appoint A Neutral Third-Party Administrator to Oversee and Facilitate Notice of Collective Action ............................. 25

C.  The Notice Is Vague and Misleading ................................................ 26

    1.  Plaintiffs' Description of the Claims and Collective Action Class is Overbroad and Misleading ...................................... 26

    2.  The Notice Fails to Provide Putative Class Members with Information About Participation In the Action ....................... 27

    3.  The Notice Should Not Be Sent To Those Engaged Solely as Dancers ................................................................. 27

CONCLUSION ............................................................................. 28

## TABLE OF AUTHORITIES

Cases                                                                                                        Pages

*Acquino v. Home Depot U.S.A., Inc.,*
    No. 06 CV 4100, 2006 WL 2023539 (D.N.J. July 18, 2006) ...........................................    10

*Aguirre v. SBC Communications, Inc.,*
    2006 WL 964554 (S.D.Tex. April 11, 2006) ..................................................................    22

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .................................................................................................    6

*Ayres v. 127 Restaurant Corp.,*
    12 F.Supp.2d 305 (S.D.N.Y. 1998) ...........................................................................    17

*Brock v. Superior Care, Inc.,*
    840 F.2d 1054 (2d Cir. 1988) ...................................................................................    20

*Cameron-Grant v. Maxim Healthcare Services, Inc.,*
    347 F.3d 1240 (11th Cir. 2003) .................................................................................    8

*Davis v. Charoen Pokphand (USA), Inc.,*
    303 F. Supp.2d 1272 (M.D.Ala. 2004) .......................................................................    22

*De Luna-Guerrero v. The North Carolina Growers's Assoc., Inc.,*
    338 F. Supp. 2d 649 (E.D.N.C. 2004) ........................................................................    9

*Diaz v. Electronics Boutique of America, Inc.,*
    No. 04 CV 0840E, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...........................    13, 15

*Dyback v. State of Florida Dept. of Corrections,*
    942 F.2d 1562 (11th Cir. 1991) .................................................................................    22

*Edwards v. City of Long Beach,*
    467 F. Supp. 2d 986 (C.D. Cal. 2006) ........................................................................    5

*Evancho v. Sanofi-Aventis U.S. Inc.,*
    No. 07 CV 2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007) ...................................    21

*Flores v. Osaka Health Spa, Inc.,*
    No. 05 CV 962, 2006 WL 695675 (S.D.N.Y. March 16, 2006)...................................    12

*Glewwe v. Eastman Kodak Co.,*
    No. 05 CV 6462T, 2006 WL 1455476 (W.D.N.Y. May 25, 2006)...............................    9

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981) ...................................................................................................    24, 25

**TABLE OF AUTHORITIES**
*(continued)*

Cases                                                                                    Pages

*Hargrove v. Sykes Enterprises, Inc.,*
    *No. CIV 99-110,* 1999 WL 1279651 (D.Or. June 30, 1999) ............................................ 23

*Harper v. Yale Int'l Ins. Agency Inc.,*
    No. 03 CV 3789, 2004 WL 1080193 (N.D. Ill. May 12, 2004) ...................................... 5

*Herring v. Hewitt Assocs., Inc.,*
    2006 WL 2347875 (D.N.J. Aug. 11, 2006) ..................................................................... 5

*Himmelman v. Continental Casualty Co.,*
    2006 WL 2347873 (D.N.J. Aug. 11, 2006) ..................................................................... 5

*Hoffman v. Sbarro, Inc.,*
    982 F.Supp. 249 (S.D.N.Y. 1997) ..................................................................... 12, 13

*Hoffman-La Roche Inc. v. Sperling,*
    493 U.S. 165 (1989) .......................................................................................... 7, 24, 25

*Jackson v. City of San Antonio,*
    220 F.R.D. 55 (W.D. Tex. 2003) ........................................................................... 5

*Lance v. The Scotts Company,*
    2005 WL 1785315 (N.D.Ill. July, 21, 2005) ................................................................. 23

*Lee v. ABC Carpet & Home,*
    186 F.Supp.2d 447 (S.D.N.Y. 2002) ...................................................................... 20

*Letouzel v. Eastman Kodak Co.,*
    2006 WL 1455478 (W.D.N.Y. May 25, 2006) .......................................................... 5

*Leuthold v. Destination America, Inc.,*
    224 F.R.D. 462 (N.D. Cal 2004) ............................................................................. 9

*Luciano v. Eastman Kodak Co.,*
    2006 WL 1455477 (W.D.N.Y. May 25, 2006)........................................................... 5

*Martinez v. E & C Painting, Inc.,*
    2008 WL 482869 (S.D.N.Y. Feb. 21, 2008) ................................................................ 10

*Masson v. Ecolab, Inc.,*
    No. 04 CV 4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ................................... 12

*McClain v. Leona's Pizzeria, Inc.,*
    222 F.R.D. 574 (N.D. Ill. 2004) ......................................................................... 5, 9

# TABLE OF AUTHORITIES
*(continued)*

Cases                                                                                                                    Pages

*Mendoza v. Casa de Cambio Delgado, Inc.,*
    No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)........................................    14, 24

*Moeck v. Gray Supply Corp.,*
    No. 03 CV 1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006) ................................................    4

*Morales v. Plantwork , Inc.,*
    No. 05 CV 2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006) ..........................................    12

*Muecke v. A-Reliable Auto Parts & Wreckers, Inc.,*
    No. 01 CV 2361, 2002 WL 1359411 (N.D. Ill. June 21, 2002) .....................................    5

*Neary v. Metropolitan Property and Casualty Insurance Co.,*
    472 F. Supp. 2d 247 (D. Conn. 2007).........................................................................    10

*O'Donnell v. Robert Half Intern., Inc.,*
    534 F. Supp.2d 173 (D.Mass. 2008).........................................................................    22

*Otto v. Pocono Health Sys.,*
    457 F. Supp. 2d 522 (M.D. Pa. 2006).........................................................................    5

*Parker v. Rowland Express, Inc.,*
    492 F. Supp.2d 1159 (D.Minn. 2007).........................................................................    22

*Piper v. RGIS Inventory Specialists, Inc.,*
    2007 WL 1690887 (N.D.Cal. June 11, 2007).............................................................    23

*Prizmic v. Armour, Inc.,*
    No. 05 CV 2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...................................    12

*Rodriquez v. The Texan, Inc.,*
    No. 01 CV 1478, 2001 WL 1829490 (N.D. Ill. Mar. 7, 2001).........................................    5

*Simmons v. T-Mobile USA, Inc.,*
    2007 WL 210008 (S.D.Tex. Jan. 24, 2007).................................................................    23

*Sterling Promotional Corp. v. General Acc. Ins. Co. of New York,*
    86 Fed.Appx. 441 (2d Cir. 2004).............................................................................    10

*U.S. v. Silk,*
    331 U.S. 704 (1947) .................................................................................................    20

*Woodard v. FedEx Freight East, Inc.,*
    No. 3:cv-06-1968, 2008 WL 471552 (M.D. Pa. Feb. 19, 2008) ...................................    3, 4, 5

# TABLE OF AUTHORITIES
*(continued)*

Cases                                                                    Pages

**Statutes**

§ 61 Stat. 84 ................................................................................    5

