UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB,         :
BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN         :
LEVIN, on behalf of themselves and all others similarly  :
situated,                                                 :
                                                          :
                          Plaintiffs,                     :
                                                          :           **ORDER**
            -against-                                     :
                                                          :           07 Civ. 8718 (RMB)
SCORES HOLDING COMPANY, INC.; GO WEST    :
ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; :
SCORES ENTERTAINMENT, INC., a/k/a SCORES  :
EAST SIDE; ENTERTAINMENT MANAGEMENT     :
SERVICES, INC.; and 333 EAST 60th STREET, INC. :
a/k/a SCORES EAST SIDE,                                   :
                                                          :
                          Defendants.                     :
------------------------------------------------------------------

**I.    Background**

On February 21, 2008, Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, and Susan Levin ("Plaintiffs") filed a Second Amended Complaint ("Complaint") on behalf of themselves and all other current and former Scores employees ("Class") "who have received part of their compensation as tips" (including, among others, bartenders, "servers," and dancers) at two New York City Scores "adult nightclubs" ("Scores East" and "Scores West") allegedly owned and/or operated by Scores Holding Company, Inc., Go West Entertainment, Inc. a/k/a Scores West Side, Scores Entertainment, Inc., a/k/a Scores East Side, Entertainment Management Services, Inc., and 333 East 60th Street, Inc. a/k/a Scores East Side (collectively, "Defendants"). (Compl. ¶¶ 1, 94, 104.) Plaintiffs allege, among other things, "unlawful wage deductions" and violations by Defendants of the mandatory minimum wage and overtime regulations under (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. ("FLSA Claims"), and (2) New York Labor Law Article 6, §§ 190 et seq., and Article

19, §§ 650 et seq. ("New York Labor Law Claims").

On March 28, 2008, Plaintiffs filed a motion for (A) "conditional certification" of a collective action pursuant to FLSA § 216(b), and (B) "court-authorized notice" ("Notice") to potential Class members that they may "opt-in" to the action. (Plaintiffs' Memorandum of Law, dated March 28, 2008 ("Pl. Mem."), at 1.) On April 11, 2008, Defendants opposed Plaintiffs' motion, arguing, among other things, that: (A) "conditional certification . . . should be denied" because, among other reasons, "Plaintiffs have absolutely no evidence of common employment policies and practices" (Defendants' Memorandum of Law, dated April 11, 2008 ("Def. Mem."), at 11); and (B) "Plaintiffs' proposed notice is not appropriate for distribution to the Putative Class" (id. at 23). Defendants also filed a cross-motion to dismiss (C) Plaintiffs' New York Labor Law Claims because they are "inherently inconsistent with the FLSA" and claims asserted on behalf of Danielle Owimrin and Susan Levin because they "failed to appear for depositions." (Id. at 2-10.) On April 21, 2008, Plaintiffs submitted a Reply Memorandum of Law ("Pl. Reply") opposing Defendants' cross-motion to dismiss and stating, apparently for the first time, that Plaintiffs "have not moved for collective treatment" of their "overtime claims." (Pl. Reply at 17 n.28.) On April 24, 2008, Defendants submitted a Reply Memorandum of Law ("Def. Reply"). The parties waived oral argument.

On April 23, 2008, Defendants advised the Court that "on April 18, 2008, Defendant Go West Entertainment, Inc. a/k/a Scores West Side filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court, Southern District of New York, Petition No. 08-11420," and that "[a]ccordingly, this action is stayed pursuant to 11 U.S.C. § 362." (Go West Notice of Bankruptcy and Automatic Stay, dated April 23, 2008 ("Bankruptcy Notice").) In an Order, dated April 24, 2008, the Court directed the parties to "apprise the Court . . . re: what

effect, if any, the Notice has on pending motions" (Order, dated April 24, 2008) and, in a letter to the Court, dated April 24, 2008, Defendants stated that it is "likely that Go West will apply for a stay as to the entire Diaz action as the determination as to Scores East would have a negative impact on Go West" (Defs' Letter, dated April 24, 2008). In a letter to the Court, dated April 24, 2008, Plaintiffs stated that "the Notice has no effect on this case as to any Defendant other than Go West . . . ." (Pls' Letter, dated April 24, 2008.)

