| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Justin M. Swartz<br>Sonia R. Lin<br>Jennifer Liu<br>3 Park Avenue, 29th Floor<br>New York, New York 10016<br>Telephone: (212) 245-1000 | **BRUCKNER BURCH PLLC**<br>Richard J. Burch (Texas Bar No. 24001807)<br>(admitted *pro hac vice*)<br>1415 Louisiana, Suite 2125<br>Houston, Texas 77002<br>Telephone: (713) 877-8788 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB, BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN LEVIN, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  -against-<br><br>SCORES HOLDING COMPANY, INC.; GO WEST ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST SIDE; ENTERTAINMENT MANAGEMENT SERVICES, INC.; 333 EAST 60th STREET, INC. a/k/a SCORES EAST SIDE; RICHARD GOLDRING; and ELLIOT OSHER.<br><br>     Defendants. | No. 07 Civ. 8718 (THK) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT,**
**SERVICE PAYMENTS TO PLAINTIFFS, AND ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

**INTRODUCTION** .................................................................................................................. 1

**BACKGROUND** .................................................................................................................... 1

     I.     Procedural History ........................................................................................... 1

     II.    Discovery and Litigation.................................................................................. 3

     III.   Settlement Negotiations ................................................................................... 4

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION** ........................ 4

     I.     The Settlement and Notice of the Settlement ............................................. 4

     II.    Release ............................................................................................................. 5

     III.   Allocation Formula ......................................................................................... 5

     IV.   Service Payments ............................................................................................ 6

     V.    Attorneys' Fees and Litigation Costs ............................................................. 6

**ARGUMENT** .......................................................................................................................... 7

     I.     The Settlement Agreement to Resolve Opt-in Plaintiffs' Wage and Hour Claims Should be Approved as Fair and Reasonable. ........................................................ 7

     II.    The Service Payments to the Named Plaintiffs Should be Approved as Fair and Reasonable. .................................................................................................... 9

     III.   Attorneys' Fees and Costs Should be Approved as Fair and Reasonable. ............... 12

**CONCLUSION** ...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ansoumana v. Gristedes Operating Corp.*,
   201 F.R.D. 81 (S.D.N.Y. 2001) ...................................................................................................7

*Braunstein v. E. Photo Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979).............................................13

*Brooklyn Savings Bank v. O'Neil*,
   324 U.S. 697 (1945)....................................................................................................................7

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL
   1948198 (S.D.N.Y. May 11, 2010).................................................................................7, 8, 10

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980)..................................................................................................................13

*Diaz v. Scores Holding Co., Inc.*,
   No. 07 Civ. 8718 (RMB), 2008 WL 7863502 (S.D.N.Y. May 9, 2008) ...............................2, 3

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..............................................................................10, 11, 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   No. 05 Civ. 3452.......................................................................................................................14

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..................................................................................................................12

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)....................................................................................................................7

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................. passim

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ..................................................................................................8

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493
   U.S. 165 (1989)...........................................................................................................................7

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713 (PGG), 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010).......................... passim

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
   No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010), at *1 .........9, 12, 14

*Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 WL 476009, at *5
   (S.D.N.Y. Jan. 6, 2010)..................................................................................................13, 14

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 2494 (DF), 2009 WL 5841177 ...............................................................................14

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997).............................................................................................10

*Sand v. Greenberg*,
   No. 08 Civ. 7840 (PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) .........................................13

*Silberblatt v. Morgan Stanley*,
   524 F. Supp. 2d 425 (S.D.N.Y. 2007)........................................................................................11

*Vazquez v. Ranieri Cheese Corp.*,
   No. 07-CV-464 (ENV)(VVP), 2011 WL 554695 (E.D.N.Y. 2011).........................................13

*Velez v. Majik Cleaning Serv.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 22, 2007)........................................9, 11

*Willix v. Healthfirst, Inc.*,
   No. 07 Civ. 1143 (ENV)(RER) 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).................7, 8, 13


**STATUTES**

29 U.S.C. § 216(b) ............................................................................................................................12


**OTHER AUTHORITIES**

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive
   Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
   10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ................................................................................10

