# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB,
BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN
LEVIN, on behalf of themselves and all others similarly
situated,                                                                         No. 07 Civ. 8718 (RMB)(THK)

                          Plaintiffs,                              **JOINT SETTLEMENT**
                                                                          **AND RELEASE**

          -against-

SCORES HOLDING COMPANY, INC.; GO WEST
ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE;
SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST
SIDE; ENTERTAINMENT MANAGEMENT SERVICES,
INC.; 333 EAST 60th STREET, INC. a/k/a SCORES EAST
SIDE; RICHARD GOLDRING; and ELLIOT OSHER.

                          Defendants.
-------------------------------------------------------------------X

          This Joint Stipulation of Settlement and Release (collectively, the "Agreement"), is
entered into by and between Plaintiffs (as hereinafter defined) and Opt-in Plaintiffs (as
hereinafter defined) on the one hand, and Defendants (as hereinafter defined). This Agreement is
subject to the terms and conditions hereof and to the approval of the Court.

## RECITALS

          WHEREAS, Plaintiff Siri Diaz filed a Class Action Complaint against Scores Holding
Company, Inc., Go West Entertainment, Inc., and Scores Entertainment, Inc. on October 9, 2007;
an Amended Complaint adding Carolyn Siegel, Talia Bumb, Blerta Vikki, and Danielle Owimrin
as Plaintiffs on November 15, 2007; a Second Amended Complaint adding Susan Levin as a
Plaintiff and Entertainment Management Services, Inc., and 333 East 60th Street, Inc. as
Defendants on February 21, 2008; and a Third Amended Complaint (the "Complaint") adding
Richard Goldring and Elliot Osher as Defendants on September 2, 2009:

          WHEREAS, the Complaint asserted collective action claims under the Federal Fair Labor
Standards Act ("FLSA") Section 216(b) and class claims under the New York Labor Law on
behalf of Plaintiffs and other current and former bartenders, servers, and dancers (the "Alleged
Class") and sought recovery of, among other things, minimum wages, overtime, tips and
gratuities earned, unlawful deductions from wages, uniform costs, and spread-of-hours pay for
shifts worked of 10 hours or more that Defendants allegedly failed to pay to the class members at
their two clubs, Scores West and Scores East, both located in New York State, and attorneys'
fees and costs, as well as injunctive and declaratory relief under the New York Labor Law; and

WHEREAS, on April 18, 2008, Defendant Go West Entertainment, Inc. filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court, Southern District of New York; and

WHEREAS, on May 9, 2008, the Court stayed the case with respect to Go West Entertainment, Inc. and granted Plaintiffs' motion for conditional certification of the case as an FLSA opt-in collective action; and

WHEREAS, notice of the FLSA portion of this case was given to current and former workers who worked at Scores East during relevant time periods; and

WHEREAS, approximately 83 individuals joined the case as Opt-in Plaintiffs by filing with the Court consent forms to join the Litigation (as hereinafter defined), and the consent forms specifically designated Outten & Golden LLP to represent them; and

WHEREAS, on July 23, 2009, Go West Entertainment, Inc. was dismissed from Chapter 11 proceedings in Bankruptcy Court; and

WHEREAS, Entertainment Management Services, Inc., was dissolved as of July 29, 2009, 333 East 60th Street, Inc., was dissolved as of October 28, 2009, and Go West Entertainment, Inc., was dissolved as of July 28, 2010; and

WHEREAS, on January 21, 2011, the Court dismissed Defendants Scores Entertainment, Inc. and Entertainment Management Services, Inc. and tolled the statute of limitation for all claims against the two entities for 180 days; and

WHEREAS, the purpose of this Agreement is to settle fully and finally all obligations or differences between Defendants and the Plaintiffs and Opt-in Plaintiffs asserted in or that could have been asserted in *Diaz v. Scores Holding Co., Inc.*, No. 07 Civ. 8718 (RMB)(THK) (S.D.N.Y.) (the "Litigation"), including without limitation, claims based on the failure to pay minimum wages, overtime, tips and gratuities earned, unlawful deductions from wages, uniform costs, and spread-of-hours pay for shifts worked of 10 hours or more, under federal and state law, including any claims for liquidated damages, interest, attorneys' fees, and costs; and