28 U.S.C. § 1367 ..........................................................................    9

28 U.S.C. § 2072 ..........................................................................    3, 6

29 U.S.C. § 203 ............................................................................    18

29 U.S.C. § 216 ............................................................................    6, 7

29 U.S.C. § 251 ............................................................................    4

## PRELIMINARY STATEMENT

Defendants Scores Holding Company Inc. ("Scores Holding"), Go West Entertainment, Inc. ("Go West"), Entertainment Management Services, Inc. ("EMS") and 333 East 60th Street, Inc. ("333") respectfully submit this memorandum of law: (1) in support of their motion to dismiss (a) the New York State Labor Law claims, and (b) the complaint on behalf of plaintiffs Danielle Owimrin and Susan Levin, for failing to appear at court-ordered depositions; and (2) in opposition to Plaintiffs' motion for conditional certification and court-authorized notice pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA").[1]

With regard to the Plaintiffs' state law claims under New York Labor Law ("NYLL"), those claims should be dismissed because they are inherently inconsistent with the Congressionally-mandated opt-in procedure applicable to FLSA collective actions, would violate the Rules Enabling Act, transient class members are unlikely to receive proper notice, and therefore the Court should decline to exercise supplemental jurisdiction over them.

Plaintiffs' motion for conditional certification with respect to the FLSA claims (and the request for sending of notice) should also be denied. First, a collective action is inappropriate as to the dancers, given the wholly different nature of the claims in their regard as compared to

---

[1] On October 9, 2007, Plaintiffs filed a Complaint in this Court alleging violations of the NYLL and the FLSA by Scores Holding, Go West, Scores Entertainment, Inc., EMS, and 333. On or about November 6, 2007, Plaintiffs served an Amended Complaint. On February 21, 2008 a Second Amended Complaint was filed, naming, for the first time, EMS and 333. In the Complaint as amended, Plaintiffs allege, purportedly pursuant to the FLSA, that Defendants: (1) failed to pay the minimum wage (seventh count), (2) failed to pay overtime (eighth count), (3) required employees to pay for uniforms reducing their wage below the minimum wage (ninth count), and (4) committed recordkeeping violations (tenth count). Plaintiffs also assert claims under the NYLL, which included a number of claims not cognizable under the FLSA, including failure to pay spread-of-hours pay, making unlawful wage deductions under NYLL, failing to provide state law mandated uniform maintenance expenses, and committing certain recordkeeping violations.

bartenders and servers, the fact that only one dancer has demonstrated interest in the action, and the indication that numerous dancers have no interest in a collective action.

Additionally, Plaintiffs have failed to provide a factual basis demonstrating FLSA-relevant policies and practices common to all putative collective action members. Indeed, Plaintiffs offer insufficient evidence to show common practices at both Scores West Side (the club owned and operated by defendant Go West) and Scores East Side (the club owned and operated by defendant 333), or even at either club; no evidence of any overtime or recordkeeping violations; nor raised evidence of common practices even amongst each other. Further, a collective action against Defendants is inappropriate because Plaintiffs have failed to demonstrate common policies or practices capable of collective action treatment; rather, the FLSA issues raised by Plaintiffs require highly fact-specific individualized inquiry and analysis.[2]

## ARGUMENT

## POINT I

### THE PLAINTIFFS' NYLL CLASS ACTION CLAIMS MUST BE DISMISSED AS INHERENTLY INCONSISTENT WITH THE FLSA

Plaintiffs' claims under the NYLL (first through sixth counts) – which they seek to prosecute as a Rule 23 class action – should be dismissed because they irreconcilably conflict with federal law.

First, Plaintiffs cannot bring federal wage and hour claims on an opt-out class basis under Rule 23 because doing so contravenes the FLSA's opt-in requirement. Second, Plaintiffs'

---

[2] References to the accompanying record are cited herein as follows:

| | |
|---|---|
| "SAC" | Plaintiffs' Second Amended Complaint. |
| "Bumb Dep." | Talia Bumb deposition transcript (Sargent Decl. Ex. 4). |
| "Marzigliano Decl." | Declaration of Tammy Marzigliano (annexed to Plaintiffs' Motion). |
| "Sargent Decl." | Declaration of Irika Sargent (annexed to Defendants' Cross-Motion). |
| "Siegel Dep." | Carolyn Siegel deposition transcript (Sargent Decl. Ex. 3). |
| "Vikki Dep." | Blerta Vikki deposition transcript (Sargent Decl. Ex. 5). |
| "Diaz Dep." | Siri Diaz deposition transcript (Sargent Decl. Ex. 9). |

attempt to pursue an opt-out class action on their state law overtime claims contravenes the Rules Enabling Act ("REA"), which prohibits the application of a rule of practice and procedure where such application would "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Finally, because many of the putative class members are transient, unfindable, and would not receive notice of suit, it would be a travesty of justice for their rights to be adjudicated in their absence. Indeed, as the dancers have historically been treated as independent contractors – and have filed taxes on such basis – any attempt to change that status without their knowledge or consent should be avoided. Accordingly, Plaintiffs' state law class action claims should be dismissed.

**A.    Allowing Plaintiffs To Proceed With Their State Wage and Hour Opt-Out Class Claims Would Contravene the Congressionally-Mandated Written Consent Requirement of FLSA Section 16(b)**

Plaintiffs state law class action allegations should be dismissed because such a Rule 23 opt-out class action cannot be pursued simultaneously with a collective action under the FLSA. The FLSA requires an employer to affirmatively opt-in, or consent, to become a party plaintiff to the action. By contrast, Rule 23, which is inapplicable to the FLSA, but applicable to Plaintiffs' state law claims, includes all putative class members in the action unless those individuals affirmatively opt-out of, or request exclusion from the case. The opt-in and opt-out devices are "inherently incompatible", and to allow Plaintiffs to pursue both in the same proceeding undermines Congress's intent in establishing the opt-out requirement.

For example, earlier this year, in *Woodard v. FedEx Freight East, Inc.*, No. 3:cv-06-1968, 2008 WL 471552, at *8-12 (M.D. Pa. Feb. 19, 2008), the court held that "simultaneous prosecution of Plaintiffs' FLSA collective action and state claims class action will frustrate Congressional intent and circumvent [the FLSA's] opt-in requirement."

The *Woodard* case is instructive.  In *Woodard*, the court conducted an extensive analysis of the underpinnings of the law permitting collective actions under the FLSA and concluded that the reasoning of cases "that hold that parallel opt-in FLSA claims and opt-out Rule 23 state wage law claims may not proceed simultaneously in federal court is compelling."  The Court stated that to do so would frustrate Congressional purpose for amending the FLSA.