In an Order, dated April 25, 2008, the Court directed the parties to furnish "the input of bankruptcy counsel (as to the current motions, etc.) with regard to Go West's Bankruptcy filing – in writing by 5/1/08 [at] noon." (Order, dated April 25, 2008.) In a letter, dated April 30, 2008, Go West's bankruptcy counsel stated, among other things, that "in unusual circumstances the Automatic Stay will be applied to actions involving non-debtor third parties," and that "the bankruptcy proceeding of the debtor will involve a substantial claim by the Plaintiffs such that the civil litigation will distract the debtor from its reorganization efforts or that an adverse judgment is likely to have a significant stare decisis impact . . . ." (Defs' Letter, dated April 30, 2008.) In a letter, dated May 1, 2008, Plaintiffs bankruptcy counsel argued, among other things, that "the matter should proceed vis a vis the non-Debtor parties absent a specific order from the Bankruptcy Court extending the stay to non-debtor parties." (Pls' Letter, dated May 1, 2008, at 2.)

In a letter, dated May 1, 2008, Plaintiffs "request[ed] permission to file a motion, under Fed. R. Civ. P. 21, to sever the claims of the plaintiffs and putative class members who worked at the Scores club on the East Side . . . from the claims of the workers . . . at the Scores club on the West Side . . . ." (Pls' Letter, dated May 1, 2008.) In a letter, dated May 6, 2008, Defendants countered that "Plaintiffs' application to sever the case . . . will not advance the

litigation and should be denied." (Defs' Letter, dated May 6, 2008.)

**For the reasons set forth below, Plaintiffs' motion for conditional certification of an FLSA collective action under 29 U.S.C. § 216(b) is granted; Plaintiffs' motion for Court-authorized notice of the collective action is granted (with modifications); Defendants' motion to dismiss the New York Labor Law Claims and the claims of Danielle Owimrin and Susan Levin is denied; the lawsuit is stayed with respect (only) to Defendant Go West; and Plaintiffs' request for permission to move to sever the claims relating to Scores West and Scores East is denied.**

## II.    Legal Standard

"Generally, courts proceed in two stages in determining whether a matter should be certified as an FLSA collective action." Torres v. Gristede's Operating Corp., 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006). "In the first stage, . . . if the plaintiff satisfies 'the minimal burden of showing that the similarly situated requirement is met,' the court certifies the class as a collective action." Id. (citation omitted). "Potential class members are then notified and given an opportunity to opt-in." Id. "At the second stage, the court examines the record again, with the benefit of discovery, and revisits the question of whether plaintiffs are similarly situated." Id.. "The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the [first] stage. Plaintiff need only make a 'modest factual showing' that plaintiff and potential collective action members were victims of 'a common policy or plan that violated the law.'" Lynch v. United Services Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Id. (citation omitted).

"It is well settled that courts may authorize notice when the Plaintiff has demonstrated that he and potential plaintiffs are similarly situated." Fasanelli v. Heartland Brewery, Inc., 516 F. Supp.2d 317, 322-23 (S.D.N.Y. 2007). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Gorman v. Con. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007). Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, plaintiffs must, at a minimum, sufficiently plead the facts underlying the claim "to raise the right to relief above the speculative level . . . ." Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citation and internal quotations omitted); accord Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, at *3 (S.D.N.Y. Dec. 10, 2007).

"[T]he extension of the automatic stay under [Bankruptcy] Code Section 362(a) to a nondebtor" is "extraordinary relief," In re McCormick, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008), and is "not favored absent some usual circumstance," Millard v. Developmental Disabilities Institute, Inc., 266 B.R. 42, 45 (E.D.N.Y. 2001).

"A trial court may sever parties or claims in its discretion to promote judicial economy." In re Methyl Tertiary Butyl Ether ("Methyl Ether") Prods. Liab. Litig., 247 F.R.D. 420, 424 (S.D.N.Y. 2007).

### III. Analysis

#### Bankruptcy of Go West

Defendants argue that the entire case should be stayed because, among other reasons,

"there appears to be such a significant identity of interest between the debtor and the co-defendants, [that] there is a great potential of binding preclusion in the event of an adverse judgment." (Defs' Letter, dated April 30, 2008.) Plaintiffs counter that that "the [Bankruptcy] Notice has no effect on this case as to any Defendant other than Go West" (Pls' Letter, dated April 24, 2008) and, apparently in the alternative, that Plaintiffs should be permitted to move to "sever the claims of the plaintiffs and putative class members who worked at the Scores club on the East Side . . . from the claims of the workers . . . at the Scores club on the West Side" because "[w]hile it is possible that the West Side Case may be stayed due to the bankruptcy filing, there is no reason that the East Side Case should not proceed" (Pls' Letter, dated May 1, 2008, at 1-2).