**INTRODUCTION**

Following discovery, mediation, and extensive arm's length negotiations, Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, and Susan Levin, individually and on behalf of all others similarly situated, and Defendants Scores Holding Company, Inc. ("Scores Holding Co."), Go West Entertainment, Inc. a/k/a Scores West Side ("Go West"), 333 East 60th Street, Inc. a/k/a Scores East Side ("333 East 60th Street"), Richard Goldring, and Elliot Osher (collectively "Defendants") have agreed to resolve this wage and hour lawsuit. The parties have agreed to settle all of the wage and hour claims of the individuals who opted-in to the collective under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (the "Opt-in Plaintiffs"), and to dismiss the claims of all putative class plaintiffs who are not Opt-in Plaintiffs without prejudice. The specific terms and conditions of the settlement have been reduced to writing in a Settlement Agreement and Release of Claims ("Settlement Agreement"), attached as Exhibit B to the Declaration of Justin M. Swartz.[1]

The parties' $450,000 settlement for the Opt-in Plaintiffs is fair and reasonable and thus should be approved by the Court.

**BACKGROUND**

**I.     Procedural History**

On October 9, 2007, Plaintiff Siri Diaz commenced this action by filing a class and collective action complaint against Scores Holding Co., Go West, and Scores Entertainment, Inc. ("SEI"), alleging on behalf of herself and all other similarly situated employees that Defendants failed to pay workers at two Scores adult nightclubs proper minimum wages and overtime

---

[1]  While counsel for the parties have negotiated and agreed upon the terms of the Settlement Agreement, and the named Plaintiffs have all executed the Settlement Agreement, the parties continue to await Defendants' signatures to the agreement.

1

compensation, unlawfully confiscated part of workers' tips and gratuities earned, and unlawfully deducted from wages, among other claims, in violation of the FLSA and the New York Labor Law ("NYLL"). (Swartz Decl. ¶ 4.)

An Amended Complaint adding Carolyn Siegel, Talia Bumb, Blerta Vikki, and Danielle Owimrin as plaintiffs was filed on November 15, 2007. (*Id.* ¶ 5.) A Second Amended Complaint adding Susan Levin as a plaintiff and Entertainment Management Services, Inc. ("EMS"), and 333 East 60th Street as defendants was filed on February 21, 2008, and a Third Amended Complaint adding individuals Richard Goldring and Elliot Osher as defendants was filed on September 2, 2009. (*Id.* ¶¶ 6, 12 & Ex. A (Third Am. Compl.).)

On May 9, 2008, the Court denied Defendants' motion to dismiss and granted Plaintiffs' motion for conditional certification of the case as an FLSA opt-in collective action pursuant to 29 U.S.C. § 216(b). *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718 (RMB), 2008 WL 7863502, at *2 (S.D.N.Y. May 9, 2008). The Court authorized notice of the action to current and former workers. *Id.* Eighty-three individuals joined the case as Opt-in Plaintiffs by filing with the Court consent forms to join the § 216(b) collective action that specifically designated the named Plaintiffs to make decisions on their behalf and to be bound by those decisions, including decisions concerning settlement. (Swartz Decl. ¶ 8.)

Also on May 9, 2008, the Court stayed the case with respect to the defendant Go West based on Go West's April 18, 2008 voluntary petition for bankruptcy under Chapter 11 filed in the United States Bankruptcy Court in the Southern District of New York. *Diaz*, 2008 WL 7863502, at *3. Go West was dismissed from bankruptcy proceedings on July 23, 2009, and was later dissolved as of July 28, 2010. (*Id.* ¶ 10.)

2

Since the filing of the litigation, two other corporate defendants in addition to Go West have been dissolved. EMS was dissolved as of July 29, 2009. 333 East 60th Street was dissolved as of October 28, 2009. (*Id.* ¶ 11.)

On January 19, 2011, Judge Berman referred the case to United States Magistrate Judge Katz to conduct all proceedings in the action, including trial, the entry of final judgment, and all post-trial proceedings, pursuant to the parties' consent. (Docket No. 142.)

On January 21, 2011, the Court dismissed Defendants SEI and EMS under Fed. R. Civ.P. 41(a)(2) and tolled the statute of limitation for all claims against the two entities for 180 days. (Docket No. 143.)