WHEREAS, the purpose of this Agreement is also to accomplish the complete dismissal of the Litigation by dismissing without prejudice the claims of the Putative Class Plaintiffs (as hereinafter defined) asserted in the Litigation; and

WHEREAS, Defendants deny and continue to deny all of the allegations made by Plaintiffs in the Litigation, whether on behalf of themselves or the Opt-in Plaintiffs, and deny and continue to deny that they are liable or owe damages, fees or costs, to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, counsel for the Plaintiffs and Opt-in Plaintiffs have conducted an extensive investigation of the facts and claims alleged in the Litigation, including, but not limited to, interviewing Plaintiffs and Opt-in Plaintiffs, reviewing documents and data obtained during discovery, conducting depositions of Plaintiffs and Defendants; and

WHEREAS, the parties have engaged in extensive arm's length negotiations and mediation concerning the settlement of the claims asserted in the Litigation before an experienced mediator and before the Court; and

WHEREAS, the Plaintiffs and their counsel Outten & Golden LLP are sufficiently familiar with the facts of the case and the applicable federal and state laws to make an informed judgment as to the fairness of the settlement. The Plaintiffs and Outten & Golden LLP have analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs, the Opt-in Plaintiffs, and the Putative Class Plaintiffs (as hereinafter defined); and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class, or might result in a recovery that is less favorable to the Class, and that would not occur for several years, the Plaintiffs and their counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Plaintiffs and Opt-in Plaintiffs.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1. DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" shall mean this Joint Settlement and Release.

1.2 **Claims Administrator.** "Claims Administrator" shall mean the entity selected by the Parties to provide notice to the Class and administer payment of claims submitted by Class Members. The Claims Administrator will be designated by the Defendants.

1.3 **Court.** "Court" shall mean to the United States District Court for the Southern District of New York, the Honorable Theodore H. Katz presiding.

1.4 **Covered Period.** "Covered Period" shall mean the period from October 9, 2001 through December 31, 2008:

1.5 **Defendants.** "Defendants" shall mean Scores Holding Company, Inc, Richard Goldring, and Elliot Osher.

3

1.6   **Defendants' Counsel**. "Defendants' Counsel" shall mean Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, (212) 216-8070 and Bryan Cave LLP, 1290 Avenue of the Americas, New York, New York 10104-3300, (212) 541-2000. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Richard L. Steer at Tarter Krinsky & Drogin and Zachary A. Hummel at Bryan Cave LLP.

1.7   **Escrow Account**. "Escrow Account" shall mean the FDIC insured interest-bearing account created and controlled by the Claims Administrator.

1.8   **Litigation**. "Litigation" shall mean *Diaz v. Scores Holding Co., Inc.* No. 07 Civ. 8718 (RMB)(THK) pending in the United States District Court for the Southern District of New York.

1.9   **Net Settlement Fund**. "Net Settlement Fund" shall mean the remainder of the Settlement Payment after deductions for court-approved attorneys' fees and costs as described in Section 3.2 and court-approved service payments to named Plaintiffs as described in Section 3.3.

1.10  **Notice of Settlement.** "Notice of Settlement" shall mean the notice form agreed upon by Plaintiffs' Counsel and Defendant's Counsel, which the Settlement Administrator will mail, via first-class U.S. mail, along with the Settlement Participation Form, to each Opt-in Plaintiff to explain the terms of the settlement. The Notice of Settlement is subject to Court Approval and the parties agree to accept and make any non-material changes necessary to achieve such approval.

1.11  **Opt-in Plaintiffs.** "Opt-in Plaintiff" shall mean any individual, including a Plaintiff, who has filed with the Court a consent to participate in the litigation.