> Rule 23 is the antithesis of § 216(b) [of the FLSA]: Rule 23 assumes an individual is a class member unless he or she affirmatively requests exclusion; § 216(b) assumes the individual is a nonparty unless he or she affirmatively consents to join. These irreconcilable schemes have divergent consequences, such as the size of the respective classes and the binding effect of judgments. Moreover, this incompatibility is accentuated where the two schemes are utilized to assert parallel claims. In this regard, a state wage law without an opt-in requirement conflicts with the FLSA by impeding the full accomplishment of congressional objectives. Congress amended § 216(b) to provide that only employees who affirmatively consent in writing may become party plaintiffs to FLSA actions. This requirement ensures that such actions are pursued only by employees who genuinely have an interest in vindicating their FLSA rights. Conversely, the opt-in requirement protects employees-who may have no desire at the present moment to file a lawsuit under the FLSA-from having their FLSA rights adjudicated without their knowledge by purported class representatives whose interests may not be aligned with those whom they purport to represent. These objectives will be defeated if plaintiffs can obtain federal jurisdiction with an FLSA claim and then sidestep § 216(b)'s opt-in requirement by asserting an opt-out class claim under parallel state law that lacks an opt-in requirement. In short, simultaneous prosecution effectively nullifies the PPA amendment to § 216(b).  *Cf.* 29 U.S.C. § 251(b)(3) ("It is declared to be the policy of the Congress ... to define and *limit* the jurisdiction of the courts."(emphasis added)). When this happens, a compelling reason exists to decline supplemental jurisdiction.

*Woodard*, 2008 Wl 471552, at *9.  *See also Moeck v. Gray Supply Corp.*, No. 03 CV 1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) ("allowing Plaintiff Moeck to circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to

the FLSA would undermine Congress's intent to limit these types of claims to collective actions").[3]

Finally, although the *Woodard* court acknowledged that "considerations of judicial economy, convenience, and fairness to the litigants" would be served best by retaining jurisdiction over the state claims, the court ultimately held that "[n]evertheless, where as here judicial economy, convenience, and fairness will be achieved only at the expense of an express congressional policy decision in favor of opt-in classes for FLSA actions, such considerations must yield to Congress's preferences." *Woodard*, 2008 WL 471552, at *12.

The cases cited by Plaintiffs fail to analyze this very real conflict that exists between the FLSA opt-in proceeding and the Rule 23 state law class action. None of Plaintiffs' cases take into account the meticulous construction of the FLSA amendment by Congress. There is no question that Congress amended the FLSA in the Portal-to-Portal Act of 1947 specifically to abolish representative actions on behalf of absent parties who have not affirmatively consented to the adjudication of their claims. Pub. L. 49, ch. 52 § 61 Stat. 84, 87 (1947). Congress expressly prohibited a representative action on behalf of anyone else unless and until such other

---

[3] Numerous other courts have dismissed state law class action claims where the plaintiffs have also asserted an FLSA collective action. *See Aquilino v. Home Depot U.S.A., Inc.*, 2006 WL 2023539, at *3 (D.N.J. July 18, 2006); *Glewwe v. Eastman Kodak Co.*, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006); *Letouzel v. Eastman Kodak Co.*, 2006 WL 1455478, at *4 (W.D.N.Y. May 25, 2006); *Luciano v. Eastman Kodak Co.*, 2006 WL 1455477, at * 5 (W.D.N.Y. May 25, 2006); *Himmelman v. Continental Casualty Co.*, 2006 WL 2347873, at *2 (D.N.J. Aug. 11, 2006) *Herring v. Hewitt Assocs., Inc.*, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006); *Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 524 (M.D. Pa. 2006); *Guerrero v. Int'l Bedding Corp.*, Civ. Action No. 4:06-CV-1713 (M.D. Pa. Mar. 26, 2007); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 992 (C.D. Cal. 2006); *Leuthold v. Destination America*, 224 F.R.D. 462, 469 (N.D. Cal. 2004); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 578 (N.D. Ill. 2004); *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 CV 2361, 2002 WL 1359411, at *2 (N.D. Ill. June 21, 2002); *Harper v. Yale Int'l Ins. Agency Inc.*, No. 03 CV 3789, 2004 WL 1080193, at *5 (N.D. Ill. May 12, 2004); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003); *Rodriquez v. The Texan, Inc.*, No. 01 CV 1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001).

person "gives his consent in writing…and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Yet, Plaintiffs ignore this Congressional purpose.[4]

Accordingly, this Court should not permit the two irreconcilable schemes, which have diverging consequences, to proceed in one action. Therefore, the Court should dismiss the Rule 23 NYLL class action claims.

**B.     Plaintiffs' State Law Class Claims Under Rule 23 Violate The Rules Enabling Act Because They Abridge The Substantive Rights of Plaintiffs To Have Their Overtime Claims Adjudicated Only With Their Written Consent**

Litigating Plaintiffs' state law wage and hour claims under Rule 23's opt-out procedure would also violate the Rules Enabling Act ("REA"). The REA provides that the application of the Federal Rules of Civil Procedure – which includes Rule 23 – "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Rule 23 is a procedural rule, which creates no substantive rights. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997) ("[We are] mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act").

Conversely, section 16(b) of the FLSA creates a substantive right in employees to have their claims adjudicated only following the court filing of their written consent. *See Secretary of Labor Amicus Letter Brief in Long John Silver's Rests., Inc. v. Cole*, No. 6:05-CV-3039 (D.S.C. Filed Dec. 13, 2005) ("[T]he right to participate in a collective action only upon submission of one's written consent is a substantive right, and therefore cannot be waived.") (Sargent Decl. Ex. 2). Moreover, the authors of Rule 23 recognized that, as a procedural rule, the opt-out provisions

---

[4]  Moreover, Plaintiffs do not dispute that the absent class members, including dancers (some of whom may not even want to participate in the class given their independent contractor status), who have not consented in writing, will still have their FLSA claims adjudicated by the state law class action for purposes of *res judicata* and *collateral estoppel*. *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003) ("Thus, the 1947 amendments to the FLSA prohibit what precisely is advanced under Rule 23 -- a representative plaintiff filing an action the potentially may generate liability in favor of uninvolved class members.").

of Rule 23 must give way to the express opt-in requirement that Congress created in section 16(b). *See* Fed R. Civ. P. 23 advisory committee's note ("The present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended.").

In addition to granting employees the right not to be bound without their written consent, Congress granted employers the substantive right to defend wage and hour claims only against individuals who file their written consent in the court action. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (noting that 1947 amendments to the FLSA were enacted for "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Permitting Plaintiffs to use Rule 23 to litigate state wage and hour claims on an opt-out basis would deprive Defendants of the right to have these claims adjudicated against them only on an opt-in, filed written consent basis.

## C.   Since The Members of the Putative Rule 23 Class Are Mostly Transient, Unfindable, and Therefore Unlikely to Receive Notice, They Will Not Have an Effective Opportunity To Opt Out

In this case, most of the putative Rule 23 class members that Plaintiffs seek to include in this action are transient and unfindable. Servers, cocktail servers, bartenders, and dancers tend to move around a lot. For example, Plaintiff Blerta Vikki testified that she lived with her aunt for a month, then moved in with a friend for 4 months, before living by herself at a different location for a year, then moved to her cousin's home for 3-4 months, and moved again to a different place for 6-7 months, before moving to her current address after she quit working altogether. Vikki Dep. 78:21-84:22. Similarly, Plaintiff Susan Levin now lives in Texas (and refused to appear for her deposition).