The action is stayed as to Defendant Go West. See Millard, 266 B.R. at 44-45 (staying FLSA action as to bankrupt defendant). At the same time, the remainder of the case should proceed because, at present, there is no evidence the action "will have an immediate adverse economic consequence for the debtor's estate." Queenie, Ltd. v. Nygard Intern, 321 F.3d 282, 287 (2d Cir. 2003)   The Complaint alleges, among other things, that the employees at Scores West are "jointly employed" by Scores Holding Company, Inc., as to which there is no stay. (Compl. ¶¶ 35-82.) Courts have declined to extend a bankruptcy stay to co-defendants in similar (joint employment) situations. See Millard, 266 B.R. at 43-45. "We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision." Queenie, 321 F.3d at 288.

It would not be appropriate to sever the claims involving Scores East from those involving Scores West at this time because these claims appear to "arise out of the same

transaction or occurrence" and "present some common questions of law or fact," and severance would not "promote judicial economy." In re Methyl Ether, 247 F.R.D. at 424; see also United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003).[1]

### (A)  Collective Action Certification

Plaintiffs argue that the Court should conditionally certify a collective action because, among other reasons: "Scores applies the same compensation policies and practices to workers at Scores West and Scores East" (Pl. Mem. at 4); and "Scores subjected dancers to the same policies as non-dancers – including taking part of their customer tips, failing to pay them minimum wages, and failing to pay their uniform expenses" (id. at 14-16).

Defendants counter, among other things, that: "Plaintiffs have absolutely no evidence of common employment policies and practices – let alone payroll practices – at Scores East Side and Scores West Side" (Def. Mem. at 11); and "plaintiffs seek conditional certification for a class that would include, on the one hand, bartenders, cocktail servers and waitresses, who are hourly paid W-2 employees, and on the other hand, dancers and entertainers, who are independent contractors without steady hours or schedules" (id. at 11, 20).

Conditional certification is granted. 29 U.S.C. § 216(b). Plaintiffs have satisfied their burden to "make a 'modest factual showing' that plaintiff[s] and potential collective action members were victims of 'a common policy or plan that violated the law.'" Lynch, 491 F. Supp. 2d at 368 (citation omitted). Among other things, Scores East and Scores West appear to share the same ownership, the same upper management, and the same "day-to-day" management (see Deposition of John Neilson, President of Scores Holding Company, Inc., dated Feb. 7, 2008, at

---

[1] This issue may be revisited in the future depending upon, among other things, the status of the Go West bankruptcy proceedings.

31-43); they share the same "Employee Handbook" (see Declaration of Siri Diaz, dated Jan. 16, 2008 ("Diaz Decl."), Ex. B: "Scores New York Employee Handbook," dated January 2007, at 1); and they share the same employee "Training Manual" (see Declaration of Talia Bumb, dated Jan. 17, 2008, Ex. B: "Scores New York Service Training Manual," dated Jan. 2007, at 11, 14, 37-38). Both clubs are also alleged to pursue, for example, "a policy of failing to pay workers the full value of the tips they earn in 'Diamond Dollars,' an imitation currency . . . . that Scores sells to credit card-paying customers . . . . ." (Pl. Mem. at 4-5; see Diaz Decl. ¶ 6-8 ("When workers . . . presented Scores with the Diamond Dollars we received as tips and asked Scores to exchange them for cash, Scores deducted and retained a portion of those tips. Scores paid workers only 90 cents on the dollar . . . ."); Deposition of Blerta Vikki, dated Jan. 28, 2008 ("Vikki Dep."), at 105-07 (Diamond Dollars were used at both locations); Employee Handbook at 8; Training Manual at 5, 20-21; see also Vikki Dep. at 22-24 (the two clubs sometimes "shared" employees).)

The evidence presented satisfies Plaintiffs' "very low" burden "at the [first] stage." Lynch, 491 F. Supp. 2d at 368; see Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (plaintiffs' declarations as to common plan and policy sufficient to certify conditionally collective action); Sipas v. Sammy's Fishbox, Inc., 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying class based on complaint and three affidavits); see also Hallissey v. America Online, Inc., 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008). "The Court finds that, on balance, the policy objectives of reducing cost and increasing efficiency are best furthered by granting collective action without undue prejudice to any party." Torres, 2006 WL 2819730, at *11.