## II.   Discovery and Litigation

The parties engaged in substantial formal and informal discovery before agreeing to resolve this case. Defendants produced hundreds of pages of paper and electronic documents requested by Plaintiffs, including personnel records, payroll records, 1099 and W-2 forms, employment agreements, license agreement, and class lists. (Swartz Decl. ¶ 15.) Plaintiffs conducted two depositions of Defendants' corporate representatives under Fed. R. Civ. P. 30(b)(6) and obtained factual information and declarations from the named Plaintiffs and Opt-in Plaintiffs regarding their job duties, the terms and conditions of their work, and their compensation at Scores. (*Id.* ¶¶ 16-20.)

Defendants conducted depositions of named Plaintiffs Siri Diaz, Carolyn Siegel, Blerta Vikki, and Talia Bumb. (*Id.* ¶ 17.) Plaintiffs also produced documents to Defendants in response to Defendants' document requests. (*Id.* ¶ 18.)

**III.     Settlement Negotiations**

The parties have engaged in several settlement discussions since 2008, including a settlement conference before the Judge Katz held April 7, 2009, a mediation before Southern District of New York mediator Frances Carling held April 19, 2010, and a settlement conference before Judge Berman held September 29, 2010.  (*Id.* ¶ 21.)  In addition to these formal settlement discussions, the parties have engaged in numerous and extensive arm's length negotiations by telephone and electronic mail.  (*Id.* ¶ 22.)  As a result of their efforts, the parties have now mutually agreed to resolve this lawsuit on the terms and conditions set forth in the Settlement Agreement.  (*Id.* ¶ 23 & Ex. B (Settlement Agreement).)

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

**I.     The Settlement and Notice of the Settlement**

The parties have agreed to settle all of the Opt-in Plaintiffs' claims and to dismiss the claims of the putative class plaintiffs (defined in the Settlement Agreement as those individuals who are members of the putative class and who have not filed a consent form to participate in the litigation) without prejudice.  Thus the settlement only applies to the 83 Opt-in Plaintiffs.  In exchange for Defendants' agreement to settle the lawsuit, the Opt-in Plaintiffs agree to release and discharge their wage and hour claims under the FLSA and NYLL, as described in the Settlement Agreement.

The Settlement Agreement creates a fund of $450,000 ("the Settlement Fund").  The Settlement Fund covers attorneys' fees and costs, Opt-in Plaintiffs' awards, and service payments to the named Plaintiffs.  (*Id.* Ex. B (Settlement Agreement) ¶ 3.1(A).)  Within ten days of the Court's approval of this settlement, Defendants shall deposit the Settlement Fund into an

escrow account, and any interest accrued from the escrow account will become part of the Settlement Fund.  (*Id.* ¶ 3.1(B).)

A Claims Administrator will be responsible for mailing the proposed notice of settlement to all Opt-in Plaintiffs within 20 days of the Court's approval of this action.  (*Id.* ¶ 2.3(B) & Ex. C (Proposed Notice of Settlement).)  The proposed notice alerts Opt-in Plaintiffs to the terms of the settlement, informs them of the scope of the release, and informs them that they may opt-out of the settlement by mailing a written, signed statement to the Claims Administrator within 30 days stating that they wish to exclude themselves from the settlement in the lawsuit against Scores.  (*Id.* Ex. C (Proposed Notice of Settlement).)

The Claims Administrator will receive and forward opt-out statements, calculate each person's individual settlement award and tax withholdings, and mail settlement checks to Opt-in Plaintiffs who do not opt-out.  (*Id.* ¶¶ 2.4, 3.4.)  None of the Settlement Fund will revert to Defendants.  (*Id.* ¶ 3.6(F).)  Defendants shall pay the Claims Administrator's cost of administration.  (*Id.* ¶ 2.1.)

**II.     Release**

The Settlement Agreement provides that every Opt-in Plaintiff who does not timely opt out of the settlement and who cashes a settlement check shall release Defendants from all FLSA and NYLL wage and hour claims that were asserted or could have been asserted in the lawsuit.  (*Id.* ¶ 3.8.)