1.12  **Order Granting Settlement Approval.** "Order Granting Settlement Approval" shall mean the Order entered by the Court approving the Settlement Agreement and approving, *inter alia*, the content, manner, and timing of providing notice to Plaintiffs and Opt-in Plaintiffs.

1.13  **Parties.** "Parties" shall mean the Plaintiffs and the Defendants.

1.14  **Plaintiffs.** "Plaintiffs" shall refer to the named Plaintiffs in this action, Siri Diaz, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, and Susan Levin, and shall also include any and all representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.15  **Plaintiffs' Counsel.** Plaintiffs' Counsel shall mean Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York 10016.

1.16  **Putative Class Plaintiffs.** "Putative Class Plaintiffs" shall mean any individual who is a member of the Alleged Class and has not filed a consent to participate in the Litigation.

1.17   **Released Parties.**   "Released Parties" shall mean Scores Holding Company, Inc., Go West Entertainment, Inc., and Scores Entertainment, Inc., Entertainment Management Services, Inc., 333 East 60th Street, Inc., Richard Goldring and Elliot Osher.

1.18   **Service Payment.**   "Service Payment" means such award agreed upon by the parties to be paid to the Plaintiffs in recognition of their efforts in obtaining the benefits of the settlement for the Opt-in Plaintiffs.

1.19   **Settlement Payment.**   "Settlement Payment" shall mean the $450,000 payment that Defendants have agreed to pay to settle the Litigation.

2.   **APPROVAL AND NOTICE**

2.1   **Retention of Claims Administrator.**   The Claims Administrator shall be responsible for the claims administration process and distributions to Plaintiffs, Opt-In Plaintiffs, and Plaintiffs' Counsel as provided herein.   The Parties agree to cooperate with the Claims Administrator and assist it in any commercially reasonable manner in administering the settlement.   Defendants shall pay all of the Claims Administrator's fees.

2.2   **Motion for Judgment and Settlement Approval.**   Within 10 days of the execution of this Agreement, Plaintiffs will submit a Motion for Judgment and Settlement Approval. Among other things, the Motion will ask the Court to:  (a) enter Judgment in accordance with this Agreement, (b) approve the settlement as fair, adequate, reasonable, (c) approve the proposed Notice of Settlement ("Settlement Notice") to be distributed to Plaintiffs and Opt-in Plaintiffs, (d) dismiss the Litigation with prejudice, and (e) incorporate the terms of this Settlement.   Prior to the submittal of the above, and only if the Court extends the time for Plaintiffs to file their Motion past June 17, 2011, Plaintiffs will circulate the draft of the documents to Defendants for comments and edits and will attempt to reach mutually agreement on the contents of same.   Defendants reserve the right to supplement the filing in the event mutual agreement is not reached.   A hearing on the Motion, if any, shall be held at the Court's convenience.

2.3   **Notice to Plaintiffs and Opt-In Plaintiffs.**

(A)   Defendants agree to provide Plaintiffs' Counsel with a list, in electronic form, of the names, last-known addresses, telephone numbers (if known), social security numbers, positions held, and dates and location(s) of employment of all Plaintiffs and Opt-in Plaintiffs as soon as practicable, but no later than 15 days of the Court's Order Granting Settlement Approval, if not already provided.   Plaintiffs shall cooperate with and assist Defendants in compiling the list of all Plaintiffs and Opt-in Plaintiffs by providing updated address and telephone information known to them.   Plaintiffs shall submit the list provided by Defendants to the Claims Administrator.