Under such circumstances, notice sent to each putative class member's last known address is unlikely to be received. Notably, Plaintiff Vikki testified that she never received two of the tax documents mailed to one of her addresses by Go West. Vikki Dep. 141:21-142:25;

146:11-15 & Sargent Exs. 7-8. Therefore, the vast majority of putative class members are unlikely to ever learn about this action or have the opportunity to opt out. As the Eleventh Circuit has noted:

> Congress's aim in adding the "opt-in" language to § 216(b) was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit. The "consent in writing" requirement sought to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit.

*Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003) (quotations and citations omitted).

In short, Plaintiffs seek to litigate on behalf of putative class members who will not and cannot have any real involvement in or even knowledge of this lawsuit. This is precisely the result that Congress sought to avoid. Accordingly, Plaintiffs' state law claims should be dismissed.

**D.    The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiffs' New York Labor Law Claims**

Plaintiffs seek to persuade the Court that it should exercise supplemental jurisdiction over their New York State Labor Law claims pursuant to 28 U.S.C. § 1367 (AC ¶ 49). However, the statute specifically authorizes district courts to "decline to exercise supplemental jurisdiction" over a state law claim if:

> (1) the claim raises novel or complex issues of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or]
>
> (3) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Supplemental jurisdiction may be declined in the sound discretion of the Court if any one of these three grounds is found to exist.

Defendants submit that attempting to prosecute, defend, and adjudicate NYLL claims on a Rule 23 opt-out basis raises novel and complex issues of state law. First, enabling Plaintiffs to pursue their state law minimum wage and overtime claims as an opt-out action simultaneously with their opt-in action under the FLSA would create challenges with respect to manageability of the action. Moreover, asking potential class members both to opt-in and to opt-out with respect to the FLSA and NYLL claims would likely cause considerable confusion. *See Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 470 (N.D. Cal 2004) ("Confusion would likely result in asking potential plaintiffs both to opt in and to opt out of the claims in this suit."); *McClain*, 222 F.R.D. at 577 ("it may be confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others").

Furthermore, proceeding as a Rule 23 class action would arguably produce a large number of plaintiffs litigating state law claims, which would overshadow those litigating FLSA claims. *Glewwe v. Eastman Kodak Co.*, No. 05 CV 6462T, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006) ("it is clear that the state claims would substantially predominate over the FLSA claim."); *De Luna-Guerrero v. The North Carolina Growers's Assoc., Inc.*, 338 F. Supp. 2d 649, 652-53 (E.D.N.C. 2004) (declining supplemental jurisdiction over state wage and hour claims noting that the size of any potential state law class and potential for confusion of plaintiffs and that judicial efficiency will be better served if state law claims are dismissed). Moreover, given the likelihood that few individuals will actually receive notice of this lawsuit and that even fewer individuals will realistically sign a piece of paper and file it with the Court if they receive the notice, it appears extremely probable that very few individuals would opt in to the FLSA collective action and that a very large number of individuals would be deemed members of the Rule 23 state law class action. Based on the resulting number of individuals participating in each set of claims, the state law claims would substantially predominate over the FLSA claims for

which the Court has original jurisdiction. *See Neary v. Metropolitan Property and Casualty Insurance Co.*, 472 F. Supp. 2d 247, 251-52 (D. Conn. 2007) (declining to exercise supplemental jurisdiction because state law claims would predominate); *Acquino v. Home Depot U.S.A., Inc.*, No. 06 CV 4100, 2006 WL 2023539 (D.N.J. July 18, 2006)(same).

Lastly, as set forth more fully in points A, B, C, and above, exceptional circumstances exist and there are compelling reasons for the Court to decline to exercise supplemental jurisdiction over the NYLL claims in this case. For all of the foregoing reasons, Plaintiffs' NYLL class claims should be dismissed.

## POINT II

### THE COMPLAINT ON BEHALF OF PLAINTIFFS
### DANIELLE OWIMRIN AND SUSAN LEVIN MUST BE DISMISSED

Plaintiffs Danielle Owimrin and Susan Levin failed to appear for depositions, despite being noticed for deposition in January 2008, not being available therefore, and having been ordered by the Court to appear for their depositions on or before April 7, 2008. Yet, despite being scheduled to appear, plaintiffs Owimrin and Levin did not appear. It is well settled that the Court has the discretion to dismiss a complaint of a plaintiff who fails to appear for a deposition, and will exercise that discretion when the failure to appear occurs after a court order directing the appearance. *See Sterling Promotional Corp. v. General Acc. Ins. Co. of New York*, 86 Fed.Appx. 441, 445 (2d Cir. 2004) (affirming lower court's grant of motion to dismiss complaint because plaintiff failed to appear for a court ordered deposition); *Martinez v. E & C Painting, Inc.*, 2008 WL 482869 (S.D.N.Y. Feb. 21, 2008) (granting defendant's motion to dismiss complaint where plaintiffs failed to appear for court-ordered depositions). Thus, Defendants urge that the Second Amended Complaint be dismissed insofar as it asserts claims for Owimrin and Levin.

## POINT III

### PLAINTIFFS' MOTION FOR CONDITIONAL
### CERTIFICATION AND SENDING OF NOTICE SHOULD BE DENIED

Plaintiffs have moved for conditional certification of an FLSA collective action on behalf of all servers, cocktail servers, bartenders, and dancers at Scores East Side and Scores West Side (Pl. Memorandum of Law, page 1). Although Plaintiffs' complaint refers to *Scores* as if it were essentially one entity operating two night clubs in New York City (one on the East Side and one on the West Side), there is no evidence to support such a broad claim. Plaintiffs have presented evidence only about employment practices at Scores West Side, from persons who have worked almost exclusively at the Go West club, while alluding to Scores East Side and the Diamond Dollars trademark, in an effort to justify authorization for a collective action which would include both New York clubs. Yet, as shown below, Plaintiffs have absolutely no evidence of common employment policies and practices – let alone payroll practices – at Scores East Side and Scores West Side. Indeed, Plaintiffs' deposition testimony demonstrates an absence of uniform policies and procedures within the Go West club itself.

Further, plaintiffs seek conditional certification for a class that would include, on the one hand, bartenders, cocktail servers and waitresses, who are hourly paid W-2 employees, and on the other hand, dancers and entertainers, who are independent contractors without steady hours or schedules. Yet, of the three named plaintiffs who were dancers, two failed to appear for court-ordered depositions, and thus the motion is based solely on the assertions and deposition testimony of one dancer, whose testimony, as shown below, demonstrated the absence of common practices and policies. Moreover, given the lack of interest shown by two of the named

plaintiffs, and the declared desire of two other dancers not to pursue claims through a collective action,[5] there should be no collective action conditionally certified, at the very least, for dancers.