**(B)   Class Notice**

Plaintiffs argue that the proposed Notice is "appropriate," and that it is "timely, accurate, and informative" (Pl. Mem. at 20), and "very similar to notices that other courts in this Circuit have approved" (Pl. Reply at 29). Defendants counter that "the Court should appoint a neutral third-party claims administrator to facilitate distribution of any notice deemed appropriate by the Court" (Def. Mem. at 25-26) and that "Plaintiffs' proposed notice is improper and inaccurate" because it: "appears to be endorsed by the Court" (id. at 24); "provides an inadequate description of Plaintiffs' claims and the purported class" (id.); "fails to offer any explanation or description of the legal process and what may be required of a class member who opts in to the action" (id.); "is devoid of a date by which the consents to sue are to be returned" (id. at 27); and "incorrectly sets the cut-off date" for the collective action period "as September 17, 2004 rather than October 9, 2004" (id. at 27 n.9).

Plaintiffs' proposed Notice is approved, with the following modifications: First, references to "Go West" should be eliminated from the Notice **or** the Notice should reflect that all claims against Go West have been stayed by the court. See 11 U.S.C. § 362(a)(1). Second, the description of the lawsuit section should reflect that Plaintiffs have not applied for collective treatment of overtime claims. (Pl. Reply at 17 n.28.) Third, the Notice should be addressed to workers employed by Scores since October 9, 2004, rather than since September 17, 2004, because the FLSA statute of limitations, 29 U.S.C. § 255(a), bars claims accruing over three years prior to the commencement of this lawsuit on October 9, 2007, see Fasanelli, 516 F. Supp.2d at 323 & n.3, and Plaintiffs do not offer any support for equitable tolling, see Greenberg

v. Kraich, 2004 WL 2414006, at *4 (S.D.N.Y. Oct. 28, 2004).[2]

**(C)** **Motion to Dismiss**

**New York Labor Law Claims**

Defendants argue that the New York Labor Law Claims should be dismissed "as inherently inconsistent with the FLSA" because, among other reasons: (1) "allowing Plaintiffs to proceed with their state wage and hour opt-out class claims would contravene the Congressionally-mandated written [opt-in] consent requirement of FLSA Section 16(b)" (Def. Mem. at 3); (2) "Plaintiffs' state law class claims under Rule 23 violate the Rules Enabling Act because they abridge the substantive rights of Plaintiffs to have their . . . claims adjudicated only with their written consent" (id. at 6); and (3) "[s]ince the members of the putative Rule 23 Class are mostly transient, unfindable, and therefore unlikely to receive notice, they will not have an effective opportunity to opt out" (id. at 7). Defendants also argue that (4) the "Court should decline to exercise supplemental jurisdiction over Plaintiffs' New York Labor Law Claims" because "attempting to prosecute, defend and adjudicate [such] claims on a Rule 23 opt-out basis raises novel and complex issues of state law," and "the state law claims would substantially predominate over FLSA claims." (Id. at 8-9.)

Plaintiffs counter, among other things, that: (1) "Courts in the Second Circuit 'routinely' allow workers to bring 'hybrid' wage and hour actions . . . in which Plaintiffs bring an opt-in

---

[2] Defendants' other criticisms of the proposed Notice are without basis. There is no need for a third-party notice administrator, see, e.g., Williams v. Trendwest Resorts, Inc., No. CVS05-0605, 2006 WL 3690686, at *7 (D. Nev. Dec. 7, 2006); the statement that "[t]his is a court authorized notice" "is standard and is essential to inform potential litigants that in fact the Notice that they are receiving has been approved and ordered by the court," Bowens v. Atlantic Maintenance Corp., 2008 WL 1827439, at *26 n.30 (E.D.N.Y. Apr. 23, 2008); the Notice adequately describes potential Plaintiffs' obligations should they opt-in (see Notice at 4-5); and the Notice properly states that the "signed Consent to Join form must be postmarked by [60 days from the mailing of this Notice]," see, e.g., Bowens, at *26.

FLSA collective action alongside an opt-out Rule 23 class action" (Pl. Reply at 2 & n.4); (2) "Plaintiffs' [New York Labor Law] class action does not violate the Rules Enabling Act" (id. at 9); (3) the argument that "the Court should dismiss Plaintiffs' state law claims because the putative class members are 'transient and unfindable'" is "premature" and "is properly raised in an opposition to a class certification motion" (id. at 11-12); and (4) the Court may exercise original jurisdiction over the New York Labor Law Claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), or "supplemental jurisdiction under 28 U.S.C. § 1367(a)" (id. at 13-14).