**III.    Allocation Formula**

The allocation formula takes into account the number of weeks worked by each Opt-in Plaintiff between October 9, 2001 and December 31, 2008, as well as the Opt-in Plaintiff's position at Scores.  (*Id.* ¶ 3.4(A).)  Under the Settlement Agreement, Opt-in Plaintiffs who

worked as entertainers at Scores are entitled to more points than Opt-in Plaintiffs who worked in another position (bartender, barback, cashier, or server).  The difference in points is due to the requirement at Scores that entertainers pay a nightly "house fee" in order to work, a fact that provided an additional factual basis for entertainers' unlawful deduction claims.  (Swartz Decl. ¶ 33.)

### IV.     Service Payments

The Settlement Agreement provides that the six named Plaintiffs will apply to the Court to receive service payments in recognition of their efforts in obtaining the benefits of the settlement for the Opt-in Plaintiffs.  (*Id.* Ex. B (Settlement Agreement) ¶ 3.3.)  The named Plaintiffs assisted in the preparation of the complaints, provided Plaintiffs' Counsel with relevant documents, submitted declarations in support of Plaintiffs' claims, and assisted counsel in the investigation of Plaintiffs' claims.  (Swartz Decl. ¶¶ 35-36.)  Four of the named Plaintiffs, Siri Diaz, Carolyn Siegel, Talia Bumb, and Blerta Vikki, were deposed by Defendants and prepared extensively with Plaintiffs' counsel in advance of their depositions; they seek a $7,000 service payment.  (*Id.* ¶¶ 34, 36.)  Two named Plaintiffs were not deposed and seek a $1,000 service payment.  (*Id.* ¶ 34.)  Defendants agree to Plaintiffs' application for service payments.  (*Id.* Ex. B (Settlement Agreement) ¶ 3.3.)

### V.      Attorneys' Fees and Litigation Costs

In the Settlement Agreement, Defendants agree that Plaintiffs' Counsel will ask the Court to approve payment of one-third of the Fund – $150,000 – as attorneys' fees and an additional amount not to exceed $25,000 reimbursing Plaintiffs' Counsel for reasonable litigation costs and expenses.  (*Id.* ¶ 3.2.)  The amount requested for attorneys' fees is substantially below total lodestar that Plaintiffs' Counsel has incurred to date and represents a significant loss for

Plaintiffs' Counsel, as they have worked without compensation of any kind to date and their fee has been wholly contingent upon the result achieved. (Swartz Decl. ¶¶ 37-44 & Ex. D (Summary of Attorney and Staff Time and Litigation Costs and Expenses).)

## ARGUMENT

**I.  The Settlement Agreement to Resolve Opt-in Plaintiffs' Wage and Hour Claims Should be Approved as Fair and Reasonable.**

FLSA settlements generally require judicial approval to be effective, because private settlements will not effectuate a valid release. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 703-04 (1945). Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *See Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]"). Thus, because under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010) ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). *See also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER) 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010

7

WL 2025106, at *6 (E.D.N.Y. Jan. 20, 2010). Accordingly, the exacting standards for approval of a class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Clark*, 2010 WL 1948198, at *7; *McMahon*, 2010 WL 2399328, at *6; *Willix*, 2011 WL 754862, at *5, *Khait*, 2010 WL 2025106, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Clark*, 2010 WL 1948198, at *7; *McMahon*, 2010 WL 2399328, at *6; *Willix*, 2011 WL 754862, at *5; *Khait*, 2010 WL 2025106, at *7.

In this case, the settlement was the result of vigorously contested litigation lasting nearly four years, with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time. (Swartz Decl. ¶¶ 4-20.) Plaintiffs conducted a thorough investigation, including interviews with Opt-in Plaintiffs, production and review of paper discovery, depositions of Defendants' corporate representatives, and depositions of four named Plaintiffs. (*Id.* ¶¶ 15-20.) Recognizing the uncertain legal and factual issues involved, particularly the risk of collection against corporate defendants that have dissolved since the filing of the lawsuit, the parties reached the settlement pending before the Court after engaging in several formal settlement discussions, as well as in negotiations conducted by telephone and electronic mail through counsel. (*Id.* ¶¶ 21-27.) At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. (*Id.* ¶ 27.) Accordingly, the

Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore appropriate for approval.