(B)   Within 20 calendar days of the Court's Order Granting Settlement Approval, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the court-approved Settlement Notice to all Plaintiffs and Opt-In

Plaintiffs using each individual's last known address as provided by the Parties. The notice will contain a complete description of the Released Claims as defined in Section 3.8(A) of this agreement, and it will indicate that acceptance of payment under the Settlement is an agreement to the full and complete release of the Released Claims. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Plaintiff or Opt-in Plaintiff for whom the notice is returned by the post office as undeliverable and shall attempt up to two re-mailings. Defendants' Counsel and Plaintiffs' Counsel have the right to make inquiries and receive any information from the Claims Administrator related to the claims administration process. The Claims Administrator will periodically update Plaintiffs' Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.4   **Opt-Out Procedure.**

(A)   Individuals who joined the Litigation as Opt-In Plaintiffs before this Agreement was executed may request exclusion from the Agreement by "opting out." Opt-In Plaintiffs who choose to opt out must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). The Opt-Out Statement must contain the name, address and telephone number of the Opt-in Plaintiff to be valid. It must also contain the words "I want to exclude myself from the settlement in the lawsuit against the former Scores nights clubs" in order to be valid. To be effective, such Opt-Out Statements must also be sent via First Class United States Mail and postmarked by 30 calendar days after the Claims Administrator mails the Settlement Notice. The 30 day period will begin to run from the first mailing, except for those Opt-Ins whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30 day period for any such Opt-In will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Opt-In, unless another period is set by the Court. The end of the "Opt-Out Period" shall be 30 calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within 10 calendar days after the last day on which it makes such a mailing, notify Plaintiffs' Counsel and Defendants' Counsel of the precise date of the end of the Opt-Out Period. The claims of individuals who opt-out of this Agreement shall be tolled from the filing of the Litigation through 60 days from the date on which their Opt-Out Statement is postmarked.

(B)   The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Plaintiffs' Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Plaintiffs' Counsel and Defendants' Counsel. The Claims Administrator shall retain the

stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

2.5   **Release.**  A Plaintiff or Opt-in Plaintiff who does not opt out pursuant to Section 2.4 will be deemed eligible for a payment hereunder.  Payments will be made by check issued by the Claims Administrator.  All checks issued to Plaintiffs and Opt-In Plaintiffs shall contain, on the back of the check, the following limited endorsement:

"By endorsing this check, I release the Released Parties from all wage and hour claims under the Fair Labor Standards Act and New York Labor Law brought in the lawsuit known as *Diaz v. Scores Holding Co., Inc.* No 07 Civ. 8718 (RMB)(THK) as referenced in the Released Claims section of the Notice of Settlement."

2.6   **Effect of Failure to Approve Settlement.**  In the event the Court fails to approve the Settlement Agreement, the Parties shall proceed as follows.  The Parties jointly agree to (a) seek reconsideration or appellate review of the decision denying approval of the settlement, or (b) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved the Litigation will proceed as if no settlement had been attempted.

3.   **SETTLEMENT TERMS**

3.1   **Settlement Payment.**

(A)   Defendants agree to pay $450,000, which shall resolve and satisfy: (a) all awards to the Plaintiffs and Opt-In Plaintiffs; (b) court-approved service payments to the named Plaintiffs; and (c) court-approved attorneys' fees and costs.  Defendants are jointly and severally liable for the payments described in this Agreement.  Defendants shall also pay employer's share of payroll taxes as described in Section 3.7(C) and the Claims Administrator's fees as described in Section 2.1.  There shall be no reversion of the fund to Defendants.

(B)   Within 10 days of the Court's Order Granting Settlement Approval, Defendants shall deposit $450,000 into the Escrow Account. Any interest accrued from the Escrow Account will become part of the Net Settlement Fund.   Also at this time, Defendants shall also pay the Claims Administrator's estimated cost of administration.

(C)   At the end of the opt-out period or after all requests for rehearing, reconsideration, or appellate review have been exhausted, whichever is later, the Claims Administrator will distribute the $450,000 in the Escrow Account by making the following payments:

(1)   Paying Plaintiffs' Counsel one-third of the money in the Escrow Account as attorneys' fees and, in addition, reimbursing their costs

7

    (2)     Paying Plaintiffs the amounts described in Sections 3.3 and 3.4.

    (3)     Paying Plaintiffs and the Opt-Ins their portion of the Settlement Payment as described in Section 3.4.

3.2    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

    (A)    In their motion seeking approval of the settlement, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Settlement Payment as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Settlement Payment, which shall not exceed $25,000.