**A.    Plaintiffs Have Not Demonstrated Common Policies or Practices Existing at Both Clubs with Regard to the Alleged Violations of the FLSA, and Thus Conditional Certification of a Class <u>Consisting of Employees at the Two New York Clubs is Inappropriate</u>**

In order to determine whether conditional certification of an FLSA collective action is appropriate, a two-stage certification process must be followed. *Morales v. Plantwork , Inc.*, No. 05 CV 2349, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006). At the first "notice" stage, the court should examine the available evidence to determine whether the named plaintiff and putative class members are similarly situated. *Id.* citing *Masson v. Ecolab, Inc.*, No. 04 CV 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005). If the court finds that they are similarly situated, it conditionally certifies the class and permits notice to be sent to putative class members. *Id.* In the Second Circuit, FLSA plaintiffs must show that "they and potential plaintiffs together were victims of a **common policy or plan** that violated the law." *Morales*, 2006 WL 278154, at *2 (emphasis added), citing *Hoffman v. Sbarro, Inc.*, 982 F.Supp. 249, 261 (S.D.N.Y. 1997). A plaintiff must "provide evidence of a factual nexus between his situation and those that he claims are similarly situated." *Prizmic v. Armour, Inc.*, No. 05 CV 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006). Though the first stage of class certification requires a modest factual showing, a common policy or plan must be demonstrated. *Morales*, 2006 WL 278154, at *3, citing *Hoffman*, 982 F.Supp. at 261. Broad conclusory allegations are not enough to meet conditional certification requirements. *Id.*; *Flores v. Osaka Health Spa, Inc.*, No. 05 CV 962, 2006 WL 695675, at *2 (S.D.N.Y. March 16, 2006).

---

[5] See the declarations of Desiree Napolitano and Krystal Dubose, annexed to the Sargent declaration as Exhibits 10 and 11.

1.   **Plaintiffs Have Submitted No Evidence Regarding**
     **The Existence of Common Policies and Practices with**
     **Regard to Payment of Minimum Wage, Failure to**
     **Pay Overtime, Charging of Uniform Expenses and Failure**
     **to Keep Records at Scores East Side and Scores West Side**

In order to establish that there is a common policy or plan between Scores East Side and Scores West Side that violates the FLSA, Plaintiffs first have to present evidence of common operational control over compensation and employees. *See Diaz v. Electronics Boutique of America, Inc.*, No. 04 CV 0840E, 2005 WL 2654270, at *3-4 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification because the policies, practices and duties of the employees differed among the many stores). Second Plaintiffs must demonstrate that the employer had a common practice that violated the FLSA. *Hoffman*, 982 F. Supp. at 261. Here, Plaintiffs cannot meet their burden.

2.   **There is No Specific Evidence of Any Wage Related**
     **Policies and Practices at the East Side Club, Let Alone**
     **Common Policies and Practices Between Clubs**

Plaintiffs offer no specific evidence of *wage-related* policies and practices at Scores East Side, or wage-related policies and practices *common* to the Scores East Side and Scores West Side. Plaintiffs merely point to general "quality-of-experience" statements from the Scores Holding website. Plaintiffs do not identify a single statement on the website regarding a common practice *controlling or relating to the payment of wages, payment of overtime, or calculation of tips,* or even as to the particular terms and conditions of employees and dancers at each club. Rather, the website describes the "experience" – that is, the experience for the customer – associated with the "Scores" name. In sum, Plaintiffs' website references to the Scores customer experience do not demonstrate that a common policy or plan *alleged to violate the FLSA* exists between clubs.

Moreover, of the persons who are named plaintiffs or have joined the action, only three even claim to have worked at all at the east side club, and only two of those have filed a declaration in support of Plaintiffs' motion. One, Susan Levin, failed to appear for her court-ordered deposition; thus, at the very least, her declaration should not even be considered by the Court. Nonetheless, it is interesting to note that while the declaration states that she worked as a dancer for five months, at the east side club and occasionally at Go West (Susan Levin Decl. ¶ 1), her declaration fails to state whether the policies and practices of which she complains were in effect at the Go West club, the east side club, or both. Similarly, Blerta Vikki, who states that she worked at both clubs, fails to specify whether particular policies or practices applied at one or both clubs. Plaintiffs Carolyn Siegel and Siri Diaz admitted in their depositions that they have no knowledge of the employment practices at Scores East Side. Siegel Dep. 100:25; 101:1-4. Diaz Dep. 98:2-4.

There is absolutely no evidence concerning a uniform FLSA-relevant policy or practice common to both 333 and Go West. Therefore, Plaintiffs cannot satisfy even the minimal burden necessary to demonstrate a uniform practice violative of law. See *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) (denying conditional certification where plaintiffs failed to make the modest factual showing that the named plaintiffs are similarly situated to other employees).

**B.    A Collective Action Against Go West Is Inappropriate**

**1.    There is Insufficient Evidence of Uniform Policies and Practices at Go West**

Plaintiffs are left solely with the allegations of various allegedly unlawful payroll practices at Go West which, they assert, are common to all persons in similar job classifications and which violate the law. Among other things, Plaintiffs claim that: (1) a portion of the Diamond Dollar tips obtained by workers at all "Scores clubs" was kept by "Scores" (SAC ¶ 3);

(2) "Scores clubs" refused to cash Diamond Dollars (SAC ¶ 108(b)); and (3) "Scores clubs" participated in a common policy that required all servers, cocktail waitresses, bartenders, and dancers to purchase and launder their own uniforms without reimbursement (SAC ¶¶ 196-97). Yet, as the facts shown below demonstrate, there was no common policy at Go West even as to those issues; rather, the practices varied by individual, rendering the collective action inappropriate.

> ### 2. The Court Should Not Grant Conditional Certification Where the Analysis Will Necessitate Highly Individualized Determinations

Even if Plaintiffs could establish a general policy or plan on the above issues at Go West, a collective action against Go West would still not be warranted, given the material differences in each Plaintiff's experience. Where a court must undertake a highly fact-specific and detailed analysis of each plaintiff's circumstances, collective action treatment is inappropriate. *Diaz v. Electronics Boutique of America*, 2005 WL 2654270, at *3-4 (denying conditional certification where a "detailed factual analysis of his daily activities and responsibilities" was necessary and each putative class member's circumstances varied). As shown below, Plaintiffs' FLSA claims will require a detailed factual analysis that makes each Plaintiff and putative class member's claim distinct and, therefore, inappropriate for a collective action.

> ### 3. The Determination of Plaintiffs' Claims Will Require Individualized Factual Analyses of Their Experiences Regarding Compensation, Uniforms, and Diamond Dollars

> #### a. There Was No Common Usage of Diamond Dollars

Plaintiffs claim that they and the putative collective action members were subjected to the common practice of taking a percentage of their tips received through Diamond Dollars. However, experiences with Diamond Dollars varied from employee to employee and dancer to dancer. Indeed, Plaintiffs fail to present any evidence as to how Diamond Dollars are dealt with,

in terms of compensation to employees and dancers, uniformly. Plaintiffs' own testimony shows that Plaintiffs were *not* subject to a common practice.

Plaintiff Talia Bumb testified that she never received a valid Diamond Dollar. Bumb Dep. 81:15-18; 82:2-4; 93:23-94:2. Ms. Bumb explained that a Go West patron gave her an expired Diamond Dollar, which she was unable to cash. Bumb Dep. 81:15-18. Plaintiff Carolyn Siegel testified she received three Diamond Dollars, but could not figure out how to exchange them for cash. Siegel Dep. 62:10-16; 67:4-18. Plaintiff Siri Diaz said that she received Diamond Dollars on occasion, but not every night that she worked and that she had cashed in all of her Diamond Dollars. Diaz Dep. 65:15-18; 74:21-25.