Defendants' motion to dismiss is denied for the following reasons. First, "the courts in this circuit do not consider FLSA opt-in and state-law opt-out class certification requirements conflicting." Lynch v. United States Auto. Ass'n, 2007 WL 3355506, at *4 (S.D.N.Y. Nov. 8, 2007); accord Gonzalez v. Nicholas Zito Racing Stable Inc., No. 04 CV 22, 2008 WL 941643, at *9 (E.D.N.Y. March 31, 2008); Guzman v. VLM, Inc., No. 07-CV-1126, 2008 WL 597186, at *10 (E.D.N.Y. March 2, 2008) ("it is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions"); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 374 (S.D.N.Y. 2007) (collecting cases).

Second, Plaintiffs' assertion of state law Rule 23 class action claims does not violate the Rules Enabling Act. See Guzman, 2008 WL 597186, at *10 ("neither FLSA nor the Rules Enabling Act preempts the [New York Labor Law] or its enforcement through a class action"); Westerfield v. Wash. Mut. Bank, 2007 WL 2162989, at *1-3 (E.D.N.Y. July 26, 2007); Klein v. Ryan Beck Holdings, Inc., 2007 WL 2059828, at *5-7 (S.D.N.Y. July 13, 2007).

Third, it is premature to determine whether or not the members of the proposed Rule 23 Class are so "transient" or "unfindable" that "they will not [receive notice and] have an effective opportunity to opt out" (Def. Mem. at 7). See Deen v. New School University, 2007 WL

1032295, at *5 n.9 (S.D.N.Y. March 27, 2007); see also Cuzco v. Orion Builders, Inc., 477 F. Supp.2d 628, 635 (S.D.N.Y. 2007).

Fourth, it is not necessary at this time finally to determine whether the Court will exercise supplemental jurisdiction. Suffice to say at this point, "[t]he members of both classes performed the same type of work for the same related employers and were deprived of . . . compensation purportedly as the result of the same alleged scheme. There is no reason why the claims should be separately litigated in two different courts." Brzychnalski v. Unesco, Inc., 35 F. Supp.2d 351, 354 (S.D.N.Y. 1999) (simultaneously certifying an FLSA collective action and a New York Minimum Wage Act Rule 23 class); accord Gonzalez, 2008 WL 941643, at *8-9; Guzman, 2008 WL 597186, at *9-10; Iglesias-Mendoza, 239 F.R.D. at 374; see also Kuhl v. Guitar Center Stores, Inc., No. 07 C 214, 2008 WL 656049, at *5 n.4 (N.D. Ill. March 5, 2008).

### Claims Of Owimrin and Levin

Defendants argue that the Court should dismiss the Complaint "insofar as it asserts claims for" Plaintiffs Danielle Owimrin and Susan Levin because they "failed to appear to depositions, despite being noticed for deposition in January 2008, not being available therefore, and having been ordered by the Court to appear for their depositions on or before April 7, 2008." (Def. Mem. at 10.) Plaintiffs have not responded to this aspect of Defendants' motion.

In order to dismiss a plaintiff's claim under Fed.R.Civ.P. 37(d) for failure to appear at a deposition, the court "must: (1) find willfulness, bad faith, or fault on the part of the party refusing discovery, and (2) give notice . . . that violation of the court's order will result in dismissal of the case with prejudice." Connell v. City of New York, 230 F. Supp. 2d 432, 436 (S.D.N.Y. 2002). The court must also find that "Defendants were seriously prejudiced by [Plaintiffs'] actions . . . ." Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 887

(S.D.N.Y. 1999). The Court declines to levy the "extreme sanction" of dismissal at this time because, among other reasons: (1) there is no evidence that Owimrin and Levin were notified that failure to appear for a deposition would result in dismissal; and (2) there is no evidence that Defendants were unfairly prejudiced.

### IV.     Conclusion and Order

For the foregoing reasons, Plaintiffs' motion [52] conditionally to certify a collective action under FLSA § 216(b) is granted; Plaintiffs' motion to authorize Notice of the collective action is granted, with modifications; and Defendants' cross-motion [58] to dismiss certain claims is denied. The lawsuit is stayed with respect to claims against Go West, and Plaintiffs' request for permission to move to sever the claims relating to Scores West and Scores East is denied.

Dated: New York, New York
       May 9, 2008

_____
RICHARD M. BERMAN, U.S.D.J.