In addition, the amount of the maximum settlement fund, the proposed notice of settlement, and the payment process agreed to by the parties are fair and reasonable. The settlement requires Defendant to pay a substantial sum to resolve the Opt-In Plaintiffs' claims. Each Opt-In Plaintiff will be allocated a share of the settlement fund based on an equitable formula taking into account his or her position and the time he or she worked for Defendants during the period covered by the settlement. (Swartz Decl. Ex. B (Settlement Agreement) ¶ 3.4(A).) Opt-In Plaintiffs will be provided with notice of their right and opportunity to receive a monetary award as part of the settlement, and the notice will include information concerning the nature and amount of the settlement, the scope of the release, and each Opt-in Plaintiff's right to opt-out of the settlement. (Swartz Decl. Ex. B (Settlement Agreement) ¶¶ 2.3, 2.4 & Ex. C (Proposed Notice of Settlement).)

II.     **The Service Payments to the Named Plaintiffs Should be Approved as Fair and Reasonable.**

Plaintiffs' request for the Court's approval of service payments of $7,000 each to Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb and Blerta Vikki and $1,000 each to Danielle Owimrin and Susan Levin is fair and reasonable. Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g*, *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010), at *1 ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning*

*Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Clark*, 2010 WL 1948198, at *9; *McMahon*, 2010 WL 2399328, at *8-9, *Khait*, 2010 WL 2025106, at *9; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery."). *See also* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage and hour rights).

"Incentive awards . . . are within the discretion of the court." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class action settlement). In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *See id*. Here, the named Plaintiffs satisfy all three factors.

First, in this settlement on behalf of a FLSA § 216(b) collective, just as in the Rule 23 class action settlements cited above, the named Plaintiffs agreed to bring the action in their

10

name and to testify if there was a trial. (Swartz Decl. ¶ 35.) In so doing, they assumed the risk of retaliation. (*Id.* ¶ 35.) *See Frank*, 228 F.R.D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *See also Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

Even where there is not a record of actual retaliation, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.")

Second, the named Plaintiffs should be awarded service payments for the significant work they undertook on behalf of the Opt-in Plaintiffs. They expended time and effort to assist with the preparation of the complaints, provide counsel with relevant documents in their possession, submit declarations, and assist counsel in the investigation of Plaintiffs' claims. (Swartz Decl. ¶ 36.) Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation. *See Frank*, 228 F.R.D. at 187-88 (recognizing the

important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents). In addition, plaintiffs Diaz, Siegel, Bumb and Vikki expended even greater time and effort preparing for and undergoing depositions in which they provided valuable testimony in aid of Plaintiffs' case. (Swartz Decl. ¶ 36.) Their additional service warrants their greater service payments.

Last, the amount of the service awards agreed to by the parties is consistent and reasonable with awards given in class and collective actions. *See, e.g.*, *McMahon*, 2010 WL 2399328, at *8-9 (awarding $5,000 service payments to two class representatives from $400,000 fund); *Parker*, 2010 WL 532960, at *1-2 (awarding service payments of $5,000 to $15,000 to twelve class representatives from $745,000 fund).

### III.    Attorneys' Fees and Costs Should be Approved as Fair and Reasonable.

Finally, the parties have reached a reasonable agreement regarding attorneys' fees and litigation costs that should be approved by the Court. *See* 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.")(emphasis added). When a statute, such as the FLSA, provides for attorneys' fees, the Supreme Court has expressed a preference that the parties agree to the amount of the fee. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.").

As part of the instant settlement, the parties reached an agreement on payment of attorneys' fees in the amount of one-third of the Settlement Fund, or $150,000, plus reimbursement of litigation costs not to exceed $25,000. (Swartz Decl. Ex. B (Settlement

12

Agreement) ¶ 3.2(A) & Ex. D (Summary of Attorney and Staff Time and Litigation Costs and Expenses).)  Plaintiffs' Proposed Notice of Settlement also includes information about the attorneys' fees and costs for the Opt-in Plaintiffs.  (*Id.* Ex. C (Proposed Notice of Settlement).)