    (B)    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.3    **Service Payments to Plaintiffs.** In their motion seeking approval of the settlement, Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb, and Blerta Vikki will apply to the Court to receive $7,000 each from the Settlement Fund for services rendered. Plaintiffs Danielle Owimrin and Susan Levin will apply to the Court to receive $1,000 each from the Settlement Fund for services rendered. Defendants will not oppose such application. The service payments and the requirements for obtaining such payments are separate and apart from, and in addition to, Plaintiffs' recovery from the Net Settlement Fund. The substance of the above-referenced Plaintiffs' application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. Any monies not approved by the Court become part of the Net Settlement Fund.

3.4    **Distribution to Plaintiffs and Opt-In Plaintiffs.**

    (A)    Plaintiffs' and Opt-Ins' proportionate share of the Net Settlement Fund shall be determined by the Claims Administrator pursuant to the formulas set forth below.

        *Points*

        (1)    For each week in which a Plaintiff or Opt-In Plaintiff worked for Scores East or Scores West as a bartender, barback, cashier, or server during the Covered Period, he or she earns 1 point.

8

(2)      For each week in which a Plaintiff or Opt-in Plaintiff worked for Scores East or Scores West as an entertainer during the Covered Period, she earns 4 points.

### *Calculation*

To calculate each Plaintiff and Opt-In's proportionate share:

(1)      Add all points for all Plaintiffs and Opt-Ins together to obtain the "Total Denominator;"

(2)      Divide the number of points for each Opt-In by the Total Denominator to obtain each Plaintiff's and Opt-In's "Portion of the Net Settlement Fund."

(3)      Multiply each Plaintiff's and Opt-In's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Opt-In's "Settlement Award."

(B)      Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.7.

(C)      No later than 20 calendar days of the date of the Court's Order Granting Settlement Approval, Plaintiffs shall submit the list described in Section 2.3(A) to the Claims Administrator.  With the exception of addresses, this data shall be conclusively presumed to be accurate.

(D)      The Claims Administrator shall distribute the Settlement Payment according to the provisions set forth above.  The Claims Administrator shall use reasonable efforts to make an additional mailing to Plaintiffs and Opt-In Plaintiffs whose checks are returned because of incorrect addresses.  Such efforts shall include using social security numbers to obtain better address information and, for Plaintiffs and Opt-In Plaintiffs whose payment is greater than $100, attempting to call such individuals.  As soon as practicable, the Claims Administrator shall provide Plaintiffs' Counsel and Defendants' Counsel with a list of all Plaintiffs and Opt-In Plaintiffs whose checks are returned and for each, provide an explanation of the efforts undertaken to contact the Plaintiff or Opt-In Plaintiff.

(E)      With the distribution of the Settlement Payment pursuant to Section 3.1, the Claims Administrator shall provide each Plaintiff and Opt-In Plaintiff with a statement containing the total amount that the Plaintiff or Opt-In Plaintiff will receive pursuant to this Agreement, as well as a calculation of the amount contained in that particular distribution.

(F)      If payments to Plaintiffs and Opt-In Plaintiffs as described in this Section are not cashed within 90 days of the check date, the checks will be null and void and the money will remain in the Escrow Account.  If, in the view of Plaintiffs' Counsel,

there are sufficient funds remaining in the Escrow Account 90 days after the payments described in Section 3.1 have been distributed to make a second distribution, the Claims Administrator shall redistribute the money among Plaintiffs and Opt-In Plaintiffs who cashed their first settlement checks in pro-rata payments based on the formula described in this Section. The Claims Administrator will use the amount remaining to pay for the cost of the second distribution. If, in Plaintiffs' Counsel's view, a second distribution is not administrably feasible because insufficient funds remain in the Escrow Account after the payments described in Section 3.1 have been distributed, the money will be donated to a workers' rights organization under the *cy pres* doctrine. Plaintiffs' Counsel will confer with Defendants' Counsel about the distribution of any remaining portions of unclaimed Net Settlement Fund. There will be no reversion to Defendants.