Plaintiff Blerta Vikki – who routinely received and cashed in the Diamond Dollars she received – testified that she did not know how the Diamond Dollars worked for the bartenders or cocktail waitresses. Vikki Dep. 175:7-18; 188:6-16.[6] Ms. Vikki testified that she received expired Diamond Dollars from club patrons on two occasions, as indicated by an expiration date printed on the Diamonds Dollars. Vikki Dep. 168:3-9; 168:12-15. She admitted that she was able to cash in Diamond Dollars that were expired when she received them. Vikki Dep. 167:2-6. On the second occasion, the Diamond Dollar was also expired when the club patron gave it to her, but she chose not to ask if the club would cash it in. Vikki Dep. 167:2-9; 167:25; 168:3-11. Therefore, Vikki admitted that there was *never* a time when she tried to cash a Diamond Dollar and was refused. Vikki Dep. 167:2-6. These varying experiences demonstrate that there was no common policy and practice concerning Diamond Dollars and that the Court would have to

---

[6] Ms. Vikki's declaration should be disregarded in its entirety because she testified that she did not see a copy before she signed it and that *she did not read it before she signed it*. Vikki Dep. 189:6-8; 189:15-21. She also testified that although the declaration indicates that it was signed on January 17, 2008, she did not see or sign the declaration on said date. Vikki Dep. 185:25; 186:2-5.

engage in a highly fact-specific individualized analysis to determine the tip confiscation issue alleged by Plaintiffs.

**b.**    <u>**There Was No Common Policy Concerning Uniforms**</u>

Similarly, there was no common policy regarding uniforms. First, it must be noted that a uniform does NOT consist of clothing that may be worn as part of an employee's ordinary wardrobe. *Ayres v. 127 Restaurant Corp.*, 12 F.Supp.2d 305, 310 (S.D.N.Y. 1998). Therefore, the Court would be required to conduct an individualized inquiry into whether the particular piece of clothing at issue could or could not be worn as part of an employee's ordinary wardrobe.

Moreover, Plaintiffs' own uniform-relevant testimony conflicts with Plaintiffs' Second Amended Complaint. Plaintiffs allege that Go West requires servers, cocktail waitresses, and bartenders to wear black uniforms, which the worker must purchase and launder (SAC ¶ 196-97).

Plaintiff Carolyn Siegel, however, testified that she was given the uniform and admitted that she did ***not*** have to pay for it. Siegel Dep. 51:6-7. Plaintiff Talia Bumb claims that she was told that the cost of the uniform would be taken out of her check, but admitted that she never actually had, as far as she knows, the money subtracted from her pay. Bumb Dep. 34:14-17. Plaintiff Siri Diaz acknowledged that she received an outfit but could not recall paying for it. Diaz Dep. 58:3-5.

Plaintiff Blerta Vikki – a dancer – claims that she was required to buy numerous long gowns or short dresses, a garter belt, certain underwear and high heeled shoes. Vikki Dep. 41:20-22. Not only does Ms. Vikki's claim differ significantly from the other Plaintiffs, but the Court would have to engage in an individualized assessment of whether each item of clothing could be worn as part of the individual's ordinary wardrobe.

Moreover, the clothing for the dancers, servers, cocktail waitresses, and bartenders did not require "Scores" or "Go West" logos, but rather were items that could be considered

appropriate for occasions outside of the work environment. Bumb testified that she continues to wear on a weekly basis the shoes that were a required part of the uniform she wore at Go West. Bumb Dep. 37:11-15. Siegel testified that as part of her regular wardrobe she already had the boots, tights, and theme outfit that she wore as part of her uniform. Siegel Dep. 88:24-25; 89:1; 89:18-20. Vikki testified that the heels she wore as part of her uniform could be worn outside of the club. Vikki Dep. 46:16-19. Diaz testified that the boots she wore while working she had purchased a year earlier and still wears them to this day when she goes out socializing. Diaz Dep. 54:9-25.

In the absence of a common policy or plan – and especially in view of the need for an individualized assessment of each article of clothing – collective action treatment is improper.

### c. Plaintiffs' Minimum Wage Claims Require A Detailed and Individualized Factual Analysis

Plaintiffs claim a common policy or practice of not informing Plaintiffs and the putative class about the allowable tip credit to the minimum wage for tipped employees. Specifically, Plaintiffs claim that they were not informed of the minimum wage and tip credit rules as required by 29 U.S.C. § 203(m). Clearly, this is an individualized issue requiring a determination of whether each Plaintiff and putative class member was informed of such rules.

Go West, for its part, can show that it posted the minimum wage and tip credit rules on the wall in the manager's office frequented by employees and dancers alike. Moreover, even the minimal testimony taken thus far demonstrates that there are varying degrees of Plaintiffs' knowledge of the tip credit, which in and of itself undermines the use of a collective action.

For example, although Plaintiff Carolyn Siegel denied that she had seen the posting, she admitted that she did know the wage amount she would be paid although she was unsure how she came to know such information. Siegel Dep. 46:2-14. Indeed, Ms. Siegel and Talia Bumb both testified that they understood that they would be paid $4.60 per hour plus tips. Siegel Dep.

46:2-5; Bumb Dep. 32:20-23. Ms. Bumb said she did not know whether the minimum wage/tip credit posting was posted at the facility. Bumb Dep. 32:15-16. Ms. Diaz stated that she did not examine her paycheck but never questioned the amount of her wages. Diaz Dep. 81:7-21; 82:9-20.

Thus, Plaintiffs' claim that Go West failed to notify tipped employees of the minimum wage and tip credit requirements is simply too individualized for a collective action.

### d. Plaintiffs' Cannot Demonstrate a Uniform Policy of Requiring and Not Paying Overtime Pay or Failing to Keep Records

Plaintiffs claim that all Plaintiffs and putative class members were denied overtime wages for hours they worked in excess of forty hours in a workweek (SAC ¶ 223). Yet, not one of the Plaintiff employees testified that she worked more than forty hours in a workweek. Thus, not only is their no evidence of a "common practice," but indeed no evidence that overtime and failure to pay overtime indeed occurred regularly. Certainly, Plaintiffs' experiences fail to demonstrate that they are representative of each other, let alone other putative class members. Further, no evidence was presented as to recordkeeping violations, let alone common policies or practices related thereto.

## C. A Collective Action Including Dancers and Entertainers Is Inappropriate

Plaintiffs seek to include within the class to be conditionally certified, the dancers and entertainers engaged as independent contractors at the two New York clubs. Yet, given: (1) the difference in issues relating to FLSA coverage and payment issues between the dancers and the other employees, (2) the lack of interest shown by two of the three named plaintiffs, and (3) the expressed desire not to proceed with a collective action demonstrated by two other dancers/entertainers, inclusion of dancers/entertainers in any class with bartenders, waitresses and cocktail servers is inappropriate.