These amounts are reasonable.  Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel."  *Sand v. Greenberg*, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA.  *See Braunstein v. E. Photo Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *Willix*, 2011 WL 754862, at *6 (citing cases); *Vazquez v. Ranieri Cheese Corp.*, No. 07-CV-464 (ENV)(VVP), 2011 WL 554695, at *4 (E.D.N.Y. 2011) ("[t]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements") (internal quotation marks and citation omitted).  *See also McMahon*, 2010 WL 2399328, at *7; *Khait,* 2010 WL 2025106, at *8; *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811 (MGC), 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010); *Sand*, 2010 WL 69359, at *3.

In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award.  *See Frank*, 228 F.R.D. at 189.  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorney[s] general," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980), attorneys who fill the private attorney general role must be adequately compensated for their efforts.

*McMahon*, 2010 WL 2399328, at *7; *Khait,* 2010 WL 2025106, at *8; *Prasker*, 2010 WL 476009, at *6.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  *Id.*

In this case, Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Opt-in Plaintiffs' claims.  Since the filing of the original complaint in October 2007, Outten & Golden LLP has spent more than 2,084 attorney, paralegal, and support staff hours prosecuting this case.  (*Id.* ¶ 38.)  Bruckner Burch PLLC has spent more than 74 attorney hours on the case.  (*Id.* ¶ 39.)  Multiplied by each attorney's, paralegal's, and staff member's hourly rate, this results in a total lodestar amount of approximately $834,285.96.  (*Id*. ¶ 40 & Ex. D (Summary of Attorney and Staff Time and Litigation Costs and Expenses).)

Their efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  (*Id.* ¶ 42.)  The requested award is consistent with the norms of class and collective litigation in this circuit.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL782596, at *5 (S.D.N.Y. Mar. 24, 2008).  *See also Parker*, 2010 WL 532960, at *2  (awarding class counsel 33% of $745,000 fund in FLSA and NYLL class and collective action); *McMahon*, 2010 WL 2399328, at *7 (awarding class counsel 33% of $400,000 settlement fund in FLSA and NYLL class and collective action) *Prasker*, 2010 WL 476009, at *6  (awarding class counsel fees of $346,500 out of $1,050,000 settlement fund in FLSA and NYLL class and collective action); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494 (DF), 2009 WL 5841177, at *4 (awarding 33% of $710,000 fund in FLSA and NYLL class and collective action).

14

The requested award is also significantly below lodestar and represents a significant loss for Plaintiffs' Counsel. (Swartz Decl. ¶ 42.) Plaintiffs' Counsel anticipates that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from Opt-in Plaintiffs about the case and working with the Claims Administrator. (*Id.* ¶ 44.) Accordingly, the parties' agreement that Plaintiffs' Counsel recover attorneys' fees in the amount of one-third of the Settlement Fund, or $150,000, is reasonable and should be approved.

The parties' agreement regarding the reimbursement of litigation costs in the amount of $22,679.68 is also reasonable. (*Id.* ¶ 43 & Ex. B (Settlement Agreement) ¶ 3.2(A).) Plaintiffs' Counsel has incurred litigation costs for mailings, transportation, long-distance telephone calls, working meals, photocopies, electronic research, professional services, depositions, and filing fees among other expenses. (Swartz Decl. ¶¶ 38, 39.) In light Plaintiffs' Counsel's zealous prosecution of this action over several years, the parties' agreement for reimbursement of $22,679.68 in litigation costs and expenses is reasonable and should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) approve the parties' settlement agreement, (2) award the requested service payments to named Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, and Susan Levin; and (3) award attorneys' fees of one-third of the Settlement Fund plus reimbursement of litigation costs and expenses to Plaintiffs' Counsel in the amount of $22,679.68.

Dated: June 28, 2011
      New York, New York

15

Respectfully submitted,

By:

/s/ Sonia R. Lin
Sonia R. Lin

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Sonia R. Lin
Jennifer Liu
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (Texas Bar No. 24001807)
(admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: (713) 877-8788

**Attorneys for Plaintiffs**

16