**3.7**     **Taxability of Settlement Payments.**

(A)     For tax purposes, 50% of payments to Plaintiffs and Opt-In Plaintiffs pursuant to Section 3.1 shall be treated as back wages and 50% of such payments shall be treated as liquidated damages and prejudgment interest.

(B)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding provided that Plaintiffs' counsel submits a W-9 form. Plaintiffs' Counsel will receive a Form 1099 for this payment. Service payments pursuant to Section 3.3 shall be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(C)     Defendants shall pay all state and federal payroll taxes imposed by applicable law by the end of the quarter when the distribution of the Settlement Payment is made, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to this Section.

(D)     Plaintiffs and Opt-In Plaintiffs acknowledge and agree that each individual Plaintiff and Opt-In Plaintiff will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than taxes specified in Section 3.7(C)). Plaintiffs and Opt-Ins acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement. The parties agree

to bear the cost of their own attorneys' fees, disbursements and the like incurred in defense of such claim(s) and shall not be liable for the attorneys' fees, disbursements, costs and like incurred by the other party in defense of said claim(s).

**3.8   Release**

(A)   **Released Claims**.   For and in consideration of the mutual promises contained herein, Plaintiffs fully and finally release, as of the approval of the Settlement, the Released Parties from any and all claims asserted or unasserted, known and unknown, that were pled or could have been pled, which arise from the non-payment of wages, hours worked, overtime work performed, payment of tips, uniform costs, spread of hours, and violations of any and all laws concerning payment of wages or overtime, including without limitation, claims under the federal Fair Labor Standards Act, the New York Labor Law, or any other federal, state, or local wage and hour laws, including claims for wages, overtime pay, benefits, bonuses, attorney fees, liquidated damages, penalties, interest, and the like whenever accruing, punitive damages, or conversion.

(B).   The Released Claims described above. include, and the Plaintiffs do and are hereby deemed to release, without limitation:  the causes of action alleged in the Complaint, and each Amended Complaint, including without limitation, claims for recovery of unpaid wages and any and all other claims which are based on or relate to the purported non-payment of overtime compensation, whether based on New York or federal statute, ordinance, regulation, common law, or other source of law, whether such claims are in the nature of back pay, damages, bonuses, benefits, liquidated damages, penalties, interest (including claims for penalties, interest, and the like), punitive damages, attorneys' fees, costs, expenses, or injunctive relief, whether in contract, tort, or pursuant to a statutory remedy, including, but not limited to, any claims that were or could have been brought under New York Labor Law, the Fair Labor Standards Act, and all implementing regulations and interpretative guidance or rulings and the like; any claims for conversion of overtime compensation or pay; and any related claims for accounting, declaratory relief, and injunctive relief.

(C)   **No Assignment.**   Plaintiffs' Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(D)   Except for the obligations expressly provided for in this Agreement, Plaintiffs and Plaintiffs' Counsel fully and finally release, as of the approval of the Settlement, the Released Parties from any and all claims in favor of Plaintiffs' Counsel arising from the Action, including by way of example only, any and all claims for attorneys' fees, costs, consultant's fees, expert witness fees, interest, or any other expenses incurred by Plaintiffs or Plaintiffs' Counsel in connection with or related

in any manner to the Complaint, the Settlement, or the administration of the Settlement.

(E)    Notwithstanding anything to the contrary within this Agreement, no release of any claims shall be effective if the Settlement Payment is not made by the Defendants.

## 4.0    Miscellaneous

(A)    **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(B)    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(C)    **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Opt-Ins, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(D)    **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(E)    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(F)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(G)    **Blue Penciling.**  Following 31 days after the Court's Order Granting Settlement Approval or after all requests for rehearing, reconsideration, or appellate review have been exhausted, whichever is later, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect, with the exception of the Released Claims, which, if found

unenforceable in any effect, the parties shall handle the issue as provided in Section 2.6.

(H)  **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(I)  **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

(J)  **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(K)  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.  The failure of one or more Plaintiffs to sign this Agreement does not affect its enforceability.