1.   **The Issue of the Alleged Misclassification of Dancers**
     **Is Wholly Different from Issues Raised by the Other**
     **Plaintiffs and Will Require Highly Individualized Analysis**

Plaintiffs also claim that the dancers were misclassified as independent contractors and should be considered employees. Go West employed servers, cocktail waitresses, and bartenders as employees, and dancers as independent contractors. Clearly, Go West dancers and Go West employees are not subject to a common compensation practice or plan. Though Plaintiffs claim that the dancers were incorrectly classified as independent contractors, consideration of the dancers' alleged wage and hour claims requires a unique and individual analysis of their independent contractor status.

To determine whether an individual is an "employee" under the FLSA (as opposed to an independent contractor), courts look to the economic reality of the business relationship. *U.S. v. Silk*, 331 U.S. 704, 716 (1947); *Lee v. ABC Carpet & Home*, 186 F.Supp.2d 447, 453 (S.D.N.Y. 2002). The following factors are relevant to determining whether an individual is an FLSA "employee":

(1)   the degree to which the alleged employee is independent or subject to the control of the employer as to the manner in which the work was performed;

(2)   the alleged employee's opportunities for profit or loss;

(3)   the alleged employee's investment in the facilities and equipment of the business;

(4)   the permanency and duration of the relationship between the business and the alleged employee;

(5)   the degree of skill required to perform the work of the alleged employee; and

(6)   the extent to which the services rendered are an integral part of the employing entity.

*U.S. v. Silk*, 331 U.S. 704, 716 (1947); *Lee*, 186 F.Supp.2d at 453. "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988). First, it is generally held that adult entertainment dancers are independent contractors. *See, e.g. Taylor Blvd. Theatre, Inc. v. United States*, No.

Civ. A. 3:97-CV-63-H (W.D.Ky. May 13, 1998) (holding in tax cases that tax treatment of dancers as independent contractors was reasonable and that "[p]revious cases support that proposition that it is standard industry practice to treat dancers as nonemployees").

Additionally, as an example of the individualized analysis that will be necessary, one need only examine the facts relating to one plaintiff, Blerta Vikki, who was engaged as a dancer. Vikki testified about her individual and varying opportunity for profit or loss. Vikki would make a large sum of money on certain nights, while other slow nights required that she take a loss. Vikki Depo 63:25; 64:1; 66:6-8; 66:16-18. Vikki also testified that she exercised control regarding fees, stating that she negotiated lower house fees with the manager. Vikki Dep. 67:6-8. At times Vikki ended her shift without paying the fee for that night, but chose to pay it later. Vikki Depo 154:12-21. Concerning a dancer's investment in her business, Vikki testified that certain dancers paid for surgical bodily enhancement to increase their individual profitability. Vikki Depo 123:25; 124:2-5. Vikki testified that she personally opted not to have surgical enhancement. Vikki Depo 123:21-24. Vikki processed her own 1099 form and independently paid her own taxes. Vikki Depo 124:6-16. Vikki claimed business expense deductions for costumes, fees, meals, cell phones, travel, and promotion, amongst others, which reduced her taxable income from approximately $35,806 to less than $9,721 for 2005. Sargent Decl. Ex. 6.

Notably, each dancer's independence, opportunity for profit and loss, investment, relationship duration, and skill would have to be assessed in order to determine for each dancer whether she was an FLSA "employee" or an independent contractor not subject to the FLSA. Clearly, a highly individualized factual analysis will be necessary. At the very least, it is clear that the dancers are not similarly situated to the other named Plaintiffs and are not appropriately part of the collective action. *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07 CV 2266, 2007 WL 4546100, at *3 (D.N.J. Dec. 19, 2007)(denying conditional class certification at notice stage

because whether putative class members were improperly classified as FLSA-exempt is not appropriate for collective action treatment). Certainly, if exempt versus nonexempt status is inappropriate for collective action treatment, employee versus independent contractor status is similarly an inappropriate issue for conditional certification.

### 2. The Lack of Interest to Proceed As a Collective Action with respect to Dancers Warrants Denial of Conditional Certification as to Dancers

Given that Plaintiffs Levin and Owimrin failed to show up for their depositions, despite the court order, and other dancers have signed declarations that they do not want to participate in this action, there is no basis to grant conditional certification as to the dancers.

Conditional certification should be denied with respect to the dancers because Plaintiffs fail to demonstrate that dancers want to participate in the action. In order to conditionally certify the class Plaintiffs must meet their burden of demonstrating that other dancers are interested in joining the suit. *See O'Donnell v. Robert Half Intern., Inc.*, 534 F. Supp.2d 173, 181 (D.Mass. 2008) (denying motion for conditional certification where "plaintiffs had failed to demonstrate that any of the putative class members are interested in joining the suit"); *Aguirre v. SBC Communications, Inc.*, 2006 WL 964554 (S.D.Tex. April 11, 2006) (denying motion for conditional certification where plaintiffs failed to show that other potential class members would join the suit).[7]

_____

[7] *See also Dyback v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991) (before exercising the power to conditionally certify a class and grant notice a "court should satisfy itself that there are other employees...who desire to 'opt-in'); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp.2d 1272, 1277 (M.D.Ala. 2004) (denying plaintiffs' motion for conditional certification because "even under the fairly lenient standard" plaintiffs failed to meet "their burden of demonstrating that other plaintiffs exist who desire to opt-in"); *Parker v. Rowland Express, Inc.*, 492 F. Supp.2d 1159, 1165 (D.Minn. 2007) (refusing to grant motion for conditional certification because plaintiffs could not show that persons other than plaintiffs were interested in participating in the action) (if the other alleged similarly situated persons decline to opt in to the case, no purpose would be served by certifying a class for a case that would involve no one other than the plaintiff); *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, *9 (S.D.Tex.

Two of the three named plaintiff dancers have shown their lack of interest in proceeding with this action. Danielle Owimrin and Susan Levin did not show up for their court-ordered depositions, thereby demonstrating their unwillingness to proceed in this action. Blerta Vikki is the only dancer actively participating in the suit.

Moreover, Plaintiffs have not demonstrated that any other dancers have an interest in opting-in. Indeed, Defendants have presented declarations from dancers who do not want to join Plaintiffs' collective action. Such evidence supports a determination that conditional certification should be denied as to the dancers. *See Lance v. The Scotts Company,* 2005 WL 1785315, *9 (N.D.Ill. July, 21, 2005) (denying conditional certification where plaintiff had not submitted declarations of other like-minded employees who wanted to join the suit and defendant submitted declarations of several employees who did not share plaintiff's view of the events and would not opt-in).

Thus, Plaintiffs failure to establish that other dancers are interested in participating in the collective action warrants denial of conditional certification as to the dancers.

### POINT IV

### ASSUMING *ARGUENDO* THAT CONDITIONAL CERTIFICATION WERE GRANTED, PLAINTIFFS' PROPOSED NOTICE IS NOT APPROPRIATE FOR DISTRIBUTION TO THE PUTATIVE CLASS

Should this Court decide to grant conditional certification, Plaintiffs' proposed form of notice to the putative collective action members is improper and inappropriate. Plaintiffs offer two forms of notice to this Court: (1) a proposed notice purportedly tailored to meet the needs of

---

Jan. 24, 2007) ("[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants"); *Hargrove v. Sykes Enterprises, Inc.,* CIV 99-110, 1999 WL 1279651, (D.Or. June 30, 1999) (same); *Piper v. RGIS Inventory Specialists, Inc.,* 2007 WL 1690887, *6 (N.D.Cal. June 11, 2007) (noting that courts look at the lack of opt-in consents as evidence on the question of whether a class in an FLSA collective action should be conditionally certified).

this particular case (Marzigliano Decl. Ex. U); and (2) an alleged "'plain language' collective action notice proposed by the Federal Judicial Center" (Marzigliano Decl. Ex. V).[8]

Courts have generally exercised their discretion in guiding parties in the construction of proper collective action notices. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989). A court presiding over an FLSA collective action "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. "Because of the potential for abuse, a district court has both the duty and broad authority to exercise control over a [collective action] and to enter appropriate orders governing the conduct of counsel and the parties. *Id.* at 171 (*quoting Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). District courts exercise their managerial responsibility over a collective action under the FLSA by facilitating and directing the distribution of notices to the putative class members. "By monitoring preparation of and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Id.* at 172. The Supreme Court has instructed: "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

Given this legal backdrop, Plaintiffs' proposed notice is improper and inaccurate because it: (1) appears to be endorsed by the Court; (2) provides an inadequate description of Plaintiffs' claims and the purported class; and (3) fails to offer any explanation or description of the legal process and what may be required of a class member who opts in to the action. *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)

---

[8]   The cited "plain language" collective action notice, attached as Exhibit V to the Marzigliano Declaration, is in fact a proposed Rule 23 class action notice designed for an employment discrimination class action lawsuit, not an FLSA action.

(denying use of the plaintiff's proposed notice and ruling that the notice should be jointly prepared between plaintiffs and defendants.

## A.    Plaintiffs' Proposed Notice is Not Neutral

While the notice is required to be "judicially neutral," *Hoffmann-La Roche*, 493 U.S. at 174, the draft appears to be endorsed and, in fact, promulgated by the Court. Indeed, the heading on Plaintiffs' proposed notice states:

**COURT AUTHORIZED NOTICE**
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Marzigliano Decl. Ex. U. The notice further states: *"This is a court authorized notice. This is not solicitation from a lawyer." Id.* This form of notice is wholly inappropriate as it fails to adhere to the necessary judicial neutrality.

## B.    The Court Should Appoint A Neutral Third-Party Administrator to Oversee and Facilitate Notice of Collective Action

Understanding that the Court has the responsibility to oversee the administration of Plaintiffs' notice, the Court should appoint a neutral third-party administrator to facilitate notice of the collective action. This case presents a host of unique and sensitive issues concerning the identity of members of the putative class, particularly for the dancers. Each of the independent contractor dancers has adopted a business or "stage" name, by which she is known within the club. For instance, Susan Levin was known by her stage name "Brianna;" Blerta Vikki was known by her stage name "Marissa;" and Danielle Owimrin was known by her stage name "Paris." The sensitive and unique nature of these claims and the privacy of the Plaintiffs is further demonstrated by the fact that two Plaintiffs – dancer Susan Levin and cocktail waitress Talia Bumb – have redacted their addresses from the consents to sue filed in this case, thus shielding such addresses from public view. Similarly, even the cocktail servers and bartenders,

given the nature of the clubs in which they are employed, may and have sought to protect their identity, concealing it with a "business" name, a preference Go West has obliged.

In view of the above, Go West submits that it would be inappropriate for any list of putative collective action member names and addresses to be turned over to Plaintiffs' attorneys. Disclosure of each member's real name and last known address would be invasive enough for the class members, but having to field telephone calls from Plaintiffs' attorneys would be unnecessarily invasive. Accordingly, the Court should appoint a neutral third-party claims administrator to facilitate distribution of any notice deemed appropriate by the Court.

**C.**    **The Notice Is Vague and Misleading**

   **1.**    **Plaintiffs' Description of the Claims and
             Collective Action Class is Overbroad and Misleading**

Plaintiffs' proposed notice states: "Former hourly workers have sued Scores Holding Company, Go West Entertainment, and Scores Entertainment Inc. (together "Scores") claiming that Scores failed to pay all wages required by law." Marzigliano Decl. Ex. U. First, as stated repeatedly herein, the use of the monolithic "Scores" is simply false and misleading. Further, Plaintiffs' description of their claim as one based on "Scores fail[ure] to pay **all** wages required by law" is extraordinarily overbroad and misleading. Rather, Plaintiffs have specifically sought relief for purported specific FLSA violations – namely, tip credit notice, improper tip pooling, and uniforms. Yet, Plaintiffs' proposed notice makes no mention of these claims, but seeks to entice all former "hourly workers" who potentially believe they were not paid "all wages required by law." Any notice to the putative class should identify the specific FLSA issues that are raised in the Second Amended Complaint in order to allow recipients to make an informed choice.

Second, not all of the Plaintiffs or putative class members were hourly workers. Indeed, the Plaintiffs have specifically sought to include dancers, who were never treated as hourly

workers but as independent contractors. At a minimum, any notice should specifically inform dancers that the lawsuit seeks to challenge their independent contractor status and have them treated as employees.[9]

### 2. The Notice Fails to Provide Putative Class Members with Information About Participation In the Action

As proposed, Plaintiffs' proposed notice appears to promise a possibility of "getting money or benefits that may come from a trial or settlement," but it fails to specify what the responsibilities or obligations may be for a party who opts-in. The notice should explain in greater detail the legal procedure, what may be required of putative class members should they opt-in, and information concerning their legal representation. At a minimum, the notice should explain that opt-in plaintiffs may be called upon to produce documents and information and may be requested for deposition. Plaintiffs' attorneys' anticipated fees should also be disclosed. Furthermore, the opt-in plaintiffs' potential exposure to defendants' costs is similarly relevant for the notice. Most, if not all, of these putative class members have had little or no contact with the legal system; it behooves the parties to prepare a notice that offers as much useful information for the recipients as possible. Finally, Plaintiffs' proposed notice is devoid of a date by which the consents to sue are to be returned, which should be within 30 days of mailing.

### 3. The Notice Should Not Be Sent To Those Engaged Solely as Dancers

As set forth above in Point III(B)(2), the dancers engaged by Go West are independent contractors. To include dancers in the collective action addressing payment of full versus tipped minimum wage and overtime pay is inappropriate given the distinct issue of their employment status and the wholly separate range of different and individualized factual issues. Therefore,

---

[9]  The Proposed Notice incorrectly sets the cut-off date as September 17, 2004 rather than October 9, 2004.

including them in the putative class, or sending them notice of this collective action, is inappropriate.

## **CONCLUSION**

Accordingly, for the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motions and grant Defendants' applications in their entirety and such other relief as the Court deems just and proper.

Dated: New York, New York
      April 11, 2008

                Respectfully submitted,

                **GREENBERG TRAURIG, LLP**

                By:  _____

                  Jerrold F. Goldberg (JG-7471)
                  Eric B. Sigda (ES-1827)

                  200 Park Avenue
                  New York, New York  10166
                  (212) 801-9200

                  *Attorneys for Defendants Scores Holding*
                  *Company Inc.,  Go West Entertainment, Inc.*
                  *a/k/a Scores West Side, Entertainment*
                  *Management Services, Inc. and 333 East*
                  *60th Street, Inc.*