(L)  **Facsimile/Electronic Signatures.**  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(M)  **Non-Admission.**  Defendants and Released Parties have denied and deny they have engaged in any unlawful activity, have failed to comply with the law in any respect, or have any liability to anyone under the claims asserted in the Complaint or any amended Complaint.  The Parties expressly acknowledge that this Agreement is entered into for the purpose of compromise of highly disputed claims and that nothing herein is an admission of liability, wrongdoing, or

13

certification of a class by Defendants or the Released Parties.  Neither the Agreement nor any document prepared in connection with the Settlement may be admitted in any proceeding as an admission by Defendants or the Released Parties, Plaintiffs, or any person within the definition of the Class.  However, this paragraph and all other provisions of this Agreement notwithstanding, any and all provisions of this Agreement may only be admitted in evidence and otherwise used in any and all proceedings to enforce any or all terms of this Agreement, or in defense of any claims released or barred by this Agreement.

(N)    **No Publicity.**  Other than through court filings authorized herein, Plaintiffs and Plaintiffs' Counsel shall not publicize the Agreement or the Settlement, including without limitation, discussing the Agreement Settlement or the Action with any representative of any print, radio, or television media or posting any statement concerning the Agreement or the Settlement on any internet site, blog or page or through any other electronic media.  If asked about the Agreement or the Action, Plaintiffs and Plaintiffs' Counsel will respond to the effect of, "we are pleased that the case has been resolved."


DATED:  June ___, 2011          Scores Holding Company, Inc.

                                By: _____

                                Its: _____


DATED:  June ___, 2011          Richard Goldring

                                By: _____

                                Its: _____

DATED:  June ___, 2011          Elliot Osher

                                By: _____

                                Its: _____


14

DATED:  June 17, 2011          Siri Diaz

_____

DATED:  June __, 2011          Carolyn Siegel

_____

DATED:  June __, 2011          Talia Bumb

_____

DATED:  June __, 2011          Blerta Vikki

_____

DATED:  June __, 2011          Danielle Owimrin

_____

DATED:  June __, 2011          Susan Levin

_____

15

DATED:  June ___, 2011          Siri Diaz

_____

DATED:  June 17, 2011           Carolyn Siegel

_____

DATED:  June ___, 2011          Talia Bumb

_____

DATED:  June ___, 2011          Blerta Vikki

_____

DATED:  June ___, 2011          Danielle Owimrin

_____

DATED:  June ___, 2011          Susan Levin

_____

15

DATED:  June ___, 2011          Siri Diaz

_____

DATED:  June ___, 2011          Carolyn Siegel

_____

DATED:  June ⬜, 2011          Talia Bumb

_____

DATED:  June ___, 2011          Blerta Vikki

_____

DATED:  June ___, 2011          Danielle Owimrin

_____

DATED:  June ___, 2011          Susan Levin

_____

15

DATED: June ___, 2011          Siri Diaz

_____

DATED: June ___, 2011          Carolyn Siegel

_____

DATED: June ___, 2011          Talia Bumb

_____

DATED: June _17_, 2011         Blerta Vikki

_Blerta Vikki_____

DATED: June ___, 2011          Danielle Owimrin

_____

DATED: June ___, 2011          Susan Levin

_____

15

DATED:  June __, 2011              Siri Diaz

_____

DATED:  June __, 2011              Carolyn Siegel

_____

DATED:  June __, 2011              Talia Bumb

_____

DATED:  June __, 2011              Blerta Vikki

_____

DATED:  June __, 2011              Danielle Owimrin

_____

DATED:  June __, 2011              Susan Levin

_____

15

DATED: June ___, 2011        Siri Diaz

_____

DATED: June ___, 2011        Carolyn Siegel

_____

DATED: June ___, 2011        Talia Bumb

_____

DATED: June ___, 2011        Blerta Vikki

_____

DATED: June ___, 2011        Danielle Owimrin

_____

DATED: June 17, 2011         Susan Levin

_